UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| MARY E. LENTZ | : | Case No.: 01-CV-599 |
| | : | |
| Plaintiff, | : | Judge Watson |
| | : | |
| v. | : | **DEFENDANTS' MOTION FOR LEAVE** |
| | : | **TO FILE RENEWED MOTION** |
| | : | **FOR SUMMARY JUDGMENT** |
| CINCINNATI INSURANCE | : | |
| COMPANY, et al. | : | |
| | : | |
| Defendants. | : | |

Defendants move the Court for an order granting them leave to file a Renewed Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Defendants make this request because – pursuant to new law developed in the two years since Defendants filed their reply brief in support of their original summary judgment motion in February 2003 – no basis for liability exists under either federal or state law for Plaintiff's Title VII claim against Defendant Cincinnati Insurance Company ("CIC") or her intentional infliction of emotional distress and intentional interference with a business relationship claims against the sole remaining individual defendant, Dave J. Balzano ("Balzano"). Defendants seek leave to present these issues to the Court in light of decisions from both Ohio and federal courts that have occurred since February 2003 when Defendants filed their final statement in support of their original Motion for Summary Judgment.

The basis for Defendants' motion is further set forth in the attached Memorandum in Support.

        Respectfully submitted,

/s/ *Jack B. Harrison*
Deborah S. Adams (0005607)
Jack B. Harrison (0061993)
Attorneys for Defendant
FROST BROWN TODD LLC
2200 PNC Center
201 East Fifth Street
Cincinnati, OH 45202
(513) 651-6705
jharrison@fbtlaw.com

## MEMORANDUM IN SUPPORT

I. **FACTUAL BACKGROUND**

The material facts are undisputed. Mark Huller ("Huller"), Manager of the Trial Division of CIC's Legal Department, hired Plaintiff Mary Lentz to work as an attorney in CIC's Dayton law office in April 1997. (See Deposition of Mary Lentz at pg. 72, attached as Ex. A, herein "Lentz at __"; Cplt. at 11, 18.) Lentz represented not only CIC's insureds in litigation, but also CIC itself on subrogation matters. (Lentz at 72-73.) Beginning in March 1998, Lentz began charging non-CIC attorneys involved in her cases for copies of documents she provided in discovery. (Cplt. at 33, 34; Lentz at 33.) She requested that non-CIC counsel reimburse her for such copies with checks made payable not to CIC, but to her personally. (Lentz at 215-216, 222-223.) The following dispositive facts are undisputed:

- In September 1999, Lentz received a reimbursement check from other counsel for copies paid for by CIC. The check was for $496.00.

- In September 1999, Lentz deposited $346.00 from that check in her own personal bank account without telling anyone at CIC. (Lentz at 21-22, 141-142)

- In October 1999, there was a second check for $538.00. Of that, she deposited $488.00 in her own personal bank account, again without notice to anyone at CIC. (Lentz at 23, 141-142.)

- Lentz, by her own admission, commingled or "housed" funds belonging to CIC, her employer and her client, with her personal funds and took no steps to separate CIC monies from her own. (Lentz at 24.) She then continued to make withdrawals from her personal bank account for

1

- personal expenses, such as childcare, without making any accounting as to whether the funds being spent were her personal funds or funds belonging to CIC. (Lentz at 24-25.)
- Lentz deposited these CIC monies in her personal bank account without CIC's knowledge. (Lentz at 21-26, 141-142.)
- In December 1999, Lentz admitted to CIC management that she had placed CIC money in her own bank account. (Lentz at 8-9, 17-19.)
- Although the money belongs to CIC, it remains even today in Lentz's possession. (Lentz at 10.)

As a result of her placing these funds in her bank account, Lentz was placed on inactive status in January 2000 and terminated by Huller in March 2000.

