UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| MARY E. LENTZ | : | Case No.: 01-CV-599 |
| | : | |
| Plaintiff, | : | Judge Watson |
| | : | |
| | : | |
| v. | : | **DEFENDANTS' REPLY IN SUPPORT** |
| | : | **OF MOTION FOR LEAVE** |
| | : | **TO FILE RENEWED MOTION** |
| | : | **FOR SUMMARY JUDGMENT** |
| CINCINNATI INSURANCE | : | |
| COMPANY, et al. | : | |
| | : | |
| Defendants. | : | |

Defendants' Motion makes a simple argument. Based on recent cases from the Sixth Circuit and Ohio appellate courts, Plaintiff's remaining claims fail as a matter of law even if the "factual disputes" found by the Court in its September 22, 2004 Order actually exist. In response, Plaintiff does not seriously challenge these recent cases (although she tries to misconstrue some of them). Rather, she asserts four primary arguments in an effort to persuade the Court to simply ignore these dispositive cases and allow her to force an improper and wasteful trial.

First, Plaintiff says this Motion is a "re-do" of the prior summary judgment motion. This is irrelevant. It is well-established that where, as here, the material facts are undisputed and defendant has shown it is entitled to judgment as a matter of law, such judgment should be granted. This is so, regardless of whether this showing is made before, during or after trial, whether it is made on an "original" or "renewed" motion, or whether the motion is based on

"old" or "new" cases.[1] Plaintiff's demand that she be permitted a highly burdensome trial on her claims even if they are without legal merit is contrary to both the law and common sense.

Second, Plaintiff asserts that the new cases cited by Defendants are not really "new" because they cite earlier cases. Plaintiff thus contends that in order to be truly "new," a case must present a "dramatic" change (or rejection) of prior cases, such that the prior cases are all rendered "invalid." Thus, under Plaintiffs' theory, there have been virtually no "new" cases for centuries. This, of course, is nonsense. These new cases are dispositive because they interpret and apply the controlling law to facts that are essentially the same as the undisputed facts here.

Third, Plaintiff asserts that some of the cases are not "new" <u>enough</u> because they were decided prior to the Order. She thus contends that Defendants were obligated to barrage this Court with multiple decisions as each one was issued up until the date of the Order, and then file this motion with even more cases decided after that date. This contention also fails.[2] In any event, Defendants cite multiple new cases on the remaining claims that were decided on or after the date of the September 22, 2004 Order.[3]

---

[1] *See, e.g.*, Rule 50 (motion for judgment as a matter of law and renewed motion after trial) and Rule 56(b) (summary judgment motion may be made by defendant "at any time"). Moreover, because it is not expressly designated as a final judgment, the Order "is subject to revision at any time" until the entry of final judgment on all claims. Rule 54(b). *See also Noble v. Brinker Int'l, Inc.*, 391 F.3d 715 (6th Cir. 2004) (reversing district court's failure to grant defendant's renewed motion for judgment as matter of law).

[2] As Plaintiff acknowledges, this "obligation" only applies when there has been a landmark or "seminal" decision, and none of the new cases fit that description. (Plt. Resp. at 8). This "obligation" is thus inapposite here. Rather, Defendants researched and presented these new cases precisely because they addressed the particular "factual disputes" that the Court cited as precluding summary judgment on the remaining claims in its Order. Defendants obviously could not have known of either the need for such cases or the particular "factual disputes" the Court would find material until after the date of the Order.

[3] *See, e.g., Noble*, 391 F.3d 715 (6th Cir. Dec. 3, 2004); *Peltier v. U.S.*, 388 F.3d 984 (6th Cir. Oct. 28, 2004); *Christenson v. The Boeing Co.*, 2004 U.S. Dist. LEXIS 19406 (D. Ore. Sept. 22, 2004); *Vega v. Sprint Corp.*, 2004 U.S. Dist. LEXIS 21524 (D. Kan. Oct. 25, 2004); *Morris v. Emory Clinic, Inc.*, 2005 U.S. App. LEXIS 3813 (11th Cir. Mar. 8, 2005); *Buckman-Pierson v. Brannon*, 159 Ohio App. 3d 12, 822 N.E.2d 830 (Montgomery Cty. Nov. 16, 2004).

