UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| MARY E. LENTZ, | : | Case No.: 01-CV-599 |
| | : | |
| Plaintiff, | : | (Judge Watson) |
| | : | |
| v. | : | DEFENDANTS' MOTION *IN LIMINE* TO |
| | : | BAR WITNESSES FROM OFFERING |
| | : | EVIDENCE CONTRARY TO THE EVIDENCE |
| | : | THEY PROVIDED TO CIC AT THE TIME OF |
| | : | THE TERMINATION DECISION AND |
| | : | MEMORANDUM IN SUPPORT |
| CINCINNATI INSURANCE | : | |
| COMPANY, et al. | : | |
| | : | |
| Defendants. | : | |

Defendants Cincinnati Insurance Company ("CIC") and David Balzano ("Balzano") (collectively "Defendants") move this Court, pursuant to Federal Rules of Evidence ("FRE") 401, 402 and 403, to exclude any evidence offered at trial by Plaintiff Lentz or others regarding Plaintiff's misconduct that is contrary or in addition to the evidence that those same individuals provided to CIC during interviews conducted at the time of its investigation and termination decision.

The law is clear that the determination of whether the employer's decision was legitimate or discriminatory must be based on the "particularized facts" as they were known by the decisionmaker <u>at the time of the decision</u>. Consequently, any attempts by Plaintiff or other witnesses involved in the investigation leading up to the decision to terminate Plaintiff Lentz to now "change their story" or supply additional evidence at trial that they did not provide to CIC at the time of the investigation, despite the opportunity to do so, would be improper. Such testimony should be excluded as irrelevant and inadmissible. Moreover, such "after the fact" evidence is unfairly prejudicial because it will confuse and mislead the jury into improperly

considering evidence that was not before CIC at the time it decided to terminate Plaintiff, as well as wasting valuable court time.

The grounds supporting this Motion are set forth in the attached Memorandum in Support.

Respectfully submitted,

*s/ Deborah S. Adams*
Deborah S. Adams (0005607)
Jack B. Harrison (0061993)
Frost Brown Todd LLC
2200 PNC Center
201 East Fifth Street
Cincinnati, OH 45202-4182
(513) 651-6800 (telephone)
dadams@fbtlaw.com
jharrison@fbtlaw.com
Trial Attorneys for Defendants

## MEMORANDUM IN SUPPORT

**I.    INTRODUCTION AND FACTUAL BACKGROUND**

In this case, Plaintiff Mary Lentz ("Lentz"), an attorney formerly employed in the Dayton law office of the Cincinnati Insurance Company ("CIC"), alleges that CIC discriminated against her on the basis of her gender when it terminated her upon learning that she had taken funds belonging to CIC and placed them in her personal bank account, using them for her personal expenses. She also alleges that David Balzano ("Balzano"), the managing attorney of the Dayton law office and her immediate supervisor, tortiously interfered with her employment relationship with CIC and intentionally caused her extreme emotional distress by passing on to his supervisor, Mark Huller, a secretary's notice to him that Lentz was seeking direct reimbursement to her personally of CIC funds spent on copies.

The relevant facts are undisputed as a matter of record:

- Mark Huller ("Huller"), Manager of the Trial Division of CIC's Legal Department, hired Mary Lentz to work as an attorney in CIC's Dayton law office in April 1997. (Lentz dep. at 72; Complaint at 11, 18.) Lentz represented not only CIC's insureds in litigation, but also CIC itself on subrogation matters in some cases. (Lentz at 72-73.) In those cases in which CIC was Lentz's client, her ethical obligations were exactly the same as her ethical obligations to any other client. (Lentz at 73.)

- Beginning in March 1998, Lentz began charging non-CIC attorneys involved in her cases for copies of documents she provided in discovery. (Complaint at 33, 34; Lentz at 33.) Lentz requested that non-CIC counsel reimburse her for such copies with checks made payable not to CIC, but to Mary Lentz c/o Berlon and Timmel[1] and then simply to Mary Lentz. (Lentz at 215-216, 222-223.) Lentz alleges that she cashed the checks, kept the cash in the office and used the cash for office purposes such as group lunches.

- In September 1999, Lentz, pursuant to her practice, received a reimbursement check from other counsel for copies paid for by CIC. The check was for $496.00. Lentz admits that the funds belonged to CIC (Lentz at 151, 209.) and that she deposited $346.00 from that check in her own personal bank account. (Lentz at 21-22.) In October 1999, there was a second reimbursement check for copies

---

[1] At that time, attorneys employed by CIC's Dayton office practiced under the name Berlon & Timmel.

