UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| MARY E. LENTZ, | : | Case No.: 01-CV-599 |
| | : | |
| Plaintiff, | : | (Judge Watson) |
| | : | |
| v. | : | DEFENDANTS' MOTION *IN LIMINE* TO |
| | : | BAR IRRELEVANT AND MISLEADING |
| | : | STATISTICAL EVIDENCE OR REFERENCES |
| | : | AND MEMORANDUM IN SUPPORT |
| CINCINNATI INSURANCE | : | |
| COMPANY, et al. | : | |
| | : | |
| Defendants. | : | |

Defendant Cincinnati Insurance Company ("CIC") and Defendant David Balzano ("Balzano") (collectively "Defendants") move this Court, pursuant to Federal Rules of Evidence 401, 402 and 403, to exclude any statistical evidence or references offered at trial by Plaintiff Lentz. This case is not about allegations of company wide discrimination. This case is about one female attorney who individually claimed gender discrimination when she was fired because she placed funds belonging to her client and employer, CIC, in her personal bank account, and then wrote checks for her personal expenses using those funds.

The statistical evidence cited by Plaintiff through her filings in this case consists of nothing more than general comparisons of the number of male and female employees in selected job positions at a selected point in time and the gender breakdown of the company's Board of Directors. Such "raw comparisons" of the number of "protected" versus "non-protected" employees in any group are irrelevant as a matter of law to a single claim of discrimination with respect to a single employment decision regarding a single plaintiff.

Additionally, the statistical argument that Plaintiff seeks to assert is based entirely upon a common "statistical fallacy," making such evidence unfairly prejudicial under FRE 403. If

admitted or referenced, such evidence will confuse and mislead the jury to CIC's prejudice and waste valuable time as CIC is forced to respond to irrelevant and collateral information. The grounds supporting this Motion are set forth in the attached Memorandum in Support.

    Respectfully submitted,

    *s/ Deborah S. Adams*
    Deborah S. Adams (0005607)
    Jack B. Harrison (0061993)
    Frost Brown Todd LLC
    2200 PNC Center
    201 East Fifth Street
    Cincinnati, OH 45202-4182
    (513) 651-6800 (telephone)
    dadams@fbtlaw.com
    jharrison@fbtlaw.com
    Trial Attorneys for Defendants

## MEMORANDUM IN SUPPORT

I. **INTRODUCTION AND FACTUAL BACKGROUND**

In this case, Plaintiff Mary Lentz ("Lentz"), an attorney formerly employed in the Dayton law office of the Cincinnati Insurance Company ("CIC"), alleges that CIC discriminated against her on the basis of her gender when it terminated her upon learning that she had taken funds belonging to CIC and placed them in her personal bank account, using them for her personal expenses. She also alleges that David Balzano ("Balzano"), the managing attorney of the Dayton law office and her immediate supervisor, tortiously interfered with her employment relationship with CIC and intentionally caused her extreme emotional distress by passing on to his supervisor, Mark Huller, a secretary's notice to him that Lentz was seeking direct reimbursement to her personally of CIC funds spent on copies.

The relevant facts are undisputed as a matter of record:

- Mark Huller ("Huller"), Manager of the Trial Division of CIC's Legal Department, hired Mary Lentz to work as an attorney in CIC's Dayton law office in April 1997. (Lentz dep. at 72; Complaint at 11, 18.) Lentz represented not only CIC's insureds in litigation, but also CIC itself on subrogation matters in some cases. (Lentz at 72-73.) In those cases in which CIC was Lentz's client, her ethical obligations were exactly the same as her ethical obligations to any other client. (Lentz at 73.)

- Beginning in March 1998, Lentz began charging non-CIC attorneys involved in her cases for copies of documents she provided in discovery. (Complaint at 33, 34; Lentz at 33.) Lentz requested that non-CIC counsel reimburse her for such copies with checks made payable not to CIC, but to Mary Lentz c/o Berlon and Timmel[1] and then simply to Mary Lentz. (Lentz at 215-216, 222-223.) Lentz alleges that she cashed the checks, kept the cash in the office and used the cash for office purposes such as group lunches.

- In September 1999, Lentz, pursuant to her practice, received a reimbursement check from other counsel for copies paid for by CIC. The check was for $496.00. Lentz admits that the funds belonged to CIC (Lentz at 151, 209.) and that she deposited $346.00 from that check in her own personal bank account. (Lentz at 21-22.) In October 1999, there was a second reimbursement check for copies

---

[1] At that time, attorneys employed by CIC's Dayton office practiced under the name Berlon & Timmel.

- paid for by CIC. Of that, she deposited $488.00 in her own personal bank account. (Lentz at 23.)

- Lentz deposited these funds in her personal bank account in September and October without any notice to or permission from CIC. (Lentz at 141-142.)

- Lentz commingled or "housed" those CIC monies with her personal funds and took no steps to separate CIC monies from her own. (Lentz at 24.)

