UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| MARY E. LENTZ, | : | Case No.: 01-CV-599 |
| | : | |
| Plaintiff, | : | (Judge Watson) |
| | : | |
| v. | : | **DEFENDANTS' MOTION *IN LIMINE* TO BAR** |
| | : | **ANY EVIDENCE AND/OR REFERENCES** |
| | : | **RELATED TO PUNITIVE DAMAGES AND** |
| | : | **MEMORANDUM IN SUPPORT** |
| CINCINNATI INSURANCE | : | |
| COMPANY, et al. | : | |
| | : | |
| Defendants. | : | |

Defendants Cincinnati Insurance Company ("CIC") and David Balzano move this Court, pursuant to Federal Rules of Evidence ("FRE") 401, 402, and 403, to exclude any evidence in support of Plaintiff's claim for punitive damages, as the facts of this case do not support such an award. The grounds supporting this Motion are set forth in the attached Memorandum in Support.

Respectfully submitted,

*s/ Deborah S. Adams*
Deborah S. Adams (0005607)
Jack B. Harrison (0061993)
Frost Brown Todd LLC
2200 PNC Center
201 East Fifth Street
Cincinnati, OH 45202-4182
(513) 651-6800 (telephone)
dadams@fbtlaw.com
jharrison@fbtlaw.com
Trial Attorneys for Defendants

## MEMORANDUM IN SUPPORT

I.     **INTRODUCTION AND FACTUAL BACKGROUND**

In this case, Plaintiff Mary Lentz ("Lentz"), an attorney formerly employed in the Dayton law office of the Cincinnati Insurance Company ("CIC"), alleges that CIC discriminated against her on the basis of her gender when it terminated her upon learning that she had taken funds belonging to CIC and placed them in her personal bank account, using them for her personal expenses. She also alleges that David Balzano ("Balzano"), the managing attorney of the Dayton law office and her immediate supervisor, tortiously interfered with her employment relationship with CIC and intentionally caused her extreme emotional distress by passing on to his supervisor, Mark Huller, a secretary's notice to him that Lentz was seeking direct reimbursement to her personally of CIC funds spent on copies.

The relevant facts are undisputed as a matter of record:

- Mark Huller ("Huller"), Manager of the Trial Division of CIC's Legal Department, hired Mary Lentz to work as an attorney in CIC's Dayton law office in April 1997. (Lentz dep. at 72; Complaint at 11, 18.) Lentz represented not only CIC's insureds in litigation, but also CIC itself on subrogation matters in some cases. (Lentz at 72-73.) In those cases in which CIC was Lentz's client, her ethical obligations were exactly the same as her ethical obligations to any other client. (Lentz at 73.)

- Beginning in March 1998, Lentz began charging non-CIC attorneys involved in her cases for copies of documents she provided in discovery. (Complaint at 33, 34; Lentz at 33.) Lentz requested that non-CIC counsel reimburse her for such copies with checks made payable not to CIC, but to Mary Lentz c/o Berlon and Timmel[1] and then simply to Mary Lentz. (Lentz at 215-216, 222-223.) Lentz alleges that she cashed the checks, kept the cash in the office and used the cash for office purposes such as group lunches.

- In September 1999, Lentz, pursuant to her practice, received a reimbursement check from other counsel for copies paid for by CIC. The check was for $496.00. Lentz admits that the funds belonged to CIC (Lentz at 151, 209.) and that she deposited $346.00 from that check in her own personal bank account. (Lentz at 21-22.) In October 1999, there was a second reimbursement check for copies

---

[1] At that time, attorneys employed by CIC's Dayton office practiced under the name Berlon & Timmel.

- paid for by CIC. Of that, she deposited $488.00 in her own personal bank account. (Lentz at 23.)

- Lentz deposited these funds in her personal bank account in September and October without any notice to or permission from CIC. (Lentz at 141-142.)

- Lentz commingled or "housed" those CIC monies with her personal funds and took no steps to separate CIC monies from her own. (Lentz at 24.)

