## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **MARY E. LENTZ** | : | **Case No.: 01-CV-599** |
| | : | |
| **Plaintiff,** | : | **(Judge Watson)** |
| | : | |
| | : | |
| **v.** | : | **DEFENDANTS' MOTION IN LIMINE TO** |
| | : | **BAR REFERENCES TO *ROCHLIN*** |
| | : | **LITIGATION** |
| **CINCINNATI INSURANCE** | : | |
| **COMPANY, et al.** | : | |
| | : | |
| **Defendants.** | : | |

Defendants Cincinnati Insurance Company ("CIC") and David Balzano ("Balzano") (collectively "Defendants") respectfully request that the Court exclude the introduction of testimony or other trial reference to any other litigation in which Cincinnati Insurance Company is a party, including, but not limited to, the matter of *Arlene Rochlin, et al. v. Cincinnati Insurance Company*, Case No. IP00-1898, currently pending before the United States District Court for the Southern District of Indiana. The *Rochlin* litigation is a collective action under the Equal Pay Act, in which the party plaintiffs, including Plaintiff Lentz, are alleging that CIC has discriminated against them based on gender in pay. The *Rochlin* litigation also includes nine separate Title VII plaintiffs claiming a failure to promote who have been joined by the Court. Plaintiff Lentz is not a Title VII claimant in the *Rochlin* litigation. As set forth in the attached Memorandum in Support, any reference to other litigation, particularly to the *Rochlin* matter, is irrelevant to the issues in this case under FRE 401 and 402, is improper character evidence under FRE 404, and would be unduly prejudicial to Defendants in violation of FRE 403.

The grounds supporting this Motion are set forth in the attached Memorandum in Support.

Respectfully submitted,

*s/ Deborah S. Adams*
Deborah S. Adams (0005607)
Jack B. Harrison (0061993)
Frost Brown Todd LLC
2200 PNC Center
201 East Fifth Street
Cincinnati, OH 45202-4182
(513) 651-6800 (telephone)
dadams@fbtlaw.com
jharrison@fbtlaw.com
Trial Attorneys for Defendants

2

<u>**MEMORANDUM IN SUPPORT**</u>

**I.     INTRODUCTION AND FACTUAL BACKGROUND**

In this case, Plaintiff Mary Lentz ("Lentz"), an attorney formerly employed in the Dayton

law office of the Cincinnati Insurance Company ("CIC"), alleges that CIC discriminated against

her on the basis of her gender when it terminated her upon learning that she had taken funds

belonging to CIC and placed them in her personal bank account, using them for her personal

expenses.  She also alleges that David Balzano ("Balzano"), the managing attorney of the Dayton

law office and her immediate supervisor, tortiously interfered with her employment relationship

with CIC and intentionally caused her extreme emotional distress by passing on to his

supervisor, Mark Huller, a secretary's notice to him that Lentz was seeking direct reimbursement

to her personally of CIC funds spent on copies.

The relevant facts are undisputed as a matter of record:

- Mark Huller ("Huller"), Manager of the Trial Division of CIC's Legal Department, hired Mary Lentz to work as an attorney in CIC's Dayton law office in April 1997.  (Lentz dep. at 72; Complaint at 11, 18.)  Lentz represented not only CIC's insureds in litigation, but also CIC itself on subrogation matters in some cases.  (Lentz at 72-73.)  In those cases in which CIC was Lentz's client, her ethical obligations were exactly the same as her ethical obligations to any other client.  (Lentz at 73.)

- Beginning in March 1998, Lentz began charging non-CIC attorneys involved in her cases for copies of documents she provided in discovery.  (Complaint at 33, 34; Lentz at 33.)  Lentz requested that non-CIC counsel reimburse her for such copies with checks made payable not to CIC, but to Mary Lentz c/o Berlon and Timmel[1] and then simply to Mary Lentz.  (Lentz at 215-216, 222-223.)  Lentz alleges that she cashed the checks, kept the cash in the office and used the cash for office purposes such as group lunches.

- In September 1999, Lentz, pursuant to her practice, received a reimbursement check from other counsel for copies paid for by CIC.  The check was for $496.00.  Lentz admits that the funds belonged to CIC (Lentz at 151, 209.) and that she deposited $346.00 from that check in her own personal bank account.  (Lentz at 21-22.)  In October 1999, there was a second reimbursement check for copies

---

[1] At that time, attorneys employed by CIC's Dayton office practiced under the name Berlon & Timmel.

paid for by CIC. Of that, she deposited $488.00 in her own personal bank account. (Lentz at 23.)

