UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **MARY E. LENTZ** | : | Case No.: 01-CV-599 |
| | : | |
| Plaintiff, | : | (Judge Watson) |
| | : | |
| v. | : | **DEFENDANTS' MOTION IN LIMINE TO** |
| | : | **BAR REFERENCES TO EQUAL PAY ACT** |
| | : | **OR ANY CLAIMS RELATED TO SALARY** |
| | : | **AND/OR PROMOTION** |
| **CINCINNATI INSURANCE** | : | |
| **COMPANY, et al.** | : | |
| | : | |
| Defendants. | : | |

Defendants Cincinnati Insurance Company ("CIC") and David Balzano ("Balzano") (collectively "Defendants") respectfully request, pursuant to FRE 401, 402, and 403, that the Court exclude the introduction of testimony or any other trial reference to allegations that Plaintiff Mary Lentz was paid less than similarly situated male attorneys or that she was denied a promotion because of her gender. Lentz has failed to properly assert – much less support with evidence – any such claims in this action. Moreover, any such claims are indisputably defeated by Lentz's own deposition testimony, are completely irrelevant to the claims remaining in this litigation, would mislead and confuse the jury, and unduly prejudice Defendants.

                                              Respectfully submitted,

                                              *s/ Deborah S. Adams*
                                              Deborah S. Adams (0005607)
                                              Jack B. Harrison (0061993)
                                              Frost Brown Todd LLC
                                              2200 PNC Center
                                              201 East Fifth Street
                                              Cincinnati, OH 45202-4182
                                              (513) 651-6800 (telephone)
                                              dadams@fbtlaw.com
                                              jharrison@fbtlaw.com
                                              Trial Attorneys for Defendants

## MEMORANDUM IN SUPPORT

**I.   INTRODUCTION AND FACTUAL BACKGROUND**

In this case, Plaintiff Mary Lentz ("Lentz"), an attorney formerly employed in the Dayton law office of the Cincinnati Insurance Company ("CIC"), alleges that CIC discriminated against her on the basis of her gender when it terminated her upon learning that she had taken funds belonging to CIC and placed them in her personal bank account, using them for her personal expenses. She also alleges that David Balzano ("Balzano"), the managing attorney of the Dayton law office and her immediate supervisor, tortiously interfered with her employment relationship with CIC and intentionally caused her extreme emotional distress by passing on to his supervisor, Mark Huller, a secretary's notice to him that Lentz was seeking direct reimbursement to her personally of CIC funds spent on copies.

The relevant facts are undisputed as a matter of record:

- Mark Huller ("Huller"), Manager of the Trial Division of CIC's Legal Department, hired Mary Lentz to work as an attorney in CIC's Dayton law office in April 1997. (Lentz dep. at 72; Complaint at 11, 18.) Lentz represented not only CIC's insureds in litigation, but also CIC itself on subrogation matters in some cases. (Lentz at 72-73.) In those cases in which CIC was Lentz's client, her ethical obligations were exactly the same as her ethical obligations to any other client. (Lentz at 73.)

- Beginning in March 1998, Lentz began charging non-CIC attorneys involved in her cases for copies of documents she provided in discovery. (Complaint at 33, 34; Lentz at 33.) Lentz requested that non-CIC counsel reimburse her for such copies with checks made payable not to CIC, but to Mary Lentz c/o Berlon and Timmel[1] and then simply to Mary Lentz. (Lentz at 215-216, 222-223.) Lentz alleges that she cashed the checks, kept the cash in the office and used the cash for office purposes such as group lunches.

- In September 1999, Lentz, pursuant to her practice, received a reimbursement check from other counsel for copies paid for by CIC. The check was for $496.00. Lentz admits that the funds belonged to CIC (Lentz at 151, 209.) and that she deposited $346.00 from that check in her own personal bank account. (Lentz at 21-22.) In October 1999, there was a second reimbursement check for copies

---

[1] At that time, attorneys employed by CIC's Dayton office practiced under the name Berlon & Timmel.

    paid for by CIC.  Of that, she deposited $488.00 in her own personal bank account.  (Lentz at 23.)

- Lentz deposited these funds in her personal bank account in September and October without any notice to or permission from CIC.  (Lentz at 141-142.)

- Lentz commingled or "housed" those CIC monies with her personal funds and took no steps to separate CIC monies from her own.  (Lentz at 24.)

