UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **MARY E. LENTZ,** | : | Case No.: 01-CV-599 |
| | : | |
| Plaintiff, | : | (Judge Watson) |
| | : | |
| v. | : | DEFENDANTS' MOTION *IN LIMINE* TO |
| | : | BAR ANY EVIDENCE OF OR REFERENCE |
| | : | TO ALLEGED CONDUCT OF DAVID |
| | : | BALZANO UNRELATED IN TIME OR |
| | : | SUBJECT TO THE CLAIMS MADE BY |
| | : | PLAINTIFF |
| **CINCINNATI INSURANCE** | : | |
| **COMPANY, et al.** | : | |
| | : | |
| Defendants. | : | |

Defendants Cincinnati Insurance Company ("CIC") and Dave Balzano ("Balzano") move this Court, pursuant to Federal Rules of Evidence 401, 402, 403, 404(b) and 701(b), to exclude any evidence offered at trial by Plaintiff Lentz or other witnesses of alleged "other bad acts" or "stray remarks" of David Balzano that are unrelated in time or subject matter to the claims of Plaintiff or "lay opinions" regarding Balzano. This evidence is irrelevant and unduly prejudicial because: (1) any inference of discriminatory animus arising from such testimony is purely speculative; (2) none of it is sufficiently related to the termination decision at issue or, in many instances, even to Plaintiff herself; and (3) such evidence or references will confuse and mislead the jury and/or waste time with "mini-trials" analyzing the individual circumstances of each such unrelated act, remark or opinion.

The grounds supporting this Motion are set forth in the attached Memorandum in Support.

        Respectfully submitted,

        *s/ Deborah S. Adams*
        Deborah S. Adams (0005607)
        Jack B. Harrison (0061993)
        Frost Brown Todd LLC
        2200 PNC Center
        201 East Fifth Street
        Cincinnati, OH 45202-4182
        (513) 651-6800 (telephone)
        dadams@fbtlaw.com
        jharrison@fbtlaw.com
        Trial Attorneys for Defendants

## MEMORANDUM IN SUPPORT

**I.    INTRODUCTION AND FACTUAL BACKGROUND**

In this case, Plaintiff Mary Lentz ("Lentz"), an attorney formerly employed in the Dayton law office of the Cincinnati Insurance Company ("CIC"), alleges that CIC discriminated against her on the basis of her gender when it terminated her upon learning that she had taken funds belonging to CIC and placed them in her personal bank account, using them for her personal expenses. She also alleges that David Balzano ("Balzano"), the managing attorney of the Dayton law office and her immediate supervisor, tortiously interfered with her employment relationship with CIC and intentionally caused her extreme emotional distress by passing on to his supervisor, Mark Huller, a secretary's notice to him that Lentz was seeking direct reimbursement to her personally of CIC funds spent on copies.

The relevant facts are undisputed as a matter of record:

- Mark Huller ("Huller"), Manager of the Trial Division of CIC's Legal Department, hired Lentz to work as an attorney in CIC's Dayton law office in April 1997. (Lentz dep. at 72; Complaint at 11,18.) Lentz represented not only CIC's insureds in litigation, but also CIC itself on subrogation matters in some cases. (Lentz at 72-73.) In those cases in which CIC was Lentz's client, her ethical obligations were exactly the same as her ethical obligations to any other client. (Lentz at 73.)

- Beginning in March 1998, Lentz began charging non-CIC attorneys involved in her cases for copies of documents she provided in discovery. (Complaint at 33, 34; Lentz at 33.) Lentz requested that non-CIC counsel reimburse her for such copies with checks made payable not to CIC, but to Mary Lentz c/o Berlon and Timmel[1] and then simply to Mary Lentz. (Lentz at 215-216, 222-223.) Lentz alleges that she cashed the checks, kept the cash in the office and used the cash for office purposes such as group lunches.

- In September 1999, Lentz, pursuant to her practice, received a reimbursement check from other counsel for copies paid for by CIC. The check was for $496.00. Lentz admits that the funds belonged to CIC (Lentz at 151, 209.) and that she deposited $346.00 from that check in her own personal bank account. (Lentz at 21-22.) In October 1999, there was a second reimbursement check for copies

---

[1] At that time, attorneys employed by CIC's Dayton office practiced under the name Berlon & Timmel.

