UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| MARY E. LENTZ, | : | Case No.: 01-CV-599 |
| | : | |
| Plaintiff, | : | (Judge Watson) |
| | : | |
| v. | : | DEFENDANTS' MOTION *IN LIMINE* TO BAR |
| | : | IMPROPER "SIMILARLY SITUATED" AND |
| | : | RELATED EVIDENCE AND AFFIDAVIT OF |
| | : | MARK HULLER |
| CINCINNATI INSURANCE | : | |
| COMPANY, et al. | : | |
| | : | |
| Defendants. | : | |

Defendants Cincinnati Insurance Company ("CIC") and David Balzano move this Court, pursuant to Federal Rules of Evidence 401, 402 and 403, to exclude any evidence offered at trial by Plaintiff Lentz (or others), concerning Tom Ballato, a male attorney employed by CIC, including any allegation that he was treated more leniently than she. Because Ballato was not "similarly situated" to Plaintiff Lentz, such comparison is irrelevant, time-wasting, and unduly prejudicial.

Likewise, Plaintiff should not be permitted to present evidence or offer allegations in an effort to show that certain male employees knew about a "copy money" reimbursement fund and benefited from it by participating in lunches purchased from the fund, in an effort to show that everyone participated in the copy money fund in the same way, but that only she – a female – was punished for it. This comparison is simply irrelevant, in that Lentz was not terminated over lunches, but was terminated for only one reason: because she took CIC's money and placed it in her own bank account. No evidence exists that anyone other than Lentz did this.

In order to present evidence that a "comparable" male employee was treated differently than she, Plaintiff must show that he was "similarly situated" in all respects. In order to do this,

she must prove that Ballato committed the **same conduct** in violation of the **same standard or policy** with the **same degree of seriousness**. Because Plaintiff cannot make this showing, her purported comparison is invalid and irrelevant as a matter of law. To allow such evidence to be introduced at trial would confuse the jury, waste time, and create undue prejudice toward Defendants.

    The grounds supporting this Motion are set forth in the attached Memorandum in Support.

Respectfully submitted,

*s/ Deborah S. Adams*
Deborah S. Adams (0005607)
Jack B. Harrison (0061993)
Frost Brown Todd LLC
2200 PNC Center
201 East Fifth Street
Cincinnati, OH 45202-4182
(513) 651-6800 (phone)
dadams@fbtlaw.com
jharrison@fbtlaw.com
Trial Attorneys for Defendants

## MEMORANDUM IN SUPPORT

I. **INTRODUCTION AND FACTUAL BACKGROUND**

In this case, Plaintiff Mary Lentz ("Lentz"), an attorney formerly employed in the Dayton law office of the Cincinnati Insurance Company ("CIC"), alleges that CIC discriminated against her on the basis of her gender when it terminated her upon learning that she had taken funds belonging to CIC and placed them in her personal bank account, using them for her personal expenses. She also alleges that David Balzano ("Balzano"), the managing attorney of the Dayton law office and her immediate supervisor, tortiously interfered with her employment relationship with CIC and intentionally caused her extreme emotional distress by passing on to his supervisor, Mark Huller, a secretary's notice to him that Lentz was seeking direct reimbursement to her personally of CIC funds spent on copies.

The relevant facts are undisputed as a matter of record:

- Mark Huller ("Huller"), Manager of the Trial Division of CIC's Legal Department, hired Lentz to work as an attorney in CIC's Dayton law office in April 1997. (Lentz dep. at 72; Complaint at 11, 18.) Lentz represented not only CIC's insureds in litigation, but also CIC itself on subrogation matters in some cases. (Lentz at 72-73.) In those cases in which CIC was Lentz's client, her ethical obligations were exactly the same as her ethical obligations to any other client. (Lentz at 73.)

- Beginning in March 1998, Lentz began charging non-CIC attorneys involved in her cases for copies of documents she provided in discovery. (Complaint at 33, 34; Lentz at 33.) Lentz requested that non-CIC counsel reimburse her for such copies with checks made payable not to CIC, but to Mary Lentz c/o Berlon and Timmel[1] and then simply to Mary Lentz. (Lentz at 215-216, 222-223.) Lentz alleges that she cashed the checks, kept the cash in the office and used the cash for office purposes such as group lunches.

