UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **MARY E. LENTZ,** | : | Case No.: 01-CV-599 |
| | : | |
| Plaintiff, | : | (Judge Watson) |
| | : | |
| v. | : | **DEFENDANTS' MOTION *IN LIMINE* TO BAR** |
| | : | **EVIDENCE RELATED TO MARK HULLER'S** |
| | : | **CONTACTS WITH THE DAYTON BAR** |
| | : | **ASSOCIATION AND MONTGOMERY** |
| | : | **COUNTY PROSECUTOR'S OFFICE AND** |
| | : | **MEMORANDUM IN SUPPORT** |
| **CINCINNATI INSURANCE** | : | |
| **COMPANY, et al.** | : | |
| | : | |
| Defendant. | : | |

    Defendants Cincinnati Insurance Company ("CIC") and Dave Balzano ("Balzano") move this Court, pursuant to Federal Rules of Evidence 401, 402, 403 and 404(b), to exclude any evidence offered at trial by Plaintiff Lentz or others relating to actions taken by Mark Huller ("Huller"), Manager of the Trial Division of CIC, to report Lentz's conduct to the Dayton Bar Association and the Montgomery County Prosecutor's Office. Because Lentz, a CIC attorney, admitted placing funds belonging to CIC in her personal bank account, Huller was concerned that both an ethical and a criminal violation had occurred, believed that he had an ethical obligation as an attorney to report these facts to the appropriate authority, and, as a result, he reported Lentz's actions to both the Dayton Bar Association and the Montgomery County Prosecutor's Office. These actions by Huller were taken in his capacity as an attorney licensed in Ohio, a role independent of his role as CIC manager, and were, in addition, separate from the decision to terminate Lentz.

    Evidence related to these actions by Huller is irrelevant and unduly prejudicial because: (1) any inference of discriminatory animus on the part of CIC in terminating Lentz as an

1

employee arising from it is purely speculative; (2) none of it is related to the termination decision at issue; and (3) the evidence will serve only to confuse and mislead the jury and waste valuable time analyzing the ethical obligations of individual attorneys to report what they believe to be ethical and criminal lapses on the part of other attorneys.

The grounds supporting this Motion are set forth in the attached Memorandum in Support.

Respectfully submitted,

*s/ Deborah S. Adams*
Deborah S. Adams (0005607)
Jack B. Harrison (0061993)
Frost Brown Todd LLC
2200 PNC Center
201 East Fifth Street
Cincinnati, OH 45202-4182
(513) 651-6800 (phone)
dadams@fbtlaw.com
jharrison@fbtlaw.com
Trial Attorneys for Defendant

## MEMORANDUM IN SUPPORT

**I.    INTRODUCTION AND FACTUAL BACKGROUND**

In this case, Plaintiff Mary Lentz ("Lentz"), an attorney formerly employed in the Dayton law office of the Cincinnati Insurance Company ("CIC"), alleges that CIC discriminated against her on the basis of her gender when it terminated her upon learning that she had taken funds belonging to CIC and placed them in her personal bank account, using them for her personal expenses. She also alleges that David Balzano ("Balzano"), the managing attorney of the Dayton law office and her immediate supervisor, tortiously interfered with her employment relationship with CIC and intentionally caused her extreme emotional distress by passing on to his supervisor, Mark Huller, a secretary's notice to him that Lentz was seeking direct reimbursement to her personally of CIC funds spent on copies.

The relevant facts are undisputed as a matter of record:

- Mark Huller ("Huller"), Manager of the Trial Division of CIC's Legal Department, hired Lentz to work as an attorney in CIC's Dayton law office in April 1997. (Lentz dep. at 72; Complaint at 11, 18.) Lentz represented not only CIC's insureds in litigation, but also CIC itself on subrogation matters in some cases. (Lentz at 72-73.) In those cases in which CIC was Lentz's client, her ethical obligations were exactly the same as her ethical obligations to any other client. (Lentz at 73.)

- Beginning in March 1998, Lentz began charging non-CIC attorneys involved in her cases for copies of documents she provided in discovery. (Complaint at 33, 34; Lentz at 33.) Lentz requested that non-CIC counsel reimburse her for such copies with checks made payable not to CIC, but to Mary Lentz c/o Berlon and Timmel[1] and then simply to Mary Lentz. (Lentz at 215-216, 222-223.) Lentz alleges that she cashed the checks, kept the cash in the office and used the cash for office purposes such as group lunches.

- In September 1999, Lentz, pursuant to her practice, received a reimbursement check from other counsel for copies paid for by CIC. The check was for $496.00. Lentz admits that the funds belonged to CIC (Lentz at 151, 209.) and that she deposited $346.00 from that check in her own personal bank account. (Lentz at 21-22.) In October 1999, there was a second reimbursement check for copies

---

[1] At that time, attorneys employed by CIC's Dayton office practiced under the name Berlon & Timmel.

