UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| MARY E. LENTZ, | : | Case No.: 01-CV-599 |
| | : | |
| Plaintiff, | : | (Judge Watson) |
| | : | |
| v. | : | DEFENDANTS' MOTION TO COMPEL |
| | : | PRODUCTION OF PLAINTIFF'S WAGE AND |
| | : | EARNING RECORDS, MEMORANDUM IN |
| | : | SUPPORT, AND MEMORANDUM IN |
| | : | OPPOSITION TO PLAINTIFF'S MOTION TO |
| | : | QUASH SUBPOENA |
| CINCINNATI INSURANCE | : | |
| COMPANY, et al. | : | |
| | : | |
| Defendants. | : | |

Defendant Cincinnati Insurance Company ("CIC") and Defendant David Balzano ("Balzano") (collectively "Defendants") move this Court, pursuant to Federal Rules of Civil Procedure 26, 34, and 37, to compel Plaintiff Mary Lentz to provide documents related to her income and earnings for 2000 - 2005, including, but not limited to, her tax returns for these years. Lentz has filed claims alleging lost wages, as well as alleging an emotional distress claim under which she must prove that she has experienced an emotional trauma so great that a reasonable person would not be able to bear it. In either case, Plaintiff's earnings and her ability to earn are relevant issues and discovery related to those issues is clearly proper under F.R.C.P. 26.

The grounds supporting this Motion are set forth in the attached Memorandum in Support. In addition, Defendants are responding in opposition to Plaintiff's Motion to Quash a subpoena directed at obtaining wages and earnings information from Lentz's employer.

Respectfully submitted,

*s/ Deborah S. Adams*
Deborah S. Adams (0005607)
Jack B. Harrison (0061993)
Frost Brown Todd LLC
2200 PNC Center
201 East Fifth Street
Cincinnati, OH 45202-4182
(513) 651-6800 (telephone)
dadams@fbtlaw.com
jharrison@fbtlaw.com
Trial Attorneys for Defendants

**MEMORANDUM IN SUPPORT OF MOTION TO COMPEL
AND IN OPPOSITION TO PLAINTIFF'S MOTION TO QUASH**

**I.      INTRODUCTION AND FACTUAL BACKGROUND**

In this case, Plaintiff Mary Lentz ("Lentz"), an attorney formerly employed in the Dayton law office of the Cincinnati Insurance Company ("CIC"), alleges that CIC discriminated against her on the basis of her gender when it terminated her upon learning that she had taken funds belonging to CIC and placed them in her personal bank account, using them for her personal expenses. She also alleges that David Balzano ("Balzano"), the managing attorney of the Dayton law office and her immediate supervisor, tortiously interfered with her employment relationship with CIC and intentionally caused her extreme emotional distress by passing on to his supervisor, Mark Huller, a secretary's notice to him that Lentz was seeking direct reimbursement to her personally of CIC funds spent on copies.

Because Plaintiff seeks lost wages and claims severe emotional distress, little rational argument exists as to the relevance of Plaintiff's wage and earnings information to the issues in this case. This wage and earnings information is the subject of the subpoena that Defendants served on Plaintiff's counsel on May 6, 2005 and on Plaintiff's employer on May 9, 2005. In fact, until very recently, Plaintiff had stated no objection to providing this information.

**II.     ARGUMENT**

In moving to quash the subpoena Defendants served on Plaintiff's employer, Gottschlich & Portune, seeking much of the same wage and earnings information that Plaintiff had refused to provide, Plaintiff offers the following three reasons why the subpoena should be quashed:

(1)     The subpoena was not served on Plaintiff prior to being served on her employer;

(2)     The subpoena was improper because discovery was closed; and,

  (3) The subpoena was improper because it did not provide adequate time for response.

In making these arguments in her Motion to Quash, Plaintiff, either intentionally or inadvertently, failed to provide the Court with accurate or complete information. Defendants will respond to each of these arguments, as well as simultaneously make its arguments in support of its Motion to Compel.

**Plaintiff's Argument No. 1: The subpoena was not served on Plaintiff prior to being served on her employer.**

Plaintiff cites a single case that was vacated in part on reconsideration for the proposition that Rule 45 requires that a nonparty subpoena seeking documents prior to trial must first be served on a party, then time must be allowed for an objection by the party, and only after some unidentified time has passed, may the subpoena be served on the nonparty from whom the documents are sought. *Spencer v. Steinman*, 179 F.R.D. 484 (E.D. Pa. 1998), the single case relied upon by Plaintiff for this argument, involved a situation where ex parte subpoenas seeking documents were served on nonparties and **then were not served on the opposing party**. This was certainly not the case with the subpoena that Defendants served on Plaintiff's employer.[1]

The purpose of Rule 45(b)'s notice requirement "is to provide opposing parties an opportunity to object to the subpoena, if desired, which requires notice and sufficient time to object before the date of compliance." Moore's Federal Practice – Civil § 45.03. According to Moore's Federal Practice, "several courts have held that the requirement that "prior notice" of any commanded production be served on each party requires counsel to provide the notice to other parties before service of the subpoena." *Id.* However, Defendants have found no case

---

[1] This has been the case, however, with at least one trial subpoena that Plaintiff has served on an employee of Defendant CIC with no service or notice to Defendants.

