**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| MARY E. LENTZ | : | Case No.: 01-CV-599 |
| | : | |
| Plaintiff, | : | Judge Watson |
| | : | |
| v. | : | **PROPOSED JURY INSTRUCTIONS** |
| | : | |
| CINCINNATI INSURANCE | : | |
| COMPANY | : | |
| | : | |
| and | : | |
| | : | |
| DAVID BALZANO | : | |
| | : | |
| Defendants. | : | |

Pursuant to the Court's Pretrial Procedures, the parties hereby submit Proposed Jury Instructions indicating which proposed instructions are being submitted jointly, which are submitted by Plaintiff and opposed by Defendants, and those which are submitted by Defendants and opposed by Plaintiff.

_/S/ Michael K. Sutherlin per_
_telephone authorization 5/19/05_
Michael K. Sutherlin
Nicholas Conway
Michael K. Sutherlin & Associates
P.O. Box 441095
Indianapolis, IN 46244-1095
Telephone: (317) 634-6313
Facsimile: (317) 631-8818

Lynn D. Pundzak
Suite 999
Second National Bldg.
830 Main Street
Cincinnati, OH 45202
Telephone: (513) 564-9999
Facsimile: (513) 345-4703

Counsel for Plaintiff

_/S/ Deborah S. Adams_____
Deborah S. Adams (0005607)
Jack B. Harrison (0061993
FROST BROWN TODD LLC
2200 PNC Center
201 E. Fifth Street
Cincinnati, Ohio 45202-4182
Telephone: (513) 651-6800
Telecopier: (513) 651-6981
dadams@fbtlaw.com
jharrison@fbtlaw.com

Counsel for Defendants

1

## TABLE OF CONTENTS

I.    **AGREED INSTRUCTIONS**                                    3

II.   **INSTRUCTIONS PROPOSED BY DEFENDANTS,
      AND OPPOSED BY PLAINTIFF**

      **A.    DEFENDANT CINCINNATI INSURANCE              10
      COMPANY'S PROPOSED JURY INSTRUCTIONS
      RELATED TO TITLE VII  GENDER
      DISCRIMINATION CLAIM**

      **B.    DEFENDANT BALZANO'S PROPOSED              40
      JURY INSTRUCTIONS RELATED TO CLAIMS
      AGAINST HIM FOR TORTIOUS INTERFERENCE
      WITH BUSINESS RELATIONSHIP AND INTENTIONAL
      INFLICTION OF EMOTIONAL DISTRESS**

      **C.    DEFENDANT CINCINNATI INSURANCE              58
      COMPANY'S PROPOSED JURY INSTRUCTIONS
      RELATED TO ITS COUNTERCLAIM
      AGAINST MARY LENTZ**

III.  **INSTRUCTIONS PROPOSED BY PLAINTIFF              70
      AND OPPOSED BY DEFENDANTS**

2

## I.      AGREED INSTRUCTIONS

### Proposed Joint Jury Instruction No. 1

Now that you have heard the evidence and argument, it becomes my duty to give you the instructions of the Court as to the law applicable to this case.

It is your duty as jurors to follow the law as I shall state it to you, and to apply that law to the facts as you find them from the evidence in the case.  You are not to single out one instruction alone as stating the law, but must consider the instructions as a whole.

Nothing I say in these instructions is to be taken as an indication that I have any opinion about the facts of the case, or what that opinion is.  It is not my function to determine the facts, but rather yours.

You must perform your duties as jurors without bias or prejudice as to any party.  The law does not permit you to be governed by sympathy, prejudice or public opinion.  All parties expect that you will carefully and impartially consider all of the evidence, follow the law as it is now being given to you, and reach a just verdict.

E. Devitt, C. Blackmar & M. Wolff, Federal Jury Practice and Instructions § 71.01 (West 1987) (hereinafter referred to as "Devitt & Blackmar").

_____ Accepted

_____ Rejected

_____ Modified

3

**Proposed Joint Jury Instruction No. 2**

This case should be considered and decided by you as an action between persons of equal standing in the community, of equal worth, and holding the same or similar stations of life. A corporation is entitled to the same fair trial at your hands as a private individual. All persons, including corporations, stand equal before the law, and are to be dealt with as equals in a court of justice.

Devitt & Blackmar § 71.04.

_____ Accepted

_____ Rejected

_____ Modified

4

**Proposed Joint Jury Instruction No. 3**

You are to consider only the evidence in this case. However, in your consideration of the evidence you are not limited to the statements of the witnesses. In other words, you are not limited to what you see and hear as the witnesses. You are permitted to draw, from facts which you find to have been proved, such reasonable inferences as seem justified in light of your experience. In other words, as jurors, you should use your everyday commonsense in drawing inferences from the facts of this case.

Devitt & Blackmar § 72.04

_____ Accepted

_____ Rejected

_____ Modified

5

**Proposed Joint Jury Instruction No. 4**

You, as jurors, are the sole judges of the credibility of the witnesses and of the weight their testimony deserves.  You may be guided by the appearance and conduct of the witness, or by the manner in which the witness testifies, or by the character of the testimony given, or by evidence to the contrary of the testimony given.

You should carefully scrutinize all the testimony given, the circumstances under which each witness has testified, and every matter in evidence which tends to show whether a witness is worthy of belief.  Consider each witness' intelligence, motive and state of mind, and demeanor or manner while on the stand.  Consider the witness' ability to observe the matters as to which he or she has testified, and whether he or she impresses you as having an accurate recollection of these matters.  Consider also any relation each witness may bear to either side of the case; the manner in which each witness might be affected by the verdict; and the extent to which, if at all, each witness is either supported or contradicted by other evidence in this case.

Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses, may or may not cause the jury to discredit such testimony.  Two or more persons witnessing an incident or a transaction may see or hear it differently; and innocent misrecollection, like failure of recollection, is not an uncommon experience.  In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood.

After making your own judgment, you will give the testimony of each witness such weight, if any, as you may think it deserves.

You may, in short, accept or reject the testimony of any witness in whole or in part.

6

Also, the weight of the evidence is not necessarily determined by the number of witnesses testifying to the existence or non-existence of any fact. You may find that the testimony of a small number of witnesses as to any fact is more credible than the testimony of a larger number of witnesses to the contrary.

<u>Devitt & Blackmar</u> § 73.01

_____ Accepted

_____ Rejected

_____ Modified

**Proposed Joint Jury Instruction No. 5**

The verdict must represent the considered judgment of each juror.  In order to return a verdict, it is necessary that each juror agree.  Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another, and to deliberate with a view to reach an agreement, if you can do so without violence to individual judgment.  You must each decide the case for yourself, but only after an impartial consideration of the evidence in the case with your fellow jurors.  In the course of your deliberations, do not hesitate to reexamine your own views, and change your opinion, if convinced it is wrong.  But do not surrender your honest conviction as to the weight or effect of evidence, solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

Remember at all times that you are not partisans.  You are the judges of the facts.  Your sole interest is to seek the truth and return a just verdict from the evidence in the case.

Devitt & Blackmar § 74.01

_____ Accepted

_____ Rejected

_____ Modified

8

**Proposed Joint Jury Instruction No. 6**

Your verdict must represent the considered judgment of each juror.  In order to return a verdict, it is necessary that each juror agree.  Your verdict must be unanimous.

