EXHIBIT 6

JEFFREY D. PARKER, M.D., And MIRIAM B. PARKER, Plaintiffs-Appellees, v. I&F INSULATION COMPANY, INC., GRANT W. KIRBY, BARRY KIRBY, and PRIORITY 1 CONSTRUCTION SERVICES, INC., Defendants-Appellants.

APPEAL No. C-960602

COURT OF APPEALS OF OHIO, FIRST APPELLATE DISTRICT, HAMILTON COUNTY

1998 Ohio App. LEXIS 1187

March 27, 1998, Date of Judgment Entry on Appeal

**NOTICE:**

**PUB-STATUS: [*1]** THESE ARE NOT OFFICIAL HEADNOTES OR SYLLABI AND ARE NEITHER APPROVED IN ADVANCE NOR ENDORSED BY THE COURT. PLEASE REVIEW THE CASE IN FULL.

**PRIOR HISTORY:** Civil Appeal From: Hamilton County Court of Common Pleas. TRIAL NO. A-9501206.

**DISPOSITION-1:** Judgment Appealed From Is: Affirmed in Part, Reversed and Cause Remanded in Part; and Reversed and Final Judgment Entered in Part.

**HEADNOTES:** TORT MISCELLANEOUS - PROCEDURE/RULES - NEW TRIAL - DAMAGES - INSTRUCTIONS

**SYLLABUS:** The trial court did not abuse its discretion in excluding the testimony of a defense witness where defendants failed to timely notify the trial court or plaintiffs that the witness would be called to testify, thereby violating *Civ.R. 26(E)(1)(b)* and Loc.R. 15(B)(2) of the Hamilton County Court of Common Pleas.

The trial court did not abuse its discretion in denying defendants' motion for a new trial based on newly discovered evidence, where the evidence upon which they relied was discovered during, rather than after, the trial.

The trial court's award of attorney fees, including its application of a multiplier, was not an abuse of discretion.

The trial court erred in taxing certain expenses as costs where there was no statutory basis for [*2] the treatment of those expenses as costs.

The trial court erred in denying a motion for judgment notwithstanding the verdict on a claim treated by the parties as one for intentional infliction of emotional distress, where plaintiffs' evidence was insufficient to demonstrate that their emotional distress was serious, severe, and debilitating.

The trial court was without authority to modify the jury's verdict on claims for breach of contract and violations of the Consumer Sales Practices Act, where plaintiffs requested only in general terms that the verdict be modified and failed to seek relief in a manner authorized by law.

The trial court's instruction to the jury on the measure of damages for temporary damage to real estate was not erroneous, where there was no probability that the jury was misled by the instruction, and where the instruction was sufficiently clear to permit the jury to understand the law as it applied to the case.

The trial court did not err in awarding prejudgment interest under *R.C. 1343.03(A)* and (C), where damages were awarded on both contract and tort claims, and where there was evidence to support the conclusion that defendants had failed to make a good-faith [*3] effort to settle the case.

**COUNSEL:** Dinsmore & Shohl and Mark A. Vander Laan, for Plaintiffs-Appellees.

Benjamin, Yocum & Heather and Anthony J. Iaciofano, for Defendants-Appellants.

**JUDGES:** SUNDERMANN, Judge. HILDEBRANDT, P.J., and GORMAN, J., concur.

**OPINIONBY:** SUNDERMANN

**OPINION:** DECISION.

SUNDERMANN, Judge.

I. FACTS

In 1980, plaintiffs-appellees, Dr. and Mrs. Parker, purchased a home located on Grandin Road in Cincinnati, which, we are told, was built circa 1875. Shortly thereafter, the Parkers repainted the home. But, by 1993 or 1994, the Parkers determined that the home was again in need of repainting. The Parkers consulted

several carpenters and painters, but ultimately hired defendant-appellant n1 I&F Insulation Company, Inc., (I&F) to do the work on the home after seeing I&F's yellow-page advertisement, which stated that I&F was "licensed/bonded," and "state certified" for "lead paint abatement," and met "EPA and OSHA Standards." Those representations were confirmed verbally by an I&F employee, who also provided the Parkers with a business card containing similar information.

- - - - - - - - - - - - - - Footnotes - - - - - - - - -
- - - - - -

n1 In collective references to all defendants-appellants, we hereafter use the name "I&F."

- - - - - - - - - - - - End Footnotes- - - - - - -
- - - - - -

[*4]

The Parkers and I&F entered into two separate contracts, both executed on July 20, 1994, for the removal of lead paint from the home and for the installation of insulation in the home. The lead-paint contract required that I&F furnish all labor and materials, and undertake all necessary safety and protection measures. Furthermore, the contract provided that I&F would be responsible for decontamination facilities, air monitoring, removal of material containing lead, and final clearance to certify that all areas were in compliance with federal, state, and OSHA regulations. The contract provided that work was to be completed in approximately four weeks at a cost of $ 13,595. The insulation-contract price was $ 2,990, and work was to be completed in approximately eight working days.

I&F commenced work on the Parkers' home in July 1994, beginning with the paint removal project. Problems soon arose: work moved more slowly than anticipated; the Parkers complained that I&F's equipment was inadequate and that its workmen were insufficiently trained; and I&F complained that it could not complete the contract at the agreed price because of cost overruns stemming from the large number of existing [*5] coats of paint on the home. I&F eventually left the worksite in November 1994, after only partially completing the lead-paint removal and completing none of the insulation installation. The Parkers contended that I&F had damaged their home, had left their property covered with debris containing high levels of lead, and had abandoned a barrel filled with hazardous waste in their yard. They also alleged that 60 custom shutters had been removed from the home by I&F employees and had not been returned, despite repeated requests. I&F, in turn, demanded payment from the Parkers and stated that it would pursue collection remedies if payment was not received.

In March 1995, the Parkers brought suit against I&F, Grant Kirby (the owner of I&F), and Barry Kirby (the manager of I&F), asserting the following claims: breach of the lead-paint-removal and insulation contracts, fraudulent inducement, conversion of the shutters, intentional exposure to hazardous waste, intentional infliction of emotional distress, and violations of the Consumer Sales Practices Act (CSPA). In December 1995, they filed an amended complaint that named I&F Corporation, the parent of I&F, and Priority 1 Construction Services, [*6] the successor in interest to I&F, as additional defendants. In addition to the claims contained in the original complaint, the amended complaint alleged invasion of privacy, fraudulent transfer of assets, and that Grant Kirby was the "alter ego" of both I&F and I&F Corporation. n2

- - - - - - - - - - - - - - Footnotes - - - - - - - - -
- - - - - -

n2 I&F answered the complaint and asserted various counterclaims, none of which are relevant to this appeal.

