# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| **MARY E. LENTZ,** | : | **Case No.: 01-CV-599** |
| | : | |
| **Plaintiff,** | : | **(Judge Watson)** |
| | : | |
| **v.** | : | **DEFENDANTS' REPLY IN SUPPORT** |
| | : | **OF MOTIONS IN LIMINE** |
| | : | |
| | : | |
| | : | |
| | : | |
| **CINCINNATI INSURANCE** | : | |
| **COMPANY, et al.** | : | |
| | : | |
| **Defendants.** | : | |

## SUMMARY OF ISSUES AND ARGUMENT

Defendants make one reply to Plaintiffs' Response and Objections to Defendants' Motions in Limine.  Plaintiffs' Response boils down to two requests to the Court.

1.    **Ignore the record; and**

2.    **Ignore the controlling case law.**

Plaintiff has made it to the point of trial by a breathtaking willingness to do both.  Order must be restored to a relatively simple and narrow case.  **The Court's decisions on Defendants' Motion in Limine are critical.  The Court's rulings will determine whether the parties have a three-day trial on the real issue – did Mark Huller terminate Mary Lentz because she put Cincinnati Insurance Company's money in her bank account – or whether there will be a two-week circus where the parties flail around in absolute irrelevancies:  from Ms. Lentz's alleged failure to be "promoted" (to a position that did not exist) to Tom Ballato's October 2001 discharge for viewing raunchy pictures on his work computer.**  Plaintiffs' Response

does not justify the two-week circus.  Indeed, it demonstrates the necessity of granting

Defendants' Motions in Limine.

## TABLE OF CONTENTS

A.    **Reply to Plaintiff's So-Called "Factual Background"**......................................................6

    1.    **Plaintiff Tells The Court That She Has A Failure
          To Promote Claim (p. 5, Response)**........................................................6

    *Howard v. Lear Corporation Eeds and Interiors*,
    234 F. 3d 1002 (7th Cir. 2000) ...........................................................7

    2.    **Plaintiff Tells The Court That There is a "Dispute"
          Over Whether The Copy Reimbursement Monies Belonged to Cincinnati
          Insurance Company or Mary Lentz (Plaintiffs' Response, pp. 5-6).**.................7

    3.    **Plaintiff Tells the Court That She Did Not
          Commingle Funds (Plaintiff's Response, p. 6)**.....................................9

    4.    **Plaintiff Continues to Equate Her Commingling
          of CIC Funds With Dissimilar Conduct (Plaintiff's Response, pp. 6-9)**............10

B.    **Reply in Support of Document 97 :
      Motion in Limine to Bar Witnesses from Offering Evidence Contrary to the
      Evidence Provided to CIC at Time of Termination Decision.**.........................................12

C.    **Reply in Support of Document 105 :
      Motion in Limine to Bar Improper Similarly Situated and Related Evidence**..............12

    *Mitchell v. Toledo Hospital*, 964 F.2d 577, 581-83 (6th Cir. 1992) ........................ 12, 13, 14

    *Alexander v. Fulton County, Ga.*, 207 F.3d 1303 (11th Cir. 2000) ........................................12

    *Minadeo v. ICI Paints*, 398 F.3d 751, 764 (6th Cir. 2005)...................................................13

    *Fitzgerald v. Roadway Express, Inc.*,
    2003 U.S. Dist. LEXIS 19154 (N.D. Ohio Oct. 10, 2003) ...................................................13

    *Hall v. State Farm Ins. Co.*, 18 F. Supp.2d 751 (E.D.Mich. 1998) .......................................13

    *Kirkland v. Runyon*, 887 F. Supp. 1001, 1005-1006 (S.D. Ohio 1995)................................14

    *EEOC v. Sacco*, 102 F. Supp. 2d 382, 387 (E.D. Mich. 1999)..............................................14

    *Dinkins v. Ryder Student Transp. Servs.*,
    1997 U.S. Dist. LEXIS 14173 (E.D. Mich. Aug. 8, 1997) ....................................................14

3

*Beene v. St. Vincent Mercy Medical Center*, 111 F. Supp. 2d 931
  (N.D. Ohio 2000) ...................................................................................................14

*Britton v. City of Popular Bluff, Missouri*, 244 F.3d 994 (8th Cir. 2001) .............................15

*Smith v. Monsanto Chemical Co.*, 770 F.2d 719 (8th Cir. 1985)..........................................15

**D.    Response in Support of Documents 101 and 102:
Motions in Limine to Bar References to Rochlin Litigation and to Claims Related
to Equal Pay and/or Promotion**.........................................................................................15

*Ezold v. Wolf*, 983 F.2d 509 (3d Cir. 1992) ........................................................................17

**E.    Response in Support of Document 103:
Motion in Limine to Bar Evidence and Reference to Alleged Conduct of David
Balzano Unrelated in Time or Subject to Claims Made by Plaintiff** .............................17

*Sullivan v. Delphi Automotive Systems Corp.*, 198 F. Supp. 2d 952
  (S.D. Ohio 2002)...................................................................................................18

*Gagne v. Northwestern Nat'l. Ins. Co.*, 881 F.2d 309 (6th Cir. 1989) ...................................18

*Ezold v. Wolf,* 983 F.2d 509 (3rd Cir. 1992).........................................................................18

*Hester v. BIC Corp.*, 225 F.3d 178 (2nd Cir. 2000)..............................................................19

**F.    Response in Support of Document 98:
Defendants' Motion *In Limine* to Bar Irrelevant and Misleading Statistical
Evidence or References** ...................................................................................................19

