**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| MARY E. LENTZ, | : | Case No.: 01-CV-599 |
| | : | |
| Plaintiff, | : | (Judge Watson) |
| | : | |
| v. | : | |
| | : | |
| CINCINNATI INSURANCE CO., et al., | : | **DEFENDANTS' MOTION TO STRIKE DEPOSITION OF DONALD DESSEYN AND OBJECTIONS TO PLAINTIFF'S DEPOSITION DESIGNATIONS AND DEFENDANT'S COUNTERDESIGNATIONS** |
| | : | |
| Defendants. | : | |

Pursuant to Federal Rules of Civil Procedure 26, 32 and 37 and the Pretrial Procedures of this Court, Defendants Cincinnati Insurance Company ("CIC") and David Balzano ("Balzano") (collectively, "Defendants") herein respectfully request that the Court strike the deposition testimony of Donald Desseyn ("Desseyn"). Desseyn's testimony is basically rank hearsay, entirely duplicative and cumulative of other testimony to be offered at trial and, more importantly, has no relevance to the central issues before the Court. Desseyn left the Dayton office of CIC in January, 1999, and was not present in the office when Mary Lentz ("Lentz") began placing CIC funds in her personal bank account. Desseyn provided no testimony indicating that he was aware of this misconduct by Lentz.

To the extent the Court allows this deposition transcript to be used at trial, Defendants interpose the objections set forth in their attached Memorandum in Support to those portions of the deposition of Donald Desseyn designated by Plaintiff to be presented to the jury in this matter. Attached as Exh. A are Defendants' counterdesignations of those portions of this deposition transcript that Defendants would present. For ease of the jury, Defendants

respectfully suggest that if any portions of Desseyn's deposition testimony is to be presented to the jury that both parties' designations be presented at the same time in the order in which they appear in the deposition transcript, so that the jury is able to understand the complete context of the questions asked to Desseyn and his answers to those questions.

The grounds for this motion are more fully set forth in the attached Memorandum in Support of Motion to Strike.

Respectfully submitted,

*/s/ Jack B. Harrison*
Deborah S. Adams (0005607)
Jack B. Harrison (0061993)
FROST BROWN TODD LLC
2200 PNC Center
201 East Fifth Street
Cincinnati, OH  45202
(513) 651-6705
(513) 651-6981 (fax)
dadams@fbtlaw.com
jharrison@fbtlaw.com

Trial Attorneys for Defendants

## **MEMORANDUM IN SUPPORT OF MOTION TO STRIKE**

**I.     INTRODUCTION**

Large portions of the transcript identified by Plaintiff should be excluded by the motions *in limine* filed by Defendants and currently pending before the Court. Additionally, portions of the transcript identified by Plaintiff deal with issues and areas that are completely irrelevant and collateral to the central issue before the Court – was Mary Lentz terminated by CIC because she secretly took funds belonging to CIC and commingled those with her own funds in her personal bank account or because she is female. Portions of this transcript are rank hearsay about which the witness admits having no personal knowledge and are completely cumulative and duplicative of other evidence to be presented by live witnesses in this case.

Defendants assert that for these reasons, as well as those set out in their objections below, the deposition testimony of Donald Desseyn should be stricken and excluded from use at trial.

**II.    OBJECTIONS AND ARGUMENT**

Defendants, therefore, interpose the following objections to Plaintiff's deposition designations:

**Plaintiff's Designation**

**PP. 21:18 – 22:21**

**Objection**

The questions themselves are improper as to the characterizations they contain; they lack foundation, and are compound. In addition, the entire line of questions deals with unsubstantiated hearsay rumor and innuendo regarding Fred Young, a CIC attorney who is not a party to this case and was involved in no decisions related to the termination of Mary Lentz. Desseyn testifies that he has no personal knowledge of these matters, that all he knows is based

3

on what "I heard or was told – I was told by someone – who I don't know. . ." This testimony is hearsay and inherently unreliable and is not admissible.

**Plaintiff's Designation**

**PP.  26:22 – 28:20, 29:12 -29:23**

### Objection

This entire line of questioning appears to deal with some vague allegation that a CIC "claims supervisor by the name of O'Hara" asked Plaintiff to change an "incident report." Again, O'Hara is not a party to this case and was in no way involved in any matter related to Lentz's termination.  Desseyn testified that all he remembered of the incident was that Lentz had spoken to him about this matter, that she did not know whether whatever comment the supervisor had made was a joke or not, but that she should certainly not change the report.  Again, this is nothing but unsubstantiated innuendo and hearsay that has no bearing on why Lentz was terminated.  Additionally, specific questions were asked about Desseyn's opinions regarding the ethics of the claims supervisor in this alleged event of which Desseyn had no personal knowledge, with specific objections as to the witness's competence interposed on the record.

