UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Mary E. Lentz,

    Plaintiff,

v.

Cincinnati Insurance Co., *et al*,

    Defendants.

Case No. 1:01cv599

District Judge Michael H. Watson

## ORDER

This matter is before the Court upon Defendants' Motion *in Limine* to Bar Witnesses from Offering Evidence Contrary to the Evidence they Provided to CIC at the Time of the Termination Decision (Doc. 97); Motion *in Limine* to Bar Irrelevant and Misleading Statistical Evidence or References (Doc. 98); Motion *in Limine* to Bar Any Evidence and/or References Related to Punitive Damages (Doc. 99); Motion *in Limine* to Bar any Evidence or References Related to the Net Worth of Defendants and/or Regarding Conduct that has no Nexus to the Harm Alleged by Plaintiff (Doc. 100); Motion *in Limine* to Bar References to Rochlin Litigation (Doc. 101); Motion *in Limine* to Bar References to Equal Pay Act or any claims Related to Salary and/or Promotion (Doc. 102); Motion *in Limine* to Bar Any Evidence of or Reference to Alleged Conduct of David Balzano Unrelated in Time or Subject to the Claims Made by Plaintiff (Doc. 103); Motion *in Limine* to Bar Improper "Similarly Situated" and Related Evidence and Affidavit of Mark Huller (Doc. 105); Motion *in Limine* to Bar Evidence Related to Mark Huller's Contacts with the Dayton Bar

Association and Montgomery County Prosecutor's Office and Memorandum in Support (Doc. 106); and Motion to Strike Undisclosed Witnesses. (Doc. 113)

Also before the Court is Plaintiff's Motion to Quash Non-Party Subpoena (Doc. 107); and Defendants' Motion to Compel Production of Plaintiff's Wage and Earning Records. (Doc. 109).

Based on the arguments presented during the Final Pretrial Conference on May 26, 2005 and the memoranda filed by the parties, the Court concludes as follows:

I. **Motion *in Limine* to Bar Witnesses from Offering Evidence Contrary to the Evidence they Provided to CIC at the Time of the Termination Decision.**

Defendants argue that Lentz should be prohibited from presenting evidence that was not presented to Cincinnati Insurance Company ("CIC") at the time the decision to terminate Lentz was made. Defendants argue that the caselaw is such that an employer is entitled to have an honest belief in its proffered nondiscriminatory reason for discharging an employee, and the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect. Defendants argue that employers are not required to show that "no stone was left unturned" but that the employer made a reasonably informed decision based on the evidence before it when the decision was made.

Lentz responds that she should not be prohibited from presenting any evidence which may not have been known to her or other interviewed employees but nevertheless was known by the relevant decision-makers at the time.

The Motion *in Limine* to Bar Witnesses from Offering Evidence Contrary to the Evidence they Provided to CIC at the Time of the Termination Decision is hereby TAKEN UNDER SUBMISSION.

II. **Motion *in Limine* to Bar Irrelevant and Misleading Statistical Evidence or References.**

Defendants seek to prohibit Lentz from presenting any statistical evidence or references because there are no allegations of company-wide discrimination. Defendants argue that the statistics are irrelevant under Federal Rules of Evidence 401 and 402. Defendants also maintain that Lentz's statistical argument in her Complaint is based entirely upon a "statistical fallacy," making the evidence unfairly prejudicial under Federal Rule of Evidence 403.

Lentz responds that federal appellate courts have found that statistical disparities alone may prove intent. Lentz explains that the statistical evidence shows that the CIC workplace was controlled by men. Lentz also points out that several of these paragraphs in the Complaint were admitted by Defendants in their Answer.

The Court finds that Lentz has not made any allegations of company-wide discrimination and the probative value of the statistical disparities in showing a male-dominated environment is substantially outweighed by the danger of unfair prejudice to the Defendants and confusion of the issues.

Therefore, the Motion *in Limine* to Bar Irrelevant and Misleading Statistical Evidence or References is hereby GRANTED.

