UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| MARY E. LENTZ, | : | Case No.: 01-CV-599 |
| | : | |
| Plaintiff, | : | (Judge Watson) |
| | : | |
| v. | : | |
| | : | |
| CINCINNATI INSURANCE CO. and | : | **DEFENDANTS' BENCH BRIEF IN** |
| DAVID BALZANO, | : | **SUPPORT OF OBJECTIONS TO** |
| | : | **PLAINTIFF'S PROPOSED REBUTTAL** |
| | : | **TESTIMONY** |
| Defendants. | : | |

Defendants Cincinnati Insurance Co. ("CIC") and David Balzano (collectively, "Defendants") submit this Bench Brief in further support of oral objections that will be made to Plaintiff's proposed rebuttal testimony. At the close of Defendants' case on Friday, June 17, 2005, Plaintiff's counsel indicated to the Court that Plaintiff might seek to present rebuttal testimony and that by 5:00 p.m. on June 17, 2005, he would alert both the Court and Defendant's counsel as to which witness/es Plaintiff would seek to have testify and what the subject matter of that testimony would be. By both telephone call and by letter (copy attached as Exhibit A), Plaintiff's counsel stated that Plaintiff would seek to call only a single witness in rebuttal, Al Matheny. Plaintiff's counsel stated that "Mr. Matheny will be called to rebut Defendant Balzano's testimony regarding when Mr. Balzano first learned of Plaintiff's efforts to recoup copy money. Mr. Matheny also will be asked to authenticate his handwritten notes."

Defendants informed Plaintiff of their intent to object to the presentation of this testimony, since such testimony is clearly not rebuttal. Defendants also informed Plaintiff that Mr. Matheny was previously scheduled to be on vacation all next week. However, should the

Court overrule Defendants' objection to this testimony, Defendants will make Mr. Matheny available again to testify in this trial.

Courts within the Sixth Circuit **routinely exclude** purported rebuttal evidence if it **merely duplicates** prior evidence presented to the jury. *See Polec v. Northwest Airlines*, 86 F.3d 498, 528 (6th Cir. 1996); *Varga v. Rockwell Int'l Corp.*, 242 F.3d 693, 701 (6th Cir.), *cert. denied*, 534 U.S. 821 (2001). A trial court has the discretion to "limit the scope of rebuttal testimony to that which is directed to rebut **new evidence or new theories** proffered in the defendant's case-in-chief." *Toth v. Grand Trunk R.R.*, 306 F.3d 335, 345 (6th Cir. 2002); *Martin v. Weaver*, 666 F.2d 1013, 1020 (6th Cir. 1981), *cert. denied*, 456 U.S. 962, 72 L. Ed. 2d 485, 102 S. Ct. 2038 (1982).

In this case, Mr. Balzano's testimony that it was in early December, 1999 when he first learned that Ms. Lentz was requesting that checks for reimbursement for copies paid for by CIC be made out to her personally is hardly "new evidence" or a "new theory." In fact, Mr. Balzano's statements on this matter have been consistent since 1999, including his sworn testimony in his deposition in 2002 and his testimony in this trial. In her case in chief, Plaintiff's counsel challenged Mr. Balzano directly on this point:

```
25 Q. When you moved from the 14th floor to the 18th
 1 floor, to a new and enlarged space, Mr. Balzano, you
 2 were required to transfer information from the old
 3 server to the new server; isn't that correct?

 4 A. I personally didn't deal with that. I'm not real
 5 computer literate, but people from the company, I'm
 6 sure, did.

 7 Q. You weren't aware as the managing attorney when
 8 the transfer was made from the old computer server to
 9 the new computer server?

10 A. I can't give you a date honestly, sir.
```

11 Q. Do you have any way of disputing the statement
12 that the transfer was made on August 19th, '97?

13 A. I have no reason to dispute that, no. I'm sorry,
14 what was the year?

15 Q. 1997. I'm sorry, that should be 1999. I
16 misspoke.

17 A. We moved in June of 1999.

18 Q. I misspoke, I'm sorry. August of 1999; is that
19 correct?

20 A. I don't know. I don't have any reason to dispute
21 it, though, but I don't know.

22 Q. Didn't you become aware that Sandra Brower or
23 Julia Gibson in the summer of 1999, that they had
24 discovered letters in the computer in Mary Lentz's
25 directory while transferring files to the new server;
1 isn't that true?

2 A. Sir, I became aware of it in early December 1999.

3 MR. SUTHERLIN: Your Honor, may I show Joint
4 Exhibit 17, which has already been introduced into
5 evidence to the jury?

6 THE COURT: Yes, you may.

7 Q. Do you recognize this document, Mr. Balzano, as a
8 memoranda from Mr. Greg Lewis to Al Matheny dated
9 January 12th, 2000, summarizing certain investigations
10 and interviews?

11 A. I'm sorry, what exhibit was it, first of all?

12 Q. Joint Exhibit 17.

13 A. And once again, your question?

14 Q. The question was, do you recognize this document
15 as a memoranda describing the interview of various
16 witnesses by Mr. Greg Lewis, and directing it to

3

>17 Mr. Al Matheny dated January 12th, 2000?
>
>18 A. I've seen this document in the course of
>19 litigation, yes.
>
>20 Q. And this was Mr. Greg Lewis's memorandum from the
>21 legal department. What is his title?
>
>22 A. I don't know what his official title is. He's
>23 like second in charge of our legal department.
>
>24 Q. I will call your attention then to the last page.
>25 This pertains to an interview. Would you read
>1 that, please, to the jury?
>
>2 A. Which part did you want me to read?
>
>3 Q. The top part.
>
>4 A. "Working on Mary's files - Found letter to
>5 another attorney requesting money from another
>6 attorney - Thought amount was large - Case was Lewis
>7 versus Plower - This was last summer - Julia took this
>8 to Dave - Dave asked her to call the two attorneys to
>9 see if they paid Mary - The two attorneys never called
>10 her back."
>
>11 Q. Read the next part.
>
>12 A. "Dave asked her later on to get into the computer
>13 and make a copy of the letter - Pulling the file might
>14 have raised suspicions." Was there a pending
>15 question?

