# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| MARY E. LENTZ, | : | Case No.: 01-CV-599 |
| | : | |
| Plaintiff, | : | (Judge Watson) |
| | : | |
| v. | : | |
| | : | |
| CINCINNATI INSURANCE CO. and | : | **DEFENDANT DAVID BALZANO'S** |
| DAVID BALZANO, | : | **RENEWED MOTION FOR JUDGMENT AS** |
| | : | **A MATTER OF LAW AS TO CLAIM FOR** |
| | : | **INTENTIONAL INTERFERENCE WITH** |
| | : | **EMPLOYMENT RELATIONSHIP** |
| Defendants. | : | |

Defendant David Balzano ("Balzano") respectfully renews his request that this Court, pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, award him judgment as a matter of law because no reasonable jury could conclude that he tortiously interfered with Plaintiff Mary Lentz's ("Plaintiff") employment relationship with Defendant Cincinnati Insurance Co. ("CIC").

The grounds supporting this Motion are set forth in the attached Memorandum in Support.

Respectfully submitted,

*/s/ Jack B. Harrison*
Deborah S. Adams (0005607)
Jack B. Harrison (0061993)
FROST BROWN TODD LLC
2200 PNC Center
201 E. Fifth Street
Cincinnati, Ohio 45202-4182
Telephone: (513) 651-6800
Telecopier: (513) 651-6981
dadams@fbtlaw.com
jharrison@fbtlaw.com

## MEMORANDUM IN SUPPORT

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Lentz was an attorney for CIC and was terminated in January 2000. She was terminated because she admitted to placing CIC's money for reimbursement of copying expenses in her personal bank account and to spending the money on things like daycare. She claims she was terminated because of her gender. She further claims that Balzano committed tortious acts against her by inducing her termination when he reported false information to Mark Huller, the head of the CIC legal department, because he held a personal grudge against her.

After several years of litigation, the remaining three claims of Plaintiff, gender discrimination against CIC and tortious interference with a business relationship and intentional infliction of emotional distress claims against Balzano, proceeded to a jury trial before this Court, as did CIC's counterclaim against Plaintiff for conversion. After a few weeks of trial, Plaintiff rested her case and so did Defendants. The Court reserved its ruling on Defendants' motion for judgment as a matter of law at the close of Plaintiff's case. At the close of all the evidence, the Court granted in part Defendant's motion for judgment as a matter of law. The Court concluded that all of Plaintiff's claims would be submitted to the jury, except for the punitive damages instructions. The Court ruled, construing all the evidence in favor of Plaintiff, that "there's **insufficient evidence of malice** with respect to the two state law claims and malice and outrageous conduct to submit punitive damages to the jury on those two claims." (Tr. at 1296). The Court added: "I'm not going to charge it with respect to the two state law claims because I think **it's clear under state law that there's insufficient evidence**." (Tr. 1297-98.)

After closing arguments and a few hours of deliberations, the jury returned with its verdict on June 23, 2005. The jury found in favor of CIC on the gender discrimination claim and

2

in favor of Balzano on the emotional distress claim.  The jury found in favor of Plaintiff on her

tortious interference claim against Balzano but found she was entitled to zero damages.  The jury

also found in CIC's favor on its counterclaim for conversion and ordered Plaintiff to pay $1,600.

Balzano respectfully asserts that it was error to deny Defendants' motion for judgment as

a matter of law and to present the tortious interference claim to the jury, in that the evidence does

not support the jury verdict in Plaintiff's favor.

## LEGAL STANDARD

Under Rule 50 of Federal Rules of Civil Procedure, a court should grant judgment as a

matter of law at the close of evidence, or after a jury verdict in a renewed motion for judgment as

a matter of law, if no reasonable jury could find for a party on an issue and the controlling law

dictates that claim "cannot be maintained or defeated without a favorable finding on that issue."

Rule 50(a)(1), (b).  Construing all the evidence in favor of the non-moving party, if reasonable

minds could only conclude in favor of the moving party, then judgment as a matter of law is

appropriate.  *K&T Enters. v. Zurich Ins. Co.*, 97 F.3d 171, 175-176 (6th Cir. 1996); *Beya v.

Hoxworth Blood Ctr.*, 1999 U.S. App. LEXIS 3478, *7-9 (6th Cir. Mar. 3, 1999).

