UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **MARY E. LENTZ,** | ) | |
| | ) | CAUSE NO. 1:01-CV-599-MHW |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **CINCINNATI INSURANCE** | ) | |
| **COMPANY,** *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S MOTION FOR A NEW TRIAL PURSUANT TO F.R.C.P. 59

Comes now the Plaintiff, by counsel, and pursuant to trial rule F.R.C.P. 59 hereby requests the court order a new trial because of the following errors and on the following grounds:

1. That the court issued an order limiting the amount of time that Plaintiff had for the prosecution of her claim. The time was equal to that of Defendants' even though the Plaintiff had three claims to prosecute, had the burden of proof, and had the majority of witnesses.

2. The court declared that the Plaintiff had an additional twelve minutes for closing argument, giving a total of one hour, and yet failed to inform the courtroom deputy who cut off the closing argument twelve minutes before the time had expired.

3. The court failed to apply Federal Rule of Evidence 801, which allows witnesses to testify as to statements made by corporate company employees relevant to Plaintiff's case.  Specifically, the court would not allow any statements made by deceased employee, Julia Gibson, former employee Joe Currin, employee Greg Lewis, and employee Fred Young.

   Furthermore, The court excluded testimony evidence from the Plaintiff, Mary Lentz, who was reporting what she had heard from other attorneys that describe how men were given considerable latitude in their improper and unethical conduct.  The court found that this testimony, even though it came from a co-worker and an employee of the defendant corporation, was excluded under the hearsay rule, even though Rule 801 should have allowed it in.

4. The court excluded evidence tendered by the Plaintiff, specifically Plaintiff's exhibit PX-11, which was referred to as the 'Dayton Incident' memo.  This exhibit supported the Plaintiff's theory of gender discrimination in that it allowed a different treatment for the conduct of Fred Young, a male colleague at CIC.

5. The court in the middle of closing argument, in a sidebar, informed counsel that based upon the courts review of the law, the court would decide back pay and front pay (the Plaintiff has simultaneously filed a motion for the court to set a hearing to determine back pay and front pay for the claim of intentional interference with a business relationship).

6. The Court improperly instructed the jury on Title VII.

7. The Court improperly excluded a punitive damages instruction over Plaintiff's objection.

WHEREFORE, the Plaintiff respectfully requests that the court grant this motion for a new trial and other relief which is just and proper on the premises.

          Respectfully Submitted,

          s/[Michael K. Sutherlin]
          Michael K. Sutherlin
          Attorney for Plaintiff

MICHAEL K. SUTHERLIN & ASSOCIATES
P.O. Box 441095
Indianapolis, IN 46244-1095
Phone: (317) 634-6313
Fax: (317) 631-8818
msutherlin@michaelsutherlin.com

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER MOTION FOR A NEW TRIAL PURSUANT TO F.R.C.P. 59

The Plaintiff brought her Title VII claim and two state law claims following her wrongful termination by Cincinnati Insurance Company (CIC). The theories were gender discrimination under Title VII based upon disparate treatment compared to males and two state law claims; one for intentional infliction of emotional distress and the other for intentional interference with contractual relationship.

The Honorable Michael H. Watson was eventually assigned the case along with Magistrate Judge Timothy S. Black.

Under FRCP 59(a) "[a] new trial may be granted . . . on all or part of the issues [] in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed. R. Civ. P. 59(a). In general, the grounds for a new trial include that the verdict is against the weight of the evidence, that the damages are excessive or inadequate, that there were substantial errors in the admission or rejection of evidence or the giving or refusal of instructions, or that for other reasons the trial was not fair. *See, e.g., Hiller v. County of Suffolk*, 199 F.R.D. 101, 106 (E.D.N.Y. 2001) (granting a new trial because "erroneous jury instructions coupled with the summation counsel was permitted to make because of those erroneous instructions led the jury to reach a seriously erroneous result in awarding damages."); *McNabola v. Chicago Transit Authority*, 10 F.3d 501, 516 (7th Cir. 1993) (listing grounds for a new trial); *Strauss v. Springer*, 817 F. Supp. 1211, 1213 (E.D. Pa. 1992) (same). Moreover, "[a]ny error of law, if prejudicial, is a good ground for a new trial." Wright & Miller, 11 Fed. Prac. & Proc. Civ. 2d § 2805 (2005).

