## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **MARY E. LENTZ,** | : | **Case No.: 01-CV-599** |
| | : | |
| **Plaintiff,** | : | **(Judge Watson)** |
| | : | |
| **v.** | : | **DEFENDANTS CINCINNATI INSURANCE** |
| | : | **COMPANY AND DAVID BALZANO'S** |
| | : | **MEMORANDUM IN OPPOSITION TO** |
| | : | **PLAINTIFF'S MOTION FOR  NEW TRIAL** |
| **CINCINNATI INSURANCE** | : | |
| **COMPANY, et al.** | : | |
| | : | |
| **Defendants.** | : | |

I.    <u>**INTRODUCTION**</u>

On June 23, 2005, following a full trial on the evidence, the jury in the trial of this matter found in favor of Defendant Cincinnati Insurance Company ("CIC") on Plaintiff's Title VII gender discrimination claim and in favor of Defendant David Balzano on Plaintiff's state law tort claim of intentional infliction of emotional distress.  The jury also found in favor of CIC on its claim for conversion against Plaintiff and awarded CIC the sum of $1,600.00.  While the jury found in favor of Plaintiff on her claim against Defendant Balzano for intentional interference with an employment relationship, the jury awarded **no** damages on this claim.

Now Plaintiff has filed a motion for new trial pursuant to Fed. R. Civ. P. 59, claiming that errors made during the trial require a new trial.  Plaintiff's claims of error will be addressed in the sequence presented by Plaintiff in her Motion for New Trial and Memorandum in Support.

II.     **ARGUMENT**

A.     **Fairness Of The Court's Time Limits For Trial.**

Plaintiff clams that it was unfair for the Court to set a time limit for the parties to present their respective cases of twelve (12) hours per side in this rather simple case. This time limit was applied equally to both sides and was modified throughout the trial in response to the complaints of Plaintiff's counsel. The Court alerted the parties that it was establishing a time limit of 720 minutes or twelve (12) hours per side in its Order of May 27, 2005. In that Order, the Court stated that the "time limit includes voir dire, opening statements, closing arguments, direct, cross and re-direct examination. There will be no re-cross examination permitted. Any motions in limine and other pre-trial motions pending will be argued at the start of trial and that time deducted from the time allocated."

Plaintiff made her objections to this time limit known first before Judge Black during voir dire and then at every turn in the trial. (*See, e.g.,* Tr at 42-45, 965) In response to Plaintiff's objections, the Court made numerous modifications to its original order setting the time limit, including not counting the time used for voir dire, not counting time used for side bars, not counting the time used for arguments for or against Motions for Judgment as a Matter of Law, and not counting time used for the charge conference related to the jury instructions. (*See, e.g.,* Tr. at 45, 965, 1335) Additionally, the Court granted Plaintiff extended time for the purposes of her closing argument. (Tr. at 1335) In short, the Court bent over backwards to treat Plaintiff fairly and to respond to Plaintiff's incessant objections and complaints about what was a very reasonable time limit in a relatively simple case.

Further Plaintiff asserts that it was unfair and error for the Court to interrupt the rebuttal portion of the closing argument of Plaintiff's counsel to remind him that his time was running

2

out and that he needed to "wrap up."  Plaintiff claims, with absolutely no support in the record, that the Courtroom Deputy made an error of thirteen minutes in calculating the time remaining for Plaintiff's argument.  Plaintiff fails to even acknowledge the possibility that the error might in fact be that of Plaintiff's counsel.  It is ironic that Plaintiff objects to a single interruption in the rebuttal argument of her counsel, when her counsel interrupted Defendants' opening statement without justification four separate times, one time to state an outrageously frivolous objection about perceived repetition in the opening statement.  (Tr. at 138)  Plaintiff claims that the interruption of the rebuttal argument made Plaintiff's counsel and the presentation of her case appear "disorganized" to the jury, ignoring the fact that the jury had had three weeks at that point to draw conclusions as to whether Plaintiff's case and/or her counsel were disorganized.  It would seem to be the height of unjustified hubris to assert that the outcome of this case would have been different if only the jury had been privileged to hear an additional ten minutes of argument from Plaintiff's counsel.

As outrageous as it sounds, Plaintiff asserts that it was unfair and error for the Court to have "frequent recesses and delays," despite the fact that any recesses and delays that occurred during the trial were the result of time devoted to this case outside the presence of the jury for the arguments of all parties on a variety of matters, the Court's docket responsibilities in Columbus, and the Court's unavoidable illness.  Additionally, all parties experienced the same recesses and delays.

