## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **MARY E. LENTZ,** | : | **Case No.: 01-CV-599** |
| | : | |
| **Plaintiff,** | : | **(Judge Watson)** |
| | : | |
| **v.** | : | **DEFENDANTS' REPLY MEMORANDUM IN** |
| | : | **SUPPORT OF MOTION FOR APPROVAL OF** |
| | : | **BILL OF COSTS** |
| | : | |
| **CINCINNATI INSURANCE** | : | |
| **COMPANY, et al.** | : | |
| | : | |
| **Defendants.** | : | |

Pursuant to Fed. R. Civ. P. 54(d) and S.D. Ohio Civ. R. 54.1, Defendants Cincinnati Insurance Company ("CIC") and David Balzano have moved the Court for approval of their Bill of Costs (attached as Exh. A to Defendants' original motion), totaling $13,215.23.  Plaintiff has filed her Memorandum in Opposition to that motion and Defendants herein reply.

As has been a pattern throughout this litigation, Plaintiff either intentionally or inadvertently distorts both the facts and the law of this case.  This pattern has continued in Plaintiff's post-trial briefing as well.  Therefore, given Plaintiff's refusal to accept her absolute failure before the jury, Defendants are obligated to outline the posture of this case following the jury's verdict:

1.      The jury found against Plaintiff on her claim of gender discrimination against her employer, Cincinnati Insurance Company ("CIC"), and in favor of CIC on its claim against Plaintiff for conversion of CIC funds.  Judgment was entered in favor of CIC on the only claims involving CIC as a party.  **No matter how Plaintiff wishes to spin the result of the trial, it cannot be disputed that she lost on every single claim involving her employer, CIC, thus making CIC a prevailing party in this litigation under any analysis.**  Since all costs

identified in Defendants' Bill of Costs were paid by CIC, there is little doubt that Plaintiff should be ordered to pay CIC its costs in this litigation. Plaintiff conveniently chooses to ignore this basic truth.

2.      With regard to her state law tort claims of intentional infliction of emotional distress and intentional interference with an employment relationship against her supervisor, David Balzano, the jury found against Plaintiff on her emotional distress claim and in favor of Mr. Balzano. While the jury found in favor of Plaintiff on her claim against Mr. Balzano for intentional interference with an employment relationship, the jury awarded **no** damages on this claim, finding that she had **no** compensable injury.

While Plaintiff disputes the fact that Mr. Balzano was a prevailing party in this case, there can be no question that CIC is a prevailing party in this case. Plaintiff does not dispute this fact and cannot, in that Plaintiff absolutely failed on every claim against CIC. Under Fed. R. Civ. P. 54(d) and S.D. Ohio Civ. R. 54.1, CIC is clearly entitled to its costs incurred in this case, totaling $13,215.23. Even if, as Plaintiff suggests, the Court were to find that Plaintiff and Mr. Balzano were both "prevailing parties" or that neither were "prevailing parties," there can be no doubt that CIC is a prevailing party and is entitled to an award of costs.

In her Memorandum in Opposition to Defendants' Motion for Costs, Plaintiff relies upon state law cases from Alaska, Arizona, and Kentucky and one federal case interpreting the law of the Virgin Islands, cases that have absolutely no application in this federal court. Plaintiff also consistently misapplies decisions in federal cases. For example, Plaintiff relies upon *Head v. Medford*, 62 F.3d 351 (11th Cir. 1995), for the proposition that "[b]ecause Plaintiff prevailed on her state law claim against Balzano, Plaintiff is to be considered a prevailing party." (Memo. Opp. At 2) However, this is not even remotely the issue that was addressed in *Head*, which was

2

in fact whether a defendant who had been granted summary judgment should be considered a prevailing party when the court dismissed all state law claims brought by the plaintiff without prejudice due to a lack of subject matter jurisdiction. Obviously, this is a very different situation than the one currently before the Court.