## II.    ARGUMENT

### A.    The Court Properly Dismissed All But Three of Lentz's Claims.

Lentz originally asserted a Title VII claim for gender discrimination, as well as three state law claims (defamation, intentional infliction of emotional distress ("IIED") and tortious interference with a business relationship) against CIC and individual defendants, Dave J. Balzano, Mark J. Huller, James Benoski, Tim Timmel and Bruce Fisher. On September 21, 2004, the Court granted Defendants' motion for summary judgment on all of Lentz's claims,[1] except for three: (1) the Title VII claim against CIC; (2) the IIED claim against Balzano; and (3) the tortious interference claim against Balzano. (Order attached as Ex. B).

The Court denied summary judgment on the Title VII claim as to CIC. Specifically, the Court stated that with respect to the issue of whether CIC's stated reason for Lentz's termination

---

[1] Lentz also alluded to an Equal Pay Act claim, which the Court dismissed without prejudice.

2

(conversion of company funds) was pretext for gender discrimination under Title VII, "the parties disagree as to the thoroughness and/or fairness of the investigation Defendants conducted into the allegations" against her. (Order at 3-4, Ex. B).

The Court concluded that Lentz's IIED claim against Balzano should also survive summary judgment because there was "a factual dispute" regarding whether or not Balzano's reporting Lentz's method of seeking reimbursement, "was "motivated by malice" because of an earlier work-related dispute with her. Lastly, the Court found that this same "factual dispute" was sufficient to take Balzano's reporting "outside the parameters of his job duties" as Lentz's supervisor and thus permit a tortious interference claim against him. (*Id.*, Ex. B).

> B. **Based On New Authority, The Court Should Grant Defendants Leave To Renew Their Motion For Summary Judgment As To These Three Remaining Claims.**

Since Defendants filed their reply brief in support of their summary judgment motion on February 13, 2003 - over two years ago - a number of new cases demonstrate that Lentz's three remaining claims fail as a matter of law, regardless of the "factual disputes" referenced by the Court in its Order. At a minimum, these new authorities provide an ample basis for the Court to take another look at whether these claims can survive summary judgment. If they can, then trial of this matter will go forward as scheduled. However, if, under these more recent decisions, these claims cannot survive, then the Court and the parties will be spared an unnecessary expenditure of time and resources.

> 1. <u>**New Authority Clarifies That The Title VII Claim Against CIC Cannot Properly Survive As A Matter Of Law**</u>.

Assuming some factual dispute regarding "the thoroughness and/or fairness of the investigation" conducted by CIC regarding the conversion of CIC funds by Lentz, recent decisions establish that the dispute is not material to her Title VII claim. Lentz <u>admitted</u> to CIC

that she took company money, placed it in her personal bank account, and used some of it on personal expenses. Lentz also has admitted that no one else did this and that Huller fired her for that reason (Lentz at 61, 135, 138). On these undisputed facts, recent decisions establish unequivocally that Lentz cannot offer sufficient evidence of pretext to get to trial.

In *Noble v. Brinker International, Inc.*, 391 F.3d 715 (6th Cir. 2004), plaintiff Noble claimed race discrimination in discharge. Noble, an employee of the Macaroni Grill restaurant, was fired for "no call/no show." Noble disputed that he was scheduled to work on the night of his "no show" and in fact his name was not on the schedule. He claimed race discrimination under Title VII because of a history of alleged disparate treatment, racial comments and because two white employees were not fired for "no call/no show."

The Sixth Circuit held that a reasonable jury could not have found racial discrimination in Noble's discharge and reversed the denial of defendant's motion for judgment as a matter of law. A plaintiff is not entitled to a trial simply because there is sufficient evidence for a reasonable jury to conclude that an employer's proffered explanation for its adverse employment action was pretextual. Rather, the court held that "the factfinder must *believe* the plaintiff's explanation of intentional discrimination." *Id.* at 721. That the employer's proffered reason is unpersuasive, or even obviously contrived, does not establish that the plaintiff's proffered reason of race discrimination is correct. *Id.* at 722.