Fourth, Plaintiff asserts that simply because she wants a trial, she is entitled to one. This is in essence a repeat of Plaintiff's first argument that her claims must go through an improper and wasteful trial even if they fail as a matter of law, and it should be rejected for the same reasons.

In sum, contrary to Plaintiff's arguments, the issue is not whether the cases cited or the arguments made in the Motion "existed" prior to the date of the Order. The issue is whether the Court's application of the governing law to the facts as found by the Court with respect to the remaining claims was correct – a pure issue of law. Thus, once the clutter of Plaintiff's "ignore the law" arguments is swept away, the Court is left with the most recent pronouncements of the Sixth Circuit, the Ohio appellate courts and other courts on this governing law. These recent cases hold that, even accepting the existence of the "factual disputes" relied upon by the Court in denying summary judgment on these claims, they are immaterial as a matter of law. These cases thus require that Defendants be granted judgment as a matter of law on these claims.

## I. PLAINTIFF'S TITLE VII CLAIM FAILS AS A MATTER OF LAW

### A. Plaintiff Has Not Only Failed to Offer Sufficient Evidence to Prove CIC's Discriminatory Intent, She Has Entirely Ignored This "Ultimate Question."

In denying summary judgment on the Title VII claim as to CIC, the Court relied on only one identified "factual dispute" with regard to the issue of "pretext" in its Order. In particular, the Court stated that with respect to the issue of whether CIC's stated reason for Plaintiff's termination (commingling company funds in her personal bank account) was pretext, "the parties disagree as to the thoroughness and/or fairness of the investigation Defendants conducted into the allegations" against her. (Order at 3-4, Ex. B to Motion). Thus, the Court found that a

factual dispute regarding the "credibility" of the investigation was sufficiently material to deny summary judgment on the "pretext" element of her Title VII claim.[4]

But the Sixth Circuit recently held in *Noble* that evidence that an employer's proffered explanation for its adverse action lacks credibility is not, in itself, enough to reach trial on a Title VII claim. Rather, the Sixth Circuit held that the plaintiff must also prove that the <u>real reason</u> is "<u>intentional discrimination</u>." *Id.* at 726 (emphasis added). The Sixth Circuit explained that this requirement may be met either by "additional evidence of discrimination," or in "appropriate circumstances," from sufficient evidence of discrimination from the *prima facie* case. *Id.* But evidence that creates "<u>mere disbelief of an employer's proffered reason is insufficient to support a finding of intentional discrimination</u>." *Id.* at 722 (emphasis added).

Plaintiff does not seriously dispute this controlling holding, its applicability to this case, or her complete failure to meet this requirement. Rather, she argues that this law is not really "new" because *Noble* cites *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 503 (1993). Aside from this pointless argument, Plaintiff does not explain how the existence of an "older" U.S. Supreme Court case that also requires dismissal of her Title VII claim helps her position.[5]

Plaintiff also quotes at length from another "older" Supreme Court case, *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000). (Plt. Resp. at 3-4). But Plaintiff misses

---

[4] As shown in the Motion (at 1-5), it is undisputed that: (1) Plaintiff secretly converted CIC money for her own use; (2) she admitted doing so during the investigation; (3) CIC relied on this investigation, including her admission, in deciding to terminate her; and (4) CIC honestly believed its reasons for terminating her. Nevertheless, Plaintiff asserts that the investigation was insufficient and reached the wrong conclusion. As shown herein, even if this Court correctly found that there is a "factual dispute" regarding this assertion, it is not material as a matter of law and cannot save her Title VII claim from summary judgment.

[5] Plaintiff focuses on another sentence that *Noble* quotes from *Hicks*: "That the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason of race discrimination is correct." *Id.* at 722. She also tries to play word games by emphasizing the word "necessarily" in this sentence. But this tactic does not help her since the meaning is the same – *i.e.*, she cannot simply stand on a "factual dispute" regarding the "credibility" of CIC's investigation or stated reason to establish pretext and avoid summary judgment.

the key point of *Reeves*. The ultimate question is not whether Plaintiff has sufficient evidence that CIC's stated reason is false or pretext. "The ultimate question" is whether Plaintiff has sufficient proof that CIC "intentionally discriminated…" *Reeves*, 530 U.S. at 146-48. Although Plaintiff tries to avoid this ultimate question by ignoring it, the Sixth Circuit holds that she cannot do this.