- paid for by CIC. Of that, she deposited $488.00 in her own personal bank account. (Lentz at 23.)

- Lentz deposited these funds in her personal bank account in September and October without any notice to or permission from CIC. (Lentz at 141-142.)

- Lentz commingled or "housed" those CIC monies with her personal funds and took no steps to separate CIC monies from her own. (Lentz at 24.)

- As of September 30, 1999, after the first deposit of $346.00 of CIC money into Lentz's personal bank account, her balance was only $382.32. During September and October 1999, she made withdrawals from her personal account for personal expenses. (Lentz at 24-25.) She faced childcare expenses of $200 – $250 per week. (Lentz at 27; bank statement attached as Ex. 1 to Motion for Summary Judgment.)

- In December 1999, Sandy Brower, secretary to Balzano, informed Balzano that Lentz's correspondence revealed that Lentz asked that copy reimbursement checks be made payable to Lentz personally. (Balzano at 119-120.)

- Balzano passed on Brower's concern to his supervisor, Mark Huller. (Balzano at 121.)

- Huller requested an investigation, which was done by CIC's internal investigation unit. (Matheny 61-64; Huller 267.)

- In December 1999, Lentz admitted to the CIC investigator and to Huller that she had placed CIC money in her own bank account. (Lentz at 8-9, 17-19.)

- Lentz told the investigator that she knew what she had done was wrong and asked whether she would be "fired, disbarred or arrested." (Matheny at 103-104.)

- Because Lentz placed CIC money in her bank account, Huller placed Lentz on inactive status in January 2000 and terminated her in March 2000. (Huller at 177-179; 182; 189; 192; 210-213; 261.)

- Although Lentz admits that the money belongs to CIC, it remains even today in her possession. (Lentz at 10.)

- Other than Lentz, no other CIC attorney took CIC money, commingled it with his/her own money, and used the money as though it were his/her own. (Lentz at 14.)

The record in this case is crystal clear on this final dispositive bullet point: Lentz was terminated because she took funds belonging to CIC, placed those funds in her personal bank

account without permission, and then used those CIC funds to pay her personal expenses. No other CIC employee did that. No CIC manager knew that Lentz had done that until she admitted it. To date, Lentz has failed to return the funds she converted. She is unique in her misconduct. CIC relied on the unique, particularized facts regarding her misconduct that were known to it when it made the decision to terminate her.

II.   **ARGUMENT**

"In determining whether an employer's proffered reason for an employment action was pretextual, the court is not concerned with the correctness or desirability of the offered reasons, but rather the issue of whether the employer honestly believed the reason it offered." *Garrison v. Nygren*, 2004 U.S. Dist. LEXIS 4269, at *6 (N.D. Ill. 2004). *See also Wessel v. Goodyear Tire and Rubber Co.*, 2002 U.S. Dist. LEXIS 23249, at *37-38 (N.D. Ohio 2002) ("If the employer **honestly** believed in the nondiscriminatory reason in making its employment decision, and that honest belief was reasonably based on particularized facts, not on ignorance or prejudice, then the employer lacked discriminatory intent.") "Self-serving quarrels with the legitimacy of the employer's conduct do not establish pretext." *Garrison, supra*. This is particularly true where, as here, there is substantial evidence that the employer had a reasonable basis for making its decision based on the information that the plaintiff and other employees provided to the employer at the time. *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1116-17 (6th Cir. 2001). Merely disputing the facts underlying the defendant's legitimate reason is not evidence and is certainly not sufficient to carry plaintiff's burden. *Gribcheck v. Runyon*, 245 F.3d 547, 552 (6th Cir. 2001). As a result, any and all alleged facts that may be asserted by Plaintiff or any other witness that were not provided to CIC at the time are irrelevant and inadmissible.

As the Sixth Circuit has held, "as long as an employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect." *Majewski*, 274 F.3d at 1117 (quoting *Smith v. Chrysler Corp.*, 155 F.3d 799, 806 (6th Cir. 1998)). An "**honest belief**" exists where the employer "**reasonably relied on the particularized facts that were before it at the time the decision was made**." *Id.* (quoting *Smith*, 155 F.3d at 807) (emphasis added). *See also Braithwaite v. The Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001) (same). "In deciding whether an employer reasonably relied on the particularized facts then before it, [courts] do not require that the decisional process used by the employer be optimal or that it left no stone unturned. Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action" based on the evidence before it "at the time the decision was made." *Smith*, 155 F.3d at 807-8.