- As of September 30, 1999, after the first deposit of $346.00 of CIC money into Lentz's personal bank account, her balance was only $382.32. During September and October 1999, she made withdrawals from her personal account for personal expenses. (Lentz at 24-25.) She faced childcare expenses of $200 – $250 per week. (Lentz at 27; bank statement attached as Ex. 1 to Motion for Summary Judgment.)

- In December 1999, Sandy Brower, secretary to Balzano, informed Balzano that Lentz's correspondence revealed that Lentz asked that copy reimbursement checks be made payable to Lentz personally. (Balzano at 119-120.)

- Balzano passed on Brower's concern to his supervisor, Mark Huller. (Balzano at 121.)

- Huller requested an investigation, which was done by CIC's internal investigation unit. (Matheny 61-64; Huller 267.)

- In December 1999, Lentz admitted to the CIC investigator and to Huller that she had placed CIC money in her own bank account. (Lentz at 8-9, 17-19.)

- Lentz told the investigator that she knew what she had done was wrong and asked whether she would be "fired, disbarred or arrested." (Matheny at 103-104.)

- Because Lentz placed CIC money in her bank account, Huller placed Lentz on inactive status in January 2000 and terminated her in March 2000. (Huller at 177-179; 182; 189; 192; 210-213; 261.)

- Although Lentz admits that the money belongs to CIC, it remains even today in her possession. (Lentz at 10.)

- Other than Lentz, no other CIC attorney took CIC money, commingled it with his/her own money, and used the money as though it were his/her own. (Lentz at 14.)

Lentz's case is a narrow one: **was Mary Lentz terminated because of her gender or because she unlawfully converted funds belonging to her client and employer, CIC, and**

4

**used those funds for her own personal expenses? Did Balzano tortiously interfere with her employment and cause her severe emotional distress by passing on Brower's concerns about Lentz seeking personal reimbursement?** For reasons unrelated to that single, specific situation, Plaintiff alleges a slew of statistics in her Complaint (at pars. 27-31). These statistics apparently are meant to demonstrate that there was a larger number of males than females in certain positions within various selected offices, divisions, and departments at CIC at some point in time. Such statistics simply have no relevance to the issue before the Court and are designed to obfuscate and dilute the central undisputed statistic in this case: one person, and one person only, **took funds belonging to her employer and client and commingled those funds in her personal bank account: Plaintiff Mary Lentz.**

II.   **ARGUMENT**

Even assuming, *arguendo*, that Plaintiff's recitation of statistics is accurate (and they are not), they are meaningless in the context of this case. They must be excluded as irrelevant under FRE 401 and 402 and as unduly prejudicial under FRE 403. Plaintiff has utterly failed to explain – through expert analysis or otherwise – what, if anything, these statistics purportedly mean, much less how any of these statistics has any relevance to her individual claims in this case. Apparently, Plaintiff intends to offer these unsupported and unexplained statistics at trial in order to suggest to the jury a vague inference of some sort of unidentified gender discrimination elsewhere in CIC, and then to leap from that false inference to arguing that Mark Huller fired Lentz, not for conversion, but because she is female.

This Plaintiff may not do. Plaintiff's "statistics" do not provide any meaningful information because they ignore multiple vital factors and variables. Plaintiff's "raw comparison" of the number of male and female employees in a self-selected position or area tells

the jury nothing about non-related areas or about the multitude of possible factors responsible for any alleged difference. They certainly say nothing about why Plaintiff Lentz was terminated – the true issue in this case. Huller, a manager of Cincinnati Insurance Company, terminated Lentz because she put funds of CIC in her own bank account. The number of females on Cincinnati Financial Corporation's Board of Directors or in various other departments, over which Huller has no control whatsoever, is not even tangentially relevant.

Even if they were somehow relevant, these comparisons would be fallacious, misleading and unduly prejudicial. "[R]aw comparisons between an employer's workforce and the general population are generally recognized to be inappropriate." J. Waks and G. Fidlon, "Use and Misuse of Statistics," *National Law Journal* (April 9, 2001) at B8. *See also Robertson v. Sikorsky Aircraft Corp.*, 2001 U.S. Dist. LEXIS 11662, at *13-14 (D. Conn. July 5, 2001) (same); *Lander v. Montgomery County Bd. Of Comm'rs*, 159 F. Supp. 2d 1044, 1061 (S.D. Ohio 2001); *Ellison v. Darden Restarants, Inc.*, 52 F. Supp. 2d 747, 755-56 (S.D. Miss. 1999) ("any statistical analysis by plaintiff is inappropriate in the absence of an analysis of the appropriate applicant pool and consideration of the number of employees who would be qualified for the positions in question"). The *Robertson* court explained in more detail why Plaintiff's attempt to infer discrimination by raw comparison of the respective numbers of male and female employees is fallacious:

> **The typical theory advanced by plaintiffs is that discrimination exists when the observed representation of female, minority or older workers in the employer's workforce is lower than the representation that would be expected if employment decisions were made randomly with respect to sex, race or age. This theory, however, is based on faulty logic, which one commentator has termed the "statistical fallacy" or "transposition fallacy."**
>
> The fallacy is the assumption that statistical analyses can reveal the probability that an observed workforce disparity was produced by chance; whereas, in reality, statistical tests merely provide the probability of a certain observed disparity when randomness, or chance, is assumed. **They do not and cannot say anything**

>**about causation.** Nevertheless, . . . this mistake has been made by numerous courts, statistical expert witnesses and both legal and statistical commentators.