- As of September 30, 1999, after the first deposit of $346.00 of CIC money into Lentz's personal bank account, her balance was only $382.32. During September and October 1999, she made withdrawals from her personal account for personal expenses. (Lentz at 24-25.) She faced childcare expenses of $200 – $250 per week. (Lentz at 27; bank statement attached as Ex. 1 to Motion for Summary Judgment.)

- In December 1999, Sandy Brower, secretary to Balzano, informed Balzano that Lentz's correspondence revealed that Lentz asked that copy reimbursement checks be made payable to Lentz personally. (Balzano at 119-120.)

- Balzano passed on Brower's concern to his supervisor, Mark Huller. (Balzano at 121.)

- Huller requested an investigation, which was done by CIC's internal investigation unit. (Matheny 61-64; Huller 267.)

- In December 1999, Lentz admitted to the CIC investigator and to Huller that she had placed CIC money in her own bank account. (Lentz at 8-9, 17-19.)

- Lentz told the investigator that she knew what she had done was wrong and asked whether she would be "fired, disbarred or arrested." (Matheny at 103-104.)

- Because Lentz placed CIC money in her bank account, Huller placed Lentz on inactive status in January 2000 and terminated her in March 2000. (Huller at 177-179; 182; 189; 192; 210-213; 261.)

- Although Lentz admits that the money belongs to CIC, it remains even today in her possession. (Lentz at 10.)

- Other than Lentz, no other CIC attorney took CIC money, commingled it with his/her own money, and used the money as though it were his/her own. (Lentz at 14.)

Plaintiff has indicated that she intends to seek punitive damages as part of her case. The facts of this case, even if construed most favorably in Plaintiff's favor, simply cannot support an

award of punitive damages under either federal or Ohio law. Because Plaintiff cannot make a threshold showing that punitive damages are appropriate in this case, Plaintiff should be precluded from the introduction of evidence concerning punitive damages or other trial reference to punitive damages.

II.   ARGUMENT

    1.   **Plaintiff cannot show that CIC acted with malice or reckless indifference to her federally protected rights by terminating her, and therefore, punitive damages are unavailable as to the Title VII claim against CIC.**

Plaintiff's claim for punitive damages against CIC is under Title VII of the federal Civil Rights Act. Awards of punitive damages under Title VII are statutorily limited to cases in which the employer has engaged in intentional discrimination <u>and</u> has done so "with malice or with reckless indifference to the federally protected rights of an aggrieved individual." *Kolstad v. American Dental Assoc.*, 527 U.S. 526, 530 (1999) (quoting 42 U.S.C. § 1981a(b)(1)). Title VII requires <u>more</u> than a showing of intentional discrimination to warrant punitive damages. *White v. Burlington Northern & Santa Fe Railway Co.*, 364 F.3d 789, 806-7 (6th Cir. 2004). "The requirement that punitive damages be awarded only when a defendant acts maliciously or recklessly recognizes this difference in purpose and ensures that punitive damages will be awarded in only the most egregious cases." *Id.* at 806.

To prevail on a claim for punitive damages under Title VII, Plaintiff must prove that CIC either acted with "evil motive or intent," or intentionally discriminated against her "in the face of a perceived risk that its actions [would] violate federal law." *Kolstad*, 527 U.S. at 536. Plaintiff lacks sufficient evidence to demonstrate either that CIC acted with evil motive or terminated Plaintiff knowing that this action violated federal law.

4

Plaintiff admits that she took CIC funds, that she placed those funds in her bank account without permission and without accounting for those funds in any manner, and that Huller terminated her based on those facts. (Lentz at 135, 138.)[2] Such conduct provides a sufficient nondiscriminatory reason for the termination of any employee, but in the case of an attorney, that reason is even more compelling. Even if this reason were pretextual (which it is not), there is absolutely no evidence in the record that Huller terminated Lentz out of actual malice or evil motive or that he acted knowing that his decision was a violation of federal law. Indeed, Lentz testified to the contrary, that Huller acted in good faith. (Lentz at 138.)