- Lentz deposited these funds in her personal bank account in September and October without any notice to or permission from CIC. (Lentz at 141-142.)

- Lentz commingled or "housed" those CIC monies with her personal funds and took no steps to separate CIC monies from her own. (Lentz at 24.)

- As of September 30, 1999, after the first deposit of $346.00 of CIC money into Lentz's personal bank account, her balance was only $382.32. During September and October 1999, she made withdrawals from her personal account for personal expenses. (Lentz at 24-25.) She faced childcare expenses of $200 – $250 per week. (Lentz at 27; bank statement attached as Ex. 1 to Motion for Summary Judgment.)

- In December 1999, Sandy Brower, secretary to Balzano, informed Balzano that Lentz's correspondence revealed that Lentz asked that copy reimbursement checks be made payable to Lentz personally. (Balzano at 119-120.)

- Balzano passed on Brower's concern to his supervisor, Mark Huller. (Balzano at 121.)

- Huller requested an investigation, which was done by CIC's internal investigation unit. (Matheny 61-64; Huller 267.)

- In December 1999, Lentz admitted to the CIC investigator and to Huller that she had placed CIC money in her own bank account. (Lentz at 8-9, 17-19.)

- Lentz told the investigator that she knew what she had done was wrong and asked whether she would be "fired, disbarred or arrested." (Matheny at 103-104.)

- Because Lentz placed CIC money in her bank account, Huller placed Lentz on inactive status in January 2000 and terminated her in March 2000. (Huller at 177-179; 182; 189; 192; 210-213; 261.)

- Although Lentz admits that the money belongs to CIC, it remains even today in her possession. (Lentz at 10.)

- Other than Lentz, no other CIC attorney took CIC money, commingled it with his/her own money, and used the money as though it were his/her own. (Lentz at 14.)

4

## II.    ARGUMENT

Motions *in limine* are generally regarded as a favorable means of expediting the trial process by defining the scope of evidentiary issues and avoiding time-consuming objections at trial. "The Federal Rules of Evidence, the Federal Rules of Criminal and Civil Procedure and interpretive rulings of the Supreme Court and this court all encourage, and in some cases require, parties and the court to utilize extensive pretrial procedures – including motions in limine – in order to narrow the issues remaining for trial and to minimize disruptions at trial. " *United States v. Brawner*, 173 F.3d 966, 970 (6th Cir. 1999).

FRE 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. FRE 402 prohibits evidence that is not relevant. *See United States v. Rey*, 923 F.2d 1217, 1221 (6th Cir. 1991) ("Federal Rule of Evidence 402 provides that evidence which is not relevant is not admissible."); *Kolada v. General Motors Parts Div.*, 716 F.2d 373, 375 (6th Cir. 1983) ("Relevancy is the threshold determination in any decision regarding the admissibility of evidence; if evidence is not relevant, it is not admissible." ). The proposition for which the evidence is offered must, of course, be material to an issue in the case. *See, e.g., United States v. Dunn,* 805 F.2d 1275, 1281 (6th Cir. 1986).

This Motion *in Limine* flows naturally from the Court's Order, which granted in part and denied in part Defendants' Motion for Summary Judgment (hereinafter "Order"). In allowing Lentz's claims to go forward, the Court described her allegations as follows:

> Plaintiff alleges that Defendants' termination of her employment as an in-house attorney was a product of sex discrimination in violation of Title VII. She contends that Defendants' proffered reason for firing her – her alleged conversion

5

for personal use of reimbursement checks for photocopying expenses charged to outside counsel – was pretextual.

Thus, the only relevant questions before the trier of fact in this case are whether CIC fired Lentz because of its good faith belief that she had placed its funds in her personal bank account for her own use or because she is female; whether Balzano purposely interfered with Lentz's employment relationship with CIC and whether Balzano intentionally caused her to experience extreme emotional distress. The existence of any other Title VII or Equal Pay Act litigation involving CIC is simply irrelevant to these questions and are of no "consequence to the determination of the action." *Id.* at 1281.

Plaintiff's attorney, Michael Sutherlin, also represents plaintiffs in the *Rochlin* litigation. In *Rochlin*, a group of collective action plaintiffs from multiple states across multiple departments allege that CIC has discriminated against them in pay and nine individual plaintiffs allege a failure to promote under Title VII. Lentz is a party plaintiff in the *Rochlin* Equal Pay Act collective action, a fact noted by the Court in dismissing her Equal Pay Act claim in this case. Lentz has not alleged any Title VII claim in *Rochlin*. Discovery is ongoing in the *Rochlin* litigation, and no findings of discrimination have been made. The *Rochlin* litigation has no relevance to the issues before this Court. The only possible reason Plaintiff would have for mentioning *Rochlin* is to improperly inflame and mislead the jury.