- As of September 30, 1999, after the first deposit of $346.00 of CIC money into Lentz's personal bank account, her balance was only $382.32.  During September and October 1999, she made withdrawals from her personal account for personal expenses.  (Lentz at 24-25.)  She faced childcare expenses of $200 – $250 per week.  (Lentz at 27; bank statement attached as Ex. 1 to Motion for Summary Judgment.)

- In December 1999, Sandy Brower, secretary to Balzano, informed Balzano that Lentz's correspondence revealed that Lentz asked that copy reimbursement checks be made payable to Lentz personally.  (Balzano at 119-120.)

- Balzano passed on Brower's concern to his supervisor, Mark Huller.  (Balzano at 121.)

- Huller requested an investigation, which was done by CIC's internal investigation unit.  (Matheny 61-64; Huller 267.)

- In December 1999, Lentz admitted to the CIC investigator and to Huller that she had placed CIC money in her own bank account.  (Lentz at 8-9, 17-19.)

- Lentz told the investigator that she knew what she had done was wrong and asked whether she would be "fired, disbarred or arrested."  (Matheny at 103-104.)

- Because Lentz placed CIC money in her bank account, Huller placed Lentz on inactive status in January 2000 and terminated her in March 2000.  (Huller at 177-179; 182; 189; 192; 210-213; 261.)

- Although Lentz admits that the money belongs to CIC, it remains even today in her possession.  (Lentz at 10.)

- Other than Lentz, no other CIC attorney took CIC money, commingled it with his/her own money, and used the money as though it were his/her own.  (Lentz at 14.)

    Plaintiff Lentz originally filed suit against multiple defendants under four different theories:  (i) sex discrimination under Title VII; (ii)  violation of the Equal Pay Act;

3

(iii) intentional interference with a business relationship with CIC; and (iv) intentional infliction of emotional distress.  On September 22, 2004 the Court granted in part and denied in part Defendants' Motion for Summary Judgment, leaving only the following claims remaining in the case:

1. the Title VII claim against CIC; and
2. the intentional interference with business relationship and intentional infliction of emotional distress claims against individual defendant David Balzano.

All other claims and defendants were dismissed by the Court's Order, including Lentz's Equal Pay Act claim on the grounds that she is a party plaintiff in an Equal Pay Act case against CIC pending before the United States District Court for the Southern District of Indiana and had done nothing to develop this claim in this case.

The only Title VII gender discrimination issue remaining before the Court is Lentz's termination:  did CIC terminate Lentz's employment because she admitted taking funds belonging to CIC and placing them in her personal bank account or because she is female?  The two claims against Balzano focus on whether Balzano, as Lentz's supervisor, intentionally interfered with her employment relationship with CIC and intentionally caused her severe emotional distress when he passed on to his supervisor a secretary's expressed concern about Lentz's requesting that copy reimbursement checks be made out to her personally.  This case does not involve Lentz's salary or a promotion.  Indeed, Lentz admitted that she could not identify a male employee paid more than she in violation of the EPA (Lentz at 112-113) and that there was no position to which she could have been promoted (Lentz at 92-93).  Testimony about either topic should be prohibited on the grounds of irrelevancy, undue prejudice, and its tendency to sow confusion in the minds of the jury.

II.    **ARGUMENT**

    1.    **Since the Court dismissed Plaintiff's Equal Pay Act Claim and since that claim is being pursued in other litigation not before this Court, any evidence and/or references related to any alleged comparison of Lentz's salary and bonus to the salary and bonus of male attorneys employed by CIC should be barred as irrelevant, unduly prejudicial, a waste of time, and confusing.**

In her Complaint (at para. 1), Plaintiff alleged a cause of action based on the Equal Pay Act, 29 U.S.C. 206(d). However, in the body of her Complaint, she made no specific factual allegations related to this claim. In her response to Defendants' Motion for Summary Judgment, Plaintiff mentioned her Equal Pay Act claim in one short paragraph where she admitted that she had not developed this claim and that she is a party plaintiff in Equal Pay Act litigation against CIC pending in the United States District Court for the Southern District of Indiana. Based on a lack of evidence and the fact that this claim is being pursued in another jurisdiction, this Court dismissed Plaintiff's Equal Pay Act claim without prejudice.