- paid for by CIC. Of that, she deposited $488.00 in her own personal bank account. (Lentz at 23.)

- Lentz deposited these funds in her personal bank account in September and October without any notice to or permission from CIC. (Lentz at 141-142.)

- Lentz commingled or "housed" those CIC monies with her personal funds and took no steps to separate CIC monies from her own. (Lentz at 24.)

- As of September 30, 1999, after the first deposit of $346.00 of CIC money into Lentz's personal bank account, her balance was only $382.32. During September and October 1999, she made withdrawals from her personal account for personal expenses. (Lentz at 24-25.) She faced childcare expenses of $200 – $250 per week. (Lentz at 27; bank statement attached as Ex. 1 to Motion for Summary Judgment.)

- In December 1999, Sandy Brower, secretary to Balzano, informed Balzano that Lentz's correspondence revealed that Lentz asked that copy reimbursement checks be made payable to Lentz personally. (Balzano at 119-120.)

- Balzano passed on Brower's concern to his supervisor, Mark Huller. (Balzano at 121.)

- Huller requested an investigation, which was done by CIC's internal investigation unit. (Matheny 61-64; Huller 267.)

- In December 1999, Lentz admitted to the CIC investigator and to Huller that she had placed CIC money in her own bank account. (Lentz at 8-9, 17-19.)

- Lentz told the investigator that she knew what she had done was wrong and asked whether she would be "fired, disbarred or arrested." (Matheny at 103-104.)

- Because Lentz placed CIC money in her bank account, Huller placed Lentz on inactive status in January 2000 and terminated her in March 2000. (Huller at 177-179; 182; 189; 192; 210-213; 261.)

- Although Lentz admits that the money belongs to CIC, it remains even today in her possession. (Lentz at 10.)

- Other than Lentz, no other CIC attorney took CIC money, commingled it with his/her own money, and used the money as though it were his/her own. (Lentz at 14.)

Defendants anticipate that Plaintiff Lentz will attempt to introduce alleged "other bad acts" or "stray remarks" by Balzano or "lay opinion" about Balzano. (*See, e.g.,* Complaint at

4

pars. 31-24, 32, 60-63, 70-71; Plt. Opp. to Mot. for Summ. Judgmt. at pp. 4, 7-8, 15, 21, 23, 26-27, 29; Plt. Counterstmt. of Findings of Fact and Conclusions of Law at pars. 25-26, 51-55, 59-61, 69). Such remarks or opinion should be barred. Huller, not Balzano, terminated Lentz. Huller terminated Lentz because Lentz, not Balzano, admitted to Huller that she had put CIC funds in her private bank account and used them for her personal expenses. Nonetheless, Lentz will attempt to impute discriminatory animus to Huller by presenting Balzano in a bad light to the jury.

Specifically, Plaintiff alleges that: (1) Balzano "refused to allow a female attorney to return on a part-time basis after maternity leave," and allegedly questioned why she would want to return since her husband was a doctor who made plenty of money; (2) Balzano "recommended that CIC rehire a male attorney, Fred Young … despite knowing that Young previously left CIC shortly after a sexual harassment allegation," (3) Balzano requested that a court official sign an affidavit confirming that a female secretary who had missed work for jury duty actually did not show up for jury duty or had been released early, and (4) Balzano once questioned Plaintiff's secretary, Paula Ruppert, as to whether she "was engaging in the unauthorized practice of law." (Lentz at 113-120).

Plaintiff also seeks to buttress her claims with several unsupported and uncomplimentary lay opinions concerning Balzano. For example, Plaintiff opines that Balzano "does not have a very high opinion of women," "had displayed animosity to female employees in the past," and "was unwilling to carry his share of the workload" in the Dayton office (Complaint at par. 32).