- In September 1999, Lentz, pursuant to her practice, received a reimbursement check from other counsel for copies paid for by CIC. The check was for $496.00. Lentz admits that the funds belonged to CIC (Lentz at 151, 209.) and that she deposited $346.00 from that check in her own personal bank account. (Lentz at 21-22.) In October 1999, there was a second reimbursement check for copies

---

[1] At that time, attorneys employed by CIC's Dayton office practiced under the name Berlon & Timmel.

- paid for by CIC. Of that, she deposited $488.00 in her own personal bank account. (Lentz at 23.)

- Lentz deposited these funds in her personal bank account in September and October without any notice to or permission from CIC. (Lentz at 141-142.)

- Lentz commingled or "housed" those CIC monies with her personal funds and took no steps to separate CIC monies from her own. (Lentz at 24.)

- As of September 30, 1999, after the first deposit of $346.00 of CIC money into Lentz's personal bank account, her balance was only $382.32. During September and October 1999, she made withdrawals from her personal account for personal expenses. (Lentz at 24-25.) She faced childcare expenses of $200 – $250 per week. (Lentz at 27; bank statement attached as Ex. 1 to Motion for Summary Judgment.)

- In December 1999, Sandy Brower, secretary to Balzano, informed Balzano that Lentz's correspondence revealed that Lentz asked that copy reimbursement checks be made payable to Lentz personally. (Balzano at 119-120.)

- Balzano passed on Brower's concern to his supervisor, Mark Huller. (Balzano at 121.)

- Huller requested an investigation, which was done by CIC's internal investigation unit. (Matheny 61-64; Huller 267.)

- In December 1999, Lentz admitted to the CIC investigator and to Huller that she had placed CIC money in her own bank account. (Lentz at 8-9, 17-19.)

- Lentz told the investigator that she knew what she had done was wrong and asked whether she would be "fired, disbarred or arrested." (Matheny at 103-104.)

- Because Lentz placed CIC money in her bank account, Huller placed Lentz on inactive status in January 2000 and terminated her in March 2000. (Huller at 177-179; 182; 189; 192; 210-213; 261.)

- Although Lentz admits that the money belongs to CIC, it remains even today in her possession. (Lentz at 10.)

- Other than Lentz, no other CIC attorney took CIC money, commingled it with his/her own money, and used the money as though it were his/her own. (Lentz at 14.)

On October 9, 2000, CIC hired attorney Tom Ballato to work in the Dayton office. (Huller Affidavit ¶ 3, attached as Ex. A) In his work for CIC, Ballato handled relatively simple cases

4

and routine subrogation matters. (*Id.* at ¶ 4) Contrary to Plaintiff's assertion, Ballato did not replace Lentz. (*Id.* ¶ 5) He was far less experienced than Lentz and did very different work. (*Id.* ¶ 6) Lentz handled much more complex litigation than Ballato, as well as some more complicated subrogation work. (*Id.*) Ballato, in contrast, did routine subrogation work. (*Id.*) In the fall of 2001, Shelly Bascom, a secretary in Dayton, discovered Ballato viewing an inappropriate image on his computer. (Bascom at 69-70.) Bascom's coworker reported it to management. (Huller Affidavit ¶ 7) In a discussion related to this report, Ballato admitted an addiction to pornography for which he was seeking professional treatment. (*Id.* ¶ 8) Huller placed Ballato on final warning status and arranged for his computer to be monitored for improper usage. (*Id.* ¶ 9) In February 2002, Bascom reported that Ballato was viewing the image of a woman in a negligee on his computer. (*Id.* ¶ 10) In response to this report, Huller terminated Ballato. (*Id.* ¶ 11) Plaintiff claims that Ballato was "similarly situated" to her, but was treated better because he was given a "second chance" by CIC before he too was terminated. Plaintiff's argument fails as a matter of fact and law.