- paid for by CIC. Of that, she deposited $488.00 in her own personal bank account. (Lentz at 23.)

- Lentz deposited these funds in her personal bank account in September and October without any notice to or permission from CIC. (Lentz at 141-142.)

- Lentz commingled or "housed" those CIC monies with her personal funds and took no steps to separate CIC monies from her own. (Lentz at 24.)

- As of September 30, 1999, after the first deposit of $346.00 of CIC money into Lentz's personal bank account, her balance was only $382.32. During September and October 1999, she made withdrawals from her personal account for personal expenses. (Lentz at 24-25.) She faced childcare expenses of $200 – $250 per week. (Lentz at 27; bank statement attached as Ex. 1 to Motion for Summary Judgment.)

- In December 1999, Sandy Brower, secretary to Balzano, informed Balzano that Lentz's correspondence revealed that Lentz asked that copy reimbursement checks be made payable to Lentz personally. (Balzano at 119-120.)

- Balzano passed on Brower's concern to his supervisor, Mark Huller. (Balzano at 121.)

- Huller requested an investigation, which was done by CIC's internal investigation unit. (Matheny 61-64; Huller 267.)

- In December 1999, Lentz admitted to the CIC investigator and to Huller that she had placed CIC money in her own bank account. (Lentz at 8-9, 17-19.)

- Lentz told the investigator that she knew what she had done was wrong and asked whether she would be "fired, disbarred or arrested." (Matheny at 103-104.)

- Because Lentz placed CIC money in her bank account, Huller placed Lentz on inactive status in January 2000 and terminated her in March 2000. (Huller at 177-179; 182; 189; 192; 210-213; 261.)

- Although Lentz admits that the money belongs to CIC, it remains even today in her possession. (Lentz at 10.)

- Other than Lentz, no other CIC attorney took CIC money, commingled it with his/her own money, and used the money as though it were his/her own. (Lentz at 14.)

Plaintiff has indicated that she intends to present evidence related to the fact that Huller reported her conversion of CIC funds to both the Dayton Bar Association and the Montgomery

4

County Prosecutor's Office for possible ethical or criminal proceedings. In neither case did Huller advocate agency action. In both cases, the matter was received and both entities elected to take no further action regarding Lentz's conduct. Because this information is simply irrelevant to the termination issue at hand and would serve to confuse the jury and prejudice Defendants, Plaintiff should be precluded from the introduction of this evidence or from making reference to these facts during trial.

II. ARGUMENT

    A. **Evidence Regarding Huller's Actions Is Irrelevant As To The Specific Complaint Of Discrimination Alleged In This Case – The Termination Of Lentz.**

No facts or allegations exist indicating that Balzano was involved in any way in reporting Lentz's conversion of CIC funds to either the bar association or the prosecutor's office. Therefore, evidence of Huller's conduct can have no relevance to Lentz's claims of tortious interference with employment relations or intentional infliction of emotional distress against Balzano.

Huller's actions in informing the Dayton Bar Association and the Montgomery County Prosecutor's Office of Lentz's admission of commingling funds is equally irrelevant to Lentz's Title VII gender discrimination allegation against CIC. Indeed, in her Complaint, Huller's reporting of Lentz's conduct to the Dayton Bar Association and the Montgomery County Prosecutor's Office was pled primarily as the basis for her defamation claims against individual Defendants Huller, Balzano, Benoski, Timmel, and Fisher. (Complaint at 75-78) As the Court knows, Plaintiff's defamation claim against all Defendants has been dismissed. (Order, September 22, 2004).

Whether an employer can legitimately terminate an employee for depositing the employer's money in the employee's personal bank account is an entirely different inquiry from whether an attorney – with knowledge that another attorney has deposited her employer/client's funds in her bank account – has an ethical duty to report it. Evidence that Huller followed his ethical duty to report is not only irrelevant to the claims remaining in this case, but will confuse and mislead the jury.

Such evidence, if allowed to be presented, will confuse and mislead the jury because it asks the jury, in the context of deciding whether employer CIC terminated employee Lentz because of gender, to also decide an attorney's ethical obligations toward the bar and fellow attorneys and clients. Both Lentz and Huller are attorneys licensed in Ohio and governed by the Ohio Rules of Professional Responsibility. DR 1-102(A) of the Ohio Code of Professional Responsibility clearly states that a "lawyer shall not: (4) [e]ngage in conduct involving dishonesty, fraud, deceit, or misrepresentation" or "(6) [e]ngage in any conduct that adversely reflects on the lawyer's fitness to practice law." There is a solid basis to believe that a lawyer who takes funds belonging to her employer and client and places them in her personal bank account for her personal use has disregarded this disciplinary rule. Huller certainly believed this.