4

from the Sixth Circuit holding such a position, and apparently Plaintiff did not either, because no such decision was cited by her.

However, even if Rule 45 were read to require that service pursuant to Rule 5(b) be completed some days prior to the service of a subpoena seeking documents on a nonparty, Defendants in this case complied with such a reading. Plaintiff states on page 3 of her Memorandum in Support of her Motion to Quash that "Defendants did not affect (sic) service on their subpoena until May 9, 2005," which is confirmed in the exhibits Plaintiff attached. Yet, these same exhibits show that the Certificate of Service was signed certifying service by mail on Plaintiff's counsel on May 6, 2005. Pursuant to Rule 5(b), "[s]ervice by mail is complete upon mailing." Therefore, Plaintiff's counsel was served with the subpoena under the Rules of Civil Procedure on May 6, 2005, while "Defendants did not affect (sic) service on their subpoena until May 9, 2005."

Defendants complied with the requirements of Rule 45 and Plaintiff had an adequate opportunity to move to quash the subpoena, which, of course, they have done. The Court should reject this argument offered as a basis for quashing the subpoena, and deny Plaintiff's motion.

Moreover, Plaintiff had more than sufficient notice of Defendants' need of the documents that Defendants were ultimately forced to subpoena from a non-party. Defendants first requested this information on January 10, 2002. Plaintiff has ignored or outright declined to provide the requested and indisputably relevant information. She cannot now complain because Defendants were forced to seek it from a non-party.

**Plaintiff's Argument No. 2: The subpoena was improper because discovery was closed.**

This argument by Plaintiff is simply breathtaking in what Plaintiff has failed to tell the Court about Defendants' prior efforts to obtain the material now sought by subpoena.

Additionally, Plaintiff has offered no rationale to the Court for why she has failed to produce wage and earnings information that was originally requested through discovery over three years ago.[2] It was only because of Plaintiff's refusal and the pendency of trial that Defendants sought this information from Plaintiff's employer through a subpoena.

On January 10, 2002, Defendants served Plaintiff with interrogatories and document requests. (Exh. 1) Interrogatory No. 4 asked Plaintiff to identify each category of damage that she sought in this case. Plaintiff responded to these discovery requests on February 27, 2002. (Ex. 2) Without objection of any kind, Plaintiff answered that she was seeking recovery of lost wages and for injuries related to emotional distress and loss of reputation. Interrogatory No. 5 asked specifically for the manner of the calculation of Plaintiff's alleged damages. In response, Plaintiff indicated, again with no objection, that she would use her W2 forms, her Form 1099s, her salary information, her bonus information, information related to her company car, information related to her 401(K) account, information related to her TAP plan and her stock, information related to vacation benefits, and information related to her insurance benefits to prove the amount of her damages.

With regard to Plaintiff's responses to Defendants' document requests, again Plaintiff interposed no objection to requests seeking wage and earnings information. Document Request No. 5 asked for income information for Plaintiff from 1997 through the date trial, including Plaintiff's tax returns. Document Request No. 28 requested that Plaintiff provide any and all documents related to her claimed damages. Again, Plaintiff interposed no objection to this request. Even more importantly, in Plaintiff's response to this Interrogatory, she specifically reserved the right to supplement the documents provided. In these written responses, Plaintiff

---

[2] On May 16, 2005, Defendants did receive from Plaintiff some incomplete summary documents regarding Plaintiff's wages and earnings, but Plaintiff has yet to produce all of her income tax returns for 2000-2004 and all of her W-2s, 1099s, and K-1s for the same period.

provided tax returns and W-2s for 1998, 1999, and 2000. Additionally, at her deposition, Plaintiff stated: "I know I've earned more money since we responded to documents, and I brought those documents with me, and I will provide them to Mr... Sutherlin." This deposition occurred on September 30, 2002.