Devitt & Blackmar § 74.01.

_____ Accepted

_____ Rejected

_____ Modified

II.    **INSTRUCTIONS PROPOSED BY DEFENDANTS AND OPPOSED BY PLAINTIFF**

A.    **DEFENDANT CINCINNATI INSURANCE COMPANY'S PROPOSED JURY INSTRUCTIONS RELATED TO TITLE VII  GENDER DISCRIMINATION CLAIM**

Defendant CIC's Proposed Jury Instruction No. 1

### Equal Before The Law

In this case, you are called upon to decide more than one issue.  For the claim of Mary Lentz against Cincinnati Insurance Company, you must decide whether Mark Huller, Ms. Lentz's boss at the Cincinnati Insurance Company, whose testimony you heard during this trial, terminated Ms. Lentz because she is female, as she says, or because she placed money belonging to the company in her personal bank account, as Cincinnati Insurance Company says.

You are to perform this duty without bias or prejudice as to any party.  Our system of law does not permit jurors to be governed by sympathy, prejudice, or public opinion.  You must carefully and impartially consider all the evidence in the case, follow the law as stated by the Court, and reach a just verdict, regardless of the consequences.  This case should be considered and decided by you as an action between persons of equal worth and equal standing in the community.

A corporation like Cincinnati Insurance Company is entitled to the same fair trial at your hands as a private individual like Ms. Lentz.  Sympathy for either party, or prejudice against either party, should play no part in your deliberations or in your decision.  All parties, including corporations, stand equal before the law and are to be dealt with as equals in a court of justice.  Corporations only act through their officers, agents and managers, who are people like you and me.

Authority:

10

Devitt & Blackmar § 71.04.

Given _____

Given as Modified _____

Refused _____

Defendant CIC's Proposed Jury Instruction No. 2

**The Institution Of This Claim**

The mere fact that Mary Lentz brought this claim against the Cincinnati Insurance

Company is not evidence that any party did anything wrong or is liable in any way.

Authority:

Fed.R.Civ.P. 3.

Given _____

Given as Modified _____

Refused _____

12

Defendant CIC's Proposed Jury Instruction No. 3

**The Parties' Claims And Responses**

Plaintiff Mary Lentz is suing the Cincinnati Insurance Company for gender discrimination. Specifically, she claims that she was unlawfully terminated because she is female.

Cincinnati Insurance Company denies Ms. Lentz's claim. In response to the claim of gender discrimination, Cincinnati Insurance Company asserts that Mark Huller terminated Ms. Lentz after she admitted that she had taken funds belonging to Cincinnati Insurance Company and placed them in her personal checking account. Ms. Lentz made no attempt to keep a separate accounting of the company's funds and she continued to make withdrawals from her personal bank account for personal expenditures. Cincinnati Insurance Company denies that Ms. Lentz's gender had anything to do with her termination.

Given _____

Given as Modified _____

Refused _____

13

Defendant CIC's Proposed Jury Instruction No. 4

**Burden Of Proof / Preponderance Of Evidence**

In a civil action such as this one, the burden is on the person suing to prove every single essential element of each claim by a preponderance of the evidence. In this case, the burden of proof is on Ms. Lentz to prove that Cincinnati Insurance Company terminated her employment because she is female.

This set of instructions will outline for you the essential elements that must be proven for the gender discrimination claim brought by Ms. Lentz against the Cincinnati Insurance Company. If Ms. Lentz fails to establish any essential element of her claim by a preponderance of the evidence, then you must find for Cincinnati Insurance Company on that claim.

What does a "preponderance of evidence" mean? To establish a fact by a preponderance of the evidence means to prove that the fact is more likely true than not true. A preponderance of the evidence means the greater weight of the evidence.

If you find that the weight of the evidence is equally balanced on any claim – that it is equally probable that Ms. Lentz is right as it is that Cincinnati Insurance Company is right – or if you are unable to determine which side of an issue has been proven by a preponderance, then you must find against Ms. Lentz on her claim. Ms. Lentz bears the burden of proving all essential elements of her claim against the Cincinnati Insurance Company by a preponderance of the evidence. If she does not meet that burden, her claim fails.

Authority:

Devitt & Blackmar § 2.01; Modern Federal Jury Instructions ¶ 73.01, Instruction 73-2.

Given _____

Given as Modified _____

Refused _____

14

<u>Defendant CIC's Proposed Jury Instruction No. 5</u>

## Gender Discrimination

Ms. Lentz claims that Cincinnati Insurance Company fired her because she is female. In rebuttal, Cincinnati Insurance Company asserts that it discharged Ms. Lentz because she took funds belonging to Cincinnati Insurance Company, placed those funds in her personal checking account, and wrote checks for her personal expenses from that account.

Ms. Lentz bears the burden of proof. Ms. Lentz must prove by a preponderance of the evidence that the Cincinnati Insurance Company terminated her because she is female, that such discrimination was intentional and that it could not have occurred by accident.

To prove her claim, Ms. Lentz must show by a preponderance of the evidence that:

(1)    Cincinnati Insurance Company's explanation for her discharge was not the real reason; <u>and</u>

(2)    Cincinnati Insurance Company's real and intentional reason for discharging her was her gender.

In other words, Ms. Lentz must show by a preponderance of the evidence that the legitimate reasons offered by Cincinnati Insurance Company were not its true reasons, but were a pretext for discrimination. If you find that Ms. Lentz has failed to prove that Cincinnati Insurance Company's explanation was not the real reason for her discharge, then your analysis on her gender discrimination claim is over and you must render a verdict in favor of Cincinnati Insurance Company on this claim.

If you find that Ms. Lentz has proven that Cincinnati Insurance Company's explanation was not the real reason for her discharge, your analysis is not over. Ms. Lentz must prove that it is more likely than not that Cincinnati Insurance Company's real and intentional reason for discharging her was her gender. If you find that Cincinnati Insurance Company honestly

15

believed its stated reason for discharging Ms. Lentz, you <u>must</u> rule in favor of Cincinnati

Insurance Company on Ms. Lentz's gender discrimination claim.  If you find that Ms. Lentz has

failed for any other reason to prove that the real reason behind her discharge was her gender,

then you must render a verdict in favor of Cincinnati Insurance Company on Ms. Lentz's gender

discrimination claim.