- - - - - - - - - - - - End Footnotes- - - - - - -
- - - - - -

Following an eleven-day jury trial ending on April 23, 1996, the jury returned verdicts in favor of the Parkers on the following claims and in the following amounts:

(1)

breach of insulation contract: $ 0 in compensatory damages;

(2)

breach of lead paint removal contract: $ 76,604.13 in compensatory damages;

(3)

fraudulent inducement: $ 13,595 in compensatory damages and $ 20,000 in punitive damages;

(4)

conversion of shutters: $ 1,392.60 in compensatory damages and $ 1,000 in punitive damages;

(5)

1998 Ohio App. LEXIS 1187

intentional exposure to hazardous waste: $ 15,000 in compensatory damages **[*7]** and $ 50,000 in punitive damages;

(6)

CSPA claim: $ 13,595.

The jury also found for the Parkers on their claims of fraudulent transfer, successor in interest, and alter ego, but it denied the claims for intentional infliction of emotional distress and invasion of privacy.

Following the verdict, the Parkers filed a motion to conform the award of damages on the breach-of-insulation-contract and the CSPA claims to the evidence, for treble damages on the CSPA claim, and for prejudgment interest. They also filed a separate motion for attorney fees. Thereafter, I&F filed a motion for a new trial based on the trial court's refusal to allow the testimony of a last-minute witness and on the insufficiency of the evidence on the claim for intentional exposure to hazardous waste. The trial court granted the Parkers' motions, but denied I&F's motion. Therefore, the trial court entered judgment according to the jury's verdict, with the following modifications:

(1)

on the claim for breach of the insulation contract, judgment was entered against I&F in the amount of $ 3,542;

(2)

on the CSPA claim, judgment was entered against I&F and Barry Kirby, jointly and severally, **[*8]** in the amount of $ 76,604.13. This amount was then trebled to $ 229,812.39;

(3)

based on the jury's finding of a fraudulent transfer of assets, the trial court entered judgment against I&F, setting aside the transfer of I&F's tangible and intangible assets and making the assets available for execution to the extent necessary to satisfy the Parkers' claims;

(4)

based on the jury's finding that Priority 1 Construction Services, Inc., was the successor in interest to I&F, the trial court ordered that Priority 1 Construction Services, Inc., was jointly and severally liable for each claim in the aggregate amount of $ 410,946.12;

(5)

based on the jury's finding that Grant Kirby was the alter ego of I&F, the trial court ordered that Grant Kirby was personally liable for each claim in the aggregate amount of $ 410,946.12;

(6)

the trial court ordered that the Parkers were entitled to $ 71,230.66 in prejudgment interest and also ordered that interest would accrue at ten percent per annum from the date of the entry;

(7)

the trial court awarded $ 176,154 in attorney fees; and

(8)

the trial court awarded $ 12,533.43 in costs.

I&F **[*9]** timely appeals the judgment of the trial court and brings eight assignments of error.

II. FIRST ASSIGNMENT

In the first assignment of error, I&F asserts the following: (1) that the trial court abused its discretion in granting the Parkers' motion in limine to exclude the testimony of proposed witness John Dahlman, and (2) that the trial court erred in denying I&F's motion for a new trial based on the exclusion of Dahlman's testimony. We conclude that the trial court did not abuse its discretion in granting the motion in limine or in denying the motion for a new trial. Therefore, the first assignment of error is without merit.

A. MOTION IN LIMINE

On the evening of April 16, 1996, after approximately one week of trial and the conclusion of the Parkers' case-in-chief, I&F notified the Parkers that it intended to call Dahlman to testify as a defense witness. Dahlman's proposed testimony included both matters of fact and matters of opinion. Despite a discovery deadline of March 15, 1996, I&F had not previously notified either the court or the Parkers that it intended to call Dahlman as a witness.

On April 17, 1996, a hearing was held in chambers on the Parkers' **[*10]** motion in limine to exclude Dahlman as a witness. During this hearing, the trial

1998 Ohio App. LEXIS 1187

court determined that Jack Carroll, an agent and employee of Barry Kirby, had known of Dahlman as early as the second day of trial, April 10, 1997. Based on this determination, as well as its belief that it would be unfair to allow Dahlman to testify after the Parkers had prepared and presented their case-in-chief without the benefit of knowing that he would be called as a witness, the court excluded Dahlman's testimony.

*Civ.R. 26(E)(1)(b)* requires that parties supplement their discovery responses with respect to any question directly addressed to the identity of persons expected to be called as expert witnesses at trial. In addition, Loc.R.15(B)(2) of the Hamilton County Court of Common Pleas mandates that a party file with the court, no later than two days prior to the date of pretrial conference, a pretrial statement containing, among other things, a list of all witnesses who will testify at trial and copies of the opinions of all persons who may be called as expert witnesses. I&F's untimely disclosure of Dahlman was in violation of both *Civ.R. 26(E)(1)(b)* and Loc.R. 15(B)(2).

In *Jones v.* [*11] *Murphy n3* , the Ohio Supreme Court held that, under *Civ.R. 37*, a court may exclude expert testimony as a sanction for a violation of *Civ.R. 26(E)(1)(b)*. The court reasoned that imposing sanctions for discovery violations resulting from untimely disclosures may be necessary if the goal of eliminating surprise is to be achieved:

One of the purposes of the Rules of Civil Procedure is to eliminate surprise. This is accomplished by way of a discovery procedure which mandates a free flow of accessible information between the parties upon request, and which imposes sanctions for failure to timely respond to reasonable inquiries. n4

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 (1984), *12 Ohio St. 3d 84, 465 N.E.2d 444*, syllabus.

n4 *Id. at 85, 465 N.E.2d at 446.*

- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Shortly thereafter, the court stated that the reasoning in *Jones*, which was based on the rules of civil procedure, was no less compelling when a local rule of court was at issue. n5 Therefore, concluded the court, expert testimony may also be excluded under *Civ.R. 37* as a sanction [*12] for a violation of a local rule. n6 It follows in this case that the trial court could properly exclude Dahlman's opinion testimony under *Civ.R. 37*

based on I&F's violation of either *Civ.R. 26* or Loc.R. 15.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n5 *Paugh & Farmer, Inc. v. Menorah Home for Jewish Aged (1984)*, 15 Ohio St. 3d 44, 45, 472 N.E.2d 704, 705.

n6 *Id. at 46, 472 N.E.2d at 705.*

- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

I&F asserts that its untimely disclosure of Dahlman as a witness was not a result of its own bad intentions or negligence, but rather the result of the Parkers' failure to disclose during discovery that Dahlman had information relevant to the lawsuit. But the intent or motive of a noncomplying party is not a relevant factor in a court's determination of whether to exclude testimony as a sanction for noncompliance with discovery rules. n7 The key element in the analysis is the existence and effect of prejudice resulting from the noncompliance. n8 Indeed, even in the absence of willful non-compliance, a court may properly exclude testimony where a party [*13] is prejudiced by the other party's untimely disclosure. n9 Therefore, I&F's argument regarding the absence of willful noncompliance is without consequence.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n7 *Huffman v. Hair Surgeon, Inc. (1985), 19 Ohio St. 3d 83, 85, 482 N.E.2d 1248, 1250; Savage v. Correlated Health Services, Ltd. (1992), 64 Ohio St. 3d 42, 49, 591 N.E.2d 1216, 1221* (H. Brown, J., concurring in part and dissenting in part); *Wright v. Structo (1993), 88 Ohio App. 3d 239, 623 N.E.2d 694.*

n8 *Huffman, supra.*

n9 *Huffman, supra.*

- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

I&F also argues that, because Dahlman was to provide both expert and factual testimony, it was improper for the trial court to exclude the entirety of his testimony under *Civ.R. 37* as a sanction for failing to comply with *Civ.R. 26(E)(1)(b)*. I&F reasons that the court had authority under *Civ.R. 37* to exclude only opinion testimony because *Civ.R. 26(E)(1)(b)* relates