*EEOC v. O & G Spring and Wire Form Specialty Co.*, 38 F.3d 872
  (7th Cir. 1994)......................................................................................................19

*EEOC v. Chicago Miniature Lamp Works*, 947 F.2d 292
  (7th Cir. 1991)......................................................................................................20

*Daines v. Mankato*, 754 F. Supp. 681 (D. Minn. 1990)........................................................20

**G.    Response to Document No. 106:
Defendants' Motion *In Limine* to Bar Evidence Related to Mark Huller's Contacts
with the Dayton Bar Association and Montgomery County Prosecutor's
Office.**................................................................................................................................21

*Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 82 L. Ed. 1188,
  58 S. Ct. 817 (1938)..............................................................................................21

FRE 501 ................................................................................................. 21, 22

*Kelly's Auto Parts, No. 1, Inc. v. Boughton*, 809 F.2d 1247 (6th Cir. 1987) ......................... 22

*Rabon v. Great Southwest Fire Ins. Co.*, 818 F.2d 306 (4th Cir. 1987) ................................. 22

**H.    Response in Support of Document 99:
       Motion In Limine To Bar Any Evidence And/Or References Related To Punitive
       Damages** ......................................................................................................... 22

*Pollard v. Wawa Food Mkt.*, 2005 U.S. Dist. LEXIS 6806
(E.D.Pa. April 19, 2005) ........................................................................................ 23

FRE 401, 402, 403 ................................................................................................ 23

**I.    Reply In Support Of Document 100:
       Motion *In Limine* To Bar Any Evidence Or References Related To The Net Worth
       Of Defendants And/Or Regarding Conduct That Has No Nexus To The Harm
       Alleged
       By Plaintiff** ...................................................................................................... 23

Fourteenth Amendment to the U.S. Constitution .......................................................... 23

*State Farm Mutual Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003) ........................... 24, 25

*Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*,
532 U.S. 424, 121 S. Ct. 1678 (2001) ....................................................................... 24

*BMW of North America v. Gore*, 701 So. 2d 507 (Ala. 1997) .......................................... 24

42 U.S.C. § 1981a(b)(3) ......................................................................................... 24

*Conway v. Int'l Ass'n of Heat and Frost Insulators and Asbestos Workers,* 209 F. Supp.
2d 731 (N.D. Ohio 2002) ....................................................................................... 25

**J.    Conclusion** ..................................................................................................... 25

**A.**    **Reply to Plaintiff's So-Called "Factual Background"**

Plaintiff tells the Court that she "intends to present" the "facts" set forth in pages 5-9 of her Response.  Plaintiff thus gives fair warning that she is about to waste much time and resources by continuing to treat her unsupported arguments as though they were "facts."  A few examples follow:

**1.**    **Plaintiff Tells The Court That She Has A Failure To Promote Claim (p. 5, Response).**

Plaintiff does not have – has never had – such a claim.  The record just could not be clearer:

> Q.    Now, Miss Lentz, are you alleging as part of your lawsuit that you should have been promoted to a position but were not promoted?
>
> A.    Yes.
>
> Q.    What position are you saying that you should have been promoted to but that you were not promoted?
>
> A.    Managing attorney of the Dayton office.
>
> Q.    Is there any other position that you're alleging you should have been promoted to but were not?
>
> A.    No.
>
> (Lentz Depo., p. 133)
>
> Q.    Mr. Balzano was the managing attorney [of Dayton law office] when you were hired, correct?
>
> A.    Correct.
>
> (Lentz Depo., p. 92)
>
> Q.    Did you tell the truth in paragraph 24 of your complaint that Mr. Balzano did not transfer and remained the managing attorney for the Dayton office of Berlon & Timmel at all relevant times?

6

A. To the best of my knowledge.  I mean, he was the managing attorney when I was asked to leave.

(Lentz Depo., p. 93)

Plaintiff Lentz had an interest in only one position:  Dayton managing attorney.  During her entire employment, Mr. Balzano held that position.  The position was <u>not</u> available.  Indeed, Mr. Balzano did not leave that position until April 2001.  As a matter of law and common sense, Plaintiff does not have a promotion claim where there was no available position.  *Howard v. Lear Corporation Eeds and Interiors*, 234 F. 3d 1002 (7th Cir. 2000).  For Plaintiff to keep asserting that a "promotion" claim exists shows the absolute contempt with which she treats the truth and the controlling law.  It cannot continue.

**2. <u>Plaintiff Tells The Court That There is a "Dispute" Over Whether The Copy Reimbursement Monies Belonged to Cincinnati Insurance Company or Mary Lentz (Plaintiffs' Response, pp. 5-6).</u>**

Plaintiff does not cite to the record for this remarkable assertion because she cannot. Plaintiff cannot create a "dispute" simply because she has the nerve to continue saying what is not true.  There is no (honest) dispute that the money sent by non-CIC attorneys to Mary Lentz to reimburse CIC was, in fact, CIC's money.  Again, Mary Lentz's own testimony shows unequivocally that Mary Lentz knew then – and knows now – the money she took belonged to CIC:

Q. <u>You're not disputing, are you, Ms. Lentz, that $834 of that money belongs to CIC?  You're not disputing that, are you?</u>

A. <u>No.  I'm not disputing that at all</u>.  I was advised by counsel not to make restitution or payback or give back or put in the proper hands through the proper policy any of those monies until this is all said and done, and CIC can explain its actions and why it only selectively

7

reported any conduct to the ethics committee and to the prosecutor's office.