**Plaintiff's Designation**

**PP. 34:6 – 35:11, 35:20 – 36:6, 36:19 – 37:2, 37:18 – 37:22, 38:7 – 38:8, 38:15 – 38:17, 57:17 – 58:7**

### Objection

This entire line of questions, excluding the portions where counsel for Plaintiff testifies, is focused on "tensions" in the Dayton office of Cincinnati Insurance Company between the attorneys, Mary Lentz, Fred Young, David Balzano, and various secretaries.  The only possible

4

tension that can have relevance to any of the claims before the Court is any tension that Desseyn identified between Lentz and Balzano, in that such tension might be tangentially relevant to the claims against Balzano.  However, the only tension identified by Desseyn as existing between Lentz and Balzano occurs in a portion of the transcript which is not designated by Plaintiff, and which is the only time the witness is directly asked about his knowledge of any tension between Lentz and Balzano.  Desseyn states: "I think a lot of it had to do with – I think some of it had to do with Mary's secretary Paula Ruppert and the assignment of work or something to her."  57:13 – 57:16.  Even assuming that to be true, Lentz, Ruppert and Balzano will all testify in this trial and can be asked about this issue.  Desseyn's testimony on this single point adds nothing to this case, and his vague testimony regarding tension between others in the Dayton office who were not at all involved in any decisions related to Lentz's termination is completely irrelevant and rank hearsay and should be excluded.

Additionally, these designations focus on whether Paula Ruppert had good relations with persons in the office and what her work performance was like.  While Ruppert may well be a witness in this trial, how she performed as a secretary in the Dayton office or how and whether she got along with others in the Dayton office of CIC is in no way relevant to the issues before the Court.  Such testimony regarding these issues is just a waste of the Court's and jury's time.

**Plaintiff's Designation**

**41:23 – 42:6, 42:20 – 42:21, 43:2 – 44:18, 45:2 – 45:25, 46:8 – 48:13 (question included, but answer at 48:14 excluded by Plaintiff's designations), 48:15 (question included, but answer at 48:16 excluded by Plaintiff's designations), 48:17 – 48:22, 48:25 – 49:3, 50:22 – 51:17, 51:20 – 51:23, 52:23 – 55:9, 56:2 – 56:8, 61:1 – 61:14, 65:21 – 66:9, 66:13 – 66:23, 67:2 – 67:4**

### Objection

These designations all focus upon the issue that Plaintiff has referred to variously as "copy money", "copy lunches," "lunch money," "pizza lunches" and other related nomenclature. Throughout this litigation, Plaintiff has argued that all the employees in the Dayton office, including the attorneys, knew about the "copy money" reimbursement fund and benefited from it by participating in lunches purchased from the fund. She argues that everyone participated in the copy money fund in the same way, including Balzano, the Managing Attorney in the office, but that only she – a female – was punished for it. CIC did not terminate or otherwise discipline Lentz or any employee – male or female – for participating in office lunches purchased with copy reimbursement money. Everyone who participated in the lunches – male and female – went unpunished because that was not the thing with which CIC was concerned.

Huller terminated Lentz and only Lentz for one reason: because she took CIC's money and placed it in her own bank account. She did it secretly and without permission. No one else – male or female – did this.

Desseyn's testimony provides no further insight on this issue, is based on nothing but inadmissible hearsay, and is simply duplicative of other testimony that will be presented live in this case. With regard to Balzano, Desseyn's testimony is identical to the testimony of Balzano – that at some point in 1998 Lentz stated that she was told by someone in the CIC Headquarters' Claims Department that funds she had secured (approximately $60) by charging other counsel

for copies on one specific file could not be linked up with that file for some reason and that Lentz stated she was told by HQ Claims that this $60 was to be used for the office. Desseyn offers nothing more than that. He does not say that Mary Lentz was told by HQ Claims or by David Balzano or anyone else that it was acceptable behavior to place funds belonging to CIC in her personal bank account and use those funds for her personal expenses.