III.  **Motion *in Limine* to Bar Any Evidence and/or References Related to Punitive Damages.**

Defendants argue that Lentz should be prohibited from presenting any evidence in support of her claim for punitive damages because the facts of this case do not support such an award. Specifically, Defendants state that there is no evidence of malice or reckless indifference. Defendants cite several cases where it was found that an award of punitive damages was not justified.

Lentz responds by pointing out that this is not a dispositive motion, but a motion in *limine*, and the issue of sufficiency of the evidence is not appropriate. The Court agrees.

A plaintiff seeking punitive damages under Title VII must prove that the defendant acted "with malice or with reckless indifference to the federally protected rights of an aggrieved individual." *White v. Burlington Northern & Santa Fe R. Co.*, 364 F.3d 789, 808 (6th Cir. 2004), *quoting*, 42 U.S.C. § 1981a(b)(1). Under Ohio law, an award of punitive damages in a tort case may be made only upon a finding of actual malice, fraud, oppression, or insult on the part of the defendant. *Estate of Schmidt v. Derenia*, 822 N.E.2d 401, 404 (Ohio Ct. App. 2004), citing, Ohio Rev. Code § 2315.21. Until the presentation of evidence at trial, the Court cannot make the determination whether there is sufficient evidence to present the issue of punitive damages to the jury.

Therefore, the Motion *in Limine* to Bar Irrelevant and Misleading Statistical Evidence or References is hereby DENIED.

IV.  **Motion *in Limine* to Bar any Evidence or References Related to the Net Worth of Defendants and/or Regarding Conduct that has no Nexus to the Harm Alleged by Plaintiff.**

Defendants argue that Lentz should not be permitted to present any evidence of their financial status or compensation of their executives; or conduct that has no nexus to the harm alleged by Plaintiff, including evidence of discrimination occurring outside Ohio and statements made by David Balzano, managing attorney of the Dayton office. Defendants argue that this evidence is not relevant to the determination of punitive damages.

Lentz responds that evidence of net worth is typically presented once it is decided that the issue of punitive damages will be submitted to the jury. Lentz states that other than the "Rochlin litigation" it must speculate as to what "other discrimination" Defendants are referring to. Lentz states that she should be able to present the statements of other similarly situated comparators such as Balzano.

"[E]vidence of a tortfeasor's wealth is traditionally admissible as a measure of the amount of punitive damages that should be awarded." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 270 (1981); *Yousef v. Parr, Inc.*, 591 N.E.2d 762 771 (Ohio Ct. App. 1990) ("Evidence of a defendant's wealth is relevant when considering an award of punitive damages"). Until the Court determines whether the issue of punitive damages should be submitted to the jury, the Court cannot properly exclude evidence of Defendants' wealth.

Defendants' remaining arguments are equally unavailing. The Supreme Court cases cited by Defendants discuss lawful out-of-state conduct in assessing punitive damages in a state-law cases. Here, Lentz's claim is brought under Title VII, which is a federal statute. To the extent that Plaintiff intends to present evidence of discrimination

occurring outside Ohio which is relevant to her claim, this evidence will not be excluded. Similarly, relevant statements or conduct by Balzano will not be excluded.

Therefore, Defendants' Motion *in Limine* to Bar any Evidence or References Related to the Net Worth of Defendants and/or Regarding Conduct that has no Nexus to the Harm Alleged by Plaintiff is hereby DENIED.

V.    **Motion *in Limine* to Bar References to Rochlin Litigation.**

Defendants state that the Rochlin litigation is currently pending in the United States District Court for the Southern District of Indiana; and is a collective action under the Equal Pay Act against CIC. Lentz is one of the plaintiffs in that case. Defendants argue that even if this litigation is relevant, it is prejudicial, would confuse issues, and is a "bad act" under FRE 404(b).

Lentz responds that the evidence is relevant because it supports Plaintiff's claim of a discriminatory atmosphere.