(Trial Transcript, June 16, 2005, pp. 873-76.)

Plaintiff again addressed this identical issue when Mr. Balzano was cross-examined in Defendant's case in chief:

>24 Q. You told the jury that you personally and
>25 physically went through the correspondence section of
>1 Mary Lentz's files in early December of 1999; isn't
>2 that true?
>
>3 A. That's correct.

4

> 4 Q. And in fact, Mr. Balzano, Sandra Brower told Greg
> 5 Lewis that you were provided with letters regarding
> 6 Mary Lentz's copies money lunches in the summer of
> 7 1999; isn't that true?
>
> 8 A. I wasn't present during Sandy Brower's
> 9 conversation with Greg Lewis, but I can tell you that
> 10 Sandy Brower gave me that letter in December of 1999.
> 11 The letter was dated from the summer.

(Trial Transcript, June 17, 2005, pp. 1088-89)

Both of these exchanges between Plaintiff's counsel and Mr. Balzano regarding when Mr. Balzano first learned that Ms. Lentz was requesting that copy reimbursement checks be made out in her name occurred **before** Mr. Matheny ever took the stand in this case. However, once Mr. Matheny was on the stand, Plaintiff's counsel chose to ask him no questions regarding his understanding of when Mr. Balzano first learned that Ms. Lentz was requesting that copy reimbursement checks be made out in her name or any questions about the interviews Mr. Matheny conducted on January 5, 2000, which are memorialized in Joint Exhibit XVII and Defendants Exhibit P. Mr. Matheny was asked both about the January 5, 2000 interviews and the document memorializing those interviews on direct examination, so Plaintiff had every opportunity on cross-examination to question Mr. Matheny about his understanding of when Mr. Balzano first learned that Ms. Lentz was requesting that copy reimbursement checks be made out in her name. Asking Mr. Matheny questions that could obviously have been asked on cross-examination is not proper rebuttal, and should not be allowed by this Court.

Plaintiff further states that in rebuttal "Mr. Matheny also will be asked to authenticate his handwritten notes." (Exhibit A) This clearly would be in rebuttal of nothing, since Mr. Matheny already authenticated his handwritten notes during the trial. During his cross-examination of Mr. Matheny, Plaintiff's counsel repeatedly misrepresented to the jury that Mr. Matheny had made

no contemporaneous notes during conversations he had with Mr. Huller, Ms. Ruppert, and others during the course of his investigation of Ms. Lentz's conduct, even though Mr. Matheny's handwritten notes had been produced to Plaintiff in April, 2002. (Trial Transcript, June 17, 2005, pp. 1146-1147, 1155.) On redirect, Mr. Matheny was shown his notes (which Plaintiff's counsel objected to) and he then properly authenticated them:

> 25 Q. Mr. Matheny, you were asked questions about
> 1 whether you had made notes of conversations with Ms.
> 2 Ruppert and Mr. Huller by Mr. Sutherlin. Do you
> 3 recall that?
>
> 4 A. Yes.
>
> 5 Q. Okay. I've handed you a document. Can you
> 6 identify that document for the jury?
>
> **7 A. These are my notes from these various telephone**
> **8 conversations that I had with folks, and I guess I**
> **9 didn't remember them sitting up here.**

(Trial Transcript, June 17, 2005, pp. 1155-56.) Mr. Matheny then identified each entry in the notes, including the date and the individual involved in the conversation. These handwritten notes were produced in this litigation and were available to all parties prior to trial, yet neither party identified them as exhibits. Mr. Matheny was asked to identify and authenticate them in front of the jury solely to correct representations made by Plaintiff's counsel during his cross-examination of Mr. Matheny. The notes have been authenticated, and even were they not, calling Mr. Matheny to the stand to authenticate documents that are not in dispute and are not exhibits in the case would not be proper rebuttal.

Trial in this matter has gone on long enough. Plaintiff has had ample opportunity to present her case, so there is no reason for further delay. Plaintiff has no true rebuttal testimony

or evidence to offer. The Court should reject Plaintiff's requested rebuttal and move this trial to its end.

    Respectfully submitted,

    _/s/ Jack B. Harrison_____
    Deborah S. Adams (0005607)
    Jack B. Harrison (0061993)
    FROST BROWN TODD LLC
    2200 PNC Center
    201 E. Fifth Street
    Cincinnati, Ohio 45202-4182
    Telephone: (513) 651-6800
    Telecopier: (513) 651-6981
    dadams@fbtlaw.com
    jharrison@fbtlaw.com
    Trial Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on June 18, 2005, a copy of Defendants' Bench Brief In Support Of Objections To Plaintiff's Proposed Rebuttal Testimony was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system and copies will be mailed via U.S. Mail to those parties who are not served via the Court's electronic filing system, if any. Parties may access this filing through the Court's system.

                                                           */s/ Jack B. Harrison*
Deborah S. Adams (0005607)
Jack B. Harrison (0061993)
Frost Brown Todd LLC
2200 PNC Center
201 East Fifth Street
Cincinnati, OH 45202-4182
(513) 651-6800 (telephone)
dadams@fbtlaw.com
jharrison@fbtlaw.com

Trial Attorneys for Defendants