The record demonstrates that a reasonable jury could only conclude that Plaintiff has

produced insufficient evidence to prove her claim of tortious interference with her employment

relationship.  In fact, there was no evidence presented to support her claim that Balzano acted

maliciously or caused her termination.  *Wilkins v. Eaton Corp.,* 790 F.2d 515, 522 (6th Cir.

1986) ("For a case to be properly submitted to the jury, there must be more than a scintilla of

evidence supporting the claim.")  Even the Court stated that it did not see any evidence

supporting her allegations of malice.  Accordingly, judgment as a matter of law should have been

granted.  The Court noted that it would have a chance to revisit this issue on post-trial motions if

3

the jury "struggled" with the issue.  (Tr. at 1296.)  That time has come.  *See Orfield v Int'l Harvester Co.*, 415 F Supp 404 (E.D. Tenn. 1875), affd 535 F2d 959 (6th Cir.) (permissible for court to submit case to jury even though reasonable minds could come to only one conclusion, and, if there is then a verdict contrary to such conclusion, to enter judgment notwithstanding the verdict).  The Court should now grant Balzano's renewed motion for judgment as a matter of law because no evidence supports Plaintiff's claim that he tortiously interfered with Plaintiff's employment under the controlling Ohio law.

## LEGAL ARGUMENT

I.  **AS A MATTER OF LAW, BALZANO CANNOT BE LIABLE FOR TORTIOUS INTERFERENCE WITH PLAINTIFF'S EMPLOYMENT BECAUSE SUPERVISORS WHO REPORT MISCONDUCT OF SUBORDINATES CANNOT BE LIABLE FOR TORTIOUS INTERFERENCE IF THE SUPERVISOR'S DUTIES INCLUDE OVERSEEING THE PLAINTIFF.**

Under Ohio law, a co-worker cannot be liable for tortiously interfering with the business relationship of another employee and her employer if the action taken by the co-worker occurs during the course of the alleged interferer's employment and authority as an employee.  *See Anderson v. Minter*, 32 Ohio St. 2d 207, 291 N.E.2d 457 (1972); *see also Mitchell v. Mid-Oh. Emergency Servs.*, 2004 Ohio 5264, P32 (Oh. App. 10th Dist. 2004) (Watson, J.) ("[A] person in a supervisory capacity or other position of authority over the employee cannot be held liable for interfering if it is that person's duty to monitor, supervise, or enforce.").

> [A]n employee does not have a claim for damages for tortious interference with the employment relationship against one **inside the company whose position entitles them to interfere.** A person in a supervisory capacity or other position of authority over the employee cannot be sued for interfering with the employment relationship that it is his duty to monitor, supervise, or enforce.

*Smiddy v. Kinko's, Inc.*, 2003 Ohio 446, P9 (1st Dist. 2003).

4

Even a supervisor or co-worker who acts maliciously cannot be sued for tortious interference with employment so long as their duties included reporting the plaintiff to management.  In *Anderson*, the Ohio Supreme Court dismissed an action where the complaint alleged that a supervisor maliciously suspended the plaintiff for five days.  The court reasoned that a supervisor could not interfere with the business relationship between an employee and his employer if the action taken by the supervisor occurred within the scope of his delegated authority.  32 Ohio St. 2d at 213.  The court stated that liability could not be "predicated simply upon the characterization of such conduct as malicious."  *Id.  See, e.g., Duggan v. Orthopedic Inst. Oh., Inc.*, 2004 U.S. Dist. LEXIS 7583, at *8-12 (N.D. Oh. Apr. 8, 2004) (no tortious interference where administrative director maliciously reported plaintiff president's abusive behavior to other individual defendants; administrator made report in his professional capacity); *Schoendorf v. Memorial Hospital of Sandusky County*, 1988 Ohio App. LEXIS 2804 (6th Dist. July 15, 1988) (supervisor was entitled to a directed verdict because Ohio law did not recognize a cause of action against a supervisor acting within the scope of her duties); *Rayel v. The Wackenhut Corp.*, 1995 Ohio App. LEXIS 2389, at 14 (8th Dist. June 8, 1995) ("[T]his court has unequivocally stated that, '**a supervisor of an employee cannot be held liable for tortious interference with contract**.'  As such, appellant's claim involved a suit by a subordinate employee against a supervisor. Under the law of this district, no such action can lie.").