The decision to grant or deny a new trial is committed to the sound discretion of the district court. However, in certain circumstances a new trial is mandatory, *see Pugh v. Bluff City*

*Excursion Co.*, 177 F. 399 (6th Cir. 1910) (A court's obligation to grant a new trial is a positive duty and not discretionary where a verdict is inconsistent on its face and shows an abuse of the jury's power), and a court has an affirmative duty to order a new trial whenever, in its judgment, such action is required in order to prevent injustice. *See, e.g., Wilhelm v. Blue Bell, Inc.*, 773 F.2d 1429, 1433 (4th Cir. 1985), *cert. denied* 475 U.S. 1016 (1985).

    Plaintiff has assigned several reasons why the court should grant a new trial in this matter and they are as follows:

1. That the court issued an order limiting the amount of time that Plaintiff had for the prosecution of her claim. The time was equal to that of Defendants' even though the Plaintiff had three claims to prosecute, had the burden of proof, and had the majority of witnesses.

2. The court declared that the Plaintiff had an additional twelve minutes for closing argument, giving a total of one hour, and yet failed to inform the courtroom deputy who cut off the closing argument twelve minutes before the time had expired.

3. The court failed to apply Federal Rule of Evidence 801, which allows witnesses to testify as to statements made by corporate company employees relevant to Plaintiff's case. Specifically, the court would not allow any statements made by deceased employee, Julia Gibson, former employee Joe Currin, employee Greg Lewis, and employee Fred Young.
Furthermore, The court excluded testimony evidence from the Plaintiff, Mary Lentz, who was reporting what she had heard from other attorneys that describe how men were given considerable latitude in their improper and unethical

        conduct. The court found that this testimony, even though it came from a co-worker and an employee of the defendant corporation, was excluded under the hearsay rule, even though Rule 801 should have allowed it in.

4. The court excluded evidence tendered by the Plaintiff, specifically Plaintiff's exhibit PX-11, which was referred to as the 'Dayton Incident' memo. This exhibit supported the Plaintiff's theory of gender discrimination in that it allowed a different treatment for the conduct of Fred Young, a male colleague at CIC.

5. The court in the middle of closing argument, in a sidebar, informed counsel that based upon the courts review of the law, the court would decide back pay and front pay (the Plaintiff has simultaneously filed a motion for the court to set a hearing to determine back pay and front pay for the claim of intentional interference with a business relationship).

6. The Court improperly instructed the jury on Title VII.

7. The Court improperly excluded a punitive damages instruction over Plaintiff's objection.

These issues will be addressed sequentially.

**I.    The Court Erred In Limiting Plaintiff's Amount of Time to Present Her Case.**

Prior to trial, this Court ordered that both parties would have "**no more than 720 minutes** to present their respective case, including opening and closing statements, direct, cross, and re-direct examination." Order of the Court, Filed 05/27/2005 (Document #121) (emphasis in the original). The Court's limitation of time – and the allowance to the Defendants for the same amount of time – was erroneous because Plaintiff had three affirmative claims to Defendants' one counter-claim, because Plaintiff bore the burden of proof for the vast majority of trial, and

6

because Plaintiff presented and had to present far more evidence than did Defendants. Because of these unreasonable time constraints, Plaintiff and her counsel were forced to affirmatively decrease the evidence presented in an attempt to meet those limits.