With regard to the time limitations placed by the Court on the trial of this matter, FRE 611(a) gives a trial court wide discretion in the management of its docket and in the presentation of evidence at trial.  Included within this discretion is the "inherent right to place reasonable limitations on the time allotted to any given trial."  *Deus v. Allstate Ins. Co., et al.*, 15 F.3d 506,

520 (5th Cir. 1994) (citing *United States v. Reaves*, 636 F. Supp. 1575 (E.D. Ky. 1986)).  In

*Sparshott v. Feld Entertainment, Inc.*, 311 F.3d 425, 433 (D.C. Cir. 2002), relied upon by

Plaintiff, the court found that the time limit imposed on one defendant was unreasonable where

that defendant had been allowed only six hours to present its case, as compared to the fifteen

hours allotted to the other defendant and sixteen hours for the plaintiff.  Courts have traditionally

found that the time limits imposed on a trial setting were reasonable where the parties had equal

amounts of time.  *See Deus*, 15 F.3d at 520; *Monotype Corp. v. Int'l Typeface Corp.*, 43 F.3d

443, 450-451 (9th Cir. 1994); *Matton v. White Mountain Cable Constr. Corp.*, 190 F.R.D. 21, 23

(D. Mass. 1999).

     In this case, the Court actually allotted twelve hours for a single plaintiff to present her

case to the jury, while allowing a total of twelve hours for the two separate defendants,

Cincinnati Insurance Company ("CIC") and David Balzano, to divide in order to present their

defenses and CIC's counterclaim.  Plaintiff's claims of prejudice resulting from the time

limitations are simply unsupported.  The time limitations imposed by the Court applied equally

to both Defendants in the case as well.  Plaintiff has failed to offer any support for her claim that

she was in any way prejudiced as a result of these limitations.

    **B.**    **Exclusion Of Hearsay Statements Pursuant To The Federal Rules Of Evidence.**

     Plaintiff further asserts that the Court failed to expand the reach of agency principles

embodied in FRE 801(d)(2) to allow the admission of:

    (1) testimony of Plaintiff repeating a statement of Julia Gibson, a now deceased CIC

secretary, repeating what Ms. Gibson was told by an unidentified third-party bank employee;

(2) testimony of Plaintiff repeating gossip provided during a social conversation by Brian McNair, a former CIC attorney / employee, to Plaintiff regarding other CIC attorneys / employees; and

(3) statements of opinion made by Joe Currin, a former CIC attorney / employee, in his exit interview, regarding his perceptions of the management competence of Mr. Balzano.

Plaintiff seems to believe, as asserted by her counsel throughout the trial, that any statement by any employee of a company, regardless of the employee's position in the company, regardless of the basis of the employee's alleged knowledge, and regardless of the context of the statement, is an "admission" of the company.  The Court quite correctly rejected such a broad and improper reading of FRE 801(d)(2).  (*See, e.g.,* Tr. at 291-294, 565-566, 587, 609)

FRE 801(d)(2) "is designed to bind the employer where one of its **managerial employees** makes a statement within the scope of the employee's duties as a manager." *Barner v. Pilkington N. Am., Inc.*, 399 F.3d 745, 750 (6th Cir. 2005).  In this case, the statements Plaintiff asserts should have been admitted pursuant to 801(d)(2) are the statements of an unidentified employee of a bank, statements of a secretary now deceased about what she understood the bank employee to mean when the bank employee made her statements, statements made as gossip by a CIC attorney, who was not a manager, at a social gathering regarding other CIC attorneys, and opinion statements made by a former CIC attorney, who was not a manager, in an exit interview after that attorney had announced the end of his employment relationship with CIC.  In this situation, none of the statements were made by manager employees of CIC, nor were they made within the scope of any management employment duties.  Thus, these statements are pure hearsay, and the Court was correct to exclude them at trial.  (*See, e.g.,* Tr. at 291-294, 565-566, 587, 609)

5

It is within the discretion of a district court to admit or exclude evidence. *See United States v. Cline*, 362 F.3d 343, 348 (6th Cir. 2004). The Court will only be found to have abused that discretion where it "relies on clearly erroneous findings of fact, ... improperly applies the law, ... or ... employs an erroneous legal standard." *Id.*; *see also United States v. Kingsley*, 241 F.3d 828, 835 n.12 (6th Cir. 2001) (abuse of discretion exists when the reviewing court is firmly convinced that a mistake has been made). *United States v. Haywood*, 280 F.3d 715, 719-20 (6th Cir. 2002) (holding that a district court's decision to admit evidence under Rule 404(b) is reviewed under an abuse of discretion standard). Plaintiff has pointed to no specific error or mistake on the part of the Court in deciding to exclude this evidence. Therefore, the Court should deny Plaintiff's request for a new trial on these grounds.