Federal Rule of Civil Procedure 54(d) provides that ". . . costs . . . **shall** be allowed as of course to the prevailing party unless the court otherwise directs . . . " (emphasis added). *See also* S.D. Ohio Civ. R. 54.1. Rule 54(d) creates a presumption in favor of awarding costs. *White & White, Inc. v. American Hosp. Supply Co.*, 786 F.2d 728, 730 (6th Cir. 1986); *Baker v. First Tennessee Bank Nat'l Ass'n.*, 1998 U.S. App. LEXIS 5769 at *4 (6th Cir. 1998). In pursuing costs under Rule 54(d)(1), the prevailing party is *prima facie* entitled to costs unless the unsuccessful party can successfully show circumstances sufficient to overcome the presumption. *Hall v. Ohio Educ. Ass'n*, 984 F. Supp. 1144, 1146 (S.D. Ohio 1997); *Lichter Found., Inc., v. Welch*, 269 F.2d 142, 146 (6th Cir. 1959). Thus, regardless of how the Court analyzes the dispute over whether Mr. Balzano was the prevailing party in Plaintiff's claims against him or whether Plaintiff was the prevailing party in her claims against Mr. Balzano, there is a presumption that Plaintiff owes CIC costs – a presumption Plaintiff has offered nothing to overcome.[1]

Even though the jury found that Plaintiff had no compensable injury under her state law tort claim for intentional interference with an employment relationship, Plaintiff continues to assert that she is entitled to a hearing on "back pay" on this claim. This belief forms the sole basis for her argument that she – not CIC and / or Mr. Balzano – is to be considered the

---

[1] Plaintiff asserts that if the Court allows a hearing on "front" and "back pay" on her state law tort claim against Mr. Balzano and if the Court awards some pay, then surely her recovery will be greater than the $1,600.00 CIC recovered against her. Plaintiff misses one critical issue in this analysis. Even were the Court to improperly award "back pay" or "front pay" to Plaintiff on her state law tort claim against Mr. Balzano that would have no impact on the fact that CIC was a prevailing party, in that CIC was successful on all claims involving it in this litigation. This remains true regardless of what decision the Court makes on Plaintiff's assertion that she is entitled to a hearing on "front" and "back pay" in the context of her state law tort claim against a non-employer.

3

prevailing party in this litigation for the purpose of awarding costs under Rule 54.  Yet, in none of her briefing, has Plaintiff offered a single Ohio state court decision stating that the equitable remedy of "back pay" is a component of compensatory damages in an Ohio tort claim against a non-employer or that the determination of "back pay" is to be done separate and apart from the jury's consideration of compensatory damages in the context of a state law tort claim.  The single case Plaintiff has been able to point to, *Julian v. Creekside Health Center*, 2004 WL 1376214 (Ohio Ct. App., Mahoning Cty. 2004), does not support this proposition at all.  *Julian* addressed an award of lost wages by a jury **against an employer**, not, as in this case, an assertion by a Plaintiff that "back pay" should be determined by the Court against a non-employer separate and apart from the jury's finding that the Plaintiff had suffered no compensable injury and was entitled to **no** damages on her claim for intentional interference with an employment relationship. In her desperate attempt to salvage something from this litigation, Plaintiff is attempting to sell the Court a mule and call it a horse, in the hope that the Court will not recognize the difference. *See Fannin v. Williams*, 655 S.W.2d 480, 484 (1983) ("We cannot sell the people of Kentucky a mule and call it a horse**,** even if we believe the public needs a mule.")[2]

Plaintiff's assertion that she is now entitled to a determination by the Court of "back" and "front pay" against Mr. Balzano, an individual non-employer party who never had an obligation