Therefore, under *Noble*, a finding that a genuine issue of fact exists as to whether CIC's stated reason for Lentz's termination (conversion of company funds) was pretextual, based on an alleged disagreement between the parties "as to the thoroughness and/or fairness of the investigation Defendants conducted into the allegations," is not conclusive. Rather, under *Noble,* the analysis must be whether Lentz presented sufficient evidence to permit a reasonable jury to

4

believe her "explanation of intentional discrimination." Under the controlling precedent of *Noble* she clearly has not. Unlike Noble, Lentz did not even offer evidence that CIC's stated reason for her discharge – commingling CIC's funds with her own funds in her personal bank account – was "unpersuasive" or "contrived." To the contrary, Lentz gave evidence that she had commingled the funds, that no one else at CIC had done so, and that such commingling was why Huller fired her.

    Another recent Sixth Circuit decision also supports CIC's motion: *Peltier v. United States of America*, 388 F.3d 984 (6th Cir. 2004). Plaintiff Peltier, a female agent for the Bureau of Alcohol, Tobacco and Firearms, and a male coworker, were investigated as the possible source of a leak which negatively impacted an investigation. Peltier claimed she was subjected to harsher scrutiny than the male agent. Peltier also claimed discrimination because male agents requested and received transfers while she did not. The Court affirmed dismissal of Peltier's claim. It was not enough for Peltier to establish – as she did – that she faced harsher scrutiny and was denied a transfer. It was not enough for her to produce evidence that cast doubt on the employer's action. Peltier had to produce sufficient evidence for the fact finder to believe her explanation that the hardships complained of were gender based. Peltier did not and was denied a trial.

    The Sixth Circuit's decisions in *Noble* and *Peltier* constitute an adequate basis to allow Defendants to file a renewed Motion for Summary Judgment so that the Court can review the facts of this case in light of their analysis and holdings. Other recent decisions provide additional support for CIC's request. Several courts have recently concluded that differences in perceptions regarding the thoroughness or completeness of an employment investigation are irrelevant in determining whether genuine issues of material fact exist related to the proffered

reason for a job action. For example, in *Christenson v. The Boeing Co.*, 2004 U.S. Dist. LEXIS 19406 at*3-5 (D. Ore. Sept. 22, 2004), the plaintiff was discharged after an investigation concluded he had hidden food from the cashier at the company cafeteria. In granting the employer's motion for summary judgment, the court held that the quality, accuracy or "credibility" of the investigation was entirely <u>immaterial</u> to the issue of pretext:

> [Plaintiff's] argument misses the point. If the [decision maker] believed that plaintiff stole food and relied on the information [from the investigation] in deciding to discharge plaintiff, **it is irrelevant whether plaintiff actually stole food. In judging whether an employer's proffered justification is pretextual, it is not important whether it is objectively false. "Rather, courts only require that an employer honestly believed its reasons of its actions, even if its reason is foolish or trivial or even baseless**."

*Id.* at *24-25 (citation omitted, emphasis added). *See also Bodett v. Coxcom, Inc.*, 366 F.3d 736, 746-48 (9th Cir. 2004); *Vega v. Sprint Corp.*, 2004 U.S. Dist. LEXIS 21524 at *37-43 (D. Kan. Oct. 25, 2004); *Pineda v. UPS, Inc.*, 360 F.3d 483, 489 (5th Cir. 2004). In this case, Lentz has admitted that Huller believed the reason for his action. (Lentz at 138.) Lentz also has admitted that the reason was true. For these reasons, CIC respectfully requests permission to file a renewed motion for summary judgment on CIC's behalf with respect to Lentz's Title VII claim.