In *Noble*, the Sixth Circuit interpreted *Hicks* and *Reeves* with respect to this ultimate question under essentially identical facts – a plaintiff asserting a Title VII discrimination claim for a discharge that was allegedly based on a false accusation of workplace misconduct. Like the Order did here, the Sixth Circuit concluded that the plaintiff had enough evidence to "to permit a reasonable jury to reject the defendant's proffered reason" for his discharge. *Id.* at 724. According to Plaintiff's (and the Order's) theory in this case, as well as the district court's theory in *Noble*, such a showing of pretext would be sufficient in itself to force a trial on a Title VII claim. But the Sixth Circuit rejected this theory as contrary to *Hicks* and *Reeves*, the very cases cited by Plaintiff:

> We must reject [this theory] because it is inconsistent with the Supreme Court's teachings… [According to] *Hicks*… <u>it is not sufficient for a jury to merely disbelieve the reason offered by the defendant</u>…. Instead, the jury… <u>must believe that the plaintiff was the victim of intentional discrimination</u>… [A contrary] rule would cut the heart out of *Hicks*, and we are not free to do so. [Plaintiff's] argument must also be rejected because it is inconsistent with *Reeves*...

*Id.* at 725-26 (citations omitted, emphasis added).

Because the *Noble* plaintiff (like Plaintiff here) "failed to carry his burden of proof with respect to 'the ultimate question of discrimination,'" the Sixth Circuit reversed the trial court and granted the defendant judgment as a matter of law. *Id.* at 728. *See also Morris*, 2005 U.S. App. LEXIS 3813 at *11-13 (affirming summary judgment for defendant on discrimination claims where plaintiff had "no evidence that age or sex played any role in [defendant's] determination to terminate [him]"). Since the Sixth Circuit holds that the theory of pretext relied upon by the Plaintiff and the Order is erroneous as a matter of law, summary judgment should be granted.

5

**B.     Sole "Factual Dispute" Over "Thoroughness and/or Fairness of Investigation" Identified in Order Is Immaterial to "Pretext" or "Intent" as a Matter of Law.**

Recent cases also affirm that evidence challenging the "thoroughness and/or fairness" of investigations of misconduct are not material to the pretext analysis. Like Plaintiff here, the *Christenson* plaintiff asserted that he could establish pretext by attacking the credibility of the investigation that concluded he had stolen food. The court rejected this attack as "irrelevant." It did not matter whether plaintiff was actually guilty of the accused theft. Nor did it matter whether the investigation was as "ludicrous" as plaintiff claimed or whether the employer's stated reason was "foolish or trivial or even baseless." What mattered was whether the <u>real reason</u> was <u>intentional discrimination</u>. Because the plaintiff could not prove that the employer did not honestly believe its stated reason, his discrimination claim failed as a matter of law. *Id.*[6]

Similarly, it is not material whether CIC's investigation was "thorough" or "fair." Nor is it material whether CIC's stated reason was "foolish or trivial or even baseless." Like the plaintiff in *Christianson*, Plaintiff "has presented no evidence that [CIC] did not honestly believe and rely" on the investigation, no matter how "ludicrous" she claims it was. *Id.* at 25. Indeed, Plaintiff admits that in fact, she did put CIC funds in her personal bank account and that CIC's decisionmaker honestly believed she had done so and that was the reason for his action. (Lentz at 138). CIC is thus entitled to summary judgment on her Title VII claim. Put differently, the Court's task "is not to second-guess whether terminating [Plaintiff] was a good or bad business decision by [CIC]. [The Court's] review is limited to whether [CIC] used … sex as a basis to terminate [her]."

---

[6] In attempting to distinguish this case, Plaintiff asserts that she "has certainly presented more than a mere argument that [CIC's] bases for her termination were 'ludicrous,' as evident by, *inter alia*, [the Order's] determination that Plaintiff has presented enough evidence to get past summary judgment on the pretext issue." (Plt. Resp. at 4-5, n.1). This just begs the "ultimate question." *Christianson* holds that <u>it does not matter</u> how much "argument" or "evidence" she presents to show that CIC's stated reason is "ludicrous." What matters is "the ultimate question of discrimination," which both Plaintiff and the Order ignore.