For these reasons, the courts have rejected attempts by plaintiff employees to offer evidence relating to the adverse decision that was not before the employer at the time of the decision. For example, in *Braithwaite*, 258 F.3d at 495, a plaintiff asserted Title VII discrimination claims after he was fired for shoving another employee. To argue pretext, the plaintiff sought to rely on several favorable "witness statements" that he asserted management had "intentionally ignored" in making its termination decision. The Sixth Circuit rejected these statements as irrelevant because none of them "**were available when [defendant] made its decision to fire him**." *Id.* (emphasis added). Just as in this case, the witness statements provided to the employer in *Braithwaite* **at the time** of its decision either affirmed the plaintiff's guilt or otherwise failed to refute the essential factual allegations against him. The Sixth Circuit thus determined that, based on the evidence that was before the employer at the time, "there is no

doubt that [the employer] had a reasonable belief that [plaintiff] shoved [another employee] at the time when they fired him." *Id.*

A similar result was reached in *Moore v. Principi*, 2002 U.S. Dist. LEXIS 23772, at *3-4 (N.D. Ill. 2002), *mot. for new trial den.*, 2003 U.S. Dist. LEXIS 9546 (N.D. Ill. 2003). In that Title VII case, the district court granted the defendant employer's motion *in limine* to bar as "irrelevant, unduly prejudicial, confusing and misleading" the plaintiff's evidence regarding his "probationary status" that purportedly proved "pretext." The district court found that this evidence could not be used to prove "pretext" because there was no basis for plaintiff's assertion that the officials who made the decision to terminate him "knew that the probation was improper" at the time of that decision.

The law requires that a jury hear only the same evidence an employer heard in reaching its decision even if that decision proves ultimately to be incorrect. The law certainly requires that precaution here where CIC's decision ultimately proved to be entirely correct. The **relevant** evidence remains **undisputed**: Plaintiff admitted in December 1999 at the time of the investigation and again admitted at deposition that she did, in fact, put $834.00 of CIC's money in her bank account. See facts above, pp. 3-4. CIC's honest belief and the resulting termination decision were based on the admissions of Plaintiff herself. No evidence to the contrary was presented to CIC before its decision to terminate Lentz.

Any current attempt by Plaintiff or other witnesses to "rewrite the historical record" to prove that CIC's decision was somehow wrong based on evidence not provided at the time is legally irrelevant and unduly prejudicial. Allowing the presentation of such evidence would also require CIC to explore and rebut it, adding to the irrelevant evidence accumulating before the

Court. The result will be endless detours into collateral matters that can only serve to unnecessarily prolong the trial and mislead and confuse the jury.

Conversion was the terminable offense, and only Lentz committed that offense. Lentz admitted the facts constituting conversion to Matheny and no one, then or now, has contradicted those facts. Plaintiff, through her own or others' testimony, should not be allowed to attempt to contradict those facts at trial by "rewriting" history by offering evidence that was either not shared with CIC at the time or is otherwise irrelevant.

### III. CONCLUSION

For the foregoing reasons, pursuant to FRE 401, 402 and 403, Defendants respectfully request that the Court grant this Motion *in Limine* and enter an Order excluding any evidence offered at trial by Plaintiff or other CIC employees that is contrary or in addition to the evidence that was provided to CIC at the time of its investigation and termination decision.

Respectfully submitted,

*s/ Deborah S. Adams*
Deborah S. Adams (0005607)
Jack B. Harrison (0061993)
Frost Brown Todd LLC
2200 PNC Center
201 East Fifth Street
Cincinnati, OH 45202-4182
(513) 651-6800 (telephone)
dadams@fbtlaw.com
jharrison@fbtlaw.com
Trial Attorneys for Defendants

**CERTIFICATE OF SERVICE**

      I hereby certify that on April 22, 2005, a copy of Defendant CIC's Motion *in Limine* to Bar Witnesses from Offering Evidence Contrary to the Evidence They Provided to CIC at the Time of the Termination Decision and Memorandum in Support was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system and copies will be mailed via U.S. Mail to those parties who are not served via the Court's electronic filing system, if any. Parties may access this filing through the Court's system.

                                          s/ *Deborah S. Adams*
                                          Deborah S. Adams (0005607)
                                          Jack B. Harrison (0061993)
                                          Frost Brown Todd LLC
                                          2200 PNC Center
                                          201 East Fifth Street
                                          Cincinnati, OH 45202-4182
                                          (513) 651-6800 (telephone)
                                          dadams@fbtlaw.com
                                          jharrison@fbtlaw.com
                                          Trial Attorneys for Defendants

CinLibrary 0011523.0480059 1454882v.2