*Id.* at *14-15 (citation omitted, emphasis added).

This "statistical fallacy" arises out of the simple fact that:

>**Significant disparities in the workplace may result from a variety of other, nonrandom causes.** For example, different sex, race and age groups may display very different interests in certain jobs.

*Robertson, supra* (citation omitted, emphasis added). Consequently, "**[s]tatistical evidence which fails to properly take into account nondiscriminatory explanations does not permit an inference of discrimination**." *Bennett v. Roberts*, 2001 U.S. Dist. LEXIS 3363, at *14 (N.D. Ill. March 16, 2001) (citation omitted, emphasis added).

Plaintiff has entirely failed to take into account other possible "nondiscriminatory explanations" for any employment decisions concerning members of the various groups she cites. Examples of common nondiscriminatory factors or explanations ignored by Plaintiff include experience, education, productivity, work ethic, attitude, length of service, skills, personal interest, performance evaluations, and simple chance.

Lentz sued CIC alleging that Huller fired her because of gender. She has the burden of proving that by specific relevant facts. She cannot simply ignore that fundamental burden of proving every element of her individual discrimination claim by clouding the record and confusing the jury with unsupported allegations, meaningless statistics and speculative "inferences."

In *Shaw v. Monroe County*, 1996 U.S. Dist. LEXIS 6669, at *25-26 (E.D. Mich. Apr. 18, 1996), plaintiff sought to prove that the decision not to rehire her had been based on racial discrimination by simply pointing to the low rate of minority employment at her employer and making a very crude raw comparison to the overall population. The court concluded that such a

raw comparison without more information and context related to the pool of applicants was not probative of discrimination. *Id.* at *25. Citing to the Sixth Circuit decision in *Long v. City of Saginaw*, 911 F.2d 1192, 1201 (6th Cir. 1990), the Court concluded that such false statistics were not probative of the issues before it because "statistics without correlation are indicative of no meaningful inference or conclusion." *Id.* at *25.

The Seventh Circuit reached the same conclusion in *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1177 (7th Cir. 2002). In that case, the plaintiff – like Plaintiff here – "did not present a statistical analysis" to support his discrimination claims. Rather, he made a similar "raw comparison" statistical argument by "merely point[ing] to the fact that he and another black candidate were rejected, and that no other blacks were hired in a two-year time frame." *Id.* The Seventh Circuit held that: "Without knowing how many of the forty Quality Control Inspector positions became available during that time frame, the number and race of the candidates applying for those positions, and the candidates' relative qualifications, 'such a list is next to worthless.'" *Id. See also Odom v. Frank*, 3 F.3d 839, 849 (5th Cir. 1993) (raw data of age, race and location of promoted employees, "without more, is not competent to prove anything").

Plaintiff's "raw comparison" statistical argument is inadmissible for the additional reason that it is unfairly prejudicial and confusing to the jury under Fed.R.Evid. 403. Because this argument relies on a "statistical fallacy" and invites the jury to engage in improper speculation, it would serve only to mislead the jury away from basing their decision on the **relevant** evidence regarding the actual issues in this case.

**III.    CONCLUSION**

For the foregoing reasons, pursuant to Federal Rules of Evidence 401, 402 and 403, Defendants respectfully requests that the Court grant this Motion *in Limine* and enter an Order excluding any statistical evidence or references offered at trial by Plaintiff.

Respectfully submitted,

*s/ Deborah S. Adams*
Deborah S. Adams (0005607)
Jack B. Harrison (0061993)
Frost Brown Todd LLC
2200 PNC Center
201 East Fifth Street
Cincinnati, OH 45202-4182
(513) 651-6800 (telephone)
dadams@fbtlaw.com
jharrison@fbtlaw.com
Trial Attorneys for Defendants

**CERTIFICATE OF SERVICE**

      I hereby certify that on April 22, 2005, a copy of Defendant CIC's Motion *in Limine* to Bar Irrelevant and Misleading Statistical Evidence and Memorandum in Support was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system and copies will be mailed via U.S. Mail to those parties who are not served via the Court's electronic filing system, if any. Parties may access this filing through the Court's system.

                s/ *Deborah S. Adams*
                Deborah S. Adams (0005607)
                Jack B. Harrison (0061993)
                Frost Brown Todd LLC
                2200 PNC Center
                201 East Fifth Street
                Cincinnati, OH 45202-4182
                (513) 651-6800 (telephone)
                dadams@fbtlaw.com
                jharrison@fbtlaw.com
                Trial Attorneys for Defendants

CinLibrary 0011523.0480059 1454953v.2