The Sixth Circuit and its district courts have overturned or reversed punitive damages awards in cases such as this one where evidence of the required malice or reckless indifference is lacking. *See, e.g.*, *Turic v. Holland Hospitality, Inc.*, 85 F.3d 1211, 1215-16 (6th Cir. 1996); *Buckner v. Franco, Inc.*, 1999 U.S. App. LEXIS 7369, at *14-17 (6th Cir. Apr. 12, 1999); *Steinhoff v. Upriver Restaurant Joint Venture*, 117 F. Supp. 2d 598, 603-06 (E.D. Ky. 2000) (overturning a punitive damages award because "there is no evidence that any other person in defendant's management had any malice toward plaintiff or acted with reckless disregard for her federal rights.").

The Sixth Circuit's holding in *Turic* exemplifies the very high standard of proof necessary for punitive damages and why no reasonable fact-finder could award punitive damages in this case. In *Turic*, the district court awarded punitive damages based on its finding that the defendant discharged the plaintiff-- a young, unwed mother -- because the plaintiff, pregnant with her second child, contemplated having an abortion. *Turic*, 85 F. 3d at 1214-15. At trial, plaintiff's supervisors admitted that they had edited plaintiff's personnel file to add derogatory

---

[2] Lentz testified as to her termination interview with Huller: "I said what's the charge. And he said theft. And I said, Mark, I didn't steal anything. He said well, Mary, you admitted that those funds were in your account. And I said yes, I did, and those funds were coming back." (Lentz at 135.)

information about her performance. *Id*. Despite these facts, the Sixth Circuit reversed the award of punitive damages. *Id*. at 1216. In so doing, the Court explained that although the actions of the defendant were "duplicitous and disclosed a lack of empathy, they did not rise to the level to support a punitive damages award." *Id*.

Courts have held that punitive damages are not justified in cases where the employer had a good faith belief that it was acting for legitimate, non-discriminatory reasons and/or did not perceive that it was running afoul of federal law. *See, e.g., Gile v. United Airlines, Inc.*, 213 F.3d 365 (7th Cir. 2000); *Webner v. Titan Distribution, Inc.*, 267 F.3d 828 (8th Cir. 2001); *Weissman v. Dawn Joy Fashions, Inc.*, 214 F.3d 224 (2nd Cir. 2000). In *Gile*, the court reversed the jury's punitive damages award based on its finding that although the defendant had wrongly believed that plaintiff was not disabled under the ADA and did not adequately address her accommodation request, it did not exhibit the requisite state of mind necessary to justify punitive damages. *Id.* at 375-76. The court explained, "Punitive damages depend not on the egregious[ness] of the defendant's misconduct, or its callousness in denying reasonable accommodation, but instead run from a culpable state of mind regarding whether that denial of accommodation violates federal law." *Id*. at 375.

Similarly, in *Weissman*, the court held that punitive damages were not warranted where the defendant discharged an employee and cancelled his insurance two weeks after he suffered a heart attack. *Weissman*, 214 F. 3d 224. According to the court, these actions, while perhaps indicative of discrimination, did not support a finding that defendant acted in the face of a perceived risk that it was violating federal law. *Id*. at 236. Rather, the court held that the actions at issue "were consistent with an employer acting to protect itself against the possible long-term absence of an employee." *Id*. Thus, even though the employer's motive was selfish and deemed

discriminatory, its wrongful motive did not rise to the extraordinary level of malice and recklessness needed to support punitive damages. Likewise, in *Webner*, the court held that the defendant's stated reasons for terminating the plaintiff, i.e., that his back injury precluded him from performing all but light duty tasks, defendant was fearful plaintiff would reinjure his back, and defendant did not have a job suited to his disability, while culpable for purposes of violating anti-discrimination laws, did not rise to the level of maliciousness required to sustain the jury's award of punitive damages. *Webner*, 267 F. 3d at 837.