Even if the Rochlin litigation were somehow deemed relevant to this action, allowing Plaintiff to make reference to it would result in undue prejudice to CIC in violation of FRE 403. FRE 403 "authorizes the exclusion of relevant evidence where its 'probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence.'" *Old Chief v. United States*, 519 U.S. 172, 180 (1997) (*quoting* FRE 403).

6

This is precisely the situation for which FRE 403 was intended—to prevent detours into tangential and highly prejudicial evidence.

Evidence concerning the 1997 compensation of a CIC claims adjuster working out of her home in Michigan with no relation to Huller or Balzano whatsoever, *e.g.*, has nothing to do with attorney Lentz's putting CIC funds in her bank account in 1999 and getting fired for it.  The only reason to introduce the *Rochlin* litigation in this case is to suggest that since CIC has been sued before, it must deserve to be sued here, *i.e.*, "where there's smoke, there's fire."  This is precisely the sort of unfair prejudice FRE 403 is intended to protect against.  As the comments to FRE 403 explain, "[u]nfair prejudice within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."  FRE 403, Advisory Committee Notes.  Thus the prejudicial nature of such evidence alone is sufficient to outweigh whatever minimal – if any – probative value it may have.

In addition to being prejudicial, reference to the *Rochlin* litigation will confuse the issues, mislead the jury, cause undue delay and waste valuable court time.  These are all valid grounds for excluding evidence under FRE 403.  *See Old Chief*, 519 U.S. at 180.

Finally, any reference by Plaintiff to other litigation would constitute an impermissible attempt to use "bad act" evidence to show that CIC is a "bad company."  This is exactly what FRE 404 is meant to prevent.  Such evidence should therefore be excluded.  "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."  Fed. R. Evid. 404(b).  The exceptions to the general rule against admissibility—"proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident"—do not apply here.  *See Jankins v. TDC Mgt. Corp,* 21 F.3d 436, 441 (D.C. Cir. 1994) (finding that the conditions of admissibility under FRE 404(b)

---

7

are not satisfied "when one must, in order to find similarity, define the character of the acts at such a high level of generality as here (greed, strategic behavior)"); *Sparks v. Gilley Trucking Co.*, 992 F.2d 50, 52-53 (4th Cir. 1993) (finding FRE 404(b) inapplicable because there was no foundation for any theory of "plan," "motive," or "preparation").  Thus, any testimony or documents or references related to other litigation is merely impermissible "bad character" evidence and should be excluded.  That is particularly true where – as here – there has been no finding adverse to CIC.

## III.    CONCLUSION

For the foregoing reasons, pursuant to FRE 401, 402, 403, and 404 Defendants respectfully request that the Court grant this Motion *in Limine* and enter an Order excluding any reference or testimony related to any other litigation in which CIC is a party, including, but not limited to, the matter of *Arlene Rochlin, et al. v. Cincinnati Insurance Company*, Case No. IP00-1898, currently pending before the United States District Court for the Southern District of Indiana.

Respectfully submitted,

*s/ Deborah S. Adams*
Deborah S. Adams (0005607)
Jack B. Harrison (0061993)
Frost Brown Todd LLC
2200 PNC Center
201 East Fifth Street
Cincinnati, OH 45202-4182
(513) 651-6800 (telephone)
dadams@fbtlaw.com
jharrison@fbtlaw.com
Trial Attorneys for Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that on April 27, 2005, a copy of Defendant CIC's Motion *in Limine* to

Bar References to *Rochlin* Litigation was filed electronically. Notice of this filing will be sent to

all parties by operation of the Court's electronic filing system and copies will be mailed via U.S.

Mail to those parties who are not served via the Court's electronic filing system, if any. Parties

may access this filing through the Court's system.

s/ *Deborah S. Adams*
Deborah S. Adams (0005607)
Jack B. Harrison (0061993)
Frost Brown Todd LLC
2200 PNC Center
201 East Fifth Street
Cincinnati, OH 45202-4182
(513) 651-6800 (telephone)
dadams@fbtlaw.com
jharrison@fbtlaw.com
Trial Attorneys for Defendants

CinLibrary 0011523.0480059  1479541v.1

9