    Therefore, there is no claim before the Court regarding Lentz's salary and bonus. As a result, any evidence or allegation that Lentz was paid less in salary and bonus than some male counterpart is irrelevant under FRE 401 and 402, as well as being unduly prejudicial under FRE 403. Such evidence or references would confuse and mislead the jury by inviting jurors to consider issues not before them. More confusion and unnecessary delay would occur because the introduction of such irrelevant topics would force CIC to produce evidence in rebuttal resulting in time consuming mini-trials on compensation issues although this case is not about compensation. Such evidence is purely collateral and can only result in undue prejudice against Defendants. To the degree a juror hears a suggestion that Lentz was somehow unfairly compensated, that may unfairly influence that juror against CIC in evaluating CIC's termination

decision. CIC should not be deprived of a fair trial on Lentz's termination because irrelevant and unsupported allegations concerning pay were permitted.

    **2.    No evidence exists that Plaintiff was ever denied a promotion by CIC, so any evidence and/or references related to an alleged denial of a promotion should be barred as irrelevant, unduly prejudicial, a waste of time and confusing.**

In her Complaint (at para. 70), Plaintiff asserts that "CIC discriminated against [her] by failing to promote her when she was as qualified or more qualified than her male counterparts (sic)." In her opposition to Defendants' motion for summary judgment, it appears that Plaintiff has abandoned any pretense of a "failure to promote" claim, in that it was not even mentioned.

By Plaintiff's own admission, the job at issue – the position of Managing Attorney of the CIC Dayton law office – never became available during the period she was employed by CIC. Plaintiff testified that she had heard at some point that Balzano was considering leaving the Dayton law office for another position. However, as Plaintiff admitted, Balzano did not leave Dayton and remained as Managing Attorney of the Dayton office throughout the entire period of her employment. As a matter of fact and law, Plaintiff Lentz was never denied a promotion. (Lentz Dep. at 133-34) *See, e.g., Howard v. Lear Corp. Beds and Interiors*, 234 F.3d 1002, 1006 (7th Cir. 2000) (no Title VII claim where plaintiff fails to establish that a promotional opportunity was even available).

Given this record and Plaintiff's apparent abandonment of the claim, allowing evidence or unsupported statements regarding any alleged failure of Lentz to be promoted would waste the Court's time dealing with an irrelevant and invalid issue which CIC would be forced to rebut. This, in turn, would confuse and mislead the jury on a completely collateral issue. Therefore, any evidence that Plaintiff seeks to present related to promotion should be barred pursuant to FRE 401, 402 and 403.

### III.  CONCLUSION

Any testimony or any other trial reference to allegations that Plaintiff Lentz was paid less than "similarly situated" male attorneys or that she was denied a promotion because of her gender should be barred under FRE 401, 402, 403, and 404, because Plaintiff no longer has an Equal Pay Act claim before this Court and because there is no factual basis for Plaintiff's "failure to promote" allegations which are, in any event, irrelevant.

                                                              Respectfully submitted,

                                                              *s/ Deborah S. Adams*
                                                              Deborah S. Adams (0005607)
                                                              Jack B. Harrison (0061993)
                                                              Frost Brown Todd LLC
                                                              2200 PNC Center
                                                              201 East Fifth Street
                                                              Cincinnati, OH 45202-4182
                                                              (513) 651-6800 (telephone)
                                                              dadams@fbtlaw.com
                                                              jharrison@fbtlaw.com
                                                              Trial Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on April 27, 2005, a copy of Defendant CIC's Motion *in Limine* to Bar References to Equal Pay Act or Any Claims Related to Salary and/or Promotion was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system and copies will be mailed via U.S. Mail to those parties who are not served via the Court's electronic filing system, if any. Parties may access this filing through the Court's system.

                                                  s/ *Deborah S. Adams*
                                                  Deborah S. Adams (0005607)
                                                  Jack B. Harrison (0061993)
                                                  Frost Brown Todd LLC
                                                  2200 PNC Center
                                                  201 East Fifth Street
                                                  Cincinnati, OH 45202-4182
                                                  (513) 651-6800 (telephone)
                                                  dadams@fbtlaw.com
                                                  jharrison@fbtlaw.com
                                                  Trial Attorneys for Defendants

CinLibrary 0011523.0480059  1481008v.1