## II.   ARGUMENT

### A.   Plaintiff's "Other Bad Acts" Evidence Is Inadmissible.

The Federal Rules of Evidence ("FRE") prohibit the use of "other crimes, wrongs, or acts … to prove the character of a person in order to show action in conformity therewith." FRE 404(b). Trial courts apply a multi-prong test in analyzing the admissibility of evidence of alleged other "bad acts" under FRE 404(b). First, proof of the other act must be directed towards establishing a relevant issue other than the party's propensity to commit like conduct in another instance and the other act must be sufficiently similar to be relevant to the matter in issue. Second, there must be a sufficient amount of evidence for the factfinder to conclude that the other act was actually committed. And third, the probative value of the evidence must not be outweighed by the danger of unfair prejudice. *U.S. v. Haywood*, 280 F.3d 715, 719-20 (6th Cir. 2002). *See also Okai v. Verfuth*, 275 F.3d 606, 610-11 (7th Cir. 2001).

Plaintiff's "other bad acts" evidence regarding alleged actions of Balzano or other CIC employees fails to meet these criteria. First, Huller, not Balzano, fired Lentz. Huller did not fire Lentz because of anything Balzano did or said. Balzano passed on to Huller his secretary's concern that Lentz directed reimbursement for copies to be made to her personally. Huller did not fire Lentz for that. Indeed, Huller fired Lentz for a reason unknown to Balzano or anyone else other than Lentz: the commingling of CIC funds with her own. "Proof" of Balzano's alleged bad acts says absolutely nothing about Huller's motivation in firing Lentz.

Second, Balzano's alleged acts are not "sufficiently similar" to the matter at issue. They are not tied to Huller, Lentz, the commingling of CIC funds or Lentz's termination.

6

Third, there is not sufficient evidence to conclude that the "acts" were actually committed by Balzano. *E.g.*, there is no evidence that Balzano established policy with regard to part-time work. There is no evidence that any "harassing conduct" by Fred Young was substantiated.

Finally, Balzano's alleged acts have nothing to do with the issues being litigated and are being offered for the very purpose that FRE 404(b) prohibits – *i.e.*, to taint Huller's decision by associating it with unrelated and unsubstantiated negative innuendo. This "evidence" has no probative value and is inadmissible under both FRE 403 and 404(b) because it would waste time, mislead and confuse the jury and unfairly prejudice CIC.

This so-called evidence will result in "mini-trials" to examine the circumstances of each alleged "other bad act," thus wasting time and distracting the jury. Each alleged "bad act" will have to be individually examined to determine whether it actually occurred and, if so, the actual meaning and context in which it occurred. *E.g.*, the Fred Young allegation will require rebuttal evidence by CIC which will involve the allegation by a former Dayton secretary that Young put his hands in his pockets in a provocative way, the company's investigation of the allegation and the lack of corroboration of wrongdoing by Young. This will involve hours of testimony on irrelevant matters by people not otherwise involved in the issues before the Court. *Manuel v. City of Chicago*, 335 F.3d 592, 596-97 (7th Cir. 2003).

Such detours from the relevant issues will confuse the jury and prejudice CIC. The jury's job is to decide whether Huller terminated Lentz for putting CIC funds into her bank account or because she is female and whether Balzano's passing on Brower's concern caused Lentz severe emotional distress and tortiously interfered with her employment. Balzano's concern about a secretary's jury-duty service has nothing to do with that inquiry. Plaintiff wants to paint an (unsupported) picture of a workplace where women were generally and systemically mistreated,

thus creating a picture where even if she improperly converted funds belonging to CIC, she must have been somehow discriminated against because she is a woman. A layperson jury risks being confused and influenced by such a picture to CIC's undue prejudice. Courts routinely protect parties against such harm. *See generally Haywood, supra* and *Okai, supra*. *See also McLeod v. Parsons Corp.*, 73 Fed. Appx. 846, 854 (6th Cir. 2003) (affirming the exclusion of testimony regarding other discrimination lawsuits against defendant company pursuant to FRE 403 and 404(b)); *Swanson v. General Services Admin.*, 110 F.3d 1180, 1186-89 (5th Cir. 1997) (affirming exclusion of testimony of other employees regarding "pattern" of discrimination where employees "could offer only speculation" that alleged adverse actions were the result of discrimination); *Coles v. Perry*, 217 F.R.D. 1, 10 (D.D.C. 2003) (concluding that "only discrimination or retaliation of the same character and type as that is alleged is probative" and may be admissible).