**II.    ARGUMENT**

    **A.    <u>Evidence Regarding Ballato Must Be Barred As A Matter of Law.</u>**

In *Mitchell v. Toledo Hospital*, 964 F.2d 577, 581-83 (6th Cir. 1992), the Sixth Circuit set forth what is required for employees to be "similarly situated" in a discrimination case. The standard for meeting these requirements and for introducing such evidence to a jury is "rigorous." *Wheeler v. Aventis Pharmaceuticals*, 360 F.3d 853, 857-58 (8th Cir. 2004). Plaintiff must not only prove that she and a proposed comparable committed the "same conduct" with "comparable seriousness," but also that they are **"similarly situated in all respects"**:

> **[T]o be deemed similarly-situated**, the individuals with whom the plaintiff seeks to compare his/her treament must have dealt with the same supervisor, have been

> **subject to the same standards** and have **engaged in the same conduct** without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it…. [In addition, it] is the discrimination plaintiff's burden to establish that the other employee's acts were of **"comparable seriousness" to his or her own infraction**.

*Mitchell, supra* (emphasis added, citations omitted). *See also Minadeo v. ICI Paints*, 398 F.3d 751, 764 (6th Cir. 2005).

Moreover, "**the quantity and quality of the comparator's misconduct [must] be nearly identical to prevent courts from second-guessing reasonable decisions and confusing apples and oranges**." *Mizell v. Miami-Dade Cty, Fla.*, 342 F. Supp. 2d 1084, 1090 (S.D. Fla. 2004) (emphasis added, citation omitted). Accordingly, the **courts have consistently rejected attempts by discrimination plaintiffs to support their claims with proffered evidence of non-protected employees who received more lenient treatment for conduct that was in any substantial way different from the conduct committed by the plaintiff.**

Under this clear standard, Lentz and Ballato simply are not similarly situated as a matter of law. Lentz took CIC's money, placed it in her bank account and spent it. Ballato visited raunchy sites on his work computer. Lentz and Ballato both misbehaved, but they misbehaved in radically different ways. There can be no reasonable dispute that stealing funds from an employer is different from viewing pornography at work – they do not constitute the "same conduct" required by *Mitchell*. Moreover, Ballato's and Lentz's respective misdeeds are further distinguished by "differentiating and mitigating circumstances." Ballato told CIC that he was receiving medical treatment for an unwanted addiction to pornography. Such a claim raises additional legal issues for employers like CIC to consider, including possible claims of disability and reasonable accommodation. Lentz, by contrast, did not raise any such issues or potential claims. To compare Lentz and Ballato is truly to compare apples and oranges. The facts of both *Mitchell* and *Wheeler* make that abundantly clear.

In *Mitchell,* the plaintiff was terminated for "misuse of Hospital property" after she deliberately misplaced some forms. 964 F.2d at 580. Like Lentz, the *Mitchell* plaintiff did not dispute that she had committed the act that was the basis of her discharge. But also like Lentz, after she was caught, she asserted that she really had a "pure intent" with respect to her secretive conduct. *Id.* Again like Lentz, the *Mitchell* plaintiff pointed to two non-protected employees who also had committed misconduct – *i.e.*, poor attendance and cursing – but who were not fired. *Id.* at 583, n. 5. The Sixth Circuit held that the compared employees did not commit "the same conduct" as Mitchell and thus were not "similarly situated" as a matter of law. *Id.* at 583-84.

In *Wheeler*, *supra*, the black female plaintiff was discharged for grabbing the genitalia of a male employee. The plaintiff sought to prove her race discrimination claim by citing the "comparable" example of a white female employee who had exposed her breasts on request, but was reprimanded rather than discharged. The Eighth Circuit held that although both individuals had engaged in similar sexual "horseplay," their conduct was not sufficiently "similarly situated in all relevant respects" to be probative of discrimination as a matter of law. This was because the misdeeds, even though generally similar in their basic sexual nature, still did not meet the "rigorous" standard of constituting the "same offense." Plaintiff's conduct involved "physical contact" rather than simply a "lewd display," and that was a sufficient justification for the harsher treatment of the plaintiff. *Id. See also Beene v. St. Vincent Mercy Medical Center*, 111 F. Supp. 2d 931, 938 (N.D. Ohio 2000) (rejecting evidence regarding various "missteps" and "mistakes" by other white nurses as not being similarly-situated "in all respects" to plaintiff black nurse because none of the white nurses committed the exact **same** misconduct of falsifying medical charts as plaintiff); *Atterberry v. Ikon Office Solutions, Inc.*, 2003 U.S. Dist. LEXIS 22316, at *19-20 (D. Conn. Dec. 9, 2003) (black plaintiff who was discharged for stealing office

equipment could not point to white employees who allegedly scalped tickets to buy beer in violation of state law as "similarly situated" evidence in Title VII case, even though white employees may have violated same company policy regarding "fraud, dishonesty and criminal conduct").