Huller was also bound by the Code of Professional Responsibility in reacting to this information. DR 1-103 states that:

> (A) A lawyer possessing unprivileged knowledge of a violation of DR 1-102 **shall report** such knowledge to a tribunal or other authority empowered to investigate or act upon such violation.

Thus, if Huller believed that Lentz's conversion of CIC funds, based on facts admitted by Lentz herself, was a violation of DR 1-102, he had no choice but to report that conduct to the appropriate authority empowered to investigate and act upon that violation. Huller's response

would have been the same whether or not Lentz was terminated as a result of her conduct, because Huller had an ethical obligation to make this report.

Evaluating an attorney's ethical obligation to report what he believed to be unlawful and unethical conduct is simply not within the province of the jury. To allow a jury to review such a decision to report as a basis for liability would undermine the very purpose of the Ohio Code of Professional Responsibility and create a chilling effect on the reporting of attorney misconduct by other attorneys. If Lentz truly believes that Huller's actions in reporting her conduct to the Dayton Bar Association and the Montgomery County Prosecutor's Office was improper, then the appropriate mechanism to address that issue would be through the filing of a grievance against Huller with the appropriate bar association, not through suing Huller's employer.

Additionally, the specific conduct and statements identified by Lentz in her Complaint occurred in a context under which Ohio law provides **absolute immunity from liability** for the speaker. The fact that these reports were made by Huller to the Dayton Bar Association Ethics Committee and the Montgomery County Prosecutors' office to initiate investigations into possible ethical and criminal violations makes these statements absolutely privileged.

In *Hecht v. Levin*, 66 Ohio St. 3d 458, 613 N.E.2d 585 (1993), the Ohio Supreme Court held the following:

> A complaint filed with the grievance committee of a local bar association is part of a judicial proceeding.
>
> A statement made in the course of an attorney disciplinary proceeding enjoys an absolute privilege against a civil action based thereon as long as the statement bears some reasonable relation to the proceeding.

*Id.* at Syllabus. A later decision by the Ohio Supreme Court made clear that this principle also extended to statements made to a prosecuting attorney. In *M.J. DiCorpo, Inc., et al. v. Sweeney, et al.*, 69 Ohio St. 3d 497, 634 N.E.2d 203 (1994), the court held the following:

> An affidavit, statement or other information provided to a prosecuting attorney, reporting the actual or possible commission of a crime, is part of a judicial proceeding. The informant is entitled to an absolute privilege against civil liability for statements made which bear some reasonable relation to the activity reported.

*Id.* at Syllabus.

Because Huller's reports occurred within the context of proceedings that the Ohio Supreme Court has clearly said are "judicial proceedings," it is protected conduct with regard to liability and cannot serve as a basis for liability. It would be fundamentally unjust to allow the admission of evidence that cannot by law serve as the basis for liability, in the hopes of increasing Defendants' liability on unrelated claims.

> **B.    Evidence Concerning Huller's Conduct And Statements In Reporting Lentz's Conversion To The Dayton Bar Association And The Montgomery County Prosecutor's Office Is Inadmissible Under FRE 404 As Improper "Bad Acts" Evidence.**

Plaintiff apparently intends to offer Huller's reporting of her admission of commingling as an example of a "bad act" presumably evidencing discriminatory motive on the part of CIC in the decision to terminate her. While Plaintiff does not deny that she did, in fact, commingle and that this was the stated reason for her termination, she does deny that this action constituted "theft" or any other kind of wrongdoing. CIC anticipates that she will claim that Huller's decision to fulfill his obligation to report her admitted commingling was somehow discriminatory. As discussed above, this theory ignores Huller's ethical obligations in this regard and Ohio law precluding basing liability on such reports. Moreover, even apart from such concerns, Huller's reporting should be excluded under FRE 404.

Trial courts apply a multi-prong test in analyzing the admissibility of evidence of alleged other "bad acts" under FRE 404(b). First, proof of the other act must be directed towards establishing a relevant issue other than the party's propensity to commit like conduct in another

instance and the other act must be sufficiently similar to be relevant to the matter in issue. Second, there must be a sufficient amount of evidence for the factfinder to conclude that the other act was actually committed. And third, the probative value of the evidence must not be outweighed by the danger of unfair prejudice. *U.S. v. Haywood*, 280 F.3d 715, 719-20 (6th Cir. 2002). *See also Okai v. Verfuth*, 275 F.3d 606, 610-11 (7th Cir. 2001).