On March 8, 2005, correspondence was sent to Plaintiff's counsel following up on this discovery requesting outstanding tax returns and bank statements for Plaintiff. (Exh. 3) This same letter was sent again on April 21, 2005, because a paralegal for Plaintiff's counsel stated that counsel had lost the previous letter. (Exh. 4) On May 3, 2005, another letter was sent to Plaintiff's counsel requesting this wage and earnings information. (Exh. 5) In a May 6, 2005 voice mail message, Plaintiff's counsel for the very first time in this litigation informed counsel for Defendants that Plaintiff is objecting to producing this wage and earnings information because it is irrelevant, in that Plaintiff is not seeking lost wages beyond December 31, 2001. (Exh. 6, transcription of voice mail message) On May 7, 2005, Defendants' counsel sent another letter to Plaintiff's counsel requesting production of these documents. (Exh. 7) On May 10, 2005, counsel for Defendants wrote another letter to counsel for Plaintiff responding to Plaintiff's position that this material was no longer relevant, explaining that this material was relevant to all of Plaintiff's damage claims even if she had decided to limit her lost wage claim. (Exh. 8)

It was against this backdrop that Defendants decided that apparently the only way to obtain information that had been sought for years – certainly sought long before discovery had closed – was to simply subpoena this information directly from Plaintiff's employer. It is, therefore, absurd for Plaintiff to assert that this information is not discoverable through subpoena

because discovery has closed, after promising to, but then reneging on the promise to provide the very same information without a valid rationale.

For these reasons, Plaintiff's second argument for quashing the subpoena should be rejected. Additionally, Plaintiff should be compelled to produce her wage and earnings information, including her tax returns and other income documents, for 2000, 2001, 2002, 2003, 2004 and 2005.

**Plaintiff's Argument No. 3: The subpoena was improper because it only provided Plaintiff's employer eleven days to provide Plaintiff's income and earnings history for 2001 through 2005.**

Plaintiff provides no support for its assertion that Lentz's employer is unable to provide the requested income and earnings information within eleven days. To date, the party upon whom the subpoena was served and who is in the best position to make an assertion regarding the length of time required to comply with the subpoena has made no objection.

On its face, Rule 45 envisions a time period for compliance that may be less than fourteen days. Therefore, a period of time for complying with a subpoena that is less than fourteen days cannot be held to be *per se* unreasonable. Courts appear to judge the reasonableness of the time allowed for compliance with a subpoena based on the underlying circumstances. For example, in *Anderson v. Shell Oil Co.,* 1996 U.S. Dist. LEXIS 7497 (E.D. La. May 24, 1996), the court held that, *in light of the extensive information requested,* a seven-day time period was unreasonable for compliance where the notice of corporate deposition included regulatory filing material over a ten year period. Similarly, in *Traina v. Blanchard,* the court found that an attempt to conduct extensive discovery on only six days notice did not pass the reasonableness test, again because of the extensiveness of the discovery sought. 1998 U.S. Dist. LEXIS 5634 (E.D. La. April 15, 1998). In these cases, the court indicated that but for the

8

extensive discovery requests, the six or seven-day compliance period might have been found to be reasonable.

In this case, the information being sought is defined and limited in scope and will not require a tremendous effort on the part of Plaintiff's employer to comply. However, should the Court determine that eleven days to comply with this subpoena is not adequate, Defendants would simply ask that the Court modify the time period for compliance, keeping in mind the Court's existing trial schedule in this matter, rather than quashing the subpoena.

### III. CONCLUSION

Plaintiff has articulated no compelling reason for quashing a subpoena that seeks information that is clearly relevant to the issues in this case and that Plaintiff has simply refused to date to provide. Defendants, therefore, request that the Court deny Plaintiff's Motion to Quash and grant Defendant's Motion to Compel, ordering Plaintiff to produce a complete set of her income, earnings and tax documents for the period 2000 through the time of trial.

Respectfully submitted,

*s/ Deborah S. Adams*
Deborah S. Adams (0005607)
Jack B. Harrison (0061993)
Frost Brown Todd LLC
2200 PNC Center
201 East Fifth Street
Cincinnati, OH 45202-4182
(513) 651-6800 (telephone)
dadams@fbtlaw.com
jharrison@fbtlaw.com
Trial Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on May 17, 2005, a copy of Defendants' Motion to Compel was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system and copies will be mailed via U.S. Mail to those parties who are not served via the Court's electronic filing system, if any. Parties may access this filing through the Court's system.

        s/ *Deborah S. Adams*
        Deborah S. Adams (0005607)
        Jack B. Harrison (0061993)
        Frost Brown Todd LLC
        2200 PNC Center
        201 East Fifth Street
        Cincinnati, OH 45202-4182
        (513) 651-6800 (telephone)
        dadams@fbtlaw.com
        jharrison@fbtlaw.com
        Trial Attorneys for Defendants

CinLibrary 0011523.0480059 1507266v.1