*In making your determination on whether Ms. Lentz has proven the elements of her*

*gender discrimination claim, you should consult all of the instructions provided to you and*

*should refer specifically to the following related instructions:  Lentz's Burden Of*

*Proof/Preponderance Of Evidence (No. 4 ); Proof Of Intent (No. 9 ); Equal, Not Preferential*

*Treatment Required (No. 7 ); Similar Action Against Male Employees (No. 8 ); Speculation,*

*Denial And Belief (No. 12 ); Isolated, Stray Remarks (No. 13 ); Cincinnati Insurance*

*Company's Honest Belief (No. 14 ); Jury Must Not Substitute Its Judgment For Cincinnati*

*Insurance Company's Judgment (No. 15 ).*

<u>Authority:</u>

   *Wilkins v. Eaton Corp.*, 790 F.2d 515, 521 (6th Cir. 1986);*Warfield v. Lebanon Correctional Inst.,* 181 F.3d 723 (6th Cir. 1999); *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Peters v. Lincoln Electric Co.*, 285 F.3d 456, 473-75 (6th Cir. 2002) (plaintiff must produce sufficient evidence to prove that defendant's stated reason was false and that discrimination was real reason); *Woodruff v. Ohman*, 29 Fed. Appx. 337, 344 (6th Cir. 2002) (not sufficient for plaintiff to prove that defendant's explanation not worthy of belief; plaintiff must also prove that the true reason for the challenged action was discrimination); *Braithwaite v. The Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001) (in order to demonstrate intentional discrimination, plaintiff must do more than allege a dispute over the facts upon which discharge was based; plaintiff must demonstrate that defendant did not "honestly believe" in the proffered reason); *Frizell v. Southwest Motor Freight*, 154 F.3d 641, 647 (6th Cir. 1998); *Holmes v. Scarlet Oaks Retirement Community*, 277 F. Supp. 2d 829, 834 (S.D. Ohio 2003) (plaintiff must demonstrate that defendant's proffered reasons are untrue and that discrimination was the real reason); *Burns v. City of Columbus, Dep't of Pub. Safety, Div. of Police,* 91 F.3d 836, 844 (6th Cir. 1996); *Maddox v. Univ. of Tenn.*, 62 F.3d 843, 848 (6th Cir. 1995); *Chappell v. GTE Prods. Corp.*, 803 F.2d 261, 266 (6th Cir. 1986); *Vaughn v. Watkins Motor Lines, Inc.*, 2000 U.S. Dist.

16

LEXIS 22048, at *28-29 (S.D. Ohio Dec. 6, 2000); *Dunnom v. Bennett*, 290 F. Supp. 2d 860, 869 (S.D. Ohio 2003)


Given _____

Given as Modified _____

Refused _____

17

Defendant CIC's Proposed Jury Instruction No. 6

**Comparability and "Similarly Situated" - Definition**

If Ms. Lentz attempts to compare the treatment of females to that of males, she must show that the males and females are "comparables" and are similarly situated in all respects. To be deemed similarly situated, the males and females must have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of it.

"Similarly situated" means that the comparable employees are nearly identical in all relevant respects. In other words, in order to make valid comparisons between her treatment and the treatment of males by Cincinnati Insurance Company, Ms. Lentz must show how Cincinnati Insurance Company treated male attorneys, if any, who placed funds belonging to Cincinnati Insurance Company in their personal bank accounts.

Authority:

*Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796 (6th Cir. 1994); *Mitchell v. Toledo Hospital*, 964 F.2d 577 (6th Cir. 1992); *Dunnom v. Bennett*, 290 F. Supp. 2d 860 (S.D. Ohio 2003); *Murphy v. Univ. of Cincinnati*, 72 Fed. Appx. 288, 293-294 (6th Cir. 2003); *Vaughn v. Watkins Motor Lines, Inc.*, 2000 U.S. Dist. LEXIS 22048, at *26-27 (S.D. Ohio Dec. 6, 2000).

Given _____

Given as Modified _____

Refused _____

18

Defendant CIC's Proposed Jury Instruction No. 7

**Equal, Not Preferential, Treatment Required**

In considering Ms. Lentz's claims, you must understand that the law does not require that employers like Cincinnati Insurance Company treat female employees better or more favorably than male employees. Instead, the law merely requires that female employees receive treatment equal to the treatment received by similarly-situated male employees.

Authority:

*Davidson v. Franciscan Health System of the Ohio Valley, Inc.*, 82 F. Supp. 2d 768, 774 (S.D. Ohio 2000); *Krolikowski v. Richman Gordman ½ Price Stores, Inc.*, 38 F. Supp. 2d 797, 802 (D. Neb. 1999).

Given _____

Given as Modified _____

Refused _____

19

Defendant CIC's Proposed Jury Instructions No. 8

**Similar Action Against Male Employees**

In reaching your determination on Ms. Lentz's gender discrimination claim, you may consider whether or not there were any male employees who had engaged in the same conduct as Ms. Lentz.   If Ms. Lentz has failed to produce evidence that there were any male employees who placed funds belonging to Cincinnati Insurance Company in their personal bank accounts, but received more favorable treatment than she, then this may be a basis for finding in favor of Cincinnati Insurance Company and against Ms. Lentz on Ms. Lentz's gender discrimination claim.

Authority:

*Braithwaite v. The Timken Co.*, 258 F.3d 488, 497 (6th Cir. 2001); *Pascual v. Anchor Advanced Products, Inc.*, 1997 U.S. App. LEXIS 17732 *11 n.3 (6th Cir. 1997) (fact that individuals within non-suspect class were discharged for same reason as plaintiff "flies in the face" of a discrimination claim); *Fannon v. AAP St. Marys Corp.*, 1997 U.S. App. LEXIS 23776, at *8-9 (6th Cir. 1997); *Evans v. Jay Instrument and Specialty Co.*, 889 F. Supp. 302, 310 (S.D. Ohio 1995); *Garrison v. Nygren*, 2004 U.S. Dist. LEXIS 4269, at *4-5 (N.D. Ill. 2004); *Cabrera v. Trataros Constr. Inc.*, 184 F. Supp. 2d 149, 156 (D. P.R. 2002); *Krolikowski v. Richman Gordman ½ Price Stores, Inc.*, 38 F. Supp. 2d 797, 802 (D. Neb. 1999); *Mayberry v. Endocrinology Diabetes Associates*, 926 F. Supp. 1315, 1325 (M.D. Tenn. 1996). *See also, Kirkland v. Runyon*, 887 F. Supp. 1001, 1005-1006 (S.D. Ohio 1995) (Sherman, Mag. J.) (distinguishing misconduct – insubordination – charged against the other employees from that charged against the plaintiff because it was greater in degree of seriousness: the other employees' language was not as abusive as plaintiff's and other employees did not threaten physical force against their supervisors); *EEOC v. Sacco*, 102 F. Supp. 2d 382, 387 (E.D. Mich. 1999) ("[T]he Commission has produced no evidence that could establish that a non-protected employee suffered less than job termination for misbehavior comparable in seriousness to being seen with one's hand in (or suspiciously near) another cashier's till under these circumstances, as was Galloway."); *Dinkins v. Ryder Student Transp. Servs.*, 1997 U.S. Dist. LEXIS 14173, at *12 (E.D. Mich. Aug. 8, 1997) (ruling that plaintiffs failed to prove disparate treatment because their examples of allegedly similar misconduct involved "everything other than" for what plaintiffs were discharged); *Edwards v. Newport News Shipbuilding & Dry Dock Co.*, 1998 U.S. App. LEXIS 30857, at *6-7 (4th Cir. Dec. 7, 1998) (affirming summary judgment against a plaintiff who was discharged for refusing to surrender his identification badge to the employer's security guard because, unlike other employees who had refused to show their IDs, the guards caught Plaintiff attempting to steal company property and then bribe them out of reporting him).

20

Given _____

Given as Modified _____

Refused _____

Defendant CIC's Proposed Jury Instruction No. 9

**Proof Of Intent**

In order to prevail on her gender discrimination claim, Ms. Lentz must prove by a preponderance of the evidence that Cincinnati Insurance Company acted with the specific intent to terminate her because she is female. In weighing the evidence and determining whether Ms. Lentz has proven discriminatory intent, you should carefully consider the guidance offered by these instructions.