1998 Ohio App. LEXIS 1187

specifically to expert witnesses. I&F, however, violated not only *Civ.R.26 (E)(1)(b)*, but also Loc.R. 15(B)(2), which applies **[*14]** to both fact and expert witnesses. A court may impose sanctions under *Civ.R. 37* for violations of either of these rules. n10 Thus, it was not improper for the trial court to exclude both Dahlman's factual testimony and his expert testimony as a sanction for noncompliance with these discovery rules. Furthermore, if I&F wished to have Dahlman's fact testimony and opinion testimony considered separately, it was I&F's responsibility to separate the two, not the responsibility of the trial court. n11

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n10 *Loc.R. 15(B)(3) specifically provides that a court may impose sanctions as authorized by Civ. R. 37(B) for a failure to comply with the requirements of Loc.R.15(B).*

n11 *Nakoff v. Fairview General Hospital (1996), 75 Ohio St. 3d 254, 258, 662 N.E.2d 1, 4.*

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Although we concede that the exclusion of testimony is a severe sanction, we conclude that it was not an abuse of discretion for the trial court to conclude here that, if a just result was to be had, it was necessary to exclude Dahlman as a witness.

**[*15] B. MOTION FOR NEW TRIAL**

I&F asserts that the trial court erred in failing to grant its motion for a new trial where there existed (1) an abuse of discretion which prevented I&F from having a fair trial, and (2) newly discovered evidence, material to I&F's case, which could not have been discovered prior to trial in the exercise of due diligence.

The alleged abuse of discretion to which I&F refers is the trial court's exclusion of Dahlman as a witness. We have already determined, however, that this exclusion was not an abuse of discretion. Therefore, I&F was not entitled to a new trial on this basis.

If I&F was to prevail on its motion for a new trial based on the existence of newly discovered evidence, it had to demonstrate to the trial court that Dahlman's proffered testimony (1) would probably change the result of the verdict if a new trial was granted; (2) was discovered since the trial; (3) could not have been

discovered before trial in the exercise of due diligence; (4) was material to the issues in the case; (5) was not merely cumulative; and (6) was not used merely to impeach or contradict former evidence. n12 It was within the sound discretion of the trial court **[*16]** to grant or deny the motion on this basis. n13

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n12 *Sheen v. Kubiac (1936), 131 Ohio St. 52, 1 N.E.2d 943,* paragraph three of the syllabus.

n13 *Douglas Electric Corp. v. Grace (1990), 70 Ohio App. 3d 7, 16, 590 N.E.2d 363, 368.*

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Here, I&F failed to satisfy the second prong of the test because the evidence in question, Dahlman's testimony, was not discovered *after the* trial. Rather, it was discovered *during* trial. By definition, then, this testimony was not newly discovered evidence. Therefore, the trial court properly denied the motion for a new trial based on newly discovered evidence.

For these reasons, I&F's first assignment of error is not well taken.

## III. SECOND ASSIGNMENT

In its second assignment of error, I&F asserts that the trial court erred in awarding attorney fees and costs to the Parkers. We conclude that the trial court did not abuse its discretion in awarding fees in the amount of $ 176,154, but that the award of $ 12,533.43 in costs was erroneous. Therefore, **[*17]** I&F's second assignment of error is sustained in part and overruled in part.

### A. ATTORNEY FEES

According to I&F, the trial court's award of attorney fees was flawed in the following two respects: (1) the amount of fees awarded was unreasonable because, in calculating the fees, the court included hours expended on unsuccessful claims, hours expended unreasonably, and hours inadequately documented; and (2) the court improperly increased the total fees awarded by multiplying the attorney fees by 1.5.

Reasonable attorney fees may be awarded to the prevailing party in a tort case if punitive damages have been awarded. n14 And attorney fees may be awarded in a case where a knowing violation of the Consumer Sales Practices Act is established. n15

- - - - - - - - - - - - - - Footnotes - - - - - - - - - -
- - - - - -

n14 *Columbus Finance, Inc. v. Howard (1975), 42 Ohio St. 2d 178, 183, 327 N.E.2d 654, 658; Williams v. ITT Financial Services, 1997 Ohio App. LEXIS 2721 (June 25, 1997),* Hamilton App. No. C-960234, unreported.

n15 *R.C. 1345.09(F)(2).*

- - - - - - - - - - - - End Footnotes- - - - - - - -
- - - - - -

Here, the jury awarded punitive damages on several [*18] tort claims and also found that I&F had knowingly violated the Consumer Sales Practices Act. Furthermore, the Ohio Supreme Court has stated that a trial court's calculation of attorney fees should not be disturbed on appeal, absent a showing of abuse of discretion:

Unless the amount of fees awarded is so high or so low as to shock the conscience, an appellate court will not interfere. The trial judge [who] participated not only in the trial but also in many of the preliminary proceedings leading up to the trial has an infinitely better opportunity to determine the value of services rendered by lawyers who have tried a case before him than does an appellate court. n16

- - - - - - - - - - - - - - Footnotes - - - - - - - - - -
- - - - - -

n16 *Bittner v. Tri County Toyota, Inc. (1991), 58 Ohio St. 3d 143, 146, 569 N.E.2d 464, 467* (quoting *Brooks v. Hurst Buick-Pontiac-Olds-GMC, Inc. [1985], 23 Ohio App. 3d 85, 91, 491 N.E.2d 345, 351).*

- - - - - - - - - - - - End Footnotes- - - - - - - -
- - - - - -

The method for calculating attorney fees is set forth in *Bittner v. Tri-County Toyota, Inc.* n17 The Ohio Supreme Court stated in [*19] *Bittner* that, when awarding reasonable attorney fees, the trial court should first calculate the number of hours reasonably expended on the case and then multiply that number by a reasonable hourly rate. n18 The product of these two numbers is the "lodestar." After calculating the lodestar, the trial court may modify the number arrived at upward or downward by applying the factors listed in DR 2-106(B), as well as the important factor of "results obtained." n19 This modification is often referred to as "applying a multiplier."