(Lentz Depo., p. 151)

A.    I said, what's the charge. And he said theft. And I said, Mark, I didn't steal anything. <u>He said, well, Mary, you admitted that those funds were in your account. And I said, yes, I did, and those funds were coming back.</u> They already started coming back.

(Lentz Depo., p. 135)

Q.    Those checks that were made payable to you, <u>did you declare them as income</u>?

A.    <u>No</u>. The copy money checks?

Q.    Um-hum.

A.    No.

(Lentz Depo., p. 233)

Q.    Now, in the *Luce* case, you originally requested the checks be payable to CIC. <u>How did you know that was the proper procedure to have the checks made payable to CIC</u>?

A.    I just assumed that from my previous practice at Freund, Freeze & Arnold.

Q.    Why did you assume that?

A.    Well, just <u>because it was reimbursing the company for that copy expense</u>.

(Lentz Depo., p. 209)

A.    I don't understand how – and I told this to Mark and I told it to Al Matheny, and I told it to Dave Balzano: everybody in the office knew what copy money was, how I was getting it and what it was used for. I – before this disciplinary action, the complaint was even sent to Gary Schaengold and Joan Brenner. I know that people were spoken with that said they knew what copy money

8

> was: they were present at lunches. <u>I didn't represent that that money was mine</u>.

(Lentz Depo., at 139)

In the face of her own testimony, it is unconscionable for Plaintiff to now tell the Court that there is a "dispute" about whose property the reimbursement monies were.

**3.    <u>Plaintiff Tells the Court That She Did Not Commingle Funds (Plaintiff's Response, p. 6).</u>**

To "commingle" is to "combine funds into a common fund or stock" (Webster's Ninth New Collegiate Dictionary). Ms. Lentz's own testimony eliminates any (honest) dispute that she "commingled" CIC funds with personal monies:

> Q.    And once you left these amounts in your bank account, $496 minus $150, and then the second deposit as well, once you put those in your bank account they became commingled with your personal funds, didn't they?
>
> *Mr. Sutherlin:* To the extent that it calls for legal conclusion, I'll object, but you may answer the question.
>
> A.    Yeah, I wouldn't – I don't call that commingling. To me that is a term of art. They were with my personal funds.
>
> Q.    What do you call it?
>
> A.    I call that that's just where it was housed.
>
> Q.    Housed with your personal funds, right?
>
> A.    Yes.
>
> Q.    And you didn't tell the bank to keep CIC money separate from your personal funds, did you?
>
> A.    No, I didn't. I didn't see the need to.
>
> Q.    And during September, during October, after September and October of 1999, you made withdrawals from your

9

personal bank account for personal expenses, didn't you?

A.   I don't know without looking, but I can – I probably did.

Q.   And you wrote checks on your personal account following September and October 1999, didn't you?

A.   Yes.

(Lentz Depo., p. 24-25)

Defendants respectfully submit that the Court must tell Plaintiff to stop denying what is beyond honest dispute and that her universe of "facts" will not be the set of facts tried. Otherwise, there will be no gaining a foothold in the quicksand. For example, Plaintiff admits that she intends to equate the secretly-commingled copy reimbursement monies with a $600.00 advance check CIC gives to every attorney at hire as an advance on expenses. That is to compare an apple not to an orange, but a toad.

The $600.00 advance is given to every attorney at hire as a matter of course. The Company knows about it. Each attorney signs a contract agreeing pay it back at termination (Lentz Depo., pp. 235-236). Contrast that $600.00 advance with the commingled funds. No one knew of the commingling except Ms. Lentz. No one did the commingling except Ms. Lentz. To allow Plaintiff to continue to pretend that the two are the same defies the record, the law and good sense.

**4.    Plaintiff Continues to Equate Her Commingling of CIC Funds With Dissimilar Conduct (Plaintiff's Response, pp. 6-9).**

Plaintiff's "facts" make clear that she intends to argue that "everyone" knew about copy money and "everyone" ate lunches purchased with copy money, but she was selectively (and

10

discriminatorily) fired for it.  Plaintiff cannot be allowed to continue to misstate the reason for

her discharge and to keep ignoring the undisputed realities.   Among those realities are:

- ♦ Mary Lentz was the <u>only</u> attorney  who requested that reimbursement checks for copies paid for by CIC be made out to her personally (Lentz Depo., p. 61).

- ♦ Only Mary Lentz and her secretary had access to the reimbursed monies which Ms. Lentz collected (Lentz Depo., pp. 219-220).

- ♦ Neither Mary Lentz nor her secretary made any attempt at accounting in connection with the "copy money"(Lentz Depo., pp. 217-220).

- ♦ Only Mary Lentz took over $800 of the copy money and placed it in her personal bank account (Lentz Depo., pp. 14, 23).

- ♦ Mary Lentz was careful to tell no one – not Huller, not Balzano, not her Dayton colleagues – that she was commingling CIC's money in her own account.  She kept that secret.  (Lentz Depo., pp. 41-42).

- ♦ Mark Huller fired Mary Lentz when she admitted this commingling.  He fired no one – male or female – for participating in office lunches paid for by copy monies parsed out by Mary Lentz and her secretary (Lentz Depo., p. 138; Huller Depo., pp. 177-179; 182; 189; 192; 210-213; 261).

Plaintiff must not be allowed to continue to misstate the reason for her discharge.  She

was not fired for office lunches in which she and others participated.  She was fired for putting

over $800 of CIC's money into her bank account.  She should not be allowed to say otherwise.