Plaintiff simply wants to manufacture some inference that will allow her to compare office lunches, which no one was disciplined for, including her, with a situation where she admits putting CIC funds in her personal bank account. She apparently intends to do this by bizarrely using portions of Desseyn's deposition transcript where only her counsel's questions are designated. For example, on page 48 of the transcript that was sent to Defendants' counsel last evening by Plaintiff's counsel, where the blacked out portion of the transcript is the section designated by Plaintiff (Exh. B),[1] Plaintiff has designated the following question, beginning at line 6:

```
6     Q    And do you know whether Dave Balzano sat in
7     for this staff meeting and participated in the lunch
8     that was purchased with copy money?
9     A    Do I know if Dave Balzano did what?
10    Q    Sat in on this staff meeting or meeting
11    that you just referred to. Did he sit in on that
12    meeting and participate in the lunch that was
13    purchased with copy money?
```

---

[1] Exhibit B is exactly the form in which Plaintiff's designations were provided to Defendants. When a clearer copy of the designations was requested, Plaintiff's counsel said they did not have time to do so.

7

However, as can be clearly seen, Plaintiff fails to designate the answer to the question offered by Desseyn, "I believe he did on a couple of them, yes." Apparently, Plaintiff intends to offer counsel's question as testimony, ignoring answers that comport with Balzano's testimony and conflict with the story she is attempting to create.

**Plaintiff's Designation**

**PP  58:9 – 58:23, 60:2 – 60:8, 60:16 – 60:25, 63:13 – 64:2**

**Objection**

This line of questions has to do with Desseyn's opinions about Lentz's performance as an attorney and about a letter of recommendation that he wrote for her following her termination. Again, this testimony provides no relevant evidence on the issues before the Court, because Desseyn was not working in the Dayton office when Lentz converted CIC funds or when she was terminated for this conversion. Lentz was not terminated because of her performance as an attorney, she was terminated for converting and commingling funds. Desseyn simply has no relevant information to offer on these issues, as he readily admits in his testimony.

Also, the fact that he wrote her a letter of recommendation at some point after she was terminated again has no bearing on the issues before the Court. In fact Desseyn himself limited the temporal context for his letter of recommendation to "my perceptions with regards to our working together while I was in the Dayton office."

In addition to these substantive objections to these designations, Defendants also stand on the form objections set forth in the deposition transcript as follows:

**PP.  21:25 – 22:1**              **Objection as to characterization of facts**

**PP.  22:10 – 22:11**             **Objection as to characterization of facts**

| | |
|---|---|
| **PP. 28:12 – 28:14** | **Objection as to competency of witness** |
| **PP. 46:15 – 46:17** | **Objection as to characterization of witness testimony** |
| **PP. 48:23 – 48:24** | **Objection as to form – compound question** |
| **PP. 51:18 – 51:19** | **Objection to form – compound** |
| **PP. 58:2 – 58:4** | **Objection as to competency of witness** |
| **PP. 61:7 – 61:9** | **Objection to form and foundation – compound** |

### III. CONCLUSION

For all the reasons set forth above, Defendants respectfully request the Court to strike the Plaintiff's deposition designations from the deposition transcript of Donald Desseyn and exclude Desseyn's testimony at the trial of this matter. In the alternative, Defendants would respectfully request that the Court exclude those portions of Desseyn's designated transcript that conflict with Defendants' motions *in limine* pending before the Court and sustain the objections set forth above. Finally, in the event Desseyn's deposition transcript is used at trial, Defendants herein submit as Exhibits A & A-1 their counterdesignations.

Respectfully submitted,

*/s/ Jack B. Harrison*
Deborah S. Adams (0005607)
Jack B. Harrison (0061993)
FROST BROWN TODD LLC
2200 PNC Center
201 East Fifth Street
Cincinnati, OH 45202
(513) 651-6705
(513) 651-6981 (fax)
dadams@fbtlaw.com
jharrison@fbtlaw.com

Trial Attorneys for Defendants

9

## CERTIFICATE OF SERVICE

     I hereby certify that on this 2d day of June 2005 a copy of Defendants' Motion to Strike Undisclosed Witnesses was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system and copies will be mailed via U.S. Mail to those parties who are not served via the Court's electronic filing system. Parties may access this filing through the Court's system.

                                                  */s/ Jack B. Harrison*

CinLibrary 0011523.0480059  1512394v.1