Defendant's Motion *in Limine* to Bar References to Rochlin Litigation is hereby TAKEN UNDER SUBMISSION.

VI.   **Motion *in Limine* to Bar References to Equal Pay Act or any claims Related to Salary and/or Promotion.**

Defendants argue that any evidence or testimony that Lentz was paid less than other male attorneys or was not promoted should be excluded because such evidence is not relevant, would confuse the jury, and unduly prejudice Defendants. Defendants point out that Lentz mentions the Equal Pay Act in her complaint, but this claim was dismissed without prejudice. Defendants also state that the job at issue - Managing Attorney - never became available during the time Lentz was employed by CIC.

Lentz responds that as discussed above, she opposes Defendants' motion seeking to bar references to her Equal Pay Act claim. Lentz points out that part of her Title VII claim is a failure to promote theory, therefore her salary, as well as the salary for the position she was denied is relevant and must be admitted.

Defendants' Motion *in Limine* to Bar References to Equal Pay Act or any claims Related to Salary and/or Promotion is hereby TAKEN UNDER SUBMISSION.

### VII. Motion *in Limine* to Bar Any Evidence of or Reference to Alleged Conduct of David Balzano Unrelated in Time or Subject to the Claims Made by Plaintiff.

Defendants seek to prohibit any evidence of other bad acts or stray remarks of Balzano that are unrelated in time or subject matter to the claims of Lentz or any "lay opinions" of others regarding Balzano. Specifically, Defendants seek to exclude evidence that: (1) Balzano "refused to allow a female attorney to return on a part-time basis after maternity leave," and allegedly questioned why she would want to return since her husband was a doctor who made plenty of money; (2) Balzano "recommended that CIC rehire a male attorney, Fred Young, . . . despite knowing that Young previously left CIC shortly after a sexual harassment allegation," (3) Balzano requested that a court official sign an affidavit confirming that a female secretary who had missed work for jury duty actually did not show up for jury duty or had been released early, and (4) Balzano once questioned Plaintiff's secretary, Paula Ruppert, as to whether she "was engaging in the unauthorized practice of law."

Defendants also state that Lenz seeks to buttress her claims with several unsupported and uncomplimentary lay opinions concerning Balzano. For example, in her Complaint Lenz opines that Balzano "does not have a very high opinion of women," "had

displayed animosity to female employees in the past," and "was unwilling to carry his share of the workload" in the Dayton office.

Defendants argue that this evidence is not admissible under FRE 404(b). Defendants state that presentation of this evidence will result in "mini-trials," which will waste time and distract the jury. Defendants also state that Balzano was not the decision-maker in the decision to terminate Lentz.

Lentz responds that she is entitled to present this evidence of gender animus because this is an indirect evidence discrimination case. Lentz points out that Balzano is a managerial-level employee and his opinions and statements played heavily into the decision to terminate her. Lentz responds that her "lay opinions" or subjective perceptions are probative because there is objective evidence substantiating such perception.

In proving that an employer's legitimate, nondiscriminatory reason is pretextual, the statements of managerial-level employees who have the ability to influence a personnel decision are relevant. *Johnson v. Kroger Co.*, 319 F.3d 858, 868 (6th Cir. 2003). Therefore, if Lentz shows that Balzano was involved in the decision to terminate her employment, the remarks made by Balzano are relevant. As to Lentz's "lay opinions," to the extent that Lentz's or other witness' opinions are not based on objective evidence, the foundation of these opinions can be the subject of cross-examination.

Therefore, Defendants' Motion *in Limine* to Bar Any Evidence of or Reference to Alleged Conduct of David Balzano Unrelated in Time or Subject to the Claims Made by Plaintiff is hereby DENIED.