The Sixth Circuit, applying Ohio law, has reached the same conclusion.  In *Erebia v. Chrysler Plastic Products Corp.*, the court held a plaintiff could not maintain a claim for tortious interference with a business contract against a fellow employee.  891 F.2d 1212, 1216 (6th Cir. 1989).  According to the Sixth Circuit, such claims by employees against officers or other

supervisory agents of employers must fail because "there is no third party who induced the breach. The agents are considered the same as the actual employer." *Id.* at 1216.

In *Moses v. Budd Co.*, the Sixth District Court of Appeals extended the supervisor privilege from *Anderson* to fellow coworkers. 1993 Ohio App. LEXIS 5724, *9-10 (Dec. 3, 1993). The court stated that neither supervisors nor subordinates are held to a duty of good faith and fair dealing when reporting the conduct of other at-will employees because the at-will relationship **can be terminated in bad faith** by either the employee or the employer. *Id.* at 10-11. Because the act took place in the workplace and the act would not have been tortious but for the existence of the employment relationship, the employee could not be liable for maliciously interfering with the employment relationship. *Id.* at *11. The appellate court **reversed a jury verdict** in the plaintiff's favor **and entered a directed verdict** in favor of the individual defendant coworkers. *Id.*

Similar to *Moses*, assuming that everything Plaintiff claims is true, Balzano did not commit an independent tort against Plaintiff. He reported her conduct while in the workplace, and the act would not have been "tortuous" but for the existence of Plaintiff's employment. Thus, it does not matter that he may have reported to Huller knowing the information was not the whole truth because Ohio law permits employees to maliciously interfere with one another, so long as they are acting within the scope of their employment. Likewise, it is irrelevant that Balzano may have been pursuing a personal grudge against Plaintiff. Pursuant to *Moses*, Balzano was free to advance his own interests in an at-will employment relationship, as was Plaintiff. 1993 Ohio App. LEXIS 5724, at *11.

Ohio courts have continuously held that: "No claim can be brought against a supervisor for malicious acts committed in the course and scope of his employment, **even where those acts**

6

**consist of relaying false information to upper management** for the purpose of procuring the plaintiff's termination." *Carlisle v. Bennett Enters.*, 1997 U.S. Dist. LEXIS 18752 (N.D. Ohio, 1997); *see, e.g., Phung v. Waste Management, Inc.*, 40 Ohio App. 3d 130, 133-34, 532 N.E.2d 195 (6th Dist. 1988) (no tortious interference against a supervisor who reported a subordinate plaintiff to the employer, despite remand of plaintiff's claim of defamation against supervisor); *Hill v. Gatz*, 63 Ohio App. 2d 170, 175, 410 N.E.2d 1268 (8th Dist. 1979) (no tortious interference against a defendant supervisor who made allegedly malicious and defamatory statements because the statements were made during the course of his duties as a supervisor).

In *Sooy v. Ross Incineration Services*, an Ohio appellate court concluded that two co-workers could not be held liable for reporting an incident in which plaintiff was involved, despite the fact that plaintiff produced evidence that the supervisors misrepresented the incident to the person who fired the plaintiff. 1999 Ohio App. LEXIS 4889, at *32-37 (9th Dist. Oct. 20, 1999). The plaintiff was a maintenance employee for defendant waste facility. Five employees, including plaintiff, duct-taped a co-worker to a pole, management investigated, and terminated all five employees. The plaintiff sued the employer for wrongful discharge and sued two employees, the co-worker victim and another co-worker, for fraud and tortious interference for implicating plaintiff in the incident. *Id.* at *2-3. The plaintiff claimed the two co-workers **gave knowingly false testimony during the investigation**. *Id.* at *30-32. The appellate court affirmed summary judgment because the plaintiff could not dispute that the co-workers were employed by the waste facility at the time of their alleged reporting and that they gave their statements in response to an investigation into the incident. *Id.* at *36. *See Barilla v. Patella*, 144 Ohio App. 3d 524, 532-33, 760 N.E.2d 898 (8th Dist. 2001) (summary judgment on tortious interference claim appropriate, even though an issue of fact existed as to malice and even if the

7

defendant was "irresponsible in making his initial communications to the employer which ultimately resulted in [plaintiff's] termination," because no cause of action could be maintained against the defendant while reporting the plaintiff's misconduct to the employer).