Federal Rule of Civil Procedure 59(a) encompasses granting a new trial when the procedures of that trial are unfair. *See* Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251 (1940). The federal courts have recognized that unreasonable time limits on trial presentation can fall into this category if a party shows that she was prejudiced thereby. *See* Sparshot v. Feld Entertainment, Inc., 311 F.3d 425, 433 (D.C. Cir. 2002). This is such a case. As Plaintiff's counsel himself noted to the Court, the time-limits prevented the jury from really reading many (if not all) of the documents which were admitted into evidence. Transcript of Trial for June 16, p. 965. Plaintiff and her counsel further had to unreasonably limit the evidence that they brought before the Court due to their attempt to adhere to the limitation. Counsel for Plaintiff was even cut off in the middle of closing argument because the courtroom deputy wrongly thought that Plaintiff had exceeded her allotted time. Worst of all, the court's frequent recesses and delays, sometimes announced in advance, sometimes not, made it difficult for the Plaintiff to present her case in a continuous manner. The trial should have lasted no more than five days, but was stretched out over three weeks. Plaintiff needed additional time simply to refresh the recollection of the jurors as to the relevant issues in the case, but was unable to due to the time limitations. For these reasons, the time limits created an unfair trial and this error harmed Plaintiff.

### II. The Courtroom Deputy Cut Off Plaintiff's Closing Argument Even Though Plaintiff Had Time Remaining.

Prior to closing arguments, the Court granted an additional time of thirteen minutes to Plaintiff's counsel for closing. Transcript, p. 1335. Nevertheless, during counsel for Plaintiff's rebuttal argument, the Court erroneously interrupted Plaintiff's attorney and indicated that his time was about to expire. Transcript, p. 1409. This was not the case. Plaintiff's counsel indicated that he thought the Court mistaken; the difference between the Court's and counsel's calculations of remaining time was indeed approximately thirteen minutes. Id. Nevertheless, Plaintiff's counsel was instructed to summarize and quickly wrap up. Id.

The Court's failure to adhere to the additional time granted, and furthermore its interruption of Plaintiff's counsel during rebuttal, was inherently prejudicial to Plaintiff. Plaintiff's presentation was both cut short and made to look unorganized, thus prejudicing the jury against Plaintiff. For this reason the Court's interruption and instruction to wrap the argument up was prejudicial and harmed Plaintiff.

### III. The Court Failed to Adhere to Federal Rule of Evidence 801.

#### A. The Court improperly excluded out-of-court statements by Defendant CIC's employees and agents.

During trial, the Court excluded certain evidence of statements by people employed by Defendant Cincinnati Insurance Company. These individuals included Joe Currin and Julia Gibson. Mr. Currin was an attorney in the Dayton office of Berlon & Timmel, and Ms. Gibson was a secretary in that office. The continual objections referenced problems with hearsay. These statements by individuals, however, are not hearsay as defined by Fed. R. Evid. 801(d)(2)(D). Rule 801(d)(2)(D) states that "A statement is not hearsay if -…(2) [t]he statement

8

is offered against a party and is… (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship."

The statements by Mr. Currin or Ms. Gibson reflected statements by an agent concerning a matter within the scope of their employment while employed at the Dayton office of Berlon & Timmel.  For instance, Julia Gibson, who was the secretary for Mary Lentz in May of 1998, actually authored letters asking for the recapturing of copy costs, and the letters stated that the bank would not accept checks for deposit unless it was made payable personally to Mary Lentz.  However, no statements or discussion concerning what Ms. Gibson had to say about such letters or other matters related to the scope of her employment could be presented to the jury.  The author of the requirement that the check be made payable to Plaintiff was Juila Gibson and this could not be presented to the jury.  Similarly, statements related to Joe Currin's exit interview in which he described David Balzano's poor managerial style could not be discussed.

Rule 801(d)(2)(D) provides that these statements should be allowed because these statements are not hearsay as defined by the Federal Rules of Evidence.  Defendants made much of the fact that Julia Gibson was deceased.  However, whether or not a statement is admissible as hearsay under Rule 801 has nothing to do with whether the individual is deceased after the statement has already been made.  The focus for allowing these types of statements is on the agency and employment relationship between the declarant and whether those statements were made in connection with or in the course of that employment relationship.  In short, the availability of the witness is not relevant.