## C.     Proper Exclusion Of "Similarly Situated" Testimony As Hearsay.

Despite the fact that she was able to present, over Defendants' strong objections, virtually unlimited evidence related to Tom Ballato, a former CIC attorney who was terminated by CIC for viewing inappropriate and sexually suggestive websites, and Fred Young, a former CIC attorney who allegedly put his hands in his pockets and scratched himself inappropriately when talking to other employees, Plaintiff still complains that she was not allowed to present other "evidence" related to other allegedly "similarly situated" male CIC attorneys. Plaintiff asserts that this excluded "evidence" concerns three other male CIC attorneys – Mike Berlon, John Fiocca, and Ed Bruggeman. However, the only "evidence" that Plaintiff sought to introduce at trial regarding these individuals were statements made to her by another CIC attorney in a social conversation that, even she admitted, was mere "in-house gossip." (Tr. at 607)

In her Memorandum in Support of her Motion for New Trial, Plaintiff argues as if the Court had excluded these statements based on a finding that these three individuals were not

"similarly situated" to her, which was not the basis for the Court's exclusion of third party hearsay statements made to Plaintiff by another CIC attorney.  While these three individuals, along with Mr. Young and Mr. Ballato, are not, as a matter of law, "similarly situated" to Plaintiff[1], the basis for the Court's exclusion of these third party statements was the fact that the statements were pure hearsay and fell within no exception to the hearsay rules.  (Tr. at 609-611)

The statements that Plaintiff sought to repeat to the jury were simply "in-house gossip" between Plaintiff and a non-manager CIC attorney colleague at a social gathering of CIC attorneys.  Plaintiff apparently reads FRE 801(d)(2) to mean that any statement made by any employee on any subject in any context is an "admission" by the employer and, therefore, is not hearsay.  The Court concluded that these statements by a CIC attorney to Plaintiff in a social context "certainly [aren't] within the course and scope of his employment [such] that he's making these statements on behalf of Cincinnati Insurance Company."  (Tr. at 606)  Based on any fair and reasonable reading of the hearsay exception provided by FRE 801(d)(2), the Court

---

[1] Defendants continue to believe that the Court improperly allowed testimony about Mr. Ballato and Mr. Young to be presented to the jury, in that under the law of the Sixth Circuit, they were not proper comparators for Plaintiff.  In *Mitchell v. Toledo Hospital*, 964 F.2d 577, 581-83 (6th Cir. 1992), the Sixth Circuit set forth what is required for employees to be "similarly situated" in a discrimination case.  The standard for meeting these requirements and for introducing such evidence to a jury is "rigorous."  *Wheeler v. Aventis Pharmaceuticals*, 360 F.3d 853, 857-58 (8th Cir. 2004).  Plaintiff must not only prove that she and a proposed comparable committed the "same conduct" with "comparable seriousness," but also that they are **" similarly situated in all respects":**

> **[T]o be deemed similarly-situated**, the individuals with whom the plaintiff seeks to compare his/her treament must have dealt with the same supervisor, have been **subject to the same standards** and have **engaged in the same conduct** without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.…  [In addition, it] is the discrimination plaintiff's burden to establish that the other employee's acts were of **"comparable seriousness" to his or her own infraction**.

*Mitchell, supra* (emphasis added, citations omitted).  *See also Minadeo v. ICI Paints*, 398 F.3d 751, 764 (6th Cir. 2005).  Moreover, "**the quantity and quality of the comparator's misconduct [must] be nearly identical to prevent courts from second-guessing reasonable decisions and confusing apples and oranges**."  *Mizell v. Miami-Dade Cty, Fla.*, 342 F. Supp. 2d 1084, 1090 (S.D. Fla. 2004) (emphasis added, citation omitted).

7

was correct in excluding these statements and Plaintiff's request for a new trial on these grounds
must be rejected.