---

[2] Before the jury during its deliberation was evidence showing Ms. Lentz's income prior to the time of her termination for converting funds belonging to Cincinnati Insurance Company to her own use, as well as her income for the years following that termination.  *See* Exs. DX-A (Lentz CIC Service Record), DX-F (Lentz 2000-2004 Wage/Earnings and Tax Returns), JX-V (November 17, 1997 salary increase letter for Lentz), JX-XIV (November 15, 1999 salary increase letter for Lentz), JX-XVI (November 1998 salary increase letter for Lentz), PX-1 (Lentz performance evaluations for 1997, 1998, and 1999, including salary information, PX-23 (2000 salary increase letter for Lentz).  Plaintiff is simply incorrect in its assertion that the jury did not have adequate evidence before it to determine whether there should be a wage component to any compensatory damages related to their finding in Plaintiff's favor on her claim for intentional interference with employment relationship and the amount to be included, if any.  With regard to damages on this claim, the jury was asked the following question in the Special Interrogatories: "If you answered "Yes" to Interrogatory No. 2, please indicate the amount of compensatory damages, **if any**, to which Plaintiff is entitled."  In response to this question, the jury determined that Plaintiff was entitled to no damages.

4

to pay Plaintiff wages, is clearly a *post hoc* attempt to provide Plaintiff one more bite at the apple in a case where the jury weighed all her evidence and found it deficient.  However, there is no legal basis for the attempt.  Moreover, at no point did Plaintiff's counsel raise the fact that he believed Plaintiff was entitled to a hearing on these issues after the jury returned a verdict, the Court stated that the case was concluded (Tr. at 1458), or before judgment was entered in the case.

Plaintiff believes she should be considered the "prevailing party" in a case where the jury found against her on every claim, except for a single state law tort claim where the jury found she had **no** compensable injury and awarded her **no** damages.  While Plaintiff seems to want the Court to accept the label of "prevailing party" as true simply because she and her counsel say it is so, the primary basis on which this argument is made is that Plaintiff claims to be entitled to an alteration in the judgment in this case to add "back" and "front pay" to the jury's **zero** compensatory damage award.[3]

In *Buckhannon Bd. And Care Home, Inc. v. West*, 532 U.S. 598 (2001), a case originally relied upon by Plaintiff for the faulty proposition that "the amount of damages awarded" does not matter in the determination of whether a party is the "prevailing party" for the purposes of Rule 54, the United States Supreme Court states, following an overwhelming body of authority:

> In designating those parties eligible for an award of litigation costs, Congress employed the term "prevailing party," a legal term of art. Black's Law Dictionary 1145 (7th ed. 1999) defines "prevailing party" as "[a] party in whose favor a judgment is rendered, regardless of the amount of damages awarded (in certain cases, the court will award attorney's fees to the prevailing party). -- Also termed successful party." **This view that a "prevailing party" is one who has been awarded some relief by the court can be distilled from our prior cases.**

---

[3] "Federal courts are prohibited by the Seventh Amendment from granting additur, which would increase the amount of the jury's award. *Tezak v. Montgomery Ward & Company, Inc.,* 33 Fed. Appx. 172, 177-78; 2002 U.S. App. LEXIS 6010 (6th Cir. 2002). *See also Dimick v. Schiedt*, 293 U.S. 474, 79 L. Ed. 603, 55 S. Ct. 296 (1955).  While this is clearly what Plaintiff is seeking in this case, she denies that fact, although it is clearly of concern to her since she first raised it in her Motion for Hearing.

532 U.S. at 603.  In this case, CIC prevailed on all claims in which it was involved, Mr. Balzano

prevailed on one of the two claims against him and had **zero** damages awarded against him on

the other state law tort claim against him, while Plaintiff clearly was not awarded any relief by

the jury on her claims.  Therefore, CIC must be considered the "prevailing party," while Plaintiff

clearly cannot, as a matter of law, be considered the "prevailing party."