### 2. The Two Tort Claims Against Balzano Cannot Properly Survive As A Matter Of Law.

Recent decisions preclude the survivability of Lentz's IIED and tortious interference claims against Balzano, even if one accepts that Balzano was motivated by some sort of "personal animus" or "malice" in reporting Lentz's reimbursement practice. This is because even an accusation of theft made to one's superior about a co-employee – even if knowingly false and motivated by any type of "animus" or "malice" – falls well short of meeting the high standard for establishing sufficient "outrage" to maintain an IIED claim under recent Ohio

decisions analyzing this cause of action. *Gnezda v. City of North Royalton*, 2004 Ohio 1678, 2004 Ohio App. LEXIS 1507 at *12-13 (Cuyahoga Cty. Apr. 1, 2004); *Adityanjee v. Case Western Reserve Univ.*, 156 Ohio App. 3d 432, 443, 806 N.E.2d 583, 591 (Cuyahoga Cty. 2004); *Limberg v. Roosa*, 2004 Ohio 1480, 2004 Ohio App. LEXIS 1319 at *27-28 (Montgomery Cty. March 26, 2004). *See also McDowell v. J.B. Hunt Transport, Inc.*, 2004 U.S. Dist. LEXIS 15728 at *19 (N.D. Ill. Aug. 5, 2004); *Adams v. The Hartford Courant*, 2004 U.S. Dist. LEXIS 8546 at *11-13 (D. Conn. May 14, 2004); *McClean v. Case Corp.*, 314 F. Supp. 2d 911, 921 (D.N.D. 2004).

Additionally, according to recent Ohio decisions, such an allegedly false and ill-motivated accusation, even assuming that to be the case here, fails as a matter of law to take Balzano "outside" of the broad scope of his supervisory duties, precluding a tortious interference claim against him with respect to Lentz's relationship with their mutual employer, CIC. *See, e.g., Duggan v. Orthopaedic Institute of Ohio, Inc.*, 2003 U.S. Dist. LEXIS 7583 at *8-9 (N.D. Ohio Apr. 8, 2004) (citation omitted).

Finally, Lentz's IIED claim fails for the additional reason that her allegations of "severe emotional distress" are insufficient as a matter of law to meet the separate "seriousness" or "extreme severity" element of her IIED claim as defined in recent Ohio decisions. Lentz's allegations consist of nothing more than her self-serving, unsupported and uncorroborated statements. In order to meet the "seriousness" or "extreme severity" requirement for her IIED claim against Balzano under Ohio law, Lentz "must present some 'guarantee of genuineness' in support of … her claim to prevent summary judgment." *Garrett v. Fisher Titus Hosp.*, 318 F. Supp 2d 562, 578 (N.D. Ohio 2004) (citation omitted). Ohio law provides only two mechanisms

for showing this, either by the use of expert witnesses or third party lay witnesses familiar with a plaintiff's emotional state and history. *Id.* Here, "[Lentz] offers neither." *Id.*

### III. CONCLUSION

Two years have passed since Defendants' Motion for Summary Judgment was briefed. Intervening decisions make it manifestly clear that to force a trial in this matter would be unjust. Judicial economy supports the Court's examination of the viability of Lentz's three remaining claims in light of these recent court decisions. For the reasons set forth above, Defendants' Motion for Leave to File Renewed Motion for Summary Judgment should be granted.

                              Respectfully submitted,

                              /s/ *Jack B. Harrison*
                              Deborah S. Adams (0005607)
                              Jack B. Harrison (0061993)
                              Attorneys for Defendant
                              FROST BROWN TODD LLC
                              2200 PNC Center
                              201 East Fifth Street
                              Cincinnati, OH 45202
                              (513) 651-6705
                              jharrison@fbtlaw.com

**CERTIFICATE OF SERVICE**

  I hereby certify that on this 22nd day of February 2005 a copy of Defendants' Motion for Leave to File Renewed Motion for Summary Judgment was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system and copies will be mailed via U.S. Mail to those parties who are not served via the Court's electronic filing system: Michael K. Sutherlin, Law Office of Michael K. Sutherlin & Associates, P. O. Box 441095, Indianapolis, IN 46244-1095. Parties may access this filing through the Court's system.

               /s/ *Jack B. Harrison*

CinLibrary 0011523.0480059  1476153v.1