*Morris*, 2005 U.S. App. LEXIS 3813 at *13 (rejecting evidence showing "that [plaintiff's] dismissal was unwarranted" as immaterial and affirming summary judgment for defendant).

The same result was reached in another recent similar case, *Vega v. Sprint Corp.*, 2004 U.S. Dist. 21524 at *37-43 (D. Kan. Oct. 25, 2004). In *Vega*, the plaintiff (like Plaintiff here) asserted that the proffered reason for her discharge – that an investigation had revealed that she had misrepresented her expenses – was pretext for gender discrimination. The court noted that it was irrelevant whether plaintiff was actually guilty – *i.e.*, all that mattered was whether the defendant <u>believed</u> that the allegations were true. Since the plaintiff (again like Plaintiff here) had no evidence that the defendant did not believe that its stated reason was true, much less that the real reason was gender discrimination, she tried to salvage her claim by attacking the adequacy of the investigation. The court held that the issue of whether the defendant "was negligent in relying on an incomplete investigation" was immaterial to the issue of pretext, and granted summary judgment for defendant. *Id. See also Morris*, 2005 U.S. App. LEXIS 3813 at *18-19 (plaintiff's attempts to dispute "characterization" of complaints against him and "adequacy" of investigation were insufficient to establish a claim where he lacked proof of discriminatory intent).[7]

Thus, in order "to establish that an investigation into an alleged violation of a workplace policy was a pretext for discrimination it is 'not a sufficient [for the plaintiff] to present evidence that the … investigation was imperfect, incomplete, or arrived at a possibly incorrect conclusion. He must show that the reason proffered by [the defendant] is false, <u>and</u> discrimination was the real reason.'" *Pineda v. UPS, Inc.*, 360 F.3d 483, 489 (5th Cir. 2004) (emphasis original, citation

---

[7] Plaintiff tries to distinguish *Peltier*, another Sixth Circuit case, on the grounds that it "hardly" discussed pretext. Plaintiff again misses the point. With respect to pretext, the *Peltier* court found that plaintiff's evidence that an "internal investigation" was discriminatory because it was "unwarranted" and "subjected her to more intense scrutiny" was insufficient to create a material issue of fact. *Id.* at 988-89.

omitted).[8] Because Plaintiff fails to even recognize her "ultimate" burden of proving that "discrimination was the real reason" for her termination, much less actually provide sufficient evidence to meet this burden, her Title VII claim must fail as a matter of law.

## II.    PLAINTIFF'S STATE LAW CLAIMS FAILS AS A MATTER OF LAW

### A.    Sole "Factual Dispute" Over Balzano's "Malice" or "Personal Animus" Identified in Order Is Immaterial to Both State Claims as a Matter of Law.

In its Order (at 3), the Court concluded that Plaintiff's claims for intentional infliction of emotional distress ("IIED") and tortious interference against Defendant Balzano should also survive summary judgment. The Court reached this conclusion with respect to both claims based on a single "factual dispute" regarding whether Balzano's actions in reporting Plaintiff's suspected misconduct were "motivated by malice" or "a personal animus."

As shown in the Motion, recent cases from the courts in Ohio and elsewhere hold that, even if Balzano was motivated by some sort of "malice" or "personal animus" in reporting Plaintiff's reimbursement practice, this is insufficient to sustain either of these state law claims. Specifically, an accusation of theft made to one's superior about a subordinate employee – even if knowingly false and motivated by "malice" or "animus" (or even unlawful discrimination) – fails as a matter of law to meet the very high standard for "outrage" or actions "outside the scope of employment" required to maintain an IIED or tortious interference claim.[9]

---

[8] The discrimination claim in *Pineda* was asserted pursuant to Texas civil rights law. Like the civil rights law in Ohio, the Texas law parallels Title VII and the courts rely on Title VII cases in interpreting it. *Id.*