In this case, there is no evidence upon which a reasonable jury could conclude that Huller, as the decision-maker in Lentz's termination, acted with "malice" or "reckless indifference" to Plaintiff's federal rights.

> 2. **Plaintiff cannot show that David Balzano acted with actual malice or hatred or ill will by reporting a concern about Lentz to his supervisor, Mark Huller, and therefore, punitive damages are unavailable as to the state law claims against Balzano.**

In December 1999, Sandy Brower, a secretary in the Dayton office who supported Balzano, was helping out on Lentz's files. Brower, who is now deceased, showed Balzano a file of Lentz with a letter requesting that a copy reimbursement check be made out to Lentz personally. Brower told Balzano: "This doesn't look right." (Balzano at 119-120.) Balzano forwarded Brower's concern to his supervisor. (*Id*. at 121.) Mark Huller, the manager in charge of the Trial Division, requested an investigation. During the course of that investigation, CIC learned that Lentz had used some reimbursement monies obtained in this manner for office purposes. However, CIC also learned that Lentz had deposited some of the reimbursement monies in her own personal bank account and used the money for personal expenditures. Huller terminated Lentz for that commingling. Plaintiff alleges that Balzano intentionally caused her extreme emotional distress and tortiously interfered with her employment relationship with CIC

under Ohio law by telling his supervisor what Sandy Brower had reported without fully disclosing the extent of his knowledge about the use of copy money for office purposes. Even if one were to accept that theory, punitive damages are not available where, as here, a plaintiff cannot make a showing by <u>clear and convincing</u> evidence that a defendant has acted with actual malice or hatred or ill will. The Ohio Supreme Court has set forth the standard for what constitutes actual malice:

> Actual malice, necessary for an award of punitive damages, is (1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm.

*Preston v. Murty*, 32 Ohio St. 3d 334 (1987) (syllabus, emphasis in original); *Waddell v. Roxane Laboratories, Inc.*, 2004 Ohio 2499 at ¶ 44, 2004 Ohio App. LEXIS 2021 (Ohio App. Ct. May 6, 2004) (quoting *Preston*).

The burden is on the plaintiff to establish actual malice by clear and convincing evidence. *Waddell*, 2004 Ohio 2499 at ¶ 44. In this case, Plaintiff cannot even minimally meet either prong of the *Preston* standard, much less by <u>clear and convincing evidence</u>. First, there is no evidence that Balzano's conduct in passing on Brower's concern was motivated by hatred, ill will, or a spirit of revenge. It is undisputed that Brower initiated the concern about Lentz's practice of requesting outside law firms to write checks to her <u>personally</u> when they were providing reimbursement to CIC for copies made. (Balzano at 119-120.) There is no dispute that no other attorney in the Dayton office was doing that. (Lentz at 61.) There is no dispute that Balzano went to his supervisors in the CIC Legal Department seeking "guidance." (Balzano at 121.) Once Balzano reported the concern to his supervisors, Huller requested the investigation and it was Huller who ultimately made the decision to terminate Lentz based on the result of that investigation, including her admission of commingling. That is not evidence of hatred, ill will or

spirit of revenge on the part of Balzano. Balzano simply relayed accurate information that he had received from another employee to his immediate supervisor, Huller. Balzano caused Lentz no harm. Balzano did not order an investigation and he did not make the decision to terminate Lentz. Huller did that. Moreover, Huller did not fire Lentz for anything he learned from Balzano. Huller did not fire Lentz for anything having to do with office lunches or anyone's knowledge of office lunches. Huller fired Lentz because of Lentz's own admission of commingling CIC funds.

Moreover, Lentz herself does not assert that Balzano acted out of malice. Rather, she testified that in early November, 1999 she and Balzano had a disagreement about the allocation of office resources for litigation support in which Lentz used expletives and threatened to call Huller to tell Huller "what goes on in this office." (Lentz at 90, 140, 143-144.) Although Lentz received the assistance she had requested for trial preparation, in her opinion it was "more than coincidental" that one month after this exchange, Balzano passed on Brower's concern to his management. (Lentz at 143.)