      B.      **Plaintiff's "Stray Remarks" Evidence Is Inadmissible.**

"The Sixth Circuit has repeatedly held that isolated and ambiguous comments are irrelevant and inadmissible in employment discrimination lawsuits." *Sullivan v. Delphi Automotive Systems Corp.*, 198 F. Supp. 2d 952, 959 (S.D. Ohio 2002) (citations omitted). Such statements are inadmissible because they "are too abstract, in addition to being irrelevant and prejudicial, to support a finding of [ ] discrimination." *Gagne v. Northwestern Nat'l. Ins. Co.*, 881 F.2d 309, 314-15 (6th Cir. 1989).

In distinguishing between isolated, ambiguous, stray remarks, on the one hand, and admissible evidence, on the other, the key inquiries are whether the statements were made by decisionmakers and whether they were related to the decisional process at issue. *Irwin v. Marquette Medical Sys.*, 107 F. Supp. 2d 974, 987-88 (S.D. Ohio 2000) (holding that comments

"by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself [cannot] suffice to satisfy the plaintiff's burden of demonstrating animus); *Coleman v. Toys "R" Us,* 976 F. Supp. 713, 718 (N.D. Ohio 1997) (concluding that alleged race-based comments made by non-decisionmakers and by a decisionmaker which were unrelated to the decisional process at issue were not probative of the question of whether a discriminatory motive impacted the employment decision). *See also Saulsberry v. St. Mary's University*, 318 F.3d 862, 867-68 (8th Cir. 2003) (upholding exclusion of alleged race-based comments made by non-decisionmakers and by a decisionmaker which were unrelated to the decisional process at issue); *Wheeler v. Aventis Pharmaceuticals*, 360 F.3d 853, 859 (8th Cir. 2004) (allegedly discriminatory remarks made by non-decisionmaker inadmissible).

In addition, allegedly discriminatory remarks that are isolated and ambiguous, particularly when they do not even relate to the plaintiff, are routinely excluded as both irrelevant and unduly prejudicial. *See, e.g., Chappell v. GTE Prods. Corp.*, 803 F.2d 261, 268 (6th Cir. 1986) (statements that "surely you must have noticed the young people taking over up front" and "we old timers know the procedure as to how things operate within the company" properly excluded in age discrimination case); *Walden v. Georgia Pacific Corp.*, 126 F.3d 506 (3rd Cir. 1997) (affirming decision of district court granting motion *in limine* excluding remarks made by non-decisionmaking employees in Title VII claim); *Knox v. First Nat'l Bank*, 909 F. Supp. 569 (N.D. Ill. 1995) (granting motion *in limine* to exclude racial comments made by employees in a Title VII case alleging discrimination based on race because plaintiff could show no nexus between the stray comments and the adverse employment action; *Sullivan*, *supra* (alleged comments by defendant's plant manager that "he did not believe that a small or little female

9

could be a good manager" were too isolated, ambiguous, and unrelated to the failure to promote plaintiff to be probative of discrimination).

Balzano's alleged remark that "he did not know why [another] female employee wanted to come back because 'her husband was a doctor and they made plenty of money'" clearly falls under the inadmissible "stray remark" category. The same is true with regard to any alleged remarks concerning Young, jury duty, the unauthorized practice of law, or myriad other topics Plaintiff may seek to present to the jury. It is undisputed that Balzano was not the decisionmaker regarding Plaintiff's termination. And it is further undisputed that Balzano's alleged remarks were never communicated to the Lentz decisionmaker (Huller). These alleged remarks had absolutely nothing to do with Lentz and are even gender neutral. For example, one could query why any affluent person – male or female – would choose to work.

"The fact that Plaintiff personally felt offended does not in itself escalate" an alleged statement into evidence of discriminatory animus. *Atterberry*, *supra* (rejecting a black plaintiff's assertion that alleged statements regarding "cockroach" and "haves and have nots" were evidence of racial animus). These objectively innocuous statements by Balzano – and any more like it that Plaintiff may seek to introduce – should be excluded.