Lentz also cannot reach a jury with "similarly situated" evidence of discrimination through "mere conclusory or unsubstantiated statements" that she and Ballato engaged in generally "similar" conduct. *Atterberry*, 2003 U.S. Dist. LEXIS 22316, at *15. Lentz cannot escape the law's rigorous requirement to establish a "similarly situated" comparison by generally characterizing apples and oranges as "fruit" to make them sound more similar. Lentz tries to do exactly this by characterizing Ballato's viewing of improper sites as **"stealing"** company time, apparently hoping to somehow turn viewing raunchy sites into stealing money. Plaintiff's verbal alchemy cannot suffice to transform Lentz's and Ballato's different transgressions into conduct **"similarly situated in all respects."** *Mitchell, supra* (emphasis added). *See also Britton v. City of Popular Bluff, Missouri*, 244 F.3d 994, 997-98 (8th Cir. 2001) (employees not "similarly situated" where one was guilty of "stealing a service" and second received "stolen property"); *Smith v. Monsanto Chemical Co.*, 770 F.2d 719, 723 (8th Cir. 1985) (black plaintiff discharged for stealing company property not "similarly-situated" to white employees guilty of identical misconduct where employer had unwritten policy of terminating such employees (like plaintiff) with under five years seniority, but not terminating employees (like the white employees) with such seniority).

Plaintiff will ask the jury to compensate her as a victim of gender discrimination for no better reason than that she disagrees with CIC's decision concerning Ballato. She will ask the jury to adopt her view of what CIC should have done and invite them to second-guess CIC's

decision.  This she cannot do.  Plaintiff's mere "allegation regarding other [male] employees not being fired for different, but what she subjectively believes to be more serious, misconduct simply does not satisfy" the requirements for proper "similarly situated" evidence as a matter of law.  *Mitchell, supra* at 583.  Plaintiff cannot be permitted to confuse the jury on this critical point or to force the jury to waste substantial trial time sifting through collateral issues, such as Ballato's internet use, his addiction, and his psychological treatment.  Also, Plaintiff's attempt to introduce Ballato's misconduct transparently seeks to associate CIC with pornography, creating undue prejudice toward CIC through an irrelevant matter.

      **B.**    **Plaintiff Was Terminated For Theft Or Conversion Of CIC Funds, Not For Eating Lunch Or Over "Lunch Money," And She Should Not Be Allowed To Mischaracterize The Reason For Her Termination.**

Plaintiff cannot be allowed to misstate the reason for her discharge in an attempt to set up another invalid "similarly situated" comparison.  Throughout this litigation, Plaintiff has argued that all the employees in the Dayton office, including the attorneys, knew about the "copy money" reimbursement fund and benefited from it by participating in lunches purchased from the fund.  She argues that everyone participated in the copy money fund in the same way, but that only she – a female – was punished for it.  That argument should not be permitted at trial.  It is false and flatly contradicts the record.  CIC did not terminate or otherwise discipline Lentz or any employee – male or female – for participating in office lunches purchased with copy reimbursement money.  Everyone who participated in the lunches – male and female – went unpunished because that was not the thing with which CIC was concerned.

Huller terminated Lentz and only Lentz for one reason:  because she took CIC's money and placed it in her own bank account.  (See factual cites above at p. 4)  She did it secretly and without permission.  No one else – male or female – did this.  Lentz and Lentz alone engaged in

9

this misconduct. Thus, Plaintiff's so-called "similarly situated" evidence fails at every level. There is no one similarly situated to Lentz. No one else did what she did.