Plaintiff fails the first of these tests. Huller's individual ethical obligations as an attorney to report the admitted commingling of funds by a fellow attorney says absolutely nothing about CIC's propensity to commit gender discrimination in employment. Huller's reporting certainly has no relevance to Plaintiff's IIED and tortious interference claims against **Balzano**. To admit such evidence would greatly prejudice both defendants and that unfair prejudice clearly outweighs any alleged probative value.

This is an employment discrimination case. At issue is an employer's treatment of similarly situated employees. The undisputed fact is that no other attorney supervised by Huller – male or female – did what Plaintiff Lentz did by secretly placing CIC money into her personal bank account. Huller's reporting of Plaintiff was therefore a unique incident based on unique circumstances, occurring within the context of the ethical obligations imposed on him as an Ohio attorney. Huller's reporting simply has no value to the comparative analysis at the core of Title VII. Plaintiff's evidence thus fails to meet the first requirements of FRE 404(b). *Haywood, supra; Okai, supra. See also Swanson v. General Services Admin.*, 110 F.3d 1180, 1186-90 (5th Cir. 1997) (affirming irrelevance of testimony of other employees regarding "pattern" of discrimination that also affected plaintiff where employees "could offer only speculation" that adverse actions they suffered were the result of discrimination); *Coles v. Perry*, 217 F.R.D. 1, 10 (D.D.C. 2003).

9

This "other bad acts" evidence is not admissible under FRE 404(b) for the additional reason that it is not "sufficiently similar" to the one "adverse act" at issue – Plaintiff's termination. Thus, "only discrimination or retaliation of the same character and type as that is alleged is probative." *Coles, supra*. **Terminations** are not "sufficiently similar" to reports to the bar association or prosecutor's office.

Even if it were somehow relevant, Plaintiff's "other bad act" evidence would still have to be excluded under the last prong as unduly prejudicial, confusing and misleading, and a waste of time. *Manuel v. City of Chicago*, 335 F.3d 592, 596-97 (7th Cir. 2003). If Plaintiff were allowed to admit this "other bad act" evidence, valuable time will be expended in exploring the ethical obligations imposed on attorneys in Ohio and Huller's belief about his reporting obligations. *Coles, supra*. This is because CIC, "in fairness, must be permitted to rebut this testimony. Hence there is the risk of a trial within a trial that so frequently justifies the court in excluding 'other bad acts' evidence." *Id.* At 10. *See also Manuel, supra* (testimony inadmissible in light of "the potential for confusing or even misleading the jury by engaging in a series of mini-trials").

Plaintiff's attempt to introduce the purportedly "other bad act" of Huller's "reporting" of her actions to the legal authorities and the decisions by those legal authorities not to pursue the issue is inadmissible for another entirely separate reason. As the Sixth Circuit has held, the admission of evidence that a plaintiff was not prosecuted for a possible crime or other misconduct "is of very limited probative value" in showing that the plaintiff was innocent of any wrongdoing "because of the higher burden of persuasion in a criminal case." *Kelly's Auto Parts, No. 1, Inc. v. Boughton*, 809 F.2d 1247, 1252 (6th Cir. 1987). *See also Rabon v. Great Southwest Fire Ins. Co.*, 818 F.2d 306, 309 (4th Cir. 1987). Because such evidence is so unreliable on the

issue of guilt or innocence, it is also "highly prejudical." *Id.* For these reasons, the circuit courts have considered the admission of such evidence in a civil case by a trial court to be "reversible error." *Id.*

### III. CONCLUSION

For the foregoing reasons, pursuant to FRE 401, 402, 403, and 404 Defendants respectfully request that the Court grant this Motion *in Limine* and enter an Order excluding any evidence offered at trial by Plaintiff Lentz relating to actions taken by Huller, Manager of the Trial Division of CIC, to report Lentz's conduct to the Dayton Bar Association and the Montgomery County Prosecutor's Office.

Respectfully submitted,

*s/ Deborah S. Adams*
Deborah S. Adams (0005607)
Jack B. Harrison (0061993)
Frost Brown Todd LLC
2200 PNC Center
201 East Fifth Street
Cincinnati, OH 45202-4182
(513) 651-6800 (phone)
dadams@fbtlaw.com
jharrison@fbtlaw.com
Trial Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on May 6, 2005, a copy of Defendant CIC's Motion *in Limine* was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system and copies will be mailed via U.S. Mail to those parties who are not served via the Court's electronic filing system, if any. Parties may access this filing through the Court's system.

s/ *Deborah S. Adams*
Deborah S. Adams (0005607)
Jack B. Harrison (0061993)
Frost Brown Todd LLC
2200 PNC Center
201 East Fifth Street
Cincinnati, OH 45202-4182
(513) 651-6800 (telephone)
dadams@fbtlaw.com
jharrison@fbtlaw.com
Trial Attorneys for Defendant

1493940v.1