The intent of employees of Cincinnati Insurance Company who had no power to discharge Ms. Lentz or were not the decision-maker behind her discharge must <u>not</u> be considered. To determine whether she was terminated because she is female, you must consider the intent of the decision maker only. In this case, the decision-maker for the decision to fire Ms. Lentz was Mark Huller, Manager of the Trial Division for Cincinnati Insurance Company.

Authority:

*Peters v. Lincoln Electric*, 285 F.3d 456, 473-75 (6th Cir. 2002); *Woodruff v. Ohman*, 29 Fed. Appx. 337, 344 (6th Cir. 2002); *Holmes v. Scarlet Oaks Retirement Community*, 277 F. Supp. 2d 829, 834 (S.D. Ohio 2003).

Given _____

Given as Modified _____

Refused _____

22

<u>Defendant CIC's Proposed Jury Instruction No. 10</u>

**Same Actor Inference**

You heard testimony that Mark Huller, the person who hired Ms. Lentz, was also the person who discharged her.

Where the individual who hires a person is the same person who then fires the employee, there is a strong inference that discrimination did not motivate the discharge decision. You may, but are not required to, infer from this evidence that Mr. Huller's decision to terminate Ms. Lentz's employment was not motivated by her gender.

<u>Authority:</u>

*See Wexler v. White's Fine Furniture, Inc.,* 317 F.3d 564, 572 (6th Cir. 2003) (en banc);
*Buhrmaster v. Overnite Transp. Co.,* 61 F.3d 461, 463 (6th Cir. 1995).

Given _____

Given as Modified _____

Refused _____

23

Defendant CIC's Proposed Jury Instruction No. 11

**Employment At Will**

Ms. Lentz was an "employee at will." This means that Cincinnati Insurance Company had a right under the law to end Ms. Lentz's employment at any time, for any reason or no reason at all, as long as Cincinnati Insurance Company did not discharge her because of her gender. As an at-will employee, Ms. Lentz was subject to discharge without warning, cause or prior disciplinary action.

Authority:

*Coulter v. Deloitte Consulting L.L.C.*, 79 Fed. Appx. 864, 868 (6th Cir. 2003); *Henkel v. Educational Research Council of America*, 45 Ohio St. 2d 249 (1976).

Given _____

Given as Modified _____

Refused _____

24

<u>Defendant CIC's Proposed Jury Instruction No. 12</u>

**Speculation, Denial and Belief**

You are instructed that mere speculation that the Cincinnati Insurance Company's decision to discharge Ms. Lentz may have been motivated by her gender is not sufficient to find in favor of Ms. Lentz on her gender discrimination claim. Ms. Lentz's mere denial of the explanation offered by the Cincinnati Insurance Company or her subjective belief that the Cincinnati Insurance Company discharged her because of her gender, is likewise not sufficient to support Ms. Lentz's claim for gender discrimination. Instead, as set forth in other instructions, Ms. Lentz must produce concrete evidence that the explanation given by the Cincinnati Insurance Company for her discharge was not the real reason. She must demonstrate that the real explanation is that the Cincinnati Insurance Company intentionally terminated her because she is female. In order to do this, she must prove that Cincinnati Insurance Company did not honestly believe its stated reason for discharging her.

<u>Authority:</u>

*Coulter v. Deloitte Consulting, L.L.C.*, 2003 U.S. App. LEXIS 22796 *13 (6th Cir. 2003) (bare denials and subjective belief not sufficient); *Gribcheck v. Runyon*, 245 F.3d 547, 552 (6th Cir. 2001) (same); *Mitchell v. Toledo Hospital*, 964 F.2d 577, 584-85 (6th Cir. 1992) (neither "rumors, conclusory allegations, and subjective beliefs," nor plaintiff's unsubstantiated denial of defendant's legitimate reason were sufficient evidence to establish a claim of discrimination); *Holmes v. Scarlet Oaks Retirement Community*, 277 F. Supp. 2d 829, 834 (S.D. Ohio 2003); *Vaughn v. Watkins Motor Lines, Inc.*, 2000 U.S. Dist. LEXIS 22048, at *29 (S.D. Ohio Dec. 6, 2000); *McDaniel v. Wal-Mart Stores, Inc.* 31 Fed. Appx. 898, 903 (6th Cir. 2002) (speculation by the plaintiff is not indicative of sex discrimination and fails as a matter of law); *Taber v. Christ Hosp.*, 723 F. Supp. 1236, 1243 (S.D. Ohio 1989) ("[T]his Court is unwilling to speculate on the reasons plaintiff was not selected to that position but does point out that for the purposes this matter is before the Court, the record indicates that age was not a factor in that decision.").

Given _____

Given as Modified _____

Refused _____

25

Defendant CIC's Proposed Jury Instruction No. 13

**Isolated, Stray Remarks**

You are instructed that any isolated, stray comments that were not made at the time Ms. Lentz was discharged or were not made by Mark Huller, the individual responsible for the decision to discharge Ms. Lentz, should not be considered as evidence of discrimination. The law says that such comments, no matter how awkward, insensitive or ungenerous they may be, do not rise to the level of evidence of discrimination.

Authority:

*Hutchinson v. Fifth Third Bank of Northwestern Ohio, N.A.*, 1999 U.S. Dist. LEXIS 13250, at *6, n. 2 (N.D. Ohio 1999), aff'd., 234 F.3d 1268 (6th Cir. 2000); *Geier v. Medtronic, Inc.*, 99 F.3d 238, 242 (7th Cir. 1996) (comments, while awkward, insensitive and ungenerous, do not rise to the level of evidence of discrimination unless contemporaneous with discharge and causally related); *Bond v. Sterling, Inc.*, 77 F. Supp. 2d 300, 305 (N.D. N.Y. 1999) (isolated comment not sufficient by itself to support an inference of discrimination).

Given _____

Given as Modified _____

Refused _____

26

Defendant CIC's Proposed Jury Instruction No. 14

**Cincinnati Insurance Company's Honest Belief**

Cincinnati Insurance Company has asserted that it discharged Ms. Lentz because it believed she took funds belonging to Cincinnati Insurance Company, placed them in her personal checking account without permission, and then wrote checks for her personal expenses using these funds to cover them, facts that were admitted by Ms. Lentz to the company in its investigation.  In order to prevail on her gender discrimination claim, Ms. Lentz must prove that Cincinnati Insurance Company did not honestly believe this reason at the time it discharged her. The law says that Cincinnati Insurance Company had an "honest belief" in its reason for discharging Ms. Lentz if it reasonably relied upon the facts before it at the time it made its decision.

If you find that Cincinnati Insurance Company, at the time it discharged Ms. Lentz, had an honest belief that Ms. Lentz had taken funds belonging to Cincinnati Insurance Company, placed them in her personal checking account, and then wrote checks for her personal expenses using these funds to cover them, then you must render a verdict in favor of Cincinnati Insurance Company, even if you ultimately determine that Cincinnati Insurance Company was incorrect in what it understood the facts to be at that time.  The law does not require that Cincinnati Insurance Company's investigation that led to Ms. Lentz's discharge be perfect, nor does it require that the investigation leave no stone unturned.  Even if you find that there were flaws in Cincinnati Insurance Company's investigation or there were things it could have done better, you must render a verdict in favor of Cincinnati Insurance Company if you find that it made a reasonably informed decision based on an honest belief that Ms. Lentz had engaged in wrongdoing.