- - - - - - - - - - - - - - Footnotes - - - - - - - - - -
- - - - - -

n17 *58 Ohio St. 3d at 143, 569 N.E.2d at 464.*

n18 *Id.*

n19 *Id. at 145, 569 N.E.2d at 467.*

- - - - - - - - - - - - End Footnotes- - - - - - - -
- - - - - -

A review of the record reveals that the trial court's calculation of attorney fees comports with the guidelines set forth in *Bittner.* First, the trial court found that the Parkers' counsel expended 858.9 hours on the case. In doing so, the court determined that the Parkers' case involved a common core of facts and related legal theories, which made it difficult or impossible [*20] to divide the hours expended on a claim-by-claim basis. Because the claims were so interrelated, the trial court concluded that the Parkers were entitled to recover fees for all of the hours expended on the case, and not only the hours expended on claims that were successful or on claims for which fees could be awarded.

I&F, citing *Hensley v. Eckerhart* n20 and *Bittner,* asserts that the Parkers were not entitled to attorney fees for hours expended on unsuccessful claims or on claims for which fees could not have been awarded. As a rule, a trial court must separate unsuccessful claims and claims for which attorney fees may not be awarded from successful claims for which attorney fees may be awarded, and may only award attorney fees for the latter category of claims. n21 However, the U.S. Supreme Court has also stated that it is not always possible to divide claims in this fashion:

- - - - - - - - - - - - - - Footnotes - - - - - - - - - -
- - - - - -

n20 *Hensley v. Eckerhart (1983), 461 U.S. 424, 103 S. Ct. 1933, 76 L. Ed. 2d 40.*

n21 *Id. at 434-435, 103 S. Ct. at 1940; Bittner, supra, at 145, 569 N.E.2d at 465.*

- - - - - - - - - - - - End Footnotes- - - - - - - -
- - - - - -

[*21]

In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making

it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation. n22

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n22 *Hensley, supra.*

- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Because the Parkers' claims presented a common core of facts and related legal theories, we conclude that it was permissible for the trial court to treat the total number of hours expended on all claims as reasonably expended hours.

I&F also argues that the trial court improperly calculated the number of hours expended because it included hours that were unreasonably expended and hours that were inadequately documented. The trial court, however, determined [*22] that the expenditure of time on the case by the Parkers' counsel was reasonable and that sufficient documentation was provided. We will not disturb these determinations.

After determining that the reasonable number of hours expended on the case amounted to 858.9, the trial court multiplied this number by counsels' respective hourly rates. n23 The judge concluded that $ 117,436, the product of the two numbers, was a reasonable attorney fee for the case. The court then adjusted the fee upward to $ 176,154 by applying a multiplier of 1.5. In doing so, the court specifically noted the complexity of the case and the degree of success enjoyed by the Parkers as factors justifying the increase in the award of fees.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - -

n23 I&F does not assert that the hourly rates of the Parkers' counsel were unreasonable. Furthermore, the evidence presented to the trial court demonstrated that these hourly rates were in fact reasonable. Indeed, I&F's own expert testified that the hourly rates were not unreasonable.

- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - -

Because the [*23] trial court's award of attorney fees, including its application of the multiplier, was not so

high as to shock the conscience, we are unable to conclude that the award amounted to an abuse of discretion. Therefore, we overrule I&F's second assignment of error as it relates to the award of attorney fees by the trial court.

B. COSTS

I&F also asserts that the trial court erred in awarding costs to the Parkers in the amount of $ 12,533.43 and asks that we vacate this award. Although we conclude that the trial court did err in taxing these costs, our reasoning differs from that offered by I&F.

I&F argues that the trial court was required to undertake the following two-step analysis to determine whether an expense was allowable as a taxable cost: (1) determine whether the expense was a litigation expense or a personal expense (an expense that is vital and necessary to the litigation is a litigation expense), and (2) determine whether any of the litigation expenses should have been taxed to nonprevailing parties. In so arguing, I&F relies on *Vinci v. Ceraolo*, n24 an Eighth Appellate District case. The two-step analysis set forth in *Vinci* was first announced by the Eighth Appellate [*24] District in *Jones v. Pierson*, n25 where the court held that there need not be a statutory basis for taxing an expense as a cost. *Jones*, however, has been heavily criticized by this and other courts. n26 Thus, I&F's reliance on *Vinci*, the progeny of *Jones*, is misplaced.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - -

n24 (1992), *79 Ohio App. 3d 640, 607 N.E.2d 1079.*

n25 (1981), *2 Ohio App. 3d 447, 442 N.E.2d 791.*

n26 See *Koukios v. Marketing Dynamics, Inc.*, 1994 Ohio App. LEXIS 3945 (Sept. 7, 1994), Hamilton App. Nos. C-920913, C-920918, C-930289 and C-930555, unreported; *Haller v. Borror (1995), 107 Ohio App. 3d 432, 669 N.E.2d 17; Miller v. Gustus (1993), 90 Ohio App. 3d 622, 630 N.E.2d 68; Maynard v. Owens-Illinois, Inc. (1993), 63 Ohio Misc. 2d 25, 619 N.E.2d 112.*

- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - -

In a long line of cases, beginning with *State ex rel. Franklin Cty. Commrs v. Guilbert* n27 in 1907, the Ohio Supreme Court has clearly embraced the rule that costs are allowed only by authority of statute and

1998 Ohio App. LEXIS 1187

*that costs are not equivalent to litigation expenses. n28 In short, a litigation* [*25] *expense cannot be taxed as a cost in the absence of an express statutory provision that authorizes this treatment of the expense. The court reiterated this rule in Centennial Ins. Co. v. Liberty Mutual Ins. Co.:*

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n27 (1907), *77 Ohio St. 333, 83 N.E. 80.*

n28 See *Benda v. Fana (1967), 10 Ohio St. 2d 259, 227 N.E.2d 197,* syllabus; *Centennial Ins. Co. v. Liberty Mutual Ins. Co. (1982), 69 Ohio St. 2d 50, 430 N.E.2d 925; In re Election of Nov. 6, 1990 for the Office of Attorney General of Ohio (1991), 62 Ohio St. 3d 1, 577 N.E.2d 343; Vance v. Roedersheimer (1992), 64 Ohio St. 3d 552, 597 N.E.2d 153.*

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

This court has consistently limited the categories of expenses [that] qualify as "costs". "Costs, in the sense the word is generally used in this state, may be defined as being the statutory fees to which officers, witnesses, jurors and others are entitled for their services in an action *** and which the statutes authorize to be taxed and included in the judgment *** . *** Costs did not necessarily [*26] cover all of the expenses and they were distinguishable from fees and disbursements. They are allowed only by the authority of statute *** . " n29

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n29 *69 Ohio St. 2d at 50-51, 430 N.E.2d at 926,* citing *Guilbert, supra, 77 Ohio St. at 338-339, 83 N.E. at 80.*