The facts and law do not allow it.

11

**B.    Reply in Support of Document 97 : Motion in Limine to Bar Witnesses from Offering Evidence Contrary to the Evidence Provided to CIC at Time of Termination Decision.**

The responses in support of this Motion are found throughout the arguments set forth throughout this document.  Defendants would specifically direct the Court's attention to facts and arguments set forth in Sections A, C, and E.

**C.    Reply in Support of Document 105 – Motion in Limine to Bar Improper Similarly Situated and Related Evidence**

Plaintiff continues to insist that she has an absolute right to present evidence regarding Tom Ballato, a CIC attorney with an admitted addiction to pornography who was terminated for looking at pornography on his company computer.  The period of Mr. Balloto's employment by CIC is subsequent to Plaintiff's employment and termination.   The Court may recall that counsel for Plaintiff raised the issue of Mr. Ballato at the last status conference in December 2004, at which time the Court expressed skepticism about the relevance of such evidence in a case that involves a women who was terminated for theft of company funds.  The Court did provide Plaintiff the opportunity, however, to file a motion articulating a rationale for discovery related to the issues surrounding Mr. Ballato's termination, but Plaintiff never filed such a motion.

Contrary to Plaintiff's reliance on a case[1] from the Eleventh Circuit that was overruled in part on other grounds for the "correct view of Title VII," the law in the Sixth Circuit could not be clearer in defining what makes an employee "similarly situated" such that the employee can serve as a comparator in a Title VII discrimination case.  In *Mitchell v. Toledo Hospital*, 964 F.2d 577, 581-83 (6th Cir. 1992), the seminal Sixth Circuit decision on this issue -- a case Plaintiff completely ignores in responding to Defendants' Motion in Limine – the Court holds that Plaintiff must not only prove that she and a proposed comparable committed the "same

---

[1] *Alexander v. Fulton County, Ga.,* 207 F.3d 1303 (11th Cir. 2000).

conduct" with "comparable seriousness," but also that they are **"similarly situated in all**

**respects."**[2]  *Mitchell, supra* (emphasis added, citations omitted).  *See also Minadeo v. ICI*

*Paints*, 398 F.3d 751, 764 (6th Cir. 2005).  Looking at *Mitchell* and its progeny, it is easy to see

why Plaintiff would ignore the law of this Circuit, and ask the Court to ignore the law of its own

Circuit as well, in favor of a view that is simply wrong.

Plaintiff seeks to compare her conduct and treatment as an employee who admittedly

took CIC's money and placed it in her personal bank account and who was terminated for this

conduct, with an employee who visited raunchy sites on his work computer, who admitted an

addiction to pornography, and who also ultimately was terminated.[3]  This situation is directly

analogous to *Mitchell* where a terminated employee accused of "misuse of Hospital property"

after deliberately misplacing some forms sought to compare her conduct and treatment with the

conduct of employees who were not terminated after being accused of poor attendance and

cursing.  964 F.2d at 580, 583.  The Sixth Circuit held that the compared employees did not

commit "the same conduct" as Mitchell and thus were not "similarly situated" as a matter of law.

*Id.* at 583-84.  *See Fitzgerald v. Roadway Express, Inc.*, 2003 U.S. Dist. LEXIS 19154, at *12-15

---

[2] **[T]o be deemed similarly-situated**, the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been **subject to the same standards** and have **engaged in the same conduct** without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it….  [In addition, it] is the discrimination plaintiff's burden to establish that the other employee's acts were of **"comparable seriousness"** to his or **her own infraction**.

*Mitchell, supra* (emphasis added, citations omitted).

[3] Plaintiff does not allege that she had a pathological or psychological predilection to commingle the funds of her employer with her personal funds.  This fact alone makes Lentz and Ballato dissimilar and any comparison of their conduct and treatment improper.  Plaintiff calls the clear analysis of the Sixth Circuit set forth in *Mitchell* "legal side-stepping" and attempts to rely upon the decision in *Hall v. State Farm Ins. Co.*, 18 F. Supp.2d 751 (E.D.Mich. 1998) for this proposition.  *Hall*, a case resulting in a defense verdict, is legally and factually distinguishable in that the Court was analyzing the concept of "similarly-situated" only in the context of the fourth prong of the prima facie case, which has a very low threshold.  Additionally, the Court was faced with a Plaintiff seeking comparators whose misconduct was not of a narrow variety, but rather who was terminated for a wide range of misconduct, and finally, unlike here, the Court was not asked to compare the misconduct of one employee with dissimilar misconduct of another employee, whose misconduct was determined and influenced by an admitted pathological addiction.

(N.D. Ohio Oct. 10, 2003) (declaring that a discrimination claim failed on similarly situated prong because the incidents of misconduct by other non-minority employees' were isolated, single occurrences, while the plaintiff repeatedly returned to the same store, aggravating the situation; thus, the employer could have reasonably concluded that the employee's repeated conduct was more of a threat than other non-minority employees' isolated acts). *See, e.g., Kirkland v. Runyon*, 887 F. Supp. 1001, 1005-1006 (S.D. Ohio 1995) (distinguishing misconduct – insubordination – charged against the other employees from that charged against the plaintiff because it was greater in degree of seriousness: the other employees' language was not as abusive as plaintiff's and other employees did not threaten physical force against their supervisors); *EEOC v. Sacco*, 102 F. Supp. 2d 382, 387 (E.D. Mich. 1999) ("[T]he Commission has produced no evidence that could establish that a non-protected employee suffered less than job termination for misbehavior **comparable in seriousness to being seen with one's hand in (or suspiciously near) another cashier's till** under these circumstances, as was Galloway."); *Dinkins v. Ryder Student Transp. Servs.*, 1997 U.S. Dist. LEXIS 14173, at *12 (E.D. Mich. Aug. 8, 1997) (ruling that plaintiffs failed to prove disparate treatment because their examples of allegedly similar misconduct involved "everything other than" what plaintiffs were discharged for).