### VIII. Motion *in Limine* to Bar Improper "Similarly Situated" and Related Evidence.

Defendants argue that the treatment of Tom Ballato, a male attorney employed by CIC, is not relevant because he was not similarly situated. Defendants maintain that Ballato's behavior was "radically different" because he was visiting pornographic sites on his computer, while Lentz deposited CIC money in her account. Also, Ballato told CIC that he was seeking treatment for an unwanted addiction to pornography, and therefore this is a potential disability. Defendants also argue that Lentz should not be permitted to present evidence that other employees knew that copy money was used to buy lunches because Lentz was not terminated for using the copy money for lunches, but for depositing the money in her own bank account.

Lentz disputes that Ballato is not similarly situated. Lentz points out that she offered an innocent explanation for any alleged misconduct.

A plaintiff may show that an employer's proffered nondiscriminatory reasons for the plaintiff's termination are pretextual by showing that similarly-situated male employees were not terminated for doing some of the same improper acts committed by the plaintiff. *Warfield v. Lebanon Correctional Inst.*, 181 F.3d 723, 730 (6th Cir. 1999).[1] The male employees must be similarly situated "in all respects." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992). That is to say, they "must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the

---

[1] This Court has noted that this "similarly-situated" analysis applies equally in the context of establishing a *prima facie* case and the plaintiff's attempt to show that her employer's non-discriminatory reason for her termination was pretextual. *Williams v. Cargill*, 159 F.Supp.2d 984, 992 n.19 (S.D. Ohio 2001).

9

employer's treatment of them for it." *Id.* Accordingly, the misconduct of these similarly-situated employees must be of "comparable seriousness" to the plaintiff's infractions. *Kirkland v. Runyon*, 887 F.Supp. 1001, 1004 (S.D.Ohio 1995); *see also Harrison v. Metropolitan Gov't of Nashville & Davidson County*, 80 F.3d 1107, 1115 (6th Cir. 1996). "[P]recise equivalence in culpability between employees" is not required. *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 283 n. 11 (1976).

Whether or not Ballato was similarly situated is not a question which is properly addressed by a motion *in limine*. To the extent that Lentz intends to present evidence which is relevant to this determination, evidence of Ballato's conduct will not be excluded. Therefore, Defendants' Motion *in Limine* to Bar Improper "Similarly Situated" and Related Evidence is hereby DENIED.

IX. **Motion *in Limine* to Bar Evidence Related to Mark Huller's Contacts with the Dayton Bar Association and Montgomery County Prosecutor's Office.**

Defendants seek to exclude any evidence offered at trial by Lentz or others relating to actions taken by Mark Huller, Manager of the Trial Division of CIC, in reporting Lentz's conduct to the Dayton Bar Association and the Montgomery County Prosecutor's Office. Defendants argue that this evidence is not relevant and unduly prejudicial. Defendants explain that this information was pled to support Lentz's defamation claim, which has been dismissed. Defendants state that Huller's ethical obligations to report the commingling of funds does not prove gender discrimination.

Lentz responds that it was Balzano who brought the matter to Huller's attention and distorted the facts so that Lentz was portrayed as a criminal. Lentz states that the reporting is relevant because other male employees were not reported for similar conduct.

As stated above, if Lentz shows that Balzano was involved in the decision to terminate her employment, the remarks and conduct by Balzano are relevant to showing pretext. Similarly, evidence that there were other male, similarly-situated employees who were not reported to the bar association or the prosecutors office would be relevant to showing pretext. Therefore, Defendants' Motion *in Limine* to Bar Evidence Related to Mark Huller's Contacts with the Dayton Bar Association and Montgomery County Prosecutor's Office is hereby DENIED.

## X.   Motion to Strike Undisclosed Witnesses.

Defendants argue that Lentz failed to disclose Phil Rumme and Roger Makley as potential witnesses in a timely manner. Defendants state that they have not had the opportunity to depose Rumme and Makley. Defendants argue that Rumme was and is Plaintiff's husband, and Makley was Plaintiff's prior counsel retained in late 1999, and therefore any information to which they could testify was certainly "reasonably available" to Plaintiff earlier. Lentz responds that these witnesses and their testimony should not be unexpected.