The record unequivocally demonstrates that, as an inside supervisor who was acting as such when he reported Plaintiff's letters to Huller, Balzano cannot be liable for tortious interference with her employment relationship with CIC. Balzano was the managing attorney in the Dayton office of the CIC Legal Department. (Tr. 869.) It was his duty to oversee Plaintiff, to evaluate Plaintiff, and to address her questionable or improper conduct when it arose. (Tr. 230-31,869-70). He was in charge of the operation of the Dayton office. (Tr. at 1016.) He was Plaintiff's supervisor. (Tr. at 226.) His secretary came to him in December 1999 with Plaintiff's letter requesting copy money be paid to Plaintiff personally, and he passed that information along to Huller, his supervisor, because he had "never seen another attorney" do that. (Tr. at 1050-51.) It was unchallenged at trial that Balzano offered no opinions, accusations, or recommendations as to what was meant by these letters or what should be done with Plaintiff. (Tr. at 1067, 1077, 1112.)

Even if Balzano was motivated by a personal grudge against Plaintiff, the evidence presented at trial cannot support a claim for tortious interference against Balzano. *See Smiddy v. Kinko's, Inc.*, 2003 Ohio 446 (1st Dist. 2003). In *Smiddy*, the Hamilton County Court of Appeals affirmed that judgment as a matter of law was appropriate on a tortious interference claim where a manager bypassed the normal corporate hierarchy and obtained the termination of the plaintiffs. Id at P9-12. The plaintiffs received outstanding performance evaluations for 12 and 18 years, respectively, and the manager was only in his position for five months when plaintiffs were terminated. *Id.* at P11. The appellate court held that these facts, even though the court

8

characterized the manager's conduct as malicious, were insufficient to sustain a tortious interference claim.  *Id.*  Moreover, the court found it **irrelevant** that the manager reportedly made statements to others **that he wanted to "send a message"** or "set the tone."  *Id.* at P9.  All of this was irrelevant because the alleged tortious act fell within the manager's duties and to hold him liable "would **completely eviscerate management's right to terminate an at-will employee for any reason or no reason at all**."  *Id.* at P12.

Because Balzano was Plaintiff's supervisor at the time he reported her conduct to Huller, Ohio law does not permit him to be liable for tortious interference with an employment relationship.  Therefore, judgment as a matter of law is appropriate.

**II.    EVEN ASSUMING THAT A SUPERVISOR CAN BE LIABLE FOR REPORTING A SUBORDINATE'S CONSPICUOUS USE OF FIRM CORRESPONDENCE, PLAINTIFF HAS FAILED TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT BALZANO ACTED WITH ACTUAL MALICE WHEN HE REPORTED PLAINTIFF'S LETTERS TO HULLER.**

Even if, in construing the evidence most strongly in favor of Plaintiff, a reasonable jury could determine that Balzano was not acting within the scope of his role as managing attorney when he reported Plaintiff's letters to Huller, he is still entitled to a qualified privilege to impart such information.  There is simply no evidence in the record that would allow a reasonable jury to conclude that he lost that privilege.  "The tort of wrongful interference with employment relations requires a showing of 'either wanton or malicious behavior' when the tort is asserted against an 'outsider,' meaning an individual not worthy of a qualified privilege."  *Mitchell*, 2004 Ohio 5264, at P30 (Watson, J.) (quoting *Dryden v. Cincinnati Bell Tel. Co.*, 135 Ohio App. 3d 394, 400, 734 N.E.2d 409 (1st Dist. 1999)).  In order to defeat this privilege, Plaintiff must prove by clear and convincing evidence that Balzano acted with actual malice.  *Jacobs v. Frank*, 60 Ohio St. 3d 111, 114-16, 573 N.E.2d 609 (1991); *See Hahn v. Kotten*, 43 Ohio St. 3d 237, 331

N.E.2d 713 (1975) (stating that the qualified privilege standard and the malice requirement are the same for tortious interference and defamation claims); *see also Oh. State Home Serv., Inc. v. Better Business Bur. Akron, Inc.*, 89 Ohio App. 3d 732, 736, 627 N.E.2d 602 (1993) (same).[1]

Plaintiff has produced **no** admissible evidence upon which a reasonable jury could reach a firm belief or conviction that Balzano acted with malice in reporting Plaintiff's conduct to Huller. Thus, Plaintiff has produced insufficient evidence to transcend the significant hurdle of the "clear and convincing evidence" standard required for this claim. The only evidence offered at trial on this point is Plaintiff's own subjective belief that Balzano acted maliciously, something that Plaintiff apparently claims can be inferred from Plaintiff's unsupported assumptions as to Balzano's knowledge of copy money and his reaction to a mere office spat.