        B.        <u>The Court improperly excluded Plaintiff's testimony regarding statements, actions, and treatment of other employees and agents of Defendant CIC.</u>

At trial, this Court improperly excluded evidence of employees similarly-situated to Plaintiff, including Mike Berlon. The Court's ruling was erroneous and harmed Plaintiff. In Title VII, leeway in making comparisons between a plaintiff and similarly-situated comparitors is the language of the law. Employers across the country have attempted to argue the opposite and have been turned down by the courts, as in <u>Alexander v. Fulton County, Ga.</u>, 207 F.3d 1303 (11th Cir. 2000):

> Defendants claim that the term "similarly situated"… requires the "same or nearly identical conduct." Again, we disagree. Although susceptible to manipulation, the phrase "similarly situated" is the correct term of art in employment discrimination law.

(*Id*. at 1333) (citations omitted) *See also* <u>Hogan v. State of Connecticut Judicial Branch</u>, 220 F.Supp.2d 111 (D.Conn. 2002) (stating that "[t]his standard requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases, rather than a showing that both cases are identical. In other words… of comparable seriousness.") (internal punctuation and citations omitted).

In a case from this circuit, <u>Hall v. State Farm Ins. Co.</u>, 18 F.Supp.2d 751 (E.D.Mich. 1998), a district court disavowed an excessively narrow view of Title VII's mandates for comparators, holding in a ruling on summary judgment:

> The Defendants contend that these individuals are not similarly situated to Hall, and are thus inappropriate to the relevant Title VII and ELCRA analysis, because none of them engaged in (1) deliberate acts of misconduct that were designed to conceal irregularities in the claim files under their supervision, or (2) conduct which demonstrated a lack of honesty or trustworthiness. However, the Defendants have attempted to define the relevant comparison too narrowly. Hall need only identify other similarly situated non-minority employees who engaged

10

> in misconduct of comparable seriousness. See Mitchell, 964 F.2d at 582-83 & n. 5; McDonald v. Santa Fe Trail Transp. Co., 427 U.S. 273, 283 n. 11 (1976) (precise equivalence in culpability not required). This mandate does not require Hall to identify misconduct of an identical quality, as the Defendants argue.

(*Id.* at 767) The district court went on to observe that when the employer admitted that the disputed comparator had indeed engaged in "misconduct" – which was sufficiently egregious enough that the company required the comparator to attend remedial seminars and to seek professional counseling, among other things – it was disingenuous to suggest that there was simply no way to make a comparison, particularly in light of the plaintiff having offered innocent explanations for her alleged misconduct.

Mike Berlon was an attorney similarly-situated to Plaintiff. Mark Huller testified in his deposition that there was a "breach of trust" with Mike Berlon – there were some "real credibility issues" with him. CIC gave Berlon an option to either leave or stay in his employment, but not stay in the capacity where he was – as a managing attorney – in response to Berlon's improprieties. This option was far more generous than anything given to Lentz, who was simply fired. Nevertheless, the Court excluded evidence regarding Berlon. Transcript, pp. 599, 603.

The Court further excluded other similarly-situated male attorneys' conduct such as Fred Young's "playing" with himself, Id. p. 599-600, malfeasance of John Fiocca, Id. p. 601, and of Fred Breueggeman, Id. pp. 602-603. Counsel for Plaintiff made an offer of proof as to each. Id. pp. 599-605.

Lentz was clearly harmed by the Court's exclusion of evidence regarding male attorneys employed with CIC (as was Lentz) and who were accused, if not guilty, of serious malfeasance. The male attorneys were given far better treatment than was Plaintiff. The jury would have seen

11

this different treatment as evidence of gender discrimination. Since the error was not harmless, this Court should grant Plaintiff's motion for a new trial.

### IV. The Court Improperly Excluded Admissible Evidence from Plaintiff.

The court excluded an evidentiary document tendered by Plaintiff, Plaintiff's exhibit PX-11, which was referred to as the 'Dayton Incident' memo. Transcript, pp. 879, 883. The Dayton Incident memo was written by Hank Berlon to document complaints of inappropriateness with attorney Fred Young. The last paragraph of the memo discusses that the problem with the secretary's perception of Young (the secretaries being the employees who complained) might be resolved by the departure of those secretaries, to be achieved on their own accord or by not granting pay increases to them. PX-11. Counsel for Plaintiff brought all of this to the attention of the Court during a sidebar conference. Transcript, pp. 879-883. The Court nonetheless sustained an objection by Defendants and excluded the evidence. Id. Because the memo was clearly relevant to show how Defendant CIC treated similarly-situated male attorneys more leniently, the memo should have been admitted, and the Court's exclusion was harmful to Plaintiff.