      **D.**    **Proper Exclusion Of Unauthenticated Document Containing Hearsay
              Statements.**

      Plaintiff asserts that it was error for the Court to refuse to allow the introduction of a
single undated and unauthenticated document (Ex. PX-11) regarding what Plaintiff continues to
refer to as the "Dayton Incident."  This undated document purports to be a memorandum from
Hank Berlon, former Manager of the Trial Division of Cincinnati Insurance Company, to Greg
Ziegler, CIC's Personnel Director, concerning the alleged conduct of Fred Young.  Mr. Young
allegedly had an unfortunate habit, in Plaintiff's words, of "scratching himself" in a manner that
some individuals found offensive when speaking with others.  The Court allowed significant
testimony before the jury regarding Mr. Young's alleged conduct, the investigation of that
conduct, and the result of that investigation.  (*See, e.g.*, Tr. at 613-615, 708-709, 712-713, 1094)

      However, the Court sustained Defendants' objections to the introduction of this single
document based on the fact that the document was undated, was not properly authenticated, and
contained pure hearsay.  If Plaintiff truly believed that this exhibit was critical to the presentation
of her case, then she could have either deposed or called as a witness at trial either the author or
the recipient of the document.  She chose to do neither.

      As stated above, it is within the discretion of a district court  to admit or exclude
evidence. *See United States v. Cline*, 362 F.3d 343, 348 (6th Cir. 2004).  The Court will only be
found to have abused that discretion where it "relies on clearly erroneous findings of fact, ...
improperly applies the law, ... or ... employs an erroneous legal standard." *Id.*  Here the Court
correctly concluded that this undated document could not be properly authenticated by a witness,
in this case Mr. Balzano, who had never seen the document prior to being shown it during his

deposition in this litigation, and that the document did not meet any exception to the hearsay rules. Therefore, the Court was correct in sustaining Defendants' objection to this document and excluding it from evidence in this trial.

> **E.    No Legal Basis Exists For Plaintiff's Claimed Separate Remedy Of Front And Back Pay Under An Ohio State Law Tort Claim For Intentional Interference With An Employment Relationship.**

In spite of the jury's finding against her on all claims in the case, with the exception of her claim for intentional interference with an employment relationship where the jury awarded no damages, Plaintiff has filed this motion for a new trial on this issue, along with a motion seeking to have a hearing to determine what, if any, "front" and "back pay" she is entitled to on a claim where the jury found she had suffered **no** compensable injury. [2]

There is simply no legal basis for Plaintiff's arguments. A judgment reflecting the jury's verdict was entered in this case on June 23, 2005. Now Plaintiff argues that the Court must either hold a hearing to determine what, if any, "front" and "back pay" Plaintiff is entitled to on a state law tort claim where the jury found she had suffered no compensable injury or order a new trial. Plaintiff has offered absolutely no authority for the proposition that "front" and "back pay" are elements of damages, separate and apart from the jury's consideration of compensatory damages, in an Ohio state law tort claim such as intentional interference with an employment relationship. Such an assertion is made even more absurd in the context of an employment at will relationship where the Plaintiff could be fired at any point for no reason.

Plaintiff claims that the "[t]he jury instructions very clearly do not discuss the issue of back pay and front pay. *See* Jury Instructions at 13 (discussing compensatory damages) [Docket

---

[2] Defendant David Balzano has filed a Motion for Judgment as a Matter of Law asking the Court to set aside the jury's verdict on this claim, because no reasonable jury could have reached such a verdict on the evidence presented at trial, even when that evidence was construed most strongly in favor of Plaintiff. If the Court grants this motion, Plaintiff's motion will be moot.

#159, p. 13]. This is certainly true, in that the only discussion of "back pay" occurred in the context of the jury instructions related to the Title VII gender discrimination claim against CIC. In that context, Plaintiff proposed and the parties discussed and agreed that the Court would decide the equitable remedy of "back pay" under the Title VII claim should the jury find for Plaintiff on her Title VII claim. The jury found against Plaintiff on her Title VII claim, rendering the issue of "back" (or "front") pay moot.

The parties never discussed the issue of "back" or "front pay" as it related to Plaintiff's intentional interference with an employment relations claim. There is a simple reason for that, namely that on a tort claim under Ohio law, the purpose of compensatory damages, on which the jury was fully instructed, is "to compensate and make the plaintiff whole." *Pryor v. Weber*, 23 Ohio St. 2d 104, 107 (1970). Plaintiff simply provides no authority for the proposition that "front" and "back pay" are something to be considered separate and apart from compensatory damages in any tort claim under Ohio law, much less a claim for intentional interference with an employment relationship. Defendant David Balzano was not Plaintiff's employer, and therefore, he never had an obligation to pay Plaintiff wages. Any claim that Plaintiff may have had for any injury or loss as a result of Mr. Balzano's conduct was included within the compensatory damage that the jury considered in rendering its verdict on the intentional interference tort claim. In consideration of that claim and consistent with the Court's instructions and the Special Interrogatories, the jury concluded that Plaintiff had **no** compensable injury as a result of Mr. Balzano's conduct and awarded **no** damages.