In reviewing Supreme Court decisions analyzing "prevailing party" status for the

purposes of an award of costs under Rule 54 or an award of attorneys' fees, the United States

Court of Appeals for the D.C. Circuit stated, in part:

> The Supreme Court has consistently required that to be considered a prevailing party under § 1988, a party must receive some affirmative relief. In *Hewitt v. Helms*, 482 U.S. 755, 760, 96 L. Ed. 2d 654, 107 S. Ct. 2672 (1987), the Court observed that "respect for ordinary language requires that a plaintiff receive at least some relief on the merits of his claim before he can be said to prevail."
>
> \* \* \* \* \* \*
>
> The decision in *Farrar v. Hobby*, 506 U.S. 103, 121 L. Ed. 2d 494, 113 S. Ct. 566 (1992), is particularly instructive. In that case, the Court considered whether a civil rights plaintiff who receives nominal damages is a prevailing party eligible to receive attorneys' fees under 42 U.S.C. § 1988. The Court concluded that while such a party was "prevailing," the attorneys' fee award could appropriately be quite low, based on the degree of the plaintiff's overall success. The Court held that to qualify as a prevailing party under § 1988, a plaintiff "must obtain an enforceable judgment against the defendant from whom fees are sought." *Id.* at 111. The award of nominal damages, the Court concluded, was such an enforceable judgment, because "[a] plaintiff may demand payment for nominal damages no less than he may demand payment for millions of dollars." *Id.* at 113. The Court made clear, however, that "'the moral satisfaction [that] results from any favorable statement of law' cannot bestow prevailing party status." *Id.* at 112 (quoting *Hewitt*, 482 U.S. at 762).
>
> **Unlike the award of nominal damages at issue in *Farrar*, a judgment with no damages at all is not an "enforceable judgment"--there is simply nothing to enforce. While an empty judgment may provide some moral satisfaction, such a judgment carries no real relief and thus does not entitle the judgment winner to be treated as a prevailing party.** [4]

---

[4] *See Robinson v. City of St. Charles*, 972 F.2d 974, 976 (8th Cir.  1992) (holding that unlike a civil rights plaintiff receiving nominal damages, a plaintiff receiving no damages is not a prevailing party simply because a violation

6

*Tunison v. Continental Airlines Corp.*, 162 F.3d 1187, 1190 (D.C. Cir. 1998). *See also Farrar, et al. v. Hobby*, 506 U.S. 103 (1992), *Lintz, et al. v. American General Finance, et al.*, 203 F.R.D. 486 (D. Kan. 2001); *Centennial Management Servs., Inc. v. Axa Re Vie*, 2001 U.S. Dist. LEXIS 1610, 2001 WL 123871, *2-3 (D. Kan. Feb. 5, 2001).

Plaintiff claims that any discussion of awards of attorneys' fees is irrelevant for a discussion of costs under Rule 54. This is simply contrary to law, in that courts have consistently held that the analysis for who is a "prevailing party" for the purposes of attorneys' fees is identical to the analysis for determining who is a "prevailing party" for the purposes of determining an award of costs. *See, e.g.*, *Tunison v. Continental Airlines Corp.*, 162 F.3d 1187, 1190 (D.C. Cir. 1998).

In this case, the jury found that Plaintiff had suffered no compensable injury and awarded her no damages. Thus, like the plaintiff in *Tunison*, Plaintiff had "no enforceable judgment," a requirement for "prevailing party" status pursuant to Rule 54. While Plaintiff may have some moral satisfaction from her success on one of the claims she brought against Defendant Balzano in this case, courts, including the U.S. Supreme Court in *Farrar*, have made it clear that 'the moral satisfaction [that] results from any favorable statement of law' cannot bestow prevailing party status." 506 U.S. at 112 (quoting *Hewitt*, 482 U.S. at 762). Therefore, Plaintiff is not entitled to any award of costs in this matter pursuant to Rule 54, while Defendant CIC certainly is, even leaving aside the issue of whether Mr. Balzano is entitled to an award of costs.