[9] *See Gnezda v. City of North Royalton*, 2004 Ohio App. LEXIS 1507 at *12-13 (Cuyahoga Cty. Apr. 1, 2004); *Adityanjee v. Case Western Reserve Univ.*, 156 Ohio App. 3d 432, 443, 806 N.E.2d 583, 591 (Cuyahoga Cty. 2004) and *Duggan v. Orthopaedic Inst. of Ohio, Inc.*, 2003 U.S. Dist. LEXIS 7583 at *8-9 (N.D. Ohio Apr. 8, 2004). *See also Limberg v. Roosa*, 2004 Ohio App. LEXIS 1319 at *27-28 (Montgomery Cty. March 26, 2004) (IIED claim failed under Ohio law "even assuming [plaintiff] has suffered age discrimination and retaliation…"); *McDowell v. J.B. Hunt Transport, Inc.*, 2004 U.S. Dist. LEXIS 15728 at *19 (N.D. Ill. Aug. 5, 2004) (dismissing IIED claim under Illinois law based on allegation that defendant maliciously made false statements about employee's prior drug use); *Adams v.*

Plaintiff does not even address (much less distinguish) any of these recent cases in her response. Nor does she dispute that these recent cases dispose of her two remaining state law claims. In fact, she does nothing more than repeat her "re-do" argument and quote the Court's Order, which of course is contrary to this established law. Since Plaintiff does not even seriously try to defend her state law claims in the face of this established law, they should be dismissed.

> B. **Plaintiff's Conceded Failure to Offer Any "Guarantee of Genuineness" Beyond Her Own Self-Serving Testimony Defeats Her IIED Claim.**

Defendants also established in their Motion that Plaintiff's IIED claim fails for the additional reason that her allegations of "severe emotional distress" are insufficient as a matter of law to meet the separate "<u>seriousness</u>" or "<u>extreme severity</u>" element of her IIED claim as defined in recent Ohio decisions. In order to meet this element, she "must present some '<u>guarantee of genuineness</u>' in support of … her claim to prevent summary judgment." *Garrett v. Fisher Titus Hosp.*, 318 F. Supp 2d 562, 578 (N.D. Ohio 2004) (citation omitted, emphasis added). This means there must be substantial evidence beyond a plaintiff's own testimony, which normally takes one of two forms: (1) medical expert witnesses; or (2) third party lay witnesses familiar with a plaintiff's emotional state and history who can testify to "marked changes" in the plaintiff as a result of the alleged outrage. *Id.* Here, Plaintiff "offers neither." *Id.* Rather, her allegations of "extreme severity" rest entirely on her unsupported statements.[10]

---

*The Hartford Courant*, 2004 U.S. Dist. LEXIS 8546 at *11-13 (D. Conn. May 14, 2004) (no IIED claim under Connecticut law even where wrongful actions of employer were "unlawfully motivated or offensive"); *McClean v. Case Corp.*, 314 F. Supp. 2d 911, 921 (D.N.D. 2004) (discriminatory discharge "is not conduct that is so extreme and outrageous" to justify IIED claim under North Dakota law).

[10] Again, Plaintiff tries to misconstrue the law. This time she focuses on the word "may" in the *Garrett* court's holding that a plaintiff "may" use either expert testimony or appropriate lay testimony like that described above to meet the "extreme severity" requirement. And again, her word games do not help her. It is undisputed that she did not use either of these methods and instead relied solely on her own say-so.

Plaintiff responds by asserting that *Garrett* does not mean what it says, and thus she really does not have to provide any further evidence of "extreme severity" beyond her own subjective, self-serving say-so. In support of this assertion, Plaintiff cites *Powell v. Grant Medical Ctr.*, 148 Ohio App. 3d 1, 771 N.E.2d 874 (Franklin Cty. 2002). But *Powell* says the same thing that *Garrett* says – *i.e.*, additional evidence of "extreme severity," such as through one of the two methods of proof listed above, is required in order to avoid summary judgment on an IIED claim.[11] In fact, the *Powell* court held that the IIED claims in that case failed as a matter of law precisely because the plaintiffs – just like Plaintiff here – did not use either of these two approved methods to establish "extreme severity" and instead <u>relied on their own self-serving, conclusory testimony</u>. *Id. Powell* thus also mandates dismissal of Plaintiff's IIED claim.