This "evidence" of Balzano's motivation in passing on Brower's concern fails to constitute "malice" for several reasons. First, there is no evidence whatsoever that Balzano's call to his manager was motivated by this friction with Lentz. This theory is nothing more than Lentz's internal, subjective and unsupported speculation. Speculation is not sufficient to establish "hatred, ill will, or a spirit of revenge" under the required clear and convincing evidence standard. *See Ferguson v. Rehm*, 1984 Ohio App. LEXIS 10585, at *9-10 (Ohio App. Ct. July 11, 1984) (finding, in a defamation context, that the required showing of "hatred" or "ill will" must be supported by some factual basis in the record, rather than mere speculation).

9

Second, in order to satisfy the "conscious disregard" prong of *Preston*, a plaintiff must establish conduct that is "outrageous," "flagrant," or "criminal." 32 Ohio St. 3d at 336. Again, the evidence in this case does not meet that standard. The record reveals only that Balzano, managing attorney of the Dayton office, sought the guidance of his supervisor following a secretary's report that something in Lentz's files was "not right." Balzano did not order an investigation and had no involvement in the decision to terminate Lentz. Plaintiff has alleged no facts that support a characterization of Balzano's actions as "outrageous," "flagrant," or "criminal."

This remains true even if you accept Lentz's speculation about Balzano's motive as true. Lentz would have the trier of fact characterize Balzano's phone call to his manager as malicious simply because she says it is so. However, Lentz testified to her own intention of calling Huller about Balzano: "I will call Mark and I will call home office and I will let them know what goes on in this office." (Lentz at 140.) Lentz thus intended to do what Balzano did – report perceived concerns to management. Lentz's own testimony demonstrates that such reports are the routine stuff of office life, not the extraordinary ill-will, hatred and spirit of revenge required for punitive damages.

In *Preston*, the Ohio Supreme Court, recognizing the limited set of circumstances in which punitive damages are available, placed the trial court in the position of "gatekeeper." It is within the trial court's discretion to prevent the issue of punitive damages from being submitted to the jury. *Id.* at 336. In this case, the lack of evidence supporting an award of punitive damages warrants the granting of this Motion *in Limine*.

10

### III.  CONCLUSION

Without sufficient proof to support an award of damages as a matter of law, any evidence related to punitive damages would not only be irrelevant, but it would also confuse the jury, and improperly prejudice their decision with regard to the merits of Plaintiff's cause of action. Therefore, Defendants request that Plaintiff be prohibited from presenting any evidence in support of an award for punitive damages or any reference to such evidence or damages at trial.

                Respectfully submitted,

                *s/ Deborah S. Adams*
                Deborah S. Adams (0005607)
                Jack B. Harrison (0061993)
                Frost Brown Todd LLC
                2200 PNC Center
                201 East Fifth Street
                Cincinnati, OH 45202-4182
                (513) 651-6800 (telephone)
                dadams@fbtlaw.com
                jharrison@fbtlaw.com
                Trial Attorneys for Defendants

**CERTIFICATE OF SERVICE**

    I hereby certify that on April 22, 2005, a copy of Defendant CIC's Motion *in Limine* to Bar Any Evidence and/or References Related to Punitive Damages and Memorandum in Support was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system and copies will be mailed via U.S. Mail to those parties who are not served via the Court's electronic filing system, if any. Parties may access this filing through the Court's system.

                                                                         s/ *Deborah S. Adams*
                                                                         Deborah S. Adams (0005607)
                                                                         Jack B. Harrison (0061993)
                                                                         Frost Brown Todd LLC
                                                                         2200 PNC Center
                                                                         201 East Fifth Street
                                                                         Cincinnati, OH 45202-4182
                                                                         (513) 651-6800 (telephone)
                                                                         dadams@fbtlaw.com
                                                                         jharrison@fbtlaw.com
                                                                         Trial Attorneys for Defendants

CinLibrary 0011523.0480059 1480579v.1