C. **Plaintiff's "Lay Opinion" Evidence Is Inadmissible.**

"[Fed.R.Evid.] 701(b) bars lay opinion testimony that amounts to a naked speculation concerning the motivation for a defendant's adverse employment decision…" *Nwanna v. Ashcroft*, 2003 U.S. Dist. LEXIS 22213, at *9-11 (S.D. Ind. Oct. 24, 2003). "The Sixth Circuit Court of Appeals has cautioned that an employee's subjective perception that she has suffered discrimination, in the absence of objective evidence substantiating such perception, does not constitute probative evidence of such discrimination." *Mayberry v. Endocrinology-Diabetes*

*Associates*, 926 F. Supp. 1315, 1323 (D. Tenn. 1996) (*citing Wrenn v. Gould*, 808 F.2d 493, 502 (6th Cir. 1987)). Thus, because the lay opinions Plaintiff seeks to offer here are "merely conclusory or unsubstantiated statements" and "bare allegation[s]," they are inadmissible. *See generally Atterberry, supra*; *Swanson, supra* ("opinions" and "generalized statements" by witnesses regarding alleged discrimination were "speculative" and "incompetent" to prove anything). That result is particularly required here since Balzano was not the decisionmaker.

Plaintiff asserts that Balzano "does not have a very high opinion of women," "had displayed animosity to female employees in the past," and "was unwilling to carry his share of the workload" in the Dayton office. If Plaintiff or any of her other witnesses "were to blurt out unfounded statements or characterizations of events [such as these] in the presence of the jury, the prejudice to the Defendant could not be undone." *Nwanna v. Ashcroft*, 2003 U.S. Dist. LEXIS 22213, at *11.

The jury should decide this case based upon facts, not upon personal insults or unsubstantiated opinions clearly calculated to portray Balzano (and by implication, CIC) negatively. *See, e.g., Cook v. Hoppin*, 783 F.2d 684, 689 (7th Cir. 1986) (evidence is unfairly prejudicial if it "will induce the jury to decide the case on an improper basis, commonly an emotional one, rather than on the evidence presented") (citation omitted); *see also* 1 J. Weinstein & M. Berger, *Weinstein's Evidence*, pars. 403[03], at 403-33-39 (1985) ("Evidence that appeals to the jury's sympathies . . . or triggers other mainsprings of human action may cause a jury to base its decision on something other than the established propositions in the case.") (footnotes omitted); FRE 403, Advisory Committee Notes. For these reasons, Plaintiff should be precluded from introducing such speculative and inflammatory lay opinion evidence regarding any of CIC's witnesses or actions, including, but not limited to, Balzano.

## III.  CONCLUSION

For the foregoing reasons, pursuant to Federal Rules of Evidence 401, 402, 403, 404(b), and 701(b), Defendants CIC and David Balzano respectfully request that the Court grant their Motion *in Limine* and enter an Order excluding any "other bad acts," "stray remarks" or "lay opinion" evidence offered at trial by Plaintiff.

                                  Respectfully submitted,

                                  *s/ Deborah S. Adams*
                                  Deborah S. Adams (0005607)
                                  Jack B. Harrison (0061993)
                                  Frost Brown Todd LLC
                                  2200 PNC Center
                                  201 East Fifth Street
                                  Cincinnati, OH 45202-4182
                                  (513) 651-6800 (telephone)
                                  dadams@fbtlaw.com
                                  jharrison@fbtlaw.com
                                  Trial Attorneys for Defendants

**CERTIFICATE OF SERVICE**

      I hereby certify that on April 27, 2005, a copy of Defendant CIC's Motion *in Limine* to Bar Any Evidence of or Reference to Alleged Conduct of David Balzano Unrelated in Time or Subject to the Claims Made by Plaintiff was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system and copies will be mailed via U.S. Mail to those parties who are not served via the Court's electronic filing system, if any. Parties may access this filing through the Court's system.

                                                                      s/ *Deborah S. Adams*
Deborah S. Adams (0005607)
Jack B. Harrison (0061993)
Frost Brown Todd LLC
2200 PNC Center
201 East Fifth Street
Cincinnati, OH 45202-4182
(513) 651-6800 (telephone)
dadams@fbtlaw.com
jharrison@fbtlaw.com
Trial Attorneys for Defendants

CinLibrary 0011523.0480059 1481976v.3