Nor is there any dispute that these facts were the sufficient and motivating factors in CIC's decision to terminate her. (Lentz at 10, 21-26, 33, 135, 215-216, 222-223; Huller Aff., Ex. 2 to Motion for Summary Judgment at ¶ 5.) Indeed, Plaintiff admitted that Huller's decision was based on her commingling of CIC and personal funds. (Lentz at 135, 138.)[2]

That Lentz or her counsel believes the penalty of termination for commingling was too harsh or generally unfair is completely immaterial. "The wisdom of [a] particular policy is not at issue in this case. It is an employer's business prerogative to develop as many arbitrary, ridiculous and irrational rules as it sees fit." *Smith v. Monsanto Chemical Co.*, 770 F.2d 719, 723 (8th Cir. 1985). It is also irrelevant whether the policy, standard or rule that Plaintiff seeks to challenge is "written" or not. *Id.* This is because "Title VII does not take away an employer's right to interpret its rules as it chooses, and to make determinations as it sees fit under those rules." *Mizell v. Miami-Dade Cty, Fla.*, 342 F. Supp. 2d 1084, 1091 (citation omitted).

Evidence related to office lunch participants is thus not only irrelevant, but highly prejudicial because it will confuse and mislead the jury. It will also waste substantial trial time sifting through collateral issues, such as who was present for certain lunches, who ate what, and who paid for what. Defendants will be forced to rebut so-called "evidence" of receipts for lunches which, in fact, are rank hearsay and establish absolutely nothing about who ate what

---

[2] Plaintiff testified as to her termination interview with Huller: "I said what's the charge. And he said theft. And I said, Mark, I didn't steal anything. He said well, Mary, you admitted that those funds were in your account. And I said yes, I did, and those funds were coming back." (Lentz at 135.) This, of course, is why Allen Matheny – who investigated the situation involving Lentz and copy reimbursements – "did not concern himself with whether the [copy] money was used for pizza in the office." (Plt. Opp. to Motion for Summary Judgment at 6). Neither Matheny nor CIC cared about this issue. To let Lentz make it an issue at trial would be unfair, time-wasting and confusing.

lunches or how those lunches were paid for. (Lentz Dep. at 241-47, 255-56) Much time will be wasted on an issue of absolutely no relevance. No one was terminated for eating lunch bought with copy money, including Lentz. Lentz – and only Lentz – was terminated for commingling CIC funds with her personal funds.

### III.    CONCLUSION

Accordingly, any and all "evidence" that Plaintiff may seek to introduce concerning the "fairness" or "consistency" of CIC's dealing with "computer pornography" or office lunches bought with "copy money" is irrelevant and inadmissible. Plaintiff was terminated for banking CIC's money. She cannot identify any male employee who did the same. Plaintiff is thus precluded from presenting "similarly situated" evidence as a matter of law.

For the foregoing reasons, pursuant to Federal Rules of Evidence 401, 402 and 403, Defendants respectfully request that the Court grant its Motion *in Limine* and enter an Order excluding any improper "similarly situated" or related evidence offered at trial by Plaintiff, including, but not limited to, any reference or evidence related to Ballato and/or employees who participated in office lunches.

Respectfully submitted,

*s/ Deborah S. Adams*
Deborah S. Adams (0005607)
Jack B. Harrison (0061993)
Frost Brown Todd LLC
2200 PNC Center
201 East Fifth Street
Cincinnati, OH 45202-4182
(513) 651-6800 (phone)
dadams@fbtlaw.com
jharrison@fbtlaw.com
Trial Attorneys for Defendants

**CERTIFICATE OF SERVICE**

      I hereby certify that on May 6, 2005, a copy of Defendant CIC's Motion *in Limine* to Bar Improper "Similarly Situated" and Related Evidence and Affidavit of Mark Huller was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system and copies will be mailed via U.S. Mail to those parties who are not served via the Court's electronic filing system, if any. Parties may access this filing through the Court's system.

                                                   s/ *Deborah S. Adams*
                                                   Deborah S. Adams (0005607)
                                                   Jack B. Harrison (0061993)
                                                   Frost Brown Todd LLC
                                                   2200 PNC Center
                                                   201 East Fifth Street
                                                   Cincinnati, OH 45202-4182
                                                   (513) 651-6800 (phone)
                                                   dadams@fbtlaw.com
                                                   jharrison@fbtlaw.com
                                                   Trial Attorneys for Defendants

CinLibrary 1455452v.2