27

Authority:

     *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1116-17 (6th Cir. 2001) (employer has "honest belief" where reasonably relied on the "particularized facts" that were before it at the time the decision was made); *Smith v. Chrysler Corp.*, 155 F.3d 799, 806-07 (6th Cir. 1998) (not required that employer's decisional process be "optimal" or that it left "no stone unturned"; rather, issue is whether employer made a "reasonably informed" and "considered" decision); *Elliot v. Group Med. & Surg. Serv.*, 714 F.2d 556 (5th Cir. 1983), *cert. denied*, 104 S. Ct. 2658 (1984); *Smith v. Flax*, 618 F.2d 1062 (4th Cir. 1980); *Turner v. Texas Instruments, Inc.*, 555 F.2d 1251 (5th Cir. 1977); *Vaughn v. Watkins Motor Lines, Inc.*, 2000 U.S. Dist. LEXIS 22048, at \*29 (S.D. Ohio Dec. 6, 2000) (quoting *Brocklehurst v. PPG Indus., Inc.*, 123 F.3d 890, 898 (6th Cir. 1997)); *Taber v. Christ Hosp.*, 723 F. Supp. 1236, 1243 (S.D. Ohio 1989); *Smith v. SEIU, Local 79, AFL-CIO*, 2005 U.S. App. LEXIS 645, at \*22 (6th Cir. Jan 12, 2005) ("The question is not whether [Plaintiff's] evidence was credible. The question is whether [Defendant] honestly believed in its proffered nondiscriminatory reason for discharging [Plaintiff]."); *Chappell v. GTE Prods. Corp.,* 803 F.2d 261, 266 (6th Cir. 1986) ("[Courts] may not, however, focus on the soundness of an employer's business judgment"); *Hoschak v. Defiance County Engineers*, 2002 U.S. Dist. LEXIS 17685, at \*9 (N.D. Ohio Sept. 11, 2002).

Given _____

Given as Modified _____

Refused _____

Defendant CIC's Proposed Jury Instruction No. 15

**Jury Must Not Substitute Its Judgment for Cincinnati Insurance Company's Judgment**

You may not return a verdict for Ms. Lentz just because you might disagree with Cincinnati Insurance Company's business decision to discharge Ms. Lentz or because you believe it to be harsh or unreasonable. You are instructed that it is <u>not</u> your job, nor would it be proper, for you to second-guess Cincinnati Insurance Company's judgment in making its decision to discharge Ms. Lentz. The issue before you is not whether you agree with Cincinnati Insurance Company's actions, but whether Cincinnati Insurance Company engaged in illegal gender discrimination when it terminated Ms. Lentz. An employer such as Cincinnati Insurance Company has the right to make subjective or even incorrect personnel decisions as long as the employer does not engage in illegal discrimination. Thus, the law does not require Cincinnati Insurance Company to be right in its treatment of Ms. Lentz – the law only requires that Cincinnati Insurance Company not have terminated Ms. Lentz because of her gender.

Authority:

*Fite v. First Tennessee Prod. Credit Ass'n.*, 861 F.2d 884, 891 (6th Cir. 1988) (the law is clear that "[a] business decision need not be good or even wise. It simply has to be nondiscriminatory"); *Wrenn v. Gould*, 808 F.2d 493, 502 (6th Cir. 1987) ("In a Title VII claim, it's the employer's motivation and intent, not its business judgment, which is at issue."); *Wilkins v. Eaton*, 790 F.2d 515, 521 (6th Cir. 1986) ("The fact-finder may not focus on the soundness of the employer's business judgment . . ."); *Ridenour v. Lawson Co.*, 791 F.2d 52, 57 (6th Cir. 1986); *Walker v. AT&T Technologies*, 995 F.2d 846 (8th Cir. 1993); *Vaughn v. Watkins Motor Lines, Inc.*, 2000 U.S. Dist. LEXIS 22048, at *29 (S.D. Ohio Dec. 6, 2000) (quoting *Brocklehurst v. PPG Indus., Inc.*, 123 F.3d 890, 898 (6th Cir. 1997)); *Taber v. Christ Hosp.*, 723 F. Supp. 1236, 1243 (S.D. Ohio 1989) ("[T]he ADEA does not preclude an employer from making a subjective business judgment to discharge an employee for a reason which is not discriminatory."); *McGruder v. Frank*, 825 F. Supp. 1300, 1310 (S.D. Ohio 1992) ("The issue in a discrimination case is not whether the basis on which the employer acted in taking a personnel action is 'sound'; rather, the issue is whether the reasons articulated by the employer are a pretext for discrimination."); *Nix v. WLCY Radio*, 738 F.2d 1181, 1187, *reh'g denied* (en banc), 747 F.2d 710 (11th Cir. 1984) ("Title VII does not require the employer to have good cause for its decisions. An employer may [refuse to promote a person] for a good reason, a bad reason, a

reason based on erroneous facts or for no reason at all, as long as its action is not for a discriminatory reason.")


Given _____

Given as Modified _____

Refused _____

Defendant CIC's Proposed Jury Instruction No. 17

**Consider Damages Only If Necessary**

If Ms. Lentz has proven by a preponderance of the evidence that Cincinnati Insurance Company terminated her because she is female, then you must determine the damages to which Ms. Lentz may be entitled.

However, you should not infer that Ms. Lentz is entitled to recover damages merely because I am instructing you on the elements of damages.  It is exclusively your function to decide upon liability, and I am instructing you on damages only so that you will have guidance should you decide that Ms. Lentz is actually entitled to recover any damages.

Authority:

*Modern Federal Jury Instructions* ¶ 77.01, Instruction 77-1.

Given _____

Given as Modified _____

Refused _____

31

Defendant CIC's Proposed Jury Instruction No. 18

**Lentz's Duty To Mitigate Damages**

You are instructed that Ms. Lentz had a duty to mitigate any alleged damages. This means that she had a duty to use "reasonable care and diligence" to reduce her damages by looking for and accepting another job. She was required to look for and accept a job "substantially equivalent" to her position as an attorney at Cincinnati Insurance Company. A "substantially equivalent" job is one that provides similar compensation, job responsibilities, working conditions and status. You should evaluate whether Ms. Lentz used "reasonable care and diligence" to find such a job by considering her professional qualifications, the job market, and the efforts she made to pursue new employment. If you find that Ms. Lentz did not use reasonable care and diligence to look for a substantially equivalent job you must find that she failed to mitigate her damages. If you find that Ms. Lentz rejected job offers for substantially equivalent positions, you must find that Ms. Lentz failed to mitigate her damages. The law says that exercising "reasonable care and diligence" to find another job may require that the plaintiff relocate to another city where there are more opportunities.

If you determine, by a preponderance of the evidence, that Ms. Lentz failed to seek out or take advantage of a substantially equivalent job, you must reduce any award of damages to Ms. Lentz by the amount of wages and fringe benefits that she would have earned if she had sought out or taken advantage of that opportunity.