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

Despite the clear rule of the Ohio Supreme Court, the Eighth Appellate District concluded in *Jones* that expenses may be taxed as costs even in the absence of a statutory authorization if they are necessary and vital to the litigation. n30 Many cases decided after *Jones,* including several cases decided by this court, n31 adopted the Eighth Appellate District's broad interpretation of *Civ. R. 54(D).* Unfortunately, these decisions have created confusion in this area of the law. This court and others n32 have since adjusted our

bearings and have declined to follow *Jones.* Our decisions are now in conformity with the rule set forth by the Ohio Supreme Court. n33 In fact, recent Eighth Appellate District cases acknowledge the requirement of a statutory basis [*27] for taxing an expense as a cost. n34

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n30 *2 Ohio App. 3d at 448-449, 442 N.E.2d at 794.*

n31 *Baby Tenda of Greater Cincinnati, Inc. v. Jessup, 1988 Ohio App. LEXIS 862* (Mar. 16, 1988) Hamilton App. Nos. C-870158 and C-870397, unreported; *Jordan v. Elex, Inc. (1992), 82 Ohio App. 3d 222, 232-33, 611 N.E.2d 852, 858-859.*

n32 See *Miller, supra* (Tenth Appellate District); *Howard v. Wills (1991), 77 Ohio App. 3d 133, 601 N.E.2d 515* (Fourth Appellate District).

n33 *Koukios, supra.*

n34 See *Wiltsie v. Teamor (1993), 89 Ohio App. 3d 380, 387-388, 624 N.E.2d 772, 776-777.*

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

In the instant case, the trial court granted the Parkers' motion for costs in the amount of $ 12,533.43. In their motion for attorney fees and costs, the Parkers listed their expenses as follows:

(1) $ 2,301.75 for depositions of nine defense witnesses,

(2) $ 1,092.68 for depositions of four plaintiffs' witnesses,

(3) $ 673.55 for various exhibits,

(4) $ 4,607.57 for expert witness fees,

(5) $ 334.00 for service [*28] of process,

(6) $ 1,139.94 for photocopies, and

(7) $ 10.49 for long distance telephone charges.

These expenses totaled $ 10,159.43. In addition, the Parkers sought to have their expenses for witness fees,

juror fees, filing fees, and court-reporter fees taxed as costs.

Although a trial court has discretion in determining how costs should be assessed under *Civ.R. 54(D)*, n35 we are troubled by the trial court's assessment of costs in this case. Here, the trial court included as costs expenses that cannot properly be categorized in this manner under existing law. Like the Parkers, the trial court incorrectly concluded that the law permits expenses to be taxed as costs so long as the expenses are found to be vital and necessary to the litigation. This is, however, a misstatement of the law. A trial court cannot, in its discretion, tax an expense as a cost, even where it finds the expense to have been vital and necessary to the litigation, unless it can point to a statutory provision that provides for the payment of that particular fee or expense to an officer, witness, juror, or similar individual.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n35 *State ex rel. Fant v. Regional Transit Auth. (1990), 48 Ohio St. 3d 39, 548 N.E.2d 240.*

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

[*29]

While the trial court properly taxed as costs expenses for witness fees, juror fees, filing fees, and court-reporter fees, n36 many of the other expenses listed by the Parkers should not have been be taxed as costs because there was no statutory basis for doing so. For example, expenses for photocopies, n37 long-distance phone calls, n38 exhibits, n39 expert-witness fees, n40 and depositions that were not introduced as evidence at trial n41 should not have been taxed as costs. But the weight of authority in Ohio is that expenses for depositions introduced as evidence at trial are to be treated differently than expenses for depositions that are not used at trial. n42 Thus, on remand, the trial court may tax as costs expenses for depositions that were actually introduced as evidence at trial, but may not include in its calculation of costs expenses for depositions that were not introduced at trial.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n36 *Guilbert, supra.*

n37 *In re Election of Nov. 6, 1990, supra.*

n38 *Id.*

n39 *Howard*, supra.

n40 *In re Election of Nov. 6, 1990, supra.; Howard*, supra.

n41 *Barrett v. Singer Co. (1979), 60 Ohio St. 2d 7, 396 N.E.2d 218,* syllabus; *Koukios, supra; Miller*, supra.

[*30]

n42 *Barrett, supra; Koukios, supra; Miller,* supra.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

Therefore, I&F's second assignment of error, as it relates to the trial court's award of costs, is sustained.

## IV. THIRD ASSIGNMENT

In its third assignment of error, I&F asserts that the trial court erred in denying its motion for a new trial when the jury's award of compensatory and punitive damages on the Parkers' claim for intentional exposure to hazardous waste was not supported by the weight of the evidence. We note that, when made below, the motion was accompanied by a motion for judgment notwithstanding the verdict. Although I&F does not specifically assign error to the trial court's denial of the motion for judgment notwithstanding the verdict, our analysis of this assignment necessarily focuses on the trial court's denial of this motion, rather than its denial of the motion for a new trial. As we explain more fully below, the stated claim for intentional exposure to hazardous waste is better characterized as a claim for intentional infliction of emotional distress. Viewing the claim in this light, we conclude [*31] that, because the Parkers failed to present sufficient evidence of emotional distress, I&F was entitled as a matter of law to judgment notwithstanding the verdict. Therefore, the trial court's denial of I&F's motion for judgment notwithstanding the verdict was in error, and the third assignment of error is sustained.

Initially, we must note that we question the legal basis of the claim for intentional exposure to hazardous waste. The claim as presented in the pleadings and in the instructions to the jury was framed as a common-law intentional tort. However, the cases cited in support of this cause of action are dissimilar in that they involve suits against employers by employees who were exposed to hazardous or toxic waste during the course of their employment. n43 These cases are based on *Van Fossen v. Babcock & Wilcox Co.*, n44 wherein the Ohio Supreme Court set forth the standard for establishing an intentional tort *against an*

*employer.* It appears that the Parkers have attempted to "fashion" a claim for intentional exposure to hazardous waste by tailoring the elements of employers' intentional torts to fit the factual circumstances of this case. We question whether such [*32] a common-law intentional tort can be made to fit the facts of this case. We must note, though, that the record reflects that I&F never questioned the legal basis of the claim below by, for example, moving to dismiss under *Civ.R. 12(B)(6)*, moving for a directed verdict, or objecting to the jury instructions proposed by the Parkers. I&F also fails to raise this issue on appeal.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n43 *Day v. NLO, Inc. (1993), 814 F. Supp. 646; Santill v. General Electric, 1991 Ohio App. LEXIS 1516* (Apr. 4, 1991), Cuyahoga App. No. 58377, unreported.

N44 (1988), *36 Ohio St. 3d 100, 522 N.E.2d 489.*

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

By expressing reservation about the legal viability of the Parkers' intentional-exposure-to-hazardous-waste claim, we in no way mean to imply that they could not have stated *any* cause of action based on I&F's conduct. In fact, on appeal both parties have treated the claim as one for intentional infliction of emotional distress, rather than one for intentional exposure to hazardous waste. By virtue of this treatment, we will review the claim [*33] as one for intentional infliction of emotional distress.