Plaintiff seeks to characterize Ballato's viewing of improper sites as **"stealing"** company time, apparently hoping to somehow turn viewing raunchy sites into stealing money by simply willing it to be so and saying it over and over. Plaintiff's simple declarations cannot suffice to transform Lentz's and Ballato's different transgressions into conduct **"similarly situated in all respects."** *Mitchell, supra* (emphasis added); *Beene v. St. Vincent Mercy Medical Center*, 111 F. Supp. 2d 931, 938 (N.D. Ohio 2000) (rejecting evidence regarding various "missteps" and

14

"mistakes" by other white nurses as not being similarly-situated "in all respects" to plaintiff

black nurse because none of the white nurses committed the exact **same** misconduct of falsifying

medical charts as plaintiff). *See also Britton v. City of Popular Bluff, Missouri*, 244 F.3d 994,

997-98 (8th Cir. 2001) (employees not "similarly situated" where one was guilty of "stealing a

service" and second received "stolen property"); *Smith v. Monsanto Chemical Co.*, 770 F.2d 719,

723 (8th Cir. 1985) (black plaintiff discharged for stealing company property not "similarly-

situated" to white employees guilty of identical misconduct where employer had unwritten

policy of terminating such employees (like plaintiff) with under five years seniority, but not

terminating employees (like the white employees) with such seniority).

**D.    Response in Support of Documents 101 and 102: Motions in Limine to Bar
References to Rochlin Litigation and to Claims Related to Equal Pay and/or
Promotion**

Plaintiff seeks to take the Court through the "looking class" into an alternative world

where she can try any claims she wants, including those not before the Court, and where she can

present any evidence she wants without regard to the Rules of Evidence or the law.  To allow

Plaintiff to pursue such a strategy will be to take a fairly narrow 4-5 day trial and expand it into a

multi-week trial.  Because Plaintiff has persisted in this strategy in the face of clear law to the

contrary, Defendants have found it necessary to file motions *in limine* asking the Court to focus

this case on the single discrimination issue in front of it – was Mary Lentz fired because her

employer believed in good faith that she took company money without permission and placed it

in her bank account or because she was female?  In fact, the Court has already articulated the

discrimination issue presented in this case as follows:

> **Plaintiff alleges that Defendants' termination of her employment as an in-
> house attorney was a product of sex discrimination in violation of Title VII.
> She contends that Defendants' proffered reason for firing her – her alleged**

15

> **conversion for personal use of reimbursement checks for photocopying**
> **expenses charged to outside counsel – was pretextual.**

(Order, September 21, 2004)

Yet, Plaintiff continues to insist that she must be allowed to present evidence related to an Equal Pay Act claim despite the fact that the claim was dismissed by the Court in its September 21, 2004 Order. The Court dismissed this claim without prejudice because Plaintiff was pursuing this claim as part of an Equal Pay Act collective action litigation currently pending in the United States District Court for the Southern District of Indiana – the *Rochlin* litigation. In dismissing the claim, the Court found that "Plaintiff has failed to set forth a viable claim under the federal Equal Pay Act." Yet, even though this claim has been removed from this case, Plaintiff continues to insist that she has a right to present evidence regarding this claim and regarding the *Rochlin* litigation where this claim is now pending.

The Court should understand that there have been absolutely no findings of discrimination in the *Rochlin* litigation and that the case is still in the discovery phase. Plaintiff asserts that the fact that "a class of CIC employees **has filed a suit alleging gender discrimination in pay** supports and lends color to Plaintiff's assertions of a discriminatory atmosphere." Plaintiff's claim in this case is about her termination and the basis for it, not about the "atmosphere." Additionally, Plaintiff has no Equal Pay Act claim in the litigation before this Court, so the existence of an Equal Pay Act collective action has no relevance to the issues here.[4]

---

[4] If Plaintiff wishes the Court to decide the EPA claim, then the Court is required to dismiss the claim based on Plaintiff's own testimony:

> Q.    So, based on as you sit here today, you can't identify for me a male attorney who was doing the same work as you but was paid more, is that correct?
>
> A.    That's correct.

(Lentz Dep. at 105)

What Plaintiff seeks to introduce related to the *Rochlin* litigation is predicated upon nothing more than unsubstantiated allegations and hearsay.

Despite this, Plaintiff claims that evidence related to the *Rochlin* litigation should be allowed in this case because it would "tend to add color to the employer's decision-making process." Plaintiff relies upon *Ezold v. Wolf*, 983 F.2d 509 (3d Cir. 1992) for this proposition, a case in which the Court reversed a verdict in favor of the employee. In its decision, the Court found that the "evidence" admitted by the trial court "to add color" was sufficiently unrelated to the issue before the Court – denial of a law firm partnership to a female associate – as to be an improper basis for the verdict. *Id.* at 546-48. Thus, the case law that Plaintiff relies upon in its argument actually undermines Plaintiff's argument for why evidence related to the *Rochlin* litigation should be allowed.

The only possible reason for Plaintiff to introduce the *Rochlin* litigation in this case is to suggest that since CIC has been sued before, it must deserve to be sued here, *i.e.*, "where there's smoke, there's fire." This is precisely the sort of unfair prejudice FRE 403 is intended to protect against.