Federal Rule of Civil Procedure 37(c) provides that "[a] party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, . . . any witness or information not so disclosed." Rule 26 requires a party to disclose "the name and, if known, the address and telephone number of each individual likely to have discoverable information relevant to disputed facts," as well as "the name . . . of each witness, separately identifying those

whom the party expects to present and those whom the party may call if the need arises." Fed.R.Civ.P. 26(a)(1), 26(a)(3)(A).

The Court finds that Plaintiff's failure to disclose either Rumme or Makley is neither justified or harmless, and therefore, Rumme and Makley will be prohibited from testifying at trial. Accordingly, Defendants' Motion to Strike Undisclosed Witnesses is hereby **GRANTED**.

### XI. Motion to Quash Non-Party Subpoena and Motion to Compel Production of Plaintiff's Wage and Earning Records.

Lentz explains that Defendants issued a subpoena to her employer to obtain various financial-employment records. Lentz argues that this subpoena was issued after discovery had closed, Lentz's counsel was not given adequate prior notice under Rule 45(b)(1), and there is not a reasonable amount of time to respond to the subpoena.

Defendants respond by stating that the subpoena was served on Lentz' counsel, and that is the only notice required. Defendants explain that their motion to compel seeks documents related to Lentz's income and earnings for 2000 to 2005 which Lentz has refused to provide this information.

During the Final Pretrial Conference on May 26, 2005, counsel for Lentz agreed to provide the requested information to Defendants. Therefore, Plaintiff's Motion to Quash Non-Party Subpoena and Defendants' Motion to Compel Production of Plaintiff's Wage and Earning Records are hereby **DENIED** as moot.

In summary, it is hereby ordered as follows:

1. Defendants' Motion *in Limine* to Bar Witnesses from Offering Evidence Contrary to the Evidence they Provided to CIC at the Time of the Termination Decision (Doc. 97) is **TAKEN UNDER SUBMISSION**.

2. Defendants' Motion *in Limine* to Bar Irrelevant and Misleading Statistical Evidence or References (Doc. 98) is **GRANTED**.

3. Defendants' Motion *in Limine* to Bar Any Evidence and/or References Related to Punitive Damages (Doc. 99) is **DENIED**.

4. Defendants' Motion *in Limine* to Bar any Evidence or References Related to the Net Worth of Defendants and/or Regarding Conduct that has no Nexus to the Harm Alleged by Plaintiff (Doc. 100) is **DENIED**.

5. Defendants' Motion *in Limine* to Bar References to Rochlin Litigation (Doc. 101) is **TAKEN UNDER SUBMISSION**.

6. Defendants' Motion *in Limine* to Bar References to Equal Pay Act or any claims Related to Salary and/or Promotion (Doc. 102) is **TAKEN UNDER SUBMISSION**.

7. Defendants' Motion *in Limine* to Bar Any Evidence of or Reference to Alleged Conduct of David Balzano Unrelated in Time or Subject to the Claims Made by Plaintiff (Doc. 103) is hereby **DENIED**.

8. Defendants' Motion *in Limine* to Bar Improper "Similarly Situated" and Related Evidence and Affidavit of Mark Huller (Doc. 105) is hereby **DENIED**.

9. Defendants' Motion *in Limine* to Bar Evidence Related to Mark Huller's Contacts with the Dayton Bar Association and Montgomery County Prosecutor's Office and Memorandum in Support (Doc. 106) is hereby **DENIED**.

10. Defendants' Motion to Strike Undisclosed Witnesses (Doc. 113) is hereby **GRANTED**.

11. Plaintiff's Motion to Quash Non-Party Subpoena (Doc. 107) is hereby **DENIED AS MOOT**.

12. Defendants' Motion to Compel Production of Plaintiff's Wage and Earning Records. (Doc. 109) is hereby **DENIED AS MOOT**.

**IT IS SO ORDERED.**

_____
MICHAEL H. WATSON, JUDGE
UNITED STATES DISTRICT COURT