Plaintiff insinuates that malice can be inferred from the fact that Balzano "was looking at his job being pulled from underneath him." (Tr. at 1274.) First, the record does not support such an inference because nothing in the record – not even Plaintiff's own testimony – demonstrates Balzano ever knew that Plaintiff expressed an interest in his job, much less feared his "job being pulled from beneath him." Second, even assuming that Balzano knew this and, as a result, harbored a grudge against Plaintiff, such "evidence" has been rejected by Ohio courts as insufficient to sustain a claim of malice by clear and convincing evidence.

Ohio courts have repeatedly concluded that "**innuendo or an 'inference of motive' is insufficient to show actual malice**." *Contadino v. Tilow*, 68 Ohio App. 3d 463, 470, 589 N.E.2d 48 (1st Dist. 1990); *See Smith v. Ameriflora*, 96 Ohio App. 3d 179, 185, 644 N.E.2d 1038 (**10th Dist.** 1994) ("**Actual malice could not be inferred from evidence of ill-will,**

---

[1] Clear and convincing evidence has been described by the Ohio Supreme Court as that degree of proof which is more than a "mere preponderance of the evidence," but less than "beyond a reasonable doubt," and which will produce in the mind of the trier of the facts a "firm belief or conviction" as to the facts sought to be established. *Cross v. Ledford*, 161 Ohio St. 469, 477, 120 N.E.2d 118 (1954).

**personal spite, or ulterior motive**.") (citing *Jacobs*, 60 Ohio St. 3d at 1118-19). Ohio courts have also consistently held that liability for tortious interference cannot be "predicated simply upon the characterization of such conduct as malicious." *Anderson*, 32 Ohio St. 2d at 213; *Hill*, 63 Ohio App. 2d at 175. Finally, **Ohio courts have stated that the mere "belief" that a supervisor acted with malice is not clear and convincing evidence of malice.** *See, e.g., Ameriflora*, 96 Ohio App. 3d at 185. Thus, Plaintiff cannot prove malice with mere conjecture and inference because such evidence cannot as a matter of law leave a firm conviction in the mind of a reasonable jury that actual malice occurred.

The same conclusion holds true for the other unsupported inferences Plaintiff asks a jury to make. Plaintiff claims that Balzano acted maliciously against her out of revenge for her "challenging male authority" regarding the allocation of office resources. First, the evidence does not support a conclusion that an office spat over the use of a secretary would lead a reasonable jury to conclude that Balzano acted with actual malice. Plaintiff testified that her only dissatisfaction with Balzano was "typical" staff issues, but that their overall relationship was "good." (Tr. at 246-47). Most importantly, the evidence is undisputed that Balzano did not know that Plaintiff reported this spat to Huller. Plaintiff admitted she did not know whether Huller told Balzano about this, and Huller and Balzano both testified that Balzano was never made aware of Plaintiff's report to Huller. (Tr. at 700, 1045-46.) Thus, no basis exists that would allow a reasonable jury to infer that Balzano was afraid Plaintiff was "after his job" in any manner that would provide a motive for him to pursue Plaintiff's termination.

To find support in the record that Plaintiff has pinned all of her hopes on such baseless inferences and speculation, the Court need look no further than the words of Plaintiff's own counsel. On no less than three occasions, Plaintiff's counsel represented to the court that the jury

11

could "**infer**" malice from these "facts" or this "evidence" – "facts" and "evidence" that are more accurately described as opinion or speculation. (Tr. at 967, 980, 1264.)