### V. The Court Must Calculate Front & Back Pay Damages On Plaintiff's Successful Intentional Interference With A Business Relationship Claim, Or Grant a New Trial on Damages.

The concept of additur in the state courts is generally used to amend a verdict that is insufficient based on the evidence presented at trial. *See, e.g.*, Pelican Bldg. Centers of Horry-Georgetown, Inc. v. Dutton, 427 S.E.2d 673 (S.C. 1993). Additur is generally not available in a federal court after a jury trial. Strunk v. Hurley, 865 F.2d 261 (6th Cir. 1988) (citing to Dimick v.

Schiedt, 293 U.S. 474, 486-87 (1935)).

Nevertheless, when a federal jury plainly fails to award sufficient damages based on the evidence, federal judges retain the option of ordering a new trial on the issue of damages unless the parties are able to work something out on their own accord. 58 Am. Jur. 2d § 461 (2004) (citing to Chesevski v. Strawbridge & Clothier, 25 F. Supp. 325 (D.N.J. 1938)).

A finding of no damages cannot be sustained where the evidence unquestionably shows some damage. 2 Am. Jur. 2d § 826 (2004) (citing to, *inter alia*, McKinzie v. Fleming, 588 F.2d 165 (5th Cir. 1979)). Likewise, a verdict for nominal damages will be set aside where there is uncontroverted evidence of substantial damage. 2 Am. Jur. 2d § 826 (2004) (citing to, *inter alia*, Hammarskjold v. Fountain Powerboats, 782 F. Supp. 1032 (E.D. Pa. 1992)).

In this case, the jury specifically found that Mary Lentz proved by a preponderance of the evidence that Defendant Balzano intentionally interfered with Lentz' employment relationship with Defendant CIC as defined in the jury instructions. Lentz v. CIC, et al., Case No. 1:01cv599, *Special Interrogatories* regarding intentional interference with a business relationship. Those instructions required the jury to find, *inter alia*, "That Defendant Balzano's actions proximately caused Plaintiff to suffer damages." Jury Instructions, p. 10. To make this clear: *The jury specifically found that Mary Lentz had suffered damages on this claim.*

As to damages in the intentional interference with a business relationship claim, the Court instructed the jury:

> In determining the amount of any damages that you decide to award, you should be guided by common sense. You must use sound judgment in fixing an award of damages, drawing reasonable inferences from the facts in evidence. You may not award damages based on sympathy, speculation, or guess work. On the other hand, the law does not require that Plaintiff prove the amount of Plaintiff's losses with mathematical precision, but only with as much definiteness and accuracy as circumstances permit. Jury Instructions, p. 12.

This Court further instructed;

> If you find a Defendant liable to Plaintiff under any of these instructions, then you must determine an amount that is fair compensation for each of Plaintiff's damages. You may award compensatory damages only for injuries that Plaintiff proves were caused by each Defendant's allegedly wrongful conduct.
> The damages that you award must be fair compensation – no more and no less. You may award damages for any pain, suffering, mental anguish, embarrassment or humiliation that Plaintiff experienced as a consequence of each Defendant's conduct. No evidence of the monetary value of such intangible things as pain and suffering, embarrassment and humiliation has been or need be introduced into evidence. There is no exact standard for fixing the compensation to be awarded for these elements of damage. Any award you make should be fair in light of the evidence presented at trial.
> In determining the amount of any damages that you decide to award, you should be guided by common sense. You must use sound judgment in fixing an award of damages, drawing reasonable inferences from the facts in evidence. You may not award damages based on sympathy, speculation or guesswork. On the other hand, the law does not require that Plaintiff prove the amount of her losses with mathematical precision, but only with as much definiteness and accuracy as circumstances permit. Jury Instructions, p. 13.