At no point did the parties discuss the issue of "back pay" as it related to Plaintiff's claim for intentional interference with an employment relationship against the individual defendant, David Balzano, because there was simply no reason to discuss this as separate damage, apart

10

from compensatory damages, under a state law tort claim.[3]  The parties simply never discussed

the issue of "front pay" at all.  Examining the transcript, it is clear that neither the parties nor the

Court ever discussed or considered the issue of "front pay" in the discussions of the jury

instructions.  (*See* Tr. 1323, 1324, 1325, 1335, 1400)  Again, discussion of the issue of "front

pay" in the context of a state law tort claim for intentional interference with an at will

employment relationship would simply be contrary to logic and make no sense, in that any

alleged "front pay" claim would simply be speculative and contrary to the principle of

compensatory damages in tort claims.

---

[3] During the Charging Conference, the parties discussed whether the issue of back pay under Plaintiff's Title VII gender discrimination claim would be submitted to the jury or would be determined by the Court.  The fact that this discussion took place in the context of Plaintiff's Title VII claim and not her tort claim is evidenced throughout the record, but, by way of example, Defendant offers the following exchange:

| | |
|---|---|
| Mr. Sutherlin: | Your Honor, is it the Court's position that it's the jury's function to determine back pay as opposed to the Court itself determining back pay? |
| The Court: | I haven't thought about it. |
| | * * * * * |
| | I'm trying to remember, did it come up in <u>Bahar</u>? |
| | * * * * * |
| Ms. Adams: | We've looked into that, Judge.  And I think, I think in the Seventh Circuit it is for the Court.  In the Sixth Circuit it's all over the map and it appears to be either whatever the Court wishes to do.  It's gone to the jury without the Court of Appeals frowning on it, and it's gone to the Court without the Court of Appeals frowning on it. |
| | * * * * * |
| Ms. Pundzak: | From our [Plaintiff's] position, Judge, we would prefer that the Court take up the issue of back pay if there is a jury award in Plaintiff's favor. |
| The Court: | Yes. |
| Mr. Conway: | Just for the record, refer to the <u>Moore versus Sun Oil</u> case. |
| The Court: | Cite? |
| Mr. Conway: | 636 F. 2d 154.  I agree with what Miss Adams suggested is the Sixth Circuit is all over the place in terms of this issue.  **That was a 1981, Section 1981 action which shares remedies and provisions with Title VII, and that case said that it is an equitable issue decided by the Court.** |

Tr. 1323-24.

The focus of the entire discussion by counsel and the Court of whether the determination of back pay was to be made by the jury or the Court was limited to the statutory discrimination context, as is evidenced by the reliance of Plaintiff's counsel, Mr. Conway, on the *Moore v. Sun Oil* case, a case addressing pay under a federal discrimination statute and back pay as an equitable remedy.

Because Plaintiff's counsel made no objection to the jury instructions as read, pursuant to Rule 51, Plaintiff has waived any objections that she may have to the jury instructions given by the Court on the issue of compensatory damages as related to the single state law tort claim on which the jury found in her favor. *See Rogers, et al. v. Norfolk Southern Ry., et al.*, 126 Fed. Appx. 694 (6th Cir. 2005) (The law in the Sixth Circuit generally requires a formal objection to a district court's jury instructions, which should in most circumstances be made both before and after the jury instructions are read to the jury.)  Plaintiff should not now be allowed to attempt to solve any problem created by her waiver by pretending that the parties and the Court agreed that she would be entitled to seek "back" and "front pay" on her state law tort claim -- separate and apart from compensatory damages recognized under Ohio tort law -- from an individual defendant who was not her employer – particularly when Plaintiff can point to no Ohio authority for such a position.

During its deliberation the jury had before it evidence of Ms. Lentz's income prior to her termination, as well as her income for the years following that termination. *See* Exs. DX-A (Lentz CIC Service Record), DX-F (Lentz 2000-2004 Wage/Earnings and Tax Returns), JX-V (November 17, 1997 salary increase letter for Lentz), JX-XIV (November 15, 1999 salary increase letter for Lentz), JX-XVI (November 1998 salary increase letter for Lentz), PX-1 (Lentz performance evaluations for 1997, 1998, and 1999, including salary information, PX-23 (2000 salary increase letter for Lentz).  Plaintiff is simply incorrect in her assertion that the jury did not have adequate evidence before it to determine whether there should be a wage component to any compensatory damages related to its finding.