---

was demonstrated); *Nissim v. McNeil Consumer Prod. Co.*, 957 F. Supp. 604, 607 (E.D. Pa. 1997) (holding that where the jury found in favor of plaintiff on Title VII discrimination and retaliatory discharge claims but awarded no back pay or compensatory damages, plaintiff was not prevailing). *Cf. Johnson v. Eaton*, 80 F.3d 148, 150 (5th Cir. 1996) (where plaintiff demonstrated a violation of the Fair Debt Collection Practices Act but did not prove damages, she was not entitled to attorneys' fees under the statute which required a "successful action to enforce the [claimed] liability"); *PH Group Ltd. v. Birch*, 985 F.2d 649, 652 (1st Cir. 1993) (where jury found that defendant breached implied covenant of good faith and fair dealing but awarded plaintiff zero damages, plaintiff was not a "prevailing party" entitled to attorneys' fees under agreement between licensor and licensee).

Plaintiff claims that there is no justification for the witness fee for Paul Ruppert that is included in Defendants' Bill of Costs.  This witness fee was paid to Ms. Ruppert in October 2002 when Ms. Ruppert was subpoenaed by Defendants to appear for deposition.  Ms. Ruppert failed to appear for deposition because Plaintiff 's counsel claimed that she was too ill to be deposed.  The Court faced similar issues during the trial when the Court allowed Ms. Ruppert to testify out of turn because Plaintiff's counsel stated that she was too ill to appear on a Monday or a Wednesday, but apparently well enough on a Tuesday to appear.  This was a legitimate cost of the litigation incurred by CIC, and a cost that should be awarded.

Plaintiff objects to Defendants' inclusion of the costs for daily transcripts in its Bill of Costs, although she ignores the primary reason offered by Defendants as to why these daily transcripts were necessary.  **In the trial in this matter, daily transcripts and the transcript from the Final Pretrial were used by Defendants and by the Court almost every single day of trial as a mechanism for reviewing whether representations made to the Court and to the jury by Plaintiff's counsel had an actual basis in the record.**  As the Court well knows, given its constant reminders to Plaintiff's counsel throughout the trial, often these representations had no basis in the record.  (*See, e.g.* Tr. at 667-68)  "It is properly within the discretion of the trial court to tax costs for a daily transcript where the daily copies were 'necessarily obtained for use' in the case." *Peters v. Delaware River Port Auth.*, 1995 U.S. Dist. LEXIS 1118, No. 91-6814, 1995 WL 37614, at *2 (E.D. Pa. Jan. 27, 1995)(quoting *Holmes v. Cessna Aircraft Co.*, 11 F.3d 63, 64 (5th Cir. 1994)).  *See also Radol v. Thomas*, 113 F.R.D. 172 (S.D. Ohio 1986).  Daily transcripts were also used by Defendants in the trial of this case in the examination of witnesses, in arguments in support of objections, in arguments for Judgment as a Matter of Law, and in Closing Argument to the jury.  Given the nature and length of this trial, as well as its

8

somewhat contentious nature, there can be little question that daily transcripts were "necessarily obtained for use in the case."

Respectfully submitted,

*s/ Jack B. Harrison*

Deborah S. Adams (0005607)
Jack B. Harrison (0061993)
Frost Brown Todd LLC
2200 PNC Center
201 East Fifth Street
Cincinnati, OH 45202-4182
(513) 651-6800 (phone)
dadams@fbtlaw.com
jharrison@fbtlaw.com
Trial Attorneys for Defendants

9

## CERTIFICATE OF SERVICE

I hereby certify that on July 26, 2005, a copy of Defendants' Reply Memorandum In

Support of Motion for Approval of Bill of Costs was filed electronically.  Notice of this filing

will be sent to all parties by operation of the Court's electronic filing system and copies will be

mailed via U.S. Mail to those parties who are not served via the Court's electronic filing system,

if any.  Parties may access this filing through the Court's system.

s/ *Jack B. Harrison*
Deborah S. Adams (0005607)
Jack B. Harrison (0061993)
Frost Brown Todd LLC
2200 PNC Center
201 East Fifth Street
Cincinnati, OH 45202-4182
(513) 651-6800 (phone)
dadams@fbtlaw.com
jharrison@fbtlaw.com
Trial Attorneys for Defendants

CinLibrary 0011523.0480059 1527020v.1

10