Finally, Plaintiff cites *Stockdale v. Baba*, 153 Ohio App. 3d 712, 795 N.E.2d 727, 735 (Franklin Cty. 2003). But that case does not support her assertion either. In fact, like *Garrett*, *Stockdale* echoes the holding in *Powell* that requires additional proof like that cited above. *Id.*[12] *Stockton* thus also contradicts – rather than supports –her assertion that she can rely solely on her own testimony to show "extreme severity." Other Ohio courts have followed *Stockton* and *Powell* to reject the IIED claims of other plaintiffs who relied on their own testimony to prove "extreme severity" or "seriousness."[13] Indeed, just a few months ago, the Ohio appellate court in

---

[11] Once again, Plaintiff misstates the law. She cites the following quotation from *Powell*, 771 N.E.2d at 878: "[E]xpert medical testimony is not indispensable to a claim of serious emotional distress." (Plt. Resp. at 6-7). Of course, she avoids mentioning that *Powell* also said: (1) "expert medical testimony" is used "in <u>most instances</u>" to establish extreme severity; and (2) the <u>only</u> expressly approved "alternative" to this approach is "testimony of lay witnesses" of the type described above. *Id.* (emphasis original).

[12] In yet another attempt at distortion, Plaintiff highlights a phrase from *Stockton* that states "a plaintiff could submit their own testimony…" *Id.* at 735. But when the phrase is read in context, it becomes clear that *Stockton* was merely repeating the holding in *Powell* regarding the two permissible methods of proof.

[13] *See Oman v. Advance Auto Parts, Inc.*, 2003 U.S. Dist. LEXIS 20784 at *6-7 (N.D. Ohio Oct. 23, 2003) (plaintiff's submission of "nothing in support of her claim of severe [IIED] other than her own statements… is not enough to overcome defendant's motion for summary judgment"); *Oglesby v. City of Columbus*,

10

*Ashley Buckman-Peirson*, 259 Ohio App. 3d at 25-26 stated: "We conclude that [Plaintiff's] testimony, by itself, was not sufficient to support her claim that [defendant's] behavior had caused severe emotional distress to her." The law compels the same conclusion in this case.

### III.    CONCLUSION

Even if the "factual disputes" cited in the Order are construed in Plaintiff's favor (thus rendering the facts undisputed for purposes of this motion), the controlling federal and state law requires that Defendants be granted judgment as a matter of law. Any other result would not only be contrary to law, but also common sense by forcing a time-consuming and costly trial on claims that are already legally doomed. This is true regardless of how Plaintiff chooses to characterize this Motion or the definition of "new" case law. It is also true regardless of Plaintiff's attempts to misconstrue the law. And it is true regardless of how strongly Plaintiff may assert that she is entitled to a trial no matter what the law or justice requires.

Respectfully submitted,

/s/ *Jack B. Harrison*
Deborah S. Adams (0005607)
Jack B. Harrison (0061993)
Attorneys for Defendant
FROST BROWN TODD LLC
2200 PNC Center
201 East Fifth Street
Cincinnati, OH 45202
(513) 651-6705
jharrison@fbtlaw.com

---

2002 Ohio App. LEXIS 3827 at *10-12 (Franklin Cty. July 25, 2002) (affirming summary judgment for defendant on IIED claim where plaintiff "submitted no medical evidence" and "relied instead on his own deposition and the deposition of his sister" to show extreme severity). Incidentally, Judge Petree, who Plaintiff emphasizes (at n.2) was part of the majority in both *Powell* and *Stockdale*, was also part of the majority in *Oglesby*. This fact further undermines Plaintiff's arguments.

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of March 2005 a copy of Defendants' Reply in Support of Motion for Leave to File Renewed Motion for Summary Judgment was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system and copies will be mailed via U.S. Mail to those parties who are not served via the Court's electronic filing system: Michael K. Sutherlin, Law Office of Michael K. Sutherlin & Associates, P. O. Box 441095, Indianapolis, IN 46244-1095. Parties may access this filing through the Court's system.

/s/ *Jack B. Harrison*

CinLibrary 0011523.0480059  1490570v.2