32

Authority:

     *Ford Motor Co. v. EEOC*, 458 U.S. 219, 102 S. Ct. 3057 (1982); *Shore v. Federal Express*, 42 F.3d 373, 377 (6th Cir. 1994); *Ford v. Nicks*, 866 F.2d 865 (6th Cir. 1989) (plaintiff must use reasonable diligence and care in seeking a comparable position); *Clarke v. Frank*, 960 F.2d 1146 (2d Cir. 1992) (plaintiff must actually seek employment in order to attempt to mitigate damages) ; *Rasimas v. Michigan Dept. of Mental Health*, 714 F.2d 614, 623-24 (6th Cir. 1983); *Wagner v. Dillard Dep't Stores*, Inc., 17 Fed. Appx. 141, 153 (4th Cir. 2001) (per curiam) (backpay award is properly reduced where plaintiff does not actively pursue employment); *Tramill v. UPS*, 10 Fed. Appx. 250, 255 (6th Cir. 2001) (plaintiff's damages were cut-off from the date plaintiff left employment in a similar job and failed to apply for any jobs thereafter); *Hyland v. Kenner Products Co.*, 1976 U.S. Dist. LEXIS 15247, at *40 (S.D. Ohio 1976) (relocation may be required); *Jones v. Ravens, Inc.*, 108 F. Supp. 2d 803, 810 (N.D. Ohio 2000) (must consider geographical area to which individual had reasonable access); *Hayse v. Tennessee Dept. of Conservation*, 750 F. Supp. 298 (E.D. Tenn. 1989) (unreasonable to refuse job 60 miles away); *Hine v. Mineta*, 238 F. Supp. 2d 497, 499-501 (E.D.N.Y. 2003) (back pay award under Title VII precluded where plaintiff had no employment for several years, and there was no evidence that, other than a three month church clerical job, she ever sought another job); *Leidel v. Ameripride Servs.,* 276 F. Supp. 2d 1138 (D. Kan. 2003) (failure to search for alternative work, refusal to accept substantially equivalent employment, or voluntary quitting alternative employment without good cause demonstrate a failure to mitigate damages).

Given _____

Given as Modified _____

Refused _____

33

Defendant CIC's Proposed Jury Instruction No. 19

**Damages – Lost Wages**

If you find that Ms. Lentz has proven all the elements of her gender discrimination claim, then you may award Ms. Lentz lost wages. That means that you can award Ms. Lentz an amount equal to the pay and fringe benefits that she would have received from Cincinnati Insurance Company, from the time of her discharge until December 31, 2001. You must deduct from this amount any earnings and benefits actually received by Ms. Lentz from other employment after she stopped working for Cincinnati Insurance Company. You must also consider whether Ms. Lentz exercised her duty to mitigate her damages. See separate instruction on "Lentz's Duty To Mitigate Damages" (No. __).

Remember, in awarding damages, you must not speculate, guess, or conjecture. Lost wages damages are meant to put Ms. Lentz in the economic position she would have occupied if discrimination had not occurred. They are not intended to put Ms. Lentz in a better position. Lost wages damages should not be awarded or increased as punishment against Cincinnati Insurance Company or in sympathy toward Ms. Lentz.

Authority:

*Guthrie v. J.C. Penney Co., Inc.*, 803 F.2d 202, 209 (5th Cir. 1986); *Walker v. Petite Construction Co.*, 605 F.2d 128, 130 (4th Cir. 1979); *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1022 (1st Cir. 1979); *Vasquez v. Eastern Airlines, Inc.*, 579 F.2d 107 (1st Cir. 1978).

Given _____

Given as Modified _____

Refused _____

34

Defendant CIC's Proposed Jury Instruction No. 20

**Compensatory Damages**

In the event you are convinced by a preponderance of the evidence that Ms. Lentz has proven she was terminated because she is female**,** then you may, but are not required to, award compensatory damages. If you decide compensatory damages are appropriate, you must determine an amount of compensatory damages, if any, to which Ms. Lentz is entitled. If you find that Cincinnati Insurance Company is not liable to Ms. Lentz or that compensatory damages are not appropriate, then you are not to determine the amount of these damages.

Compensatory damages may cover the mental aspects of injury, tangible or intangible. They may include personal humiliation, mental anguish and suffering and loss of reputation, if there is competent evidence concerning such injury. Compensatory damages are intended to make a party whole for any loss they may have suffered as a result of another party's actions and are not intended as punishment.

Compensatory damages cannot be based upon speculation or possibility of injury. You may award Ms. Lentz only such damages as will reasonably compensate for any proved injury and damage that is the direct consequence of the defendants' conduct or actions.

There is no exact standard for fixing the amount of compensatory damage. Any such award should be fair and just in light of the evidence. It is for the jury to determine what compensatory damages, if any, will be awarded.

Authority:

*Modern Federal Jury Instruction* ¶77.01, Instruction 77.3.

Given _____

Given as Modified _____

Refused _____

35

Defendant CIC's Proposed Jury Instruction No. 21

**Punitive Damages**

If you find that Ms. Lentz has proven her claim that she was terminated because she is female, then you may, but are not required, to award her punitive damages. If you were to award punitive damages, you must state the amount of those damages on the verdict form separately from the amount of any compensatory or lost wages damages you may award.

You may not award punitive damages unless Ms. Lentz has proven by a preponderance of the evidence that Cincinnati Insurance Company acted with malice or with reckless indifference to her federal rights

**Malice or Reckless Indifference to Federal Rights.** In order to prove this, Ms. Lentz must prove conscious wrongdoing on the part of Cincinnati Insurance Company. She must show that Cincinnati Insurance Company terminated her with the knowledge that its action violated federal law or with knowledge that its action risked violating federal law. Actions that merely show a lack of empathy or are callous do not rise to the level of "malice or reckless indifference to federal rights." Moreover, if you find that Cincinnati Insurance Company had an honest or good faith belief that it was discharging Ms. Lentz because she had taken funds belonging to Cincinnati Insurance Company, placed them in her personal checking account, and then wrote checks for her personal expenses using these funds to cover them, or that it did not realize it was violating Ms. Lentz's federal rights, then punitive damages must not be awarded.

**Good Faith Efforts to Comply With Law.** Cincinnati Insurance Company may demonstrate that it engaged in good-faith efforts to comply with anti-discrimination law by showing that it

36

had a written or formal anti-discrimination policy and that it engaged in good-faith efforts to

implement the policy.