As this court stated in *Mason v. United States Fidelity and Guaranty Co.*, n45 the gravamen of a claim for intentional infliction of emotional distress is set forth in the Restatement of Torts, as adopted by the Ohio Supreme Court in *Yeager v. Local Union 20, International Brotherhood of Teamsters*, n46 which states:

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n45 (1990), *69 Ohio App. 3d 309, 590 N.E.2d 799.*

n46 (1983), *6 Ohio St. 3d 369, 453 N.E.2d 666*, syllabus

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm. n47



- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n47 *Id.*

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Although the Parkers were not required to prove below that they suffered any contemporaneous [*34] physical injury, n48 they were required to prove that they suffered "serious" emotional distress. n49 Serious emotional distress is an emotional injury that is "severe" and "debilitating" and may be found where "a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances." n50 Having carefully reviewed the record, we conclude that the evidence presented by the Parkers was insufficient to establish that their emotional distress was "serious" in the eyes of the law.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n48 *Id.*

n49 *Id.*

n50 *Paugh v. Hanks (1983), 6 Ohio St. 3d 72, 451 N.E.2d 759*; see, also, *Yeager*, supra (applying *Paugh's* requirement that emotional distress be "serious" in the context of intentional infliction of emotional distress).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

It was the trial court's duty to sustain I&F's motion for judgment notwithstanding the verdict if there was insufficient evidence of "serious" emotional distress to permit reasonable minds to reach different [*35] conclusions. n51 The following testimony was presented to the jury regarding the alleged emotional distress suffered by the Parkers as a result of the hazardous waste left by I&F: (1) Jorge Ramos, a contractor who worked on the home after the dispute with I&F had developed, described Mr. Parker as appearing frustrated and powerless, like the victim of a hurricane; (2) Ramos also stated that his partner, in encouraging him to agree to take the job, had said that

one could see on Mr. Parker's face what he was going through; and (3) Mrs. Parker testified that the situation depressed and overwhelmed her and that the sight of her house made her heart stop. The Parkers presented no testimony that they sought medical treatment for emotional distress, or that their emotional distress resulted in any interruption of their employment, or any other evidence that would rise to the level needed to prove intentional infliction of emotional distress. n52

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n51 *O'Day v. Webb (1972), 29 Ohio St. 2d 215, 280 N.E.2d 896; McComis v. Baker (1974), 40 Ohio App. 2d 332, 319 N.E.2d 391.*

n52 *Kurtz v. Harcourt Brace Jovanovich, Inc. (1990), 69 Ohio App. 3d 267, 590 N.E.2d 772* (evidence that plaintiff was upset and worried about his family, but resolved his concerns without medical assistance was insufficient as a matter of law to constitute serious, debilitating distress); *Plikerd v. Mongeluzzo (1992), 73 Ohio App. 3d 115, 596 N.E.2d 601* (evidence that plaintiffs were unable to eat, sleep, attend church, and go about their normal activities was insufficient to withstand summary judgment where they did not seek medical treatment and did not miss work); *Oswald v. Fresh Mark/Sugardale, Inc., 1992 Ohio App. LEXIS 5756* (Nov. 9, 1992), Stark App. No. CA-8906, unreported (evidence that plaintiff could not eat or sleep was insufficient to establish severe and debilitating emotional distress where the plaintiff did not seek medical treatment and did not miss work); see, also, *Union Federal Savings Bank v. Hale, 1993 Ohio App. LEXIS 5618* (Nov. 17, 1993), Summit App. Nos. 16209 and 16211, unreported.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

[*36]

Though the Parkers presented evidence of some emotional distress, this evidence was insufficient as a matter of law to permit the jury to reasonably determine that such distress rose to a level that was serious, severe, and debilitating. Therefore, we conclude that the trial court erred in failing to grant I&F's motion for judgment notwithstanding the verdict. Accordingly, the third assignment of error is sustained.

V. FOURTH ASSIGNMENT

In the fourth assignment of error, I&F asserts that the trial court erred in granting the Parkers' motion to conform the jury's verdict to the evidence and for additur on (1) the damage award for the breach-of-insulation-contract claim, and (2) the damage award for the CSPA claim. Because this assignment is well taken, we sustain it.

On April 19, 1996, before the jurors retired to deliberate, they were provided with twelve general verdict forms, each of which was accompanied by interrogatories. On April 23, 1996, after several days of deliberation, the jury returned its verdicts. The issues raised in this assignment revolve around the general verdicts returned on the forms numbered one and six, and the accompanying interrogatories [*37] relating to compensatory damages.

In the first general verdict, the jury found in favor of the Parkers, concluding that I&F breached both the paint-removal contract and the insulation contract. However, in the second interrogatory accompanying this general verdict, the jury awarded the Parkers $ 0 in compensatory damages for the breach of the insulation contract. In the sixth general verdict, the jury found in favor of the Parkers, concluding that I&F had violated the CSPA. In the fourth interrogatory accompanying this general verdict, the jury awarded the Parkers $ 13,595 in compensatory damages for the CSPA violations.

On May 6, 1996, the Parkers filed a motion to conform the jury's verdict to the evidence, for additur, for treble damages, and for prejudgment interest. In this motion, they requested that the trial court enter judgment for $ 3,542 on the breach-of-insulation-contract claim because the jury's award of $ 0 was in conflict with its conclusion that I&F had breached the contract. In support of this request, the Parkers argued that the jury's award of zero damages was erroneous as a matter of law because the evidence before the jury established that $ 3,542 was [*38] the difference between the insulation-contract price they ultimately paid and the original I&F insulation-contract price.

In this same motion, the Parkers also requested that the trial court enter judgment in the amount of $ 76,604.13 on the CSPA claim because the jury's award of $ 13,595 was inconsistent with its award of damages for the breach-of-paint-removal-contract claim. In support

of this request, they argued that, under the facts of the case, the damages for the CSPA claim should have been identical to the damages for the breach-of-paint-contract claim because the measure of damages for both claims was the same.

Despite I&F's objections to the modification of the jury's verdict, the trial court granted the Parkers' motion, entering judgment for $ 3,542 on the breach-of-contract claim and for $ 76,604.13 on the CSPA claim. The CSPA award was then trebled to $ 229,812.39, in accordance with *R.C. 1345.09*.

Our resolution of this assignment stems directly from the content of the Parkers' May 6, 1996, motion. As we described above, the Parkers requested that the trial court modify the jury's verdict, specifically the amount of damages awarded on the breach-of-insulation-contract [*39] claim and the CSPA claim. They styled their motion as one to "conform the jury's verdict to the evidence" and for "additur." Glaringly absent from their motion, however, was a request for relief, such as a motion for judgment notwithstanding the verdict or for new trial, sufficient to provide the trial court with the necessary authority to disregard the findings of the jury.