Finally, Plaintiff seeks to present evidence on a nonexistent promotion claim that she long ago abandoned. Defendants would refer the Court to the arguments and cases cited in their original Motion *in Limine* and to the facts and discussion above in Section A.

**E.      Response in Support of Document 103: Motion in Limine to Bar Evidence and Reference to Alleged Conduct of David Balzano Unrelated in Time or Subject to Claims Made by Plaintiff**

It is undisputed in this case that Huller, and not Balzano, terminated Plaintiff. Plaintiff has never disputed this. Huller terminated Lentz because Lentz, not Balzano, admitted to Huller that she had put CIC funds in her private bank account and used them for her personal

17

expenses.  Nonetheless, Lentz continues to insist that she should be allowed to impute discriminatory animus to Huller and CIC by presenting Balzano in a bad light to the jury.

"The Sixth Circuit has repeatedly held that isolated and ambiguous comments are irrelevant and inadmissible in employment discrimination lawsuits." *Sullivan v. Delphi Automotive Systems Corp.*, 198 F. Supp. 2d 952, 959 (S.D. Ohio 2002) (citations omitted).  Such statements are inadmissible because they "are too abstract, in addition to being irrelevant and prejudicial, to support a finding of [ ] discrimination."  *Gagne v. Northwestern Nat'l. Ins. Co.*, 881 F.2d 309, 314-15 (6th Cir. 1989).

In distinguishing between isolated, ambiguous, stray remarks, on the one hand, and admissible evidence, on the other, the key inquiries are whether the statements were made by decisionmakers and whether they were related to the decisional process at issue.  Defendants would refer the Court to the arguments and cases cited in their original Motion *in Limine*. Document 103.  In addition, *Ezold v. Wolf,* 983 F.2d 509 (3rd Cir. 1992), one of the cases relied upon by Plaintiff throughout her opposition, supports Defendants' argument on the need for excluding irrelevant isolated and stray comments:  "If we were to hold that several stray remarks by a nondecisionmaker over a period of five years, while inappropriate, were sufficient to prove that Wolf's associate evaluation and partnership admission process were so infected with discriminatory bias and that such bias more likely motivated Wolf's promotion decision than its articulated legitimate reason, we would spill across the limits of Title VII."  *Id.* at 547.

Plaintiff seeks to present bare lay opinion testimony that Balzano "does not have a very high opinion of women," "had displayed animosity to female employees in the past," and "was unwilling to carry his share of the workload" in the Dayton office.  Again, Defendants would refer the Court to the arguments and cases cited in their original Motion *in Limine*.  Also, in

18

*Hester v. BIC Corp.*, 225 F.3d 178 (2nd Cir. 2000), a case relied upon by Plaintiff, the danger of such unfounded lay opinion is addressed by the Court: "[T]he costs of lay opinion increases and the benefits diminish the closer the opinion approaches the crucial issues in the case…This is because, even where the opinion is accompanied by supporting facts, 'the risk remains that the opinion may distract jurors from their task of drawing an independent conclusion as to an ultimate issue in the case.'" *Id.* at 182. The jury should decide this case based upon facts, not upon personal insults or unsubstantiated opinions clearly calculated to portray Balzano (and by implication, CIC) negatively.

F.     **Response in Support of Document 98: Defendants' Motion *In Limine* to Bar Irrelevant and Misleading Statistical Evidence or References**

Contrary to Plaintiff's assertion, Defendants have requested that the Court bar **all** irrelevant and misleading statistical evidence or references, not just those set forth in paragraphs 27 through 31 of Plaintiff's Complaint. The raw statistical evidence Plaintiff seeks to introduce is not explained by any expert witness or submitted with other non-statistical evidence that places the raw statistical evidence in context. In making their motion, Defendants request the Court to prohibit the introduction of this evidence since it is unduly prejudicial to Defendants and has no probative value.

Plaintiff cites several cases in support of her argument that her statistical evidence is admissible. In these cases, the statistical evidence was provided with expert explanation and put in context with other non-statistical evidence. In *EEOC v. O & G Spring and Wire Form Specialty Co.*, 38 F.3d 872 (7th Cir. 1994), the EEOC presented statistical evidence, through an expert's "refined" calculation of the relevant labor market that demonstrated that more African-Americans should have been hired by the defendant company based on an analysis of the relevant labor market serving defendant. *Id.*

19

Plaintiff seeks to present evidence that is not even comparable to an earlier decision by the Seventh Circuit Court of Appeals, cited in *O & G Spring*. In *EEOC v. Chicago Miniature Lamp Works*, 947 F.2d 292 (7th Cir. 1991) the Court found the statistics offered by the EEOC were "too unreliable" because appropriate variables were not evaluated in calculating the statistics. *Id.* In the present case, Plaintiff's "statistics" are <u>completely</u> unreliable because she does not even attempt to identify the appropriate variables that should be considered in looking at the number of women in various capacities at CIC (such as number of applicants, relevant labor pool, etc.) nor does she identify any expert to evaluate those variables.[5]

Plaintiff alleges that she is providing other non-statistical evidence along with her statistical evidence, which makes her statistical evidence admissible, but the type of evidence she claims to provide is not the type of expert analysis that makes her statistical evidence admissible. Rather, the additional evidence attempts to show how Plaintiff was similarly situated to other employees at CIC, who were not terminated. (See Section C above discussing why Plaintiff's similarly situated argument lacks merit.) Evidence of plaintiff being similarly situated does not provide the necessary supplemental expert analysis that would make Plaintiff's raw statistical evidence admissible. And, as previously discussed in Defendants' Motion *In Limine* to bar all irrelevant and misleading statistical evidence or references, which will not be repeated here, raw statistical evidence alone is not appropriate evidence.