In their testimony at trial, both Plaintiff and Ms. Ruppert alleged that Balzano lied about his knowledge of copy money and lunches. (Tr. at 541.) However, no evidence was offered to show that Balzano knew that Plaintiff was requesting reimbursement checks be made to her personally or that Plaintiff was placing copy reimbursement money in her personal bank account and spending it on things like day care expenses. (Tr. at 697-98.). Plaintiff stated she never told Balzano or anyone else at CIC that she was placing the money in her personal account. (Tr. at 703.) Plaintiff testified that she was the only one who did this and that no other attorney knew about this. (Tr. at 697-99.) Al Matheny, the CIC investigator of this incident, also testified that, during his investigation, he discovered no one who knew that Plaintiff was placing money belonging to her employer in her bank account. (Tr. at 1136.) The uncontested evidence proves that Balzano first discovered Plaintiff was placing CIC funds in her personal bank account when Matheny interviewed Plaintiff on December 28, 1999. (Tr. at 188.) Thus, when Balzano reported Plaintiff's letters to Huller in early December 1999, he could not have been reporting false information about those letters because he did not know at that time that Plaintiff was converting CIC's money for her personal use. Until his secretary brought him a letter in which Plaintiff requested checks for reimbursement for copies be made out to her personally, Balzano was unaware of this practice of Plaintiff, because as Plaintiff admitted – she never discussed that practice with Balzano. (Tr. at 727-28.)

Plaintiff also tries to create an inference of malice by alleging that Balzano knew about the office lunches but did not tell Huller. (Tr. 438, 468, 501.) This is nothing but mere speculation by Plaintiff that lacks record support. In fact, Balzano admitted he told Huller he

12

participated in two lunches bought by copy money.  (Tr. at 872).  Balzano testified that he told

Huller everything he knew about copy money and lunches when he first met with Huller about

the letters Plaintiff had written requesting copy reimbursement checks be made out to her

personally.  Balzano testified that he told Huller that he had participated in a couple of lunches

paid for by copy reimbursement funds about a year and a half ago based upon his understanding

of what Plaintiff reported she had been told by a home office claims supervisor.  (Tr. at 1054.)

Balzano, Matheny, and even Lentz testified that Balzano told Matheny during the investigation,

in Plaintiff's presence, that he had participated in these lunches.  (Tr. at 886, 1174.)

This testimony was corroborated by other witnesses offered by Plaintiff.  Donald

Desseyn, an attorney at CIC, testified that he could recall only two lunches in which Balzano

participated.  (Tr. at 1088.)  Shelly Bascom, a secretary and paralegal at CIC, stated she could

only recall three specific lunches in which Balzano participated.  (Tr. at 801-02.)  Thus, the

undisputed testimony is that Balzano admitted to his knowledge of and his participation in

lunches purchased with copy reimbursement funds.  (Tr. at 855, 1183.)  Construing the record in

this case most strongly in favor of Plaintiff reveals no support for a finding of actual malice.

Notably, the Court appropriately granted judgment as a matter of law on Plaintiff's

punitive damages claims against Balzano.  The court should have also granted Rule 50 judgment

on Plaintiff's tortious interference claim because both are governed by the same standard: both

require a showing of malice by clear and convincing evidence.  *Compare Normandy Pointe

Assocs. v. Paul J. Striebel & Assocs., Inc.*, 1993 Ohio App. LEXIS 3280, at *9-10 (12th Dist.

June 28, 1993) (punitive damages standard) *with Ameriflora*, 96 Ohio App. 3d  at 187 (tortious

interference standard).  Because malice did not exist to support the punitive damages claim

against Defendant Balzano for his allegedly tortious acts, then neither does it exist under the

tortious interference claims.  Accordingly, the Court should grant Balzano's renewed motion for judgment as a matter of law.

**III.    ASSUMING THAT PLAINTIFF PROVED MALICE BY CLEAR AND CONVINCING EVIDENCE, SHE STILL HAS FAILED TO PRODUCE SUFFICIENT EVIDENCE UPON WHICH A REASONABLE JURY COULD CONCLUDE THAT BALZANO ACTUALLY CAUSED OR INDUCED PLAINTIFF'S TERMINATION UNDER OHIO LAW.[2]**

An essential element of Plaintiff's claim for tortious interference is that Balzano's actions proximately or directly caused Plaintiff's employment with CIC to be terminated.  Simply put, Plaintiff failed to introduce any admissible evidence that Balzano induced or caused her termination.[3]  Judgment at law under Rule 50 is appropriate where a plaintiff fails to introduce any evidence of causation in a tortious interference claim.  *See, e.g., Bryan v. Farrell*, 1998 Ohio App. LEXIS 6121, *10 (9th Dist. Dec. 16, 1998) (**reversing jury verdict and directing verdict** in favor of defendant on tortious interference with a contract claim because, regardless of allegations of fraud, plaintiff failed to prove the **"essential element" of causation**).