When the jury found that Plaintiff had suffered damages, it additionally found that Defendant Balzano acted with actual malice. Special Interrogatories. However, regardless of the fact that the jury specifically found Lentz had proven her claim of intentional interference with a business relationship, and thus suffered damages, the jury then awarded nothing by way of compensatory damages. Id. This the jury cannot do.[1]

The uncontroverted evidence presented at trial showed that, as a direct result of Defendant Balzano's actions, Mary Lentz was fired from her job with CIC. Lentz had to seek and obtain a lower-paying job. Lentz further testified, and Defendants did not dispute, that after the firing her hair began falling out, she lost much weight, she was depressed and constantly fearful of unfounded criminal prosecutions or ethical investigations. The undisputed evidence clearly showed that Lentz had suffered damages with an actual monetary value.

---

[1] In the alternative, the Court may grant Plaintiff's Motion to Determine Front and Back Pay.

14

The Ohio courts have consistently found in various contexts that when a jury fails to award damages that have been clearly proven, corrective action must be taken by the court. *See, e.g.*, Miller v. Irvin, 550 N.E.2d 501, 503 (Ohio App. 1988) ("When [a] trial has resulted in an award to the injured party so inadequate as to deny him the justice that he deserves, the court should grant a new trial."); *See also* Slivka v. C.W. Transport, Inc., 550 N.E.2d 196 (Ohio App. 1988). While this Court is not bound by Ohio's procedural law, it is bound by that State's interpretation of its own state laws, which would include the tort of intentional interference with a business relationship.

Since the jury explicitly found that Mary Lentz had suffered damages, but failed to award those damages, this Court must rectify the jury's expression of damages. The clear and undisputed evidence presented at trial showed that Lentz did suffer quantifiable monetary damages. This Court must therefore allow the parties to jointly discuss and agree to a stated amount of damages, or, failing that, must grant a new trial to determine damages on this claim.

The other option, however, comes from the Court's agreement to calculate front and back pay as to Plaintiff's intentional interference with a business relationship claim. This agreement and argument is addressed in Plaintiff's Motion to Determine Back and Front Pay, which is filed simultaneously with this memorandum.

**VI.    The Court Improperly Instructed the Jury Regarding Title VII.**

The instruction presented to the jury on Title VII incorporated the *McDonnell Douglas* burden-shifting framework[2], which is generally inappropriate in jury instructions. *See, e.g., Sharkey v. Lasmo (AUL Ltd.)*, 214 F.3d 371, 374 (2d Cir. 2000) ("We agree that juries should not

---

[2] See Transcript, pp. 1422-1423.

be charged on the *McDonnell Douglas* burden-shifting framework"); *Mullen v. Princess Anne Volunteer Fire Co., Inc.*, 853 F.2d 1130, 1137 (4th Cir. 1988) (burden shifting instructions "are beyond the function and expertise of the jury, which need never hear the term 'prima facie case'"); *Walther v. Lone Star Gas Co.*, 952 F.2d 119, 127 (5th Cir. 1992) ("Instructing the jury on the elements of a *prima facie* case, presumptions, and the shifting burden of proof is unnecessary and confusing"); *Gehring v. Case Corp.*, 43 F.3d 340, 343 (7th Cir. 1994) (trial judge acted correctly in declining "to walk the jury through the paradigm established by *McDonnell Douglas*"); *Williams v. Valentec Kisco, Inc.*, 964 F.2d 723, 731 (8th Cir. 1992) (reiterating that "the *McDonnell Douglas* 'ritual is not well suited as a detailed instruction to the jury'…"); *Costa v. Desert Palace, Inc.*, 299 F.3d 838, 855 (9th Cir. 2002) (*en banc*) ("it is not normally appropriate to introduce the *McDonnell Douglas* burden-shifting framework to the jury"), *aff'd*, 537 U.S. 1099 (2003); *Messina v. Kroblin Transportation Systems, Inc.*, 903 F.2d 1306, 1308 (10th Cir. 1990) ("The *McDonnell Douglas* inferences provide assistance to a judge as he addresses motions to dismiss, for summary judgment, and for directed verdict, but they are of little relevance to the jury"); *Dudley v. Wal-Mart Stores, Inc.*, 166 F.3d 1317, 1322 (11th Cir. 1999) ("We stress that it is unnecessary and inappropriate to instruct the jury on the *McDonnell Douglas* analysis"); *Cabrera v. Jakabovitz*, 24 F.3d 372, 380 (2d Cir. 1994) (bemoaning the fact that lawyers utilize *McDonnell Douglas* burden shifting in jury instructions).