With regard to damages on this claim, the jury was asked the following question in the Special Interrogatories: **"If you answered "Yes" to Interrogatory No. 2, please indicate the**

12

**amount of compensatory damages, <u>if any</u>, to which Plaintiff is entitled."**  In response to this question, the jury determined that Plaintiff was entitled to **no** damages.

Based on the Court's instructions and the evidence before it, the jury determined that Plaintiff had no compensable injury as a result of whatever intentional interference with her employment relationship may have occurred.  One can assume that the jury concluded, based on its verdict, that while the jury believed Mr. Balzano improperly interfered with Plaintiff's employment relationship with Cincinnati Insurance Company, it was her own conduct – converting funds belonging to Cincinnati Insurance Company, rather than any conduct of Mr. Balzano -- that led to her termination.

In all of her post-trial briefing, Plaintiff has pointed to only one case as support for her belief that "back pay" is an element of damages in a state law tort claim and that such "back pay" can be awarded against an individual defendant who was not her employer and who had no obligation to pay her salary at any point.  However, this single case, *Julian v. Creekside Health Center*, 2004 WL 1376214 (Ohio Ct. App., Mahoning Cty. 2004), does not support this proposition at all.  *Julian* addressed an award of lost wages by a jury **against an employer**, not, as in this case, an assertion by a Plaintiff that "back pay" should be determined by the Court against a non-employer separate and apart from the jury's finding that the Plaintiff had suffered no compensable injury and was entitled to **no** damages on her claim for intentional interference with an employment relationship.  In her desperate attempt to salvage something from this litigation, Plaintiff is attempting to sell the Court a mule and call it a horse, in the hope that the Court will not recognize the difference.  *See Fannin v. Williams*, 655 S.W.2d 480, 484 (1983) ("We cannot sell the people of Kentucky a mule and call it a horse**,** even if we believe the public needs a mule.")

13

Finally, "Federal courts are prohibited by the Seventh Amendment from granting additur, which would increase the amount of the jury's award. *Tezak v. Montgomery Ward & Company, Inc.,* 33 Fed. Appx. 172, 177-78; 2002 U.S. App. LEXIS 6010 (6th Cir. 2002). *See also Dimick v. Schiedt,* 293 U.S. 474, 79 L. Ed. 603, 55 S. Ct. 296 (1955). Plaintiff recognizes that this is a problem, and, in her Motion for Hearing, attempts to address the issue, albeit unsuccessfully. In this case, it was reasonable for the jury to conclude that any injury Plaintiff may have suffered – injuries that were certainly disputed in the evidence, including Plaintiff's own evidence (compare testimony of Mary Lentz with testimony of Paula Ruppert on Plaintiff's alleged emotional injury) – were as a result of her own conduct, rather than Mr. Balzano's.

**F.     The Court Did Not Err In Its Instruction To The Jury On Plaintiff's Title VII Claim, And, Pursuant To Rule 51, Plaintiff Has Waived Any Post-Judgment Objection To The Jury Instructions As Read.**

Plaintiff contends that the Court improperly instructed the jury on Plaintiff's Title VII claim. This claim is baseless. Plaintiff objected to the Court's original construction of the Title VII instruction, demanded and, over Defendants' objections, received a "motivating factor" instruction on this issue based on the United States Supreme Court decision in *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003), despite the fact that this case was not a mixed motive case at all. Plaintiff, having received the mixed motive instruction she requested, then waived any objection to this modified instruction by failing to offer any objection to the jury instructions as read at the time required under F. R. C. P. 51(b). (Tr. at 1436, 1442)

Even though the Court acknowledged that there was absolutely no direct evidence of gender discrimination in this case (Tr. at 1291 - 1293), the Court chose to give both a burden shifting Title VII instruction, pursuant to *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), (traditionally used in Title VII cases where the only evidence of discrimination is

14

indirect), as well as the "mixed motive" instruction requested by Plaintiff that instructed the jury that it could find liability if it found that gender was a "motivating factor" in Plaintiff's termination. The jury instruction that was ultimately given by the Court on Plaintiff's Title VII claim is attached as Exh A.

This instruction was clear that the ultimate question before the jury was "to determine whether the Defendant CIC discriminated against the Plaintiff." In fact, the only liability question that the jury was asked to answer in the Special Interrogatories related to Plaintiff's Title VII claim of gender discrimination was whether "Plaintiff proved by a preponderance of the evidence gender discrimination against Defendant CIC."