Authority:

   *Kolstad v. ADA*, 527 U.S. 526 (1999); *Hall v. Consolidated Freightways Corp. of Delaware*, 337 F.3d 669 (6th Cir. 2003) (explaining what constitutes "good faith" efforts to comply with law); *Virostek v. Liberty Township Police Dept.*, 2001 U.S. App. LEXIS 15909, at *33 n.7 (6th Cir. 2001) (under Ohio law, nominal damages alone do not support punitive damages award); *Turic v. Holland Hospitality, Inc.*, 85 F.3d 1211, 1215-16 (6th Cir. 1996) (actions showing mere lack of empathy do not support punitive damages); *Webner v. Titan Distribution, Inc.*, 267 F.3d 828, 837 (8th Cir. 2001) (punitive damages not justified where employer had good faith belief it was acting for legitimate, non-discriminatory reasons and/or did not perceive that it was running afoul of federal law); *Gile v. United Airlines, Inc.*, 213 F.3d 365, 375 (7th Cir. 2000) (same); *Weissman v. Dawn Joy Fashions, Inc.*, 214 F.3d 224, 236 (2nd Cir. 2000) (same); *Marcano-Rivera v. Pueblo Int'l, Inc.*, 232 F.3d 245 (1st Cir. 2000) (institution of policies and training constitute "good faith" effort); *Woodward v. Ameritech Mobile Comms., Inc.*, 2000 U.S. Dist. LEXIS 7133 at *43-44 (S.D. Ind. 2000) (defendant's adoption of anti-discrimination policies and education of its employees about these policies is important in deciding whether it can avoid vicarious punitive liability); *Fuller v. Caterpillar, Inc.*, 124 F. Supp. 2d. 610, 617-18 (N.D. Ill. 2000) (no punitive damages where defendant posted and distributed anti-harassment policy and provided training); *Jaudon v. Elder Health, Inc.*, 125 F. Supp. 2d 153, 171-73 (D. Md. 2000) (employer demonstrated "good faith effort" by publishing, maintaining and distributing policies).


Given _____

Given as Modified _____

Refused _____

37

Defendant CIC's Proposed Jury Instruction No. 22

**Unanimous Decision**

Your decisions must represent the considered judgment of every juror. It will be necessary that you all agree to any decision and indicate that agreement by signing the appropriate forms.

Given _____

Given as Modified _____

Refused _____

Defendant CIC's Proposed Jury Instruction No. 24

**Special Interrogatories and Verdict Form**

Upon retiring to the jury room, you should first select one of your number to act as your foreperson who will preside over your deliberations and who will be your spokesperson here in Court. Other than the foregoing, that person will have no greater nor lesser function than any other juror.

Exhibits which have been admitted into evidence and a copy of these instructions will go to the jury room with you. Attached to these instructions is a set of questions called special interrogatories and verdict forms related to Ms. Lentz's claim of gender discrimination against Cincinnati Insurance Company, which will also accompany you to the jury room. You will also have separate specific instructions and special interrogatories and verdict forms related to Ms. Lentz's claims against Mr. Balzano and related to Cincinnati Insurance Company's claim of conversion against Ms. Lentz.

The special interrogatories and verdict form are made up of questions concerning the important issues in the case. Unless otherwise indicated, these questions are to be answered "yes" or "no." Your answers must be unanimous and must reflect the conscientious judgment of each juror. You should answer every question, except where the form indicates otherwise.

Authority:

*Modern Federal Jury Instructions* ¶78.01, Instructions 78-9; ¶78-19, Instruction 78-5.

Given _____

Given as Modified _____

Refused _____

**B.    DEFENDANT BALZANO'S PROPOSED JURY INSTRUCTIONS RELATED TO CLAIMS AGAINST HIM FOR TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

Defendant Balzano's Proposed Jury Instruction No. 1

## Equal Before The Law

One of your jobs as jurors in this case is to determine the issues of fact presented by the claims of Plaintiff Mary Lentz against Defendant David Balzano.  You are called upon to decide more than one issue with respect to Mr. Balzano.  You must decide whether David Balzano, in his position as the manager of the Dayton law office where Ms. Lentz worked, intentionally inflicted severe emotional distress on Ms. Lentz and/or unlawfully interfered with her business relationship with Cincinnati Insurance Company.

You are to perform this duty without bias or prejudice as to any party.  Our system of law does not permit jurors to be governed by sympathy, prejudice, or public opinion.  You must carefully and impartially consider all the evidence in the case, follow the law as stated by the Court, and reach a just verdict, regardless of the consequences.  This case should be considered and decided by you as an action between persons of equal worth and equal standing in the community.

Sympathy for either party, or prejudice against either party, should play no part in your deliberations or in your decision.  All parties stand equal before the law and are to be dealt with as equals in a court of justice.

Authority:

Devitt & Blackmar § 71.04.

Given _____

40

Given as Modified _____

Refused _____

41

Defendant Balzano's Proposed Jury Instruction No. 2

**The Institution Of These Claims**

The mere fact that Mary Lentz brought these claims against David Balzano is not

evidence that Mr. Balzano did anything wrong or is liable in any way.


Authority:

　　　　Fed.R.Civ.P. 3.

Given _____

Given as Modified _____

Refused _____

42

Defendant Balzano's Proposed Jury Instruction No. 3

**The Parties' Claims And Responses**

Plaintiff Mary Lentz is suing David Balzano, who was her immediate supervisor and the managing attorney of the Dayton law office where she worked.  She claims that Mr. Balzano unlawfully interfered with her business relationship with Cincinnati Insurance Company when he reported to his boss, Mark Huller, that Ms. Lentz was directing that reimbursement checks for copies paid for by Cincinnati Insurance Company be made out to her personally.  Ms. Lentz also claims that Mr. Balzano's action in reporting this matter to Mr. Huller was extreme and outrageous conduct toward her that rose to the level of intentional infliction of severe emotional distress that no reasonable person would have been able to withstand.

Mr. Balzano denies Ms. Lentz's claims.  Mr. Balzano asserts that he was acting within the scope of his role as managing attorney for the Dayton law office when he reported to Mr. Huller that Ms. Lentz had directed that reimbursement checks for copies paid for by the company be made out to her personally.  Mr. Balzano denies unlawfully interfering with Ms. Lentz's relationship with her employer, Cincinnati Insurance Company, or engaging in any extreme or outrageous misconduct that caused Ms. Lentz severe emotional distress that no reasonable person could have withstood.

Given _____

Given as Modified _____

Refused _____

43

Defendant Balzano's Proposed Jury Instruction No. 4

**Burden Of Proof / Preponderance Of Evidence**

In a civil action such as this one, the burden is on the person suing to prove every single essential element of each of their claims by a preponderance of the evidence. The burden of proof is on Ms. Lentz to prove that Mr. Balzano unlawfully interfered with her business relationship with Cincinnati Insurance Company and that Mr. Balzano caused her severe emotional distress.

This set of instructions will outline for you the essential elements that must be proven for each of the two claims brought by Ms. Lentz against Mr. Balzano. If Ms. Lentz fails to establish any essential element of a claim by a preponderance of the evidence, then you must find for Mr. Balzano on that claim.

What does a "preponderance of evidence" mean? To establish a fact by a preponderance of the evidence means to prove that the fact is more likely true than not true. A preponderance of the evidence means the greater weight of the evidence.

If you find that the weight of the evidence is equally balanced on any claim – that it is equally probable that Ms. Lentz is right as it is that David Balzano is right – or if you are unable to determine which side of an issue has been proven by a preponderance, then you must find against Ms. Lentz. Ms. Lentz bears the burden of proving all essential elements of her claims by a preponderance of the evidence. If she does not meet that burden, the claim fails.

Authority:

Devitt & Blackmar § 2.01; Modern Federal Jury Instructions ¶ 73.01, Instruction 73-2.