We realize that the motion did contain a request for additur. Additur, however, is the power of a trial court, with the consent of the defendant, to assess or increase the amount of an inadequate award of damages made by a jury as a condition of the denial of a motion for a new trial. n53 Here, the Parkers did not move for a new trial, and I&F did not consent to the trial court's increase in the award of damages. Therefore, the trial court's modification of the jury's verdict could not have been grounded in its power to grant additur.

- - - - - - - - - - - - - - Footnotes - - - - - - - - -

n53 Black's Law Dictionary (4 Ed.Rev.1968) 60; *Slivka v. C.W. Transport, Inc. (1988), 49 Ohio App. 3d 79, 550 N.E.2d 196; Jones v. Lindsey, 1995 Ohio App. LEXIS 4925* (Nov. 1, 1995), Hamilton App. Nos. C-940701 and C-940786, unreported.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

**[*40]**

The Parkers have suggested in their brief that the relief they sought, and the trial court granted, can be *characterized* as a motion for judgment

notwithstanding the verdict. We decline to give their motion this liberal interpretation for the following two reasons. First, the Parkers, in seeking to modify the jury's verdict, had a duty, both to the court and to I&F, to provide some clarity with respect to the relief they sought and the specific grounds for such relief. It would clearly be unfair to allow them, now aided by hindsight, to benefit from their own lack of clarity. Second, if the Parkers believed that the jury's verdict was flawed, they were required to base their request for relief on a procedure recognized in law for modifying or setting aside a jury's verdict, such as a motion for judgment notwithstanding the verdict or a motion for new trial; simply stating that they were entitled to a modification of the jury's verdict and requesting that the trial court enter judgment as requested was insufficient as a means to challenge the verdict rendered by the jury.

Because the Parkers, in seeking to modify the jury's verdict, failed to provide the trial court with [*41] a legally recognized means of doing so, and instead merely requested that the trial court enter judgment in the amount they specified, we conclude that the trial court lacked the power to modify the jury's verdict. To hold otherwise would denigrate the role of the jury. Therefore, I&F's fourth assignment of error is sustained, and the jury's verdict and award of damages on the breach-of-insulation-contract claim and the CSPA claim must be reinstated.

## VI. FIFTH ASSIGNMENT

In its fifth assignment of error, I&F asserts that the trial court erred in instructing the jury on the issue of damages on the claims for breach of the lead-paint-removal and insulation-installation contracts. We disagree.

In considering the propriety of a jury instruction, we must consider the instruction as a whole and must determine whether it probably misled the jury in a matter materially affecting the complaining party's substantial rights. n54 Furthermore, when the jury instructions as a whole are sufficiently clear to permit the jury to understand the relevant law as applied to the case, the instructions are neither erroneous nor prejudicial to a party. n55

- - - - - - - - - - - - - - Footnotes - - - - - - - - -

n54 *Becker v. Lake County Memorial Hospital West (1990), 53 Ohio St. 3d 202, 560 N.E.2d 165; Ohio Farmers' Insurance Co. v. Cochran (1922), 104 Ohio St. 427, 135 N.E. 537.*

[*42]

n55 *Schade v. Carnegie Body Co. (1982), 70 Ohio St. 2d 207, 436 N.E.2d 1001.*

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

Both I&F and the Parkers submitted proposed jury instructions on the issue of temporary damages to real estate. The Parkers submitted the following proposed instructions:

Plaintiffs only claim temporary damages to their property. If the damage to the property is temporary and such that the property can be restored to its original condition, then the owner may recover the reasonable cost of these necessary repairs.

In response, I&F submitted the following proposed instruction to the trial court:

Plaintiffs only claim temporary damages to their property. If the damage to the property is temporary and such that the property can be restored to a reasonable approximation of its former condition, then the owner may recover the reasonable cost of these necessary repairs.

The trial court's instruction to the jury on this issue was identical to the proposed instruction submitted by the Parkers.

I&F's criticism of the trial court's instruction hinges on its use of the word "original." It contends [*43] that, by utilizing this word, the trial court, in essence, instructed the jury that it could award as damages the amount of money necessary to restore the Parkers' home to its *newly constructed condition*, rather than to its condition *before I&F began work on it*. Thus, I&F contends that the instruction was contrary to law.

All parties cite *Adcock v. Rollins Protective Services Co. n56 for the relevant law on the measure of damages. We agree that Adcock* is on point. Notably, I&F's proposed jury instruction, as quoted above, stated, word-for-word, the holding of *Adcock*. Thus, there is no contention that I&F's proposed instruction was erroneous. We concede that it would have been preferable for the trial court to instruct the jury in the terms proposed by I&F, as its instruction used the language of *Adcock* and other relevant cases. However, when the court's instruction is viewed as a whole, and in light of the evidence and arguments presented at trial on this issue, we are unable to conclude that the use of the word "original" probably misled the jury.

Rather, we conclude that the instruction was sufficiently clear to allow the jury to understand the law as it applied [*44] to the case. Therefore, the fifth assignment of error is overruled.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - -

n56 (1981), *1 Ohio App. 3d 160, 440 N.E.2d 548.*

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

## VII. SIXTH ASSIGNMENT

In the sixth assignment of error, appellant Grant Kirby asserts that the trial court erred in denying his motion for a directed verdict on the claims asserted against him. We do not reach the merits of this assignment, because the record does not reflect that Grant Kirby renewed his motion for a directed verdict at the close of all the evidence. The motion for a directed verdict made at the close of the Parkers' case-in-chief should have been renewed at the close of all the evidence in order to preserve the original denial of the motion for appeal. n57 By failing to renew his motion for a directed verdict, Grant Kirby waived any error of the trial court in failing to grant the motion at the conclusion of the Parkers' case. Accordingly, the sixth assignment of error is without merit.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - -

n57 *Helmick v. Republic-Franklin Insurance Co. (1988), 39 Ohio St. 3d 71, 529 N.E.2d 464,* paragraph one of the syllabus.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

[*45]

## VIII. SEVENTH ASSIGNMENT

In the seventh assignment of error, I&F asserts that the trial court erred in denying its motion for separate trials. In this motion, I&F requested that the Parkers' tort and contract claims be tried separately from their claims of corporate wrongdoing. I&F contended that because these two categories of claims were unrelated, bifurcation was necessary to promote economy and to prevent prejudice. Conversely, the Parkers argued that bifurcation was not required as all the claims asserted were interrelated.

Pursuant to *Civ.R. 42(B)*, a trial court may order a separate trial on separate issues or claims when doing so would further convenience, avoid prejudice, or be conducive to expedition and economy. A trial court is in the best position to ascertain whether a bifurcation of issues is necessary. n58 Thus, the trial court is vested with broad discretion on the issue of whether a trial should be bifurcated. n59 Absent an abuse of discretion on the part of the trial court, a reviewing court should not overturn a trial court's ruling on the issue of bifurcation. n60 The phrase "abuse of discretion" connotes more than an error of law or judgment; it [*46] implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. n61

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n58 *Fairfield Commons Condominium Assn. v. Stasa (1985), 30 Ohio App. 3d 11, 22, 506 N.E.2d 237, 248.*

n59 See *Heidbreder v. Northampton Township Trustees (1979), 64 Ohio App. 2d 95, 411 N.E.2d 825; Petty v. First Nat'l Bank of Akron (1976), 50 Ohio App. 2d 365, 363 N.E.2d 599.*

n60 *Id.*

n61 See *Blakemore v. Blakemore (1983), 5 Ohio St. 3d 217, 450 N.E.2d 1140; Miller v. Miller (1988), 37 Ohio St. 3d 71, 523 N.E.2d 846.*

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

We conclude that I&F has failed to demonstrate that the trial court's denial of its motion for separate trials was unreasonable, arbitrary, or unconscionable. Therefore, the seventh assignment of error is overruled.