Plaintiff also contends that because Defendants have admitted the validity of some of Plaintiff's statistical evidence their motion should be denied. Defendants have both admitted and denied some of Plaintiff's statistical evidence. Whether Defendants admitted or denied

---

[5] Plaintiff also cites *Daines v. Mankato*, 754 F. Supp. 681 (D. Minn. 1990) as support for her argument that her statistical evidence should not be excluded from trial. Just as in *O & G Spring*, in *Daines*, a statistical expert presented to the court a detailed statistical analysis regarding the "availability of women for the relevant positions, based on standard and accepted statistical sources for employment data." *Id. a*t 698.

Plaintiff's statistical evidence does not change the fact that Plaintiff's statistical evidence is irrelevant and misleading. Some of the evidence may be true, but this does not automatically make this evidence admissible. Even the admitted statistical evidence is inadmissible pursuant to FRE 403.

**G.      Response to Document No. 106: Defendants' Motion *In Limine* to Bar Evidence Related to Mark Huller's Contacts with the Dayton Bar Association and Montgomery County Prosecutor's Office.**

Contrary to Plaintiffs assertion, evidence that Mark Huller contacted the Dayton Bar Association ("DBA") and Montgomery County Prosecutor's Office ("MCP") regarding Plaintiff's conduct is not at all applicable to her case against Balzano. Huller's actions based on information provided to him by Balzano do not have any relevance to Plaintiffs' state law claims for intentional infliction of emotional distress and tortious interference with employment relationship against Balzano. In order to prove her case against Balzano, Plaintiff must provide evidence as to Balzano's actions, not Huller's actions. Plaintiff further argues that the jury should be aware of Huller's conduct in order to compare Huller's treatment of similarly situated employees. (See Sections A and C above discussing why Plaintiff's similarly situated argument has no merit.)

Plaintiff argues that Defendants inappropriately cite Ohio immunity case law in support of their motion. Defendants cite Ohio immunity law to support their argument that the Court should bar this evidence from trial because the Court must apply Ohio substantive law to this issue. *See Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 82 L. Ed. 1188, 58 S. Ct. 817 (1938); FRE 501. Since immunity is substantive rather than procedural law, the Court must use Ohio immunity law when deciding whether or not to permit this evidence at trial. There can be no dispute that to the extent Plaintiff claims that this evidence is relevant to their state law claims

21

against Balzano that the absolute privilege recognized by Ohio law must be used in this proceeding.  FRE 501.

Under relevant law in the Sixth Circuit, this evidence is also inadmissible for an entirely separate reason.  **The Sixth Circuit has held that the admission of evidence that a plaintiff was not prosecuted for a possible crime or other misconduct "is of very limited probative value" in showing that the plaintiff was innocent of any wrongdoing "because of the higher burden of persuasion in a criminal case."**  *Kelly's Auto Parts, No. 1, Inc. v. Boughton*, 809 F.2d 1247, 1252 (6th Cir. 1987).  *See also Rabon v. Great Southwest Fire Ins. Co.*, 818 F.2d 306, 309 (4th Cir. 1987).  Because such evidence is so unreliable, it is also "highly prejudical."  *Id.*  For these reasons, the circuit courts have considered the admission of such evidence in a civil case by a trial court to be "reversible error."  *Id.*

**H.    Response in Support of Document 99: Motion In Limine To Bar Any Evidence And/Or References Related To Punitive Damages**

Plaintiff should not be permitted to introduce evidence at trial related to an award for punitive damages or any reference to such evidence or damages.  The facts of this case, even if construed most favorably in Plaintiff's favor, cannot support an award of punitive damages under federal or Ohio law.  Therefore, any references to such evidence would not only be irrelevant, but would also confuse the jury and improperly prejudice their decision regarding the merits of Plaintiff's cause of action.

The parties agree to the standards that apply to determine entitlement to punitive damages.  Plaintiff argues in her Response that admissibility of evidence related to punitive damages should have been determined through summary judgment or judgment as a matter of law.  (Response at 14-15.)  The fact that Defendants did not file a summary judgment motion or move for judgment as a matter of law regarding punitive damages is not the issue.  Plaintiff's

22

prayer for punitive damages is not a cause of action to be decided by summary judgment; it is a class of relief, a remedy. *See Pollard v. Wawa Food Mkt.*, 2005 U.S. Dist. LEXIS 6806 (E.D.Pa. April 19, 2005) ("the great weight of authority holds that § 1981a does not create an independent cause of action, but only serves to expand the field of remedies for plaintiffs in Title VII suits"). And in order to be entitled to that class of relief, and thus, in order to introduce evidence related to that class of relief, Plaintiff must be able to meet either the standard under Title VII or the standard under Ohio law. She cannot meet either. In her Response, she cites no facts to support entitlement to punitive damages or evidence related to punitive damages.

Plaintiff cannot present evidence to support an award of punitive damages under state or federal law. Any references to such evidence would therefore be irrelevant and improperly prejudicial and would likely confuse the jury regarding the merits of Plaintiff's cause of action. Accordingly, pursuant to Federal Rules of Evidence ("FRE") 401, 402, and 403, Defendants renew their request that Plaintiff be prohibited from presenting evidence in support of an award for punitive damages or any reference to such evidence or damages at trial.