Absent evidence that Huller relied upon recommendations or other information from Balzano in terminating Plaintiff Lentz, her claim lacks any evidentiary support.  *See Sawyer v. Devore*, 1994 Ohio App. LEXIS 4954, at *34-36 (8th Dist. Nov. 3, 1994).  In *Sawyer*, the plaintiff brought a claim of tortious interference against the corporate manager of a client who

---

[2] Defendants specifically objected to the jury instruction given by the Court on the issue of proximate causation and hereby reserve that objection for purposes of preserving the record for appeal.

[3] Plaintiff's counsel analogized at oral argument before the Court and during closing argument before the jury that Balzano's actions were equivalent to pushing a sled down a hill into traffic.  That analogy is inherently flawed for a number of reasons.  First, it is not the controlling law, as shown in this section.  Balzano did not set anything in motion because he never offered an opinion as to the appropriate course of conduct regarding Plaintiff.  He also did not cause her to convert CIC funds or to admit to that conversion, which the jury concluded was the cause of her termination.  Secondly, this analogy operates on several assumptions that have no record support.  As shown in this section, Balzano neither knew nor could have anticipated several of the conclusions Plaintiff has reached in order to utilize such an analogy.  Finally, Balzano had a right and duty to report this information to Huller.  Therefore, the scenario is more aptly described as this: Balzano didn't "push" anything, he merely tried to find out what she was riding; he did not even know what was at the "bottom of the hill," let alone that Plaintiff was even on "a sled."  His position and profession required him to discern whether she was in fact riding on a sled and to whom the sled might belong.

provided significant business to plaintiff's employer. *Id.* at *1-2. The manager, after performing an audit of plaintiff's employer, recommended in a memorandum to the employer that plaintiff's then subordinate be promoted and that plaintiff be made the subordinate's "support person." *Id.* at *3-4. Plaintiff was terminated about one month later, despite having always received positive evaluations. *Id.* at *4-5. Plaintiff was allegedly told by his supervisors that he was **terminated because the manager did not like him**. *Id.* at *4. The appellate court affirmed summary judgment against the plaintiff because he failed to produce evidence of an **actual** interference with the employment relationship. *Id.* at *35. Nothing in the memorandum or any other evidence showed that the manager recommended the plaintiff be terminated or otherwise sought plaintiff's termination. *Id.*

Plaintiff Lentz did not introduce any evidence that Balzano's representations to Huller caused her termination. In fact, all of the evidence in the record demonstrates exactly the opposite – that nothing Balzano did in any way influenced CIC's decision. The undisputed testimony shows that Balzano never offered an opinion to Huller or Matheny about any course of action that should be taken regarding Plaintiff. (Tr. at 1067, 1077, 1112.) Like in *Sawyer*, Balzano did not recommend her termination.

Furthermore, Plaintiff admitted she told Matheny and later Huller that she placed funds belonging to her employer in her personal bank account. As demonstrated by the undisputed testimony from Huller, Plaintiff was terminated for this reason and solely for this reason. The only testimony in the record that Balzano caused her termination is Plaintiff's unsupported opinion.

But Plaintiff's speculation or opinion as to what caused her termination is insufficient to uphold a jury verdict in a tortious interference claim. *See Costaras v. Dunnerstick*, 2004 Ohio

6266  (Oh. App. 9th Dist.).  In *Costaras*, the plaintiff teacher claimed that a phone call from her school superintendent to the decisionmaker at another school was a  proximate cause for her not to be hired.  At trial, the plaintiff introduced no testimony from any witnesses that the phone call caused her not to be hired.  The only evidence she introduced was that the phone call was made and that **in her opinion** this was the cause.  *See Id.* at P10.  The jury returned a verdict in favor of the teacher on the tortious interference with employment claim.  On appeal, the court held judgment as a matter of law should have been granted for the superintendent.  According to the appellate court, "**self-serving opinion testimony** as to what [the hiring superintendent] or other potential employers may or may not have thought is insufficient to support the element of proximate cause."  *Id.* at P11.