Although the Sixth Circuit Court of Appeals has indicated that it is not reversible error for a trial court to use the *McDonnell Douglas* framework, it has stated that such an instruction is not preferable. *See In re Lewis*, 845 F.2d 624, 634 (6th Cir. 1988) ("Rather than confuse the jurors with legal definitions of the burdens of proof, persuasion and production and how they shift under *McDonnell Douglas*, we find that the [motivating factor instruction given] was a clear and

preferable statement of the law."); *Williams v. Eau Claire Public Schools*, 397 F.3d 441, 446 (6th Cir. 2005) ("We hold that it is not necessary that these instructions be cast in the language of pretext or the framework of shifting burdens of *McDonnell Douglas*[.]"); *Barnes v. City of Cincinnati*, 401 F.3d 729, 740 (6th Cir. 2005) ("A district court is not bound by the *McDonnell Douglas* analysis when giving jury instructions."). It is Plaintiff's stance, however, that this error was one of many, the accumulation of which resulted in an unfair trial and reversible error.

Because of the improper instructions to the jury, the court should grant a new trial on the Title VII claim.

**VII.    The Court Improperly Excluded a Punitive Damages Instruction.**

The Court denied an instruction on punitive damages over Plaintiff's objection. Transcript, p. 1334-1335. The Court indicated that it did not believe that there was evidence sufficient to support such an instruction, and counsel for Plaintiff indicated that he respectfully disagreed. Id.

Punitive damages in Ohio are available upon a finding of actual malice. Calmes v. Goodyear Tire & Rubber Co., 61 Ohio St.3d 470 (1991). Actual malice for these purposes is (1) that state of mind under which a person' conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing harm. Id. at 473, citing Preston v. Murty, 32 Oh.St.3d 334 (1987).

In this case, the jury actually found that at least one of the Defendants acted with actual malice. Lentz v. CIC, et al., Case No. 1:01cv599, *Special Interrogatories* regarding intentional interference with a business relationship. Since the jury actually found that Defendant Balzano acted with actual malice on that claim, Plaintiff asserts the strong likelihood that the jury would

17

have awarded punitive damages on that claim. In fact, since actual malice is *all* that it takes to award punitive damages, Plaintiff assigns this as error that had a direct and harmful effect on her case and monetary award. Taken in conjunction with the fact that the jury was not instructed on front and/or back pay damages, the Court should grant a new trial due to the foregoing reasons.

### VIII.   Conclusion.

For all the reasons stated above, the Court should calculate and award back and front pay on Plaintiff's successful intentional interference with business relationship claim or grant a new trial on damages on that claim, and further grant a new trial on the balance of Plaintiff's claims.

Respectfully Submitted,

s/[Michael K. Sutherlin]
Michael K. Sutherlin
Attorney for Plaintiff

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 8, 2005, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Deborah S. Adams
Jack B. Harrison
FROST BROWN TODD, LLC
2200 PNC Center
201 East Fifth Street
Cincinnati, OH 45202
dadams@fbtlaw.com
jharrison@fbtlaw.com

                                                s/[Michael K. Sutherlin]
                                                Michael K. Sutherlin
                                                Attorney for Plaintiff

MICHAEL K. SUTHERLIN & ASSOCIATES
P.O. Box 441095
Indianapolis, IN 46244-1095
Phone: (317) 634-6313
Fax: (317) 631-8818
msutherlin@michaelsutherlin.com