In her Memorandum in Support of her motion for new trial, Plaintiff cites a number of cases that are cited in *Brown v. Packaging Corp. of America*, 338 F.3d 586 (6th Cir. 2003), in support of her proposition that a trial court should not instruct the jury using the *McDonnell Douglas* burden shifting formulation. (See pp. 15-17, Pl. Memorandum in Support) However, this is not at all what these cases conclude. The issue in these cases was whether or not it was error for the Court either to instruct the jury on the *prima facie* showing that a Plaintiff must make under the *McDonnell Douglas* formulation in a Title VII discrimination case or to refuse to give a *prima facie* instruction, not whether the *McDonnell Douglas* formulation was itself good law.

In fact, as held by the Sixth Circuit Court of Appeals in *Brown*, it is not error for a trial court to include an instruction on the *McDonnell Douglas prima facie* requirement, "so long as the instruction summarizes the law accurately." *Brown*, 338 F.3d at 593. As Plaintiff concedes, the Sixth Circuit Court of Appeals has never held that it was reversible error for a trial court to give a Title VII jury instruction that includes the *McDonnell Douglas prima facie* requirement.

15

*See, e.g., Barnes v. City of Cincinnati*, 401 F.3d 729, 739-740 (6th Cir. 2005); *Brown*, 338 F.3d 586, 590-594. The critical issue for appellate courts in addressing this issue has been whether the instruction provided to the jury was an accurate statement of the law. *Brown*, 338 F.3d at 593.

 Plaintiff does not complain that the instruction given to the jury on her Title VII gender discrimination claim was not an accurate statement of the law. Rather, she apparently just does not like the fact that when the Court gave her the "motivating factor" instruction she requested, the Court also determined that it was appropriate to give a *McDonnell Douglas prima facie* instruction as well. The fact that she did not like the formulation of the instruction certainly does not make the instruction erroneous.

 Following the Closing Statements of both parties and before Plaintiff's counsel made his rebuttal argument, the Court made the parties aware of the fact that it had decided to agree to Plaintiff's request and give a "motivating factor" instruction. The Court stated, "this is not a mixed motive case. Nevertheless, I think the Sixth Circuit seems to indicate in its case law that it's a good idea to include both the burden shifting of *McDonnell Douglas* and also the a "motivating factor" analysis, and so that's what we're going to do." (Tr. at 1397-1398) At that point, Defendants objected to the instruction that the Court intended to give the jury on Plaintiff's Title VII claim, as well as the Court's instruction defining "proximate cause." (Tr. at 1398) Plaintiff made no objection at that time to the modified Title VII instruction that the Court indicated it planned to give to the jury, and likewise, made no objection to that instruction or any others when provided the opportunity required by Rule 51. (Tr. at 1436) Therefore, pursuant to Rule 51, Plaintiff has waived any specific objection it may now have to this instruction as given. *See Rogers, et al. v. Norfolk Southern Ry., et al.*, 126 Fed. Appx. 694 (6th Cir. 2005) The only

16

basis for any consideration by this Court or by the appellate court is whether the instruction as given contained an accurate summary of the law.  It is clear from the Sixth Circuit Court of Appeals cases cited above that this instruction is an accurate summary of the law, something which even Plaintiff must admit.

Therefore, the Court should reject Plaintiff's request for a new trial on this basis.

**G.    The Court Properly Refused To Instruct The Jury On Punitive Damages.**

Plaintiff asserts that the Court erred by not instructing the jury on the possibility of punitive damages, although Plaintiff fails to identify the claim to which she believes this instruction should have been directed.  However, even assuming that the Court's refusal to give a punitive damages instruction related to all three of Plaintiff's claims was incorrect, it was still a harmless error, in that the jury found against Plaintiff on both the Title VII gender discrimination claim against CIC and the intentional infliction of emotional distress claim against Mr. Balzano. Additionally, even though the jury found in Plaintiff's favor on her intentional interference with a business relationship claim, they found that she had no compensable injury and awarded her no damages.  Therefore, given these findings by the jury, the provision of a punitive damage instruction to the jury would have been meaningless, as there was no award of damages that would have supported an award of punitive damages.  *See Virostek v. Liberty Township Police Department, et al.*, 14 Fed. Appx. 493, 508-09 (6th Cir. 2001).