Given _____

Given as Modified _____

Refused _____

44

<u>Defendant Balzano's Proposed Jury Instruction No. 5</u>

**Ms. Lentz's Intentional Infliction of Emotional Distress Claim Against Mr. Balzano**

In order to prevail on her claim of intentional infliction of emotional distress against David Balzano, Ms. Lentz must prove by a preponderance of the evidence <u>all</u> of the following four elements:

(1)    The emotional distress suffered by Ms. Lentz was so severe and debilitating that a reasonable person could not endure it; <u>and</u>

(2)    Mr. Balzano either intended, or should have anticipated, that his actions would cause Ms. Lentz severe emotional distress; <u>and</u>

(3)    Mr. Balzano engaged in conduct so outrageous in character and extreme in degree that it went outside society's bounds of decency and should be regarded as atrocious and utterly intolerable; <u>and</u>

(4)    Mr. Balzano's conduct "proximately caused" severe emotional injury to Ms. Lentz.

**<u>What Constitutes "Severe and Debilitating" Emotional Distress</u>?**  In order to prevail on her intentional infliction of emotional distress claim, Ms. Lentz must prove by a preponderance of the evidence that, as a direct result of Mr. Balzano's alleged conduct, she suffered emotional distress that was both severe and debilitating, such that a reasonable person could not possibly endure it.   Such evidence must consist of something more than simply Ms. Lentz's testimony about any alleged severe emotional distress.  Ms. Lentz must present evidence from other sources that corroborate her assertion that she suffered emotional distress that was both severe and debilitating, such that a reasonable person could not possibly endure it.  Mere upset or hurt feelings, anger, grief, sadness, tearfulness, a feeling of emptiness or uncertainty, marital difficulties, nausea, loss of sleep or appetite, by way of example, do not necessarily rise to the level of severe and debilitating emotional distress.  Even diagnosed depression, treated with anti-depressant medications, may not qualify.  The fact that an individual was very shocked by

45

certain conduct or suffered anxiety also does not rise to the level of severe and debilitating

emotional distress under the law.  By way of example, "severe and debilitating emotional

distress" may include traumatically induced neurosis, psychosis, chronic depression, or phobia.

Evidence that medical assistance was not sought for alleged emotional distress and the lack of

any expert testimony regarding the alleged severity of alleged emotional distress or what caused

it, may be grounds for finding there was no intentional infliction of emotional distress.

**What Qualifies As Outrageous and Extreme Conduct?**  Outrageous and extreme conduct is

conduct so atrocious, so outrageous and so intolerable that it goes beyond what can be tolerated

in a civilized society.  Mere investigation of an employee for wrongdoing and the discharge of an

employee, even if motivated by discrimination, do not rise to the level of intentional infliction of

emotional distress.  In addition, mere insults, indignities and threats do not qualify as extreme

and outrageous conduct.  Even acts that you may find were inconsiderate, insensitive or unkind

do not qualify.  The law does not and should not intervene in every case where someone's

feelings are hurt or indignities occur.

**What Is Proximate Cause?**  In order to prove "proximate cause," Ms. Lentz must prove that

something Mr. Balzano did, and not some other independent condition or circumstance, was

more likely than not the direct cause of any alleged emotional distress.  If you find that Ms.

Lentz's alleged distress was at least equally the result of other causes, including her termination,

or if you cannot determine with reasonable certainty the cause of Ms. Lentz's distress, then you

must find in favor of Mr. Balzano on Ms. Lentz's intentional infliction of emotional distress

claim.

46

If you find that Ms. Lentz has failed to prove any one of the four elements above (p. 7) by a preponderance of the evidence, you must find in favor of Mr. Balzano on Ms. Lentz's intentional infliction of emotional distress claim.


Authority:

     *Godfredson v. Hess & Clark, Inc.*, 173 F. 3d 365, 376 (6th Cir. 1999); *Yeager v. Local Union 20*, 6 Ohio St. 3d 369, 453 N.E. 2d 666 (1983); *Paugh v. Hanks*, 6 Ohio St. 3d 72, 451 N.E. 2d 759 (1983); *Buckman-Pierson v. Brannon*, 159 Ohio App. 3d 12, 2004 Ohio 6074, 822 N.E.2d 830 (2d Dist. 2004) (in order to succeed on a claim for IIED, plaintiffs must present some evidence other than their own testimony as to what constitutes "severe emotional distress."); *Powell v. Grant Medical Ctr.*, 148 Ohio App. 3d 1, 771 N.E. 2d 874, 878 (Franklin Cty. 2002) (examples of what does and does not constitute severe emotional distress; expert testimony usually required); *Meyers v. Hot Bagels Factory, Inc.*, 131 Ohio App. 3d 82, 721 N.E.2d 1068 (Hamilton Cty. 1999); *Knief v. Minnich*, 103 Ohio App. 3d 103, 108, 658 N.E.2d 1072, 1075 (Logan Cty. 1995) (IIED claim failed where plaintiff did not seek "medical or psychological treatment or counsel in order to cope" with distress); *Dickerson v. Int'l United Auto Workers Union*, 98 Ohio App. 3d 171, 186-87, 648 N.E. 2d 40, 50-51 (Cuyahoga Cty. 1994) (noting that it "stands to reason that if plaintiffs' emotional distress was severe and debilitating they would have sought medical assistance or psychological counsel or therapy to relieve unendurable conditions."); *Dirham v. Van Wert County Hosp.*, 2000 U.S. Dist. LEXIS 6417 (N.D. Ohio Mar. 3, 2000) ("The settled rule in Ohio is that the mere claim that a termination was unjustified does not rise to the level of extreme and outrageous required to state a claim for intentional infliction of emotional distress."); *Black v. Columbus Pub. Schs.*, 124 F. Supp. 2d 550 (S.D. Ohio 2000) ("An adverse employment action, 'even if based upon discrimination, 'does not amount to extreme and outrageous conduct without 'proof of something more.'"); *Francis v. Gaylord Container Corp.*, 837 F. Supp. 858 (S.D. Ohio 1998); *Morgan v. Taft Place Med. Ctr., Inc.*, 1998 Ohio App. LEXIS 2541, at *11 (12th Dist. June 8, 1998) ("Beyond the inherently unpleasant circumstances of any termination, the language and tone of [Defendant] was not offensive or abusive. Unfortunately, [Plaintiff's] termination, in whatever location it took place, was likely to be an upsetting episode. However, the facts do not indicate that the actions of Bailey were extreme or outrageous."); *Katterhenrich v. Federal Hocking Local Sch. Bd. of Ed.*, 121 Ohio App. 3d 579, 591, 700 N.E.2d 626 (Ohio Ct. App. 1997) (in the employment context, "employees must expect to be evaluated, not always favorably; thus questioning, criticism, and discharge of an employee do not constitute outrageous conduct."); *Wilson v. Monarch Paper Co.*, 939 F.2d 1138, 1143 (5th Cir. 1991) (stating that only in the "most unusual cases" will conduct occurring in the employment context give rise to an independent claim for intentional infliction of emotional distress); *Westfall v. GTE North*, 956 F. Supp. 707, 718-719 (N.D. Tex. 1996) ("An employer's conduct is extreme and outrageous when that conduct exceeds all bounds usually tolerated by civilized society and is calculated to cause serious emotional distress.  It is not enough that [Defendant] may have acted with criminal or tortious intent or that its conduct may be characterized by malice.  It is not enough that

[Defendant] may have engaged in an organized and premeditated attempt to discharge [Plaintiff]. The conduct occurred within the course of a running employment dispute.").

Given _____

Given as Modified _____

Refused _____

CinLibrary 1508661v.1

48