## IX. EIGHTH ASSIGNMENT

In its eighth and final assignment of error, I&F asserts that the trial court erred in awarding prejudgment interest to the Parkers. We disagree.

Here, the Parkers filed a motion for prejudgment interest under *R.C. 1343.03(A)*, with respect to the damages awarded on [*47] their claims for breach of contract, as well as under *R.C. 1343.03(C)*, with respect to the damages awarded on their tort claims, on the ground that I&F had failed to make a good-faith effort to settle the case. The trial court granted the

motion and awarded prejudgment interest under both *R.C. 1343.03(A)* and *1343.03(C)*, in the amount of $ 71,230.66.

I&F argues that the trial court erred in awarding the Parkers prejudgment interest, under *R.C. 1343.03(A)*, on the breach-of-contract claims because the damages on these claims were not liquidated. This argument is without merit.

Prejudgment interest is intended to compensate a claimant for the period of time between the accrual of the claim and the judgment, regardless of whether the judgment is based on a liquidated or an unliquidated claim. n62 The sole test to be applied in awarding prejudgment interest under *R.C. 1343.03(A)* is whether the aggrieved party has been fully compensated. n63 Accordingly, I&F's argument that the Parkers were not entitled to prejudgment interest under *R.C. 1343.03(A)* because the damages for the contract claims were not liquidated is without merit.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n62 *Royal Electric Construction Corp v. Ohio State University (1995), 73 Ohio St. 3d 110, 652 N.E.2d 687,* syllabus (express repudiation of the liquidated/unliquidated test for awarding prejudgment interest under *R.C. 1343.03*[A]).

[*48]

n63 *Id.*; see, also, *Shell Oil Co. v. Huttenbauer Land Co., Inc., 118 Ohio App. 3d 714, 693 N.E.2d 1168, 1997 Ohio App. LEXIS 944 (1997).*

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

I&F also argues that the trial court erred in awarding prejudgment interest, under *R.C. 1343.03(C)*, on the tort claims, because they did not refuse to settle in good faith, and because the Parkers were "equally lethargic in their settlement efforts." This argument is also without merit.

*R.C 1343.03(C)* provides for the recovery of prejudgment interest on successful tort claims where the losing party has failed to make a good-faith effort to settle the case. In *Kalain v. Smith,* n64 the Ohio Supreme Court set forth a four-part test for determining whether a party has, in fact, failed to make a good-faith effort to settle. A party should not be

found to have failed to make a good-faith effort to settle if he has done the following:

```
- - - - - - - - - - - - - Footnotes - - - - - - - - -
- - - - - -
```

n64 *Kalain v. Smith (1986), 25 Ohio St. 3d 157, 495 N.E.2d 572,* syllabus.

```
- - - - - - - - - - - End Footnotes- - - - - - -
- - - - - -
```

[*49]

(1) fully cooperated in discovery proceedings, (2) rationally evaluated his risks and potential liability, (3) not attempted to unnecessarily delay any of the proceedings, and (4) made a good faith monetary settlement offer or responded in good faith to an offer from the other party. n65

```
- - - - - - - - - - - - - Footnotes - - - - - - - - -
- - - - - -
```

n65 *Id.*

```
- - - - - - - - - - - End Footnotes- - - - - - -
- - - - - -
```

I&F cites three proposed settlement offers as evidence of its good-faith effort to settle the matter. However, the trial court specifically determined that I&F had not cooperated in discovery and had not rationally evaluated its risks and potential liability. Given this, the court determined that an award of prejudgment interest was appropriate, implicitly concluding that I&F had failed to make a good-faith effort to settle. Based on our review of the record, we are unable to conclude that the trial court abused its discretion in so concluding. n66

```
- - - - - - - - - - - - - Footnotes - - - - - - - - -
- - - - - -
```

n66 *Id.*

```
- - - - - - - - - - - End Footnotes- - - - - - -
- - - - - -
```

[*50]

In addition, the record does not support I&F's contention that the Parkers were "lethargic" in their efforts to settle the case. I&F concedes that the Parkers responded to each of its settlement offers. Instead, I&F's criticism of the Parkers seems to focus on the fact that they made no formal settlement demand. The trial court found, though, that the Parkers had no

reason to suspect that I&F would seriously entertain a "sufficient" settlement offer. Furthermore, they were not required to make a settlement demand so long as they responded in good faith to I&F's offers. n67 Accordingly, the final assignment of error is overruled.

```
- - - - - - - - - - - - - Footnotes - - - - - - - - -
- - - - - -
```

n67 *Id.*

```
- - - - - - - - - - - End Footnotes- - - - - - -
- - - - - -
```

## X. THE CONCLUSION

In conclusion, we overrule the first assignment of error regarding the trial court's exclusion of a defense witness and its denial of I&F's motion for a new trial.

We overrule the portion of the second assignment of error that relates to attorney fees, but sustain the assignment as it relates to costs. Therefore, we reverse the trial court's [*51] judgment on costs and remand the case to the trial court for a recalculation of costs in a manner consistent with this decision.

The third assignment of error, which relates to the claim for intentional exposure to hazardous waste, is sustained. Therefore, the trial court's judgment on that claim is reversed, its award of damages on the claim is vacated, and judgment is hereby entered in favor of I&F.

The fourth assignment of error, which relates to the trial court's modification of the jury's verdict on the breach-of-the-insulation-contract and the CSPA claims, is sustained. Therefore, the trial court's judgment and award of damages on these claims is reversed, and the jury's verdict on these claims is reinstated. Thus, judgment is hereby entered in favor of the Parkers on the claim for breach of the insulation contract, and damages are awarded in the amount of $ 0; judgment is entered in favor of the Parkers on the CSPA claim, and damages are awarded in the amount of $ 13,595. The damage award on the CSPA claim is hereby trebled, in accordance with *R.C. 1345.09(B),* to $ 40,785.

The fifth, sixth, and seventh assignments of error are overruled. And although we also overrule [*52] the eighth and final assignment of error, which relates to prejudgment interest, we remand the case to the trial court for recalculation of prejudgment interest in light of our resolution of the third and fourth assignments of error.

1998 Ohio App. LEXIS 1187

*Judgment accordingly.*

HILDEBRANDT, P.J., and GORMAN, J., concur.