**I.      Reply In Support Of Document 100: Motion *In Limine* To Bar Any Evidence Or References Related To The Net Worth Of Defendants And/Or Regarding Conduct That Has No Nexus To The Harm Alleged By Plaintiff**

The Court should not permit Plaintiff to introduce evidence and argument at trial:

(1) regarding the net worth or financial status of Defendants or the compensation of any of CIC's executives and officers or (2) that seeks to punish Defendants for conduct that has no nexus to the specific harm alleged by Plaintiff, including evidence or argument that seeks to punish Defendants for alleged discrimination occurring outside of Ohio. Even if Plaintiff were entitled to present punitive damages evidence, the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution imposes substantive limits on punitive damages and the related evidence

23

that may be admitted at trial.  *State Farm Mutual Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003).

Specifically, a punitive damages determination must be based on:  "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damage award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases."  *Id*. at 418 (*citing BMW of North America v. Gore*, 517 U.S. 559, 575 (1996)); *accord, Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 121 S. Ct. 1678, 1684-85 (2001).  Therefore, in this case, Defendants' financial condition and conduct unrelated to the specific harm alleged should not be admissible at trial.

Despite Plaintiff's statement to the contrary in her Response, evidence of financial status is *not* admissible "once it is decided that the issue of punitive damages will be submitted to a jury."  The Supreme Court has stated that "where a defendant has not committed an act that would warrant a large punitive damages award, such an award should not be upheld . . . merely because the defendant has the ability to pay it."  *BMW of North America, Inc. v. Gore*, 701 So.2d 507, 514 (Ala. 1997).  Reliance upon a corporate defendant's financial condition may result in excessive punishment by appealing to the jury's bias against corporations.  *Campbell*, 538 U.S. at 427-28.  Evidence of Defendants' financial condition in this case has no bearing on Plaintiff's claims or the relief that she has demanded, including punitive damages, and it would only be introduced to unfairly bias the jury.  Not only is evidence of financial condition inadmissible under Supreme Court precedent, it is also irrelevant to Plaintiff's federal claims in light of the $300,000 statutory limit on combined compensatory and punitive damage awards under Title VII.  42 U.S.C. § 1981a(b)(3).

24

To be probative on the issue of punitive damages, the defendant's conduct "must have a nexus to the specific harm suffered by the plaintiff." *Campbell*, 538 U.S. at 422. If a jury were permitted to render an award designed to punish the defendant for its conduct without a nexus to the specific harm alleged by plaintiff, then others could also recover punitive damages for those same activities — "creat[ing] the possibility of multiple punitive damages awards for the same conduct." *Id*. at 423.

Plaintiff offers no rebuttal argument in support of the admissibility of this evidence other than stating "[a]s for any other allegations of companywide discrimination or wrongdoing, Plaintiff is forced to speculate as to what this might mean, and so therefore opposes this portion of the Motion in Limine." An example of inadmissible evidence that has no nexus to Plaintiff's specific harm would be references to allegedly discriminatory conduct from the Rochlin litigation or to alleged discriminatory comments made by nondecisionmakers in contexts unrelated to Plaintiff. Under *Campbell*, evidence of conduct referenced in the Rochlin litigation and other conduct unrelated to Plaintiff and her claims cannot be proffered to support her punitive damages claim because such conduct have no nexus to the specific harm she has alleged.[6]

## J.    Conclusion

For all of the reasons set forth in Defendants' original Motions *in Limine* and Memorandum in Support, as well as all reasons set forth above, Defendants respectfully request

---

[6] Although Plaintiff does not address the nexus requirement for evidence in support of claims for punitive damages, she cites *Conway v. Int'l Ass'n of Heat and Frost Insulators and Asbestos Workers*, 209 F. Supp. 2d 731 (N.D. Ohio 2002), for the proposition that "[t]he difference between the way Balzano treated Plaintiff as opposed to others impacts the 'outrageous and extreme' and the 'serious emotional anguish' prongs of [her] Intentional Infliction of Emotional Distress Claim." *Conway*, however, does not support the stated proposition. While it does evaluate an intentional infliction of emotional distress claim, it does not state or even imply that the difference in the way individuals are treated impacts the "outrageous and extreme" and "serious emotional anguish" prongs of an intentional infliction of emotional distress claim.

that the Court grant all Defendants' Motions *in Limine* and establish appropriate parameters for

the trial in this case.

Respectfully submitted,


*s/ Deborah S. Adams*
Deborah S. Adams (0005607)
Jack B. Harrison (0061993)
Frost Brown Todd LLC
2200 PNC Center
201 East Fifth Street
Cincinnati, OH 45202-4182
(513) 651-6800 (phone)
dadams@fbtlaw.com
jharrison@fbtlaw.com

Trial Attorneys for Defendants

26

**CERTIFICATE OF SERVICE**

I hereby certify that on May 25, 2005, a copy of Defendants' Reply in Support of Motions *in Limine* was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system and copies will be mailed via U.S. Mail to those parties who are not served via the Court's electronic filing system, if any. Parties may access this filing through the Court's system.

s/ *Deborah S. Adams*
Deborah S. Adams (0005607)
Jack B. Harrison (0061993)
Frost Brown Todd LLC
2200 PNC Center
201 East Fifth Street
Cincinnati, OH 45202-4182
(513) 651-6800 (telephone)
dadams@fbtlaw.com
jharrison@fbtlaw.com

Trial Attorneys for Defendant