    The record demonstrates that Plaintiff's admission to conversion in her interview with Matheny and her subsequent admission to Huller caused her termination.  The Tenth District Court of Appeals decision in *Ameriflora* is particularly instructive.  See 96 Ohio App. 3d at 188.  In *Ameriflora*, the plaintiff claimed that statements about him made by co-workers during the course of an investigation into his allegedly sexually harassing conduct and poor performance were defamatory and tortiously interfered with his employment.  *See id.* at 182-83.  The defendants allegedly made statements that if plaintiff were not fired they would walk off of the job.  *Id.* at 187.  However, the court concluded that, even though these statements may have been a factor in plaintiff's termination, there was no issue of fact that they did not induce or cause the termination.  *Id.*  Instead, it was **not until after the investigation that the decision-maker determined the full extent of the problems** associated with the complaints about plaintiff and concluded that termination was appropriate.  *See id.*

16

The undisputed testimony shows that nobody in Dayton other than Plaintiff placed CIC's money in her personal bank account. Balzano testified – without contradiction – that he did not know this fact until the interview of Plaintiff conducted by Matheny on December 28, 1999. (Tr. at 1053.) Plaintiff testified that no other attorney did this. Similar to the facts in *Ameriflora*, the full extent of Plaintiff's conversion activities was not discovered until after the investigation was concluded. Thus, Balzano could not have known that Plaintiff would admit to this conduct when he reported the oddity of Plaintiff's letters to Huller in early December 1999 (*i.e.* he did not know what was at the bottom of the hill or even that Plaintiff was riding on a sled.) Even assuming he reported this information with reckless disregard for the truth, he could not have done so suspecting that Plaintiff would admit to placing her employer's money in her bank account because he did know that fact until after the investigation began. Liability cannot attach to Balzano, even if "the effort to secure [Plaintiff's] discharge [was] prompted by ill-will," which in this case no evidence supports. 96 Ohio App. 3d at 188. *See also Hill*, 63 Ohio App. 3d at 175 ("**Malice** makes a bad case worse, but **does not make wrong that which is lawful**."). Accordingly, no reasonable jury could conclude that Balzano proximately caused Plaintiff's termination.

The only reasonable conclusion as to the actual cause of Plaintiff's termination has ample evidentiary support. Huller was the undisputed decision-maker regarding the hiring and firing of attorneys in CIC. (Tr. at 239-40.) Plaintiff testified that Huller told her she was being fired for putting CIC money in her account and for diverting funds and further testified that Huller genuinely believed the reason he gave for her termination. (Tr. at 513, 734). Plaintiff testified she was terminated because of what she admitted to during the investigation – that she was the only attorney who knew that CIC's money was being put in and spent out of her personal bank

17

account.  (*Id.*)  Based on this record, a reasonable jury could only conclude that Huller terminated Plaintiff as a result of her admissions during the investigation and not because of anything Balzano said or did.  (Tr. at 1181-83, 1185.)  Plaintiff also admitted to Huller that what she did was wrong and stupid.  (Tr. at 1181.)  She was not terminated as a result of any opinion or recommendation or statement offered by Balzano.  (Tr. at 1130.)  Nor was she or any other employee in Dayton – male or female – terminated for eating office lunches bought by copy money.  (Tr. at 855, 1183.)  Accordingly, no reasonable jury could conclude Balzano proximately caused Plaintiff's termination and judgment as a matter of law is appropriate.

## **CONCLUSION**

For the foregoing reasons, Defendant David Balzano respectfully renews his request that the Court award him judgment as a matter of law on Plaintiff's tortious interference claim.

Respectfully submitted,

*/s/ Jack B. Harrison*
Deborah S. Adams (0005607)
Jack B. Harrison (0061993)
FROST BROWN TODD LLC
2200 PNC Center
201 E. Fifth Street
Cincinnati, Ohio 45202-4182
Telephone:  (513) 651-6800
Telecopier:  (513) 651-6981
dadams@fbtlaw.com
jharrison@fbtlaw.com

Trial Attorneys for Defendant
David Balzano

18

**CERTIFICATE OF SERVICE**

I hereby certify that on July 5, 2005, a copy of Defendant David Balzano's Renewed Motion for Judgment as a Matter of Law was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system and copies will be mailed via U.S. Mail to those parties who are not served via the Court's electronic filing system, if any. Parties may access this filing through the Court's system.

*/s/ Jack B. Harrison*
Deborah S. Adams (0005607)
Jack B. Harrison (0061993)
Frost Brown Todd LLC
2200 PNC Center
201 East Fifth Street
Cincinnati, OH 45202-4182
(513) 651-6800 (telephone)
dadams@fbtlaw.com
jharrison@fbtlaw.com

Trial Attorneys for Defendant
David Balzano

19