The question of whether there was sufficient evidence to support a punitive damages award is a question of law for the Court to determine.  *Id.*  In order to support a claim for punitive damages under Title VII, a plaintiff must prove by a preponderance of the evidence that not only did the defendant unlawfully discriminate, but that the defendant acted with malice or with reckless indifference to the plaintiff's federal rights.  *Kolstad v. ADA*, 527 U.S. 526 (1999);

17

*Hall v. Consolidated Freightways Corp. of Delaware*, 337 F.3d 669 (6th Cir. 2003) (explaining what constitutes "good faith " efforts to comply with law). During the Charge Conference in this case, as well as other situations throughout trial, the Court made clear that it saw **no** evidence of gender discrimination on the part of CIC in the evidence Plaintiff presented at trial. (Tr. at 1291-1293) While the Court still decided that Plaintiff's gender discrimination claim should go to the jury, the Court properly concluded that if no evidence existed to support the underlying claim, then no evidence existed to support a punitive damages instruction related to Plaintiff's Title VII claim for gender discrimination.

Regarding Plaintiff's contention that the Court should have given a punitive damages instruction to the jury related to her state law claims, the fact that the jury found against her on one claim and found no compensable injury on the other clearly does not support such an argument. Again, the question of determining whether adequate evidence exists in the record of a case to support the submission of a jury instruction on punitive damages is a question of law for the Court. In order for such an instruction to be given, there must be clear and convincing evidence in the record of conduct on the part of a defendant that is characterized by "(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, *or* (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *Preston v. Murty* (1987), 32 Ohio St.3d 334, 512 N.E.2d 1174, syllabus. *See also Schmidt v. Derenia*, 158 Ohio App. 3d 738, 742-748, 822 N.E.2d 401 (Ohio App. 2004) (finding that the trial court should have directed a verdict on the issue of punitive damages in favor of the defendant and refused to instruct the jury on the issue because, while there was evidence of poor judgment and poor choices on the part of the defendant, there was insufficient evidence of any "positive element of conscious wrongdoing").

18

In this case, the Court, specifically referencing *Schmidt v. Derenia*, concluded that there was not sufficient evidence in this record to support a finding of a positive element of conscious wrongdoing or "outrageous conduct" on the part of Mr. Balzano, such that an instruction on punitive damages would be appropriate on Plaintiff's state law tort claims. (Tr. at 1296)  The Court simply concluded that, construing the evidence most strongly in favor of the Plaintiff, the claims of intentional interference with an employment relationship and intentional infliction of emotional distress presented a jury question, while the issue of punitive damages related to those claims did not.

Additionally, under Ohio law, proof of actual damages is a necessary predicate for an award of punitive damages.  *Moskovitz v. Mt. Sinai Medical Center*, 69 Ohio St. 3d 638, 650, 635 N.E.2d 331 (Ohio 1994).  As is evidenced by the jury's verdict in this case, Plaintiff simply failed to provide evidence of any compensable injury that she may have suffered as a result of Mr. Balzano's intentional interference with her employment.

Under Ohio law, it was proper for the Court to look at the evidence that had been presented in the case by Plaintiff and conclude that she had failed to produce evidence of conscious wrongdoing or outrageous conduct on the part of Mr. Balzano or evidence of actual damages resulting from the alleged conduct sufficient to support giving the jury a punitive damage instruction on this Ohio state law tort claim.  Therefore, it was proper for the Court to refuse to give an instruction on punitive damages related to any of Plaintiff's claims and Plaintiff's motion for new trial cannot be granted on this basis.

**III.    <u>CONCLUSION</u>**

For all the forgoing reasons, the Court should deny Plaintiff's Motion for New Trial.

Respectfully submitted,

19

_s/ Jack B. Harrison_
Deborah S. Adams (0005607)
Jack B. Harrison (0061993)
Frost Brown Todd LLC
2200 PNC Center
201 East Fifth Street
Cincinnati, OH 45202-4182
(513) 651-6800 (phone)
dadams@fbtlaw.com
jharrison@fbtlaw.com
Trial Attorneys for Defendants

20

**CERTIFICATE OF SERVICE**

I hereby certify that on July 26, 2005, a copy of Defendants' Memorandum in Opposition to Plaintiff's Motion for New Trial was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system and copies will be mailed via U.S. Mail to those parties who are not served via the Court's electronic filing system, if any. Parties may access this filing through the Court's system.

s/ *Jack B. Harrison*
Deborah S. Adams (0005607)
Jack B. Harrison (0061993)
Frost Brown Todd LLC
2200 PNC Center
201 East Fifth Street
Cincinnati, OH 45202-4182
(513) 651-6800 (phone)
dadams@fbtlaw.com
jharrison@fbtlaw.com
Trial Attorneys for Defendants

21