UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| MARY E. LENTZ, | : | Case No.: 01-CV-599 |
| | : | |
| Plaintiff, | : | (Judge Watson) |
| | : | |
| v. | : | |
| | : | |
| CINCINNATI INSURANCE CO. and | : | **DEFENDANT DAVID BALZANO'S REPLY** |
| DAVID BALZANO, | : | **MEMORANDUM IN SUPPORT OF** |
| | : | **RENEWED MOTION FOR JUDGMENT AS** |
| | : | **A MATTER OF LAW AS TO CLAIM FOR** |
| | : | **INTENTIONAL INTERFERENCE WITH** |
| | : | **EMPLOYMENT RELATIONSHIP** |
| Defendants. | : | |

Defendant David Balzano ("Balzano") has renewed his request that the Court, pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, award him judgment as a matter of law on Plaintiff's claim for intentional interference with an employment relationship because no reasonable jury could conclude that he intentionally and unlawfully interfered with Plaintiff Mary Lentz's ("Plaintiff") employment relationship with Defendant Cincinnati Insurance Company ("CIC"). Plaintiff has filed her Memorandum in Opposition to this Motion and Balzano herein replies.

As has been a pattern throughout this litigation, Plaintiff either intentionally or inadvertently distorts both the facts and the law of this case. This pattern has continued in Plaintiff's post-trial briefing as well. Therefore, Defendant is obligated at the outset of this memorandum to correct certain misstatements contained in Plaintiff's memorandum:

1. Plaintiff claims that Defendant provides no legal support for the proposition that under Ohio law,[1] the malice standard for finding an exception to a qualified privilege is the same

---

[1] Plaintiff accuses Defendant of making a misrepresentation to the Court regarding the holding of *Hahn v. Kotten*, 331 N.E.2d 713 (1975), without noting to the Court that Defendant's citation to the Court of *Hahn* was preceded by

for claims for intentional interference with employment relations as for claims for defamation. Plaintiff does not argue that Defendant is incorrect in this assertion, only that Defendant failed to provide legal support for this proposition. Yet again, Plaintiff simply attempts to mislead the Court.

When the Court looks at the numerous cases cited in Defendant's original memorandum in support of his motion -- cases involving claims for tortious interference with employment relations, claims for defamation, and often both -- the Court will find that "[t]he tort of wrongful interference with employment relations requires a showing of 'either wanton or malicious behavior' when the tort is asserted against an 'outsider,' meaning an individual not worthy of a qualified privilege." *Mitchell*, 2004 Ohio 5264, at P30 (Watson, J.) (quoting *Dryden v. Cincinnati Bell Tel. Co.*, 135 Ohio App. 3d 394, 400, 734 N.E.2d 409 (1st Dist. 1999)). Where the tort is asserted against an "insider" and a qualified privilege is appropriate, courts, in both the intentional interference and the defamation context, have found that in order to defeat this privilege, a plaintiff must prove by clear and convincing evidence that the defendant acted with actual malice. *Jacobs v. Frank*, 60 Ohio St. 3d 111, 114-16, 573 N.E.2d 609 (1991); *See Fitzgerald v. Roadway Express, Inc.*, 262 F. Supp. 2d 849 (N.D. Ohio 2003); *Hahn v. Kotten*, 43 Ohio St. 3d 237, 331 N.E.2d 713 (1975); *Oh. State Home Serv., Inc. v. Better Business Bur. Akron, Inc.*, 89 Ohio App. 3d 732, 736, 627 N.E.2d 602 (1993); *Voisard v. Noble,* 1990 Ohio App. LEXIS 666 (Auglaize Cty. Feb. 23, 1990).² As one appellate court specifically stated, citing *Hahn*, "**[t]he qualified privilege and the requirement that the movant show actual**

---

a "*See*" citation signal, which as most first year law school students learn connotes a citation where "the proposition is not directly stated by the cited authority but obviously follows from it; there is an inferential step between the authority cited and the proposition it supports. The Bluebook: A Uniform System of Citations.
² Clear and convincing evidence has been described by the Ohio Supreme Court as that degree of proof which is more than a "mere preponderance of the evidence," but less than "beyond a reasonable doubt," and which will produce in the mind of the trier of the facts a "firm belief or conviction" as to the facts sought to be established. *Cross v. Ledford*, 161 Ohio St. 469, 477, 120 N.E.2d 118 (1954).

**malice are the same for business interference as those discussed in regard to defamation.**" *Better Business Bur. Akron, Inc.*, 89 Ohio App. 3d at 736 (emphasis added). This conclusion is exactly what Defendant argued in his original memorandum in support, a proposition of law that Plaintiff questioned.

      2.      Plaintiff next misrepresents to the Court Defendant's position by saying that "Defendant goes on to tell the Court that a jury cannot legally infer malice from any evidence." (Pl. Mem. At 10) This assertion by Plaintiff is simply false, in that Defendant never makes such an assertion. Defendant actually sets forth the following correct propositions of law in his memorandum in support, propositions that Plaintiff cannot dispute:

> Ohio courts have repeatedly concluded that "**innuendo or an 'inference of motive' is insufficient to show actual malice**." *Contadino v. Tilow*, 68 Ohio App. 3d 463, 470, 589 N.E.2d 48 (1st Dist. 1990); *See Smith v. Ameriflora*, 96 Ohio App. 3d 179, 185, 644 N.E.2d 1038 (**10th Dist.** 1994) ("**Actual malice could not be inferred from evidence of ill-will, personal spite, or ulterior motive**.") (citing *Jacobs*, 60 Ohio St. 3d at 1118-19). Ohio courts have also consistently held that liability for tortious interference cannot be "predicated simply upon the characterization of such conduct as malicious." *Anderson*, 32 Ohio St. 2d at 213; *Hill*, 63 Ohio App. 2d at 175. Finally, **Ohio courts have stated that the mere "belief" that a supervisor acted with malice is not clear and convincing evidence of malice.** *See, e.g., Ameriflora*, 96 Ohio App. 3d at 185. Thus, Plaintiff cannot prove malice with mere conjecture and inference because such evidence cannot as a matter of law leave a firm conviction in the mind of a reasonable jury that actual malice occurred.

Plaintiff goes on to claim that the cases cited in the paragraph above are inapplicable in this case because Plaintiff believes they all only address claims for defamation. Again, this is just not true. In *Contadino*, *Ameriflora*, *Anderson*, and *Hill*, the courts were addressing issues of both defamation and interference with employment claims. As the Court no doubt knows, these claims are often brought together, just as they originally were in this case, until the Court determined that Plaintiff had missed the Ohio statute of limitations with regard to Plaintiff's defamation claim and dismissed that claim.

**LEGAL ARGUMENT**

I.  **AS A MATTER OF LAW, BALZANO CANNOT BE LIABLE FOR TORTIOUS INTERFERENCE WITH PLAINTIFF'S EMPLOYMENT BECAUSE SUPERVISORS WHO REPORT MISCONDUCT OF SUBORDINATES CANNOT BE LIABLE FOR TORTIOUS INTERFERENCE IF THE SUPERVISOR'S DUTIES INCLUDE OVERSEEING THE PLAINTIFF.**

The record unequivocally demonstrates that, as an inside supervisor who was acting as such when he reported Plaintiff's letters requesting that reimbursement checks for funds belonging to CIC be made out to her personally, Balzano cannot be liable for tortious interference with Plaintiff's employment relationship with CIC. Balzano was the managing attorney in the Dayton office of the CIC Legal Department. (Tr. 869.) It was his duty to oversee Plaintiff, to evaluate Plaintiff, and to address her questionable or improper conduct when it arose. (Tr. 230-31,869-70). He was in charge of the operation of the Dayton office. (Tr. at 1016.) He was Plaintiff's supervisor. (Tr. at 226.) His secretary came to him in December 1999 with Plaintiff's letter requesting copy reimbursement money be paid to Plaintiff personally, and he passed that information along to Huller, his supervisor, because he had "never seen another attorney" do that. (Tr. at 1050-51.) It was unchallenged at trial that Balzano offered no opinions, accusations, or recommendations as to what was meant by these letters or what should be done with Plaintiff. (Tr. at 1067, 1077, 1112.) Plaintiff simply ignores these facts, as well as the law, in favor of sheer speculation.

Under Ohio law, a co-worker **cannot** be liable for tortiously interfering with the business relationship of another employee and her employer if the action taken by the co-worker occurs during the course of the alleged interferer's employment and authority as an employee. *See Anderson v. Minter*, 32 Ohio St. 2d 207, 291 N.E.2d 457 (1972); *see also Mitchell v. Mid-Oh. Emergency Servs.*, 2004 Ohio 5264, P32 (Oh. App. 10th Dist. 2004) (Watson, J.) ("[A] person in

a supervisory capacity or other position of authority over the employee cannot be held liable for interfering if it is that person's duty to monitor, supervise, or enforce."); *Smiddy v. Kinko's, Inc.*, 2003 Ohio 446 (1st Dist. 2003).

Plaintiff claims that Balzano was acting outside the scope of his employment when he reported Plaintiff's letters to his supervisor, Huller, because Plaintiff claims that Balzano either lied about his knowledge or presented an incomplete truth. Plaintiff cites to the transcript of the trial for support of this assertion, claiming that Balzano and Huller both testified that Balzano had a duty to provide accurate information. (Tr. at 908, 869-871) Assuming that one of Balzano's duties as Plaintiff's supervisor was to provide accurate information, there is absolutely no evidence in this case that Balzano did not provide accurate information when he went to Huller with letters signed by Plaintiff seeking to have checks for funds belonging to CIC made out to her personally. It was his duty to report what he had discovered, which is exactly what he did and he did so truthfully.

Further, under Ohio law, even a supervisor or co-worker who acts maliciously cannot be held liable for tortious interference with employment so long as their duties included reporting the plaintiff to management. *See, e.g., Anderson*, 32 Ohio St. 2d at 213 (The court reasoned that a supervisor could not interfere with the business relationship between an employee and his employer if the action taken by the supervisor occurred within the scope of his delegated authority.). Plaintiff cannot transform Balzano's supervisory conduct into malicious conduct based solely on her subjective belief, in that liability cannot be "predicated simply upon the **characterization** of such conduct as malicious." *Id.* (emphasis added). *See, e.g., Erebia v. Chrysler Plastic Products Corp.*, 891 F.2d 1212, 1216 (6th Cir. 1989) (such claims by employees against officers or other supervisory agents of employers must fail because "there is

no third party who induced the breach. The agents are considered the same as the actual employer"); *Duggan v. Orthopedic Inst. Oh., Inc.*, 2004 U.S. Dist. LEXIS 7583, at *8-12 (N.D. Oh. Apr. 8, 2004) (no tortious interference where administrative director maliciously reported plaintiff president's abusive behavior to other individual defendants; administrator made report in his professional capacity); *Schoendorf v. Memorial Hospital of Sandusky County*, 1988 Ohio App. LEXIS 2804 (6th Dist. July 15, 1988) (supervisor was entitled to a directed verdict because Ohio law did not recognize a cause of action against a supervisor acting within the scope of her duties); *Rayel v. The Wackenhut Corp.*, 1995 Ohio App. LEXIS 2389, at 14 (8th Dist. June 8, 1995) ("[T]his court has unequivocally stated that, '**a supervisor of an employee cannot be held liable for tortious interference with contract**.' As such, appellant's claim involved a suit by a subordinate employee against a supervisor. Under the law of this district, no such action can lie."); *Moses v. Budd Co.*, 1993 Ohio App. LEXIS 5724, *9-10 (Sixth District Dec. 3, 1993) (extending the supervisor privilege found in *Anderson* to fellow coworkers as well).

      Assuming that everything Plaintiff claims is true, Balzano did not commit an independent tort against Plaintiff recognized under Ohio law. He reported her conduct while in the workplace, and that act certainly could not have been considered even remotely "tortious" but for the existence of Plaintiff's employment. Thus, it does not matter that he may have reported to Huller knowing the information was not the whole truth because Ohio law permits employees to maliciously interfere with one another, so long as they are acting within the scope of their employment. Likewise, it is irrelevant that Balzano may have been pursuing a personal grudge against Plaintiff. Pursuant to *Moses*, Balzano was free to advance his own interests in an at-will employment relationship, as was Plaintiff. 1993 Ohio App. LEXIS 5724, at *11. *See also Carlisle v. Bennett Enters.*, 1997 U.S. Dist. LEXIS 18752 (N.D. Ohio, 1997) ("No claim can be

brought against a supervisor for malicious acts committed in the course and scope of his employment, **even where those acts consist of relaying false information to upper management** for the purpose of procuring the plaintiff's termination."); *Phung v. Waste Management, Inc.*, 40 Ohio App. 3d 130, 133-34, 532 N.E.2d 195 (6th Dist. 1988) (no tortious interference against a supervisor who reported a subordinate plaintiff to the employer, despite remand of plaintiff's claim of defamation against supervisor); *Hill v. Gatz*, 63 Ohio App. 2d 170, 175, 410 N.E.2d 1268 (8th Dist. 1979) (no tortious interference against a defendant supervisor who made allegedly malicious and defamatory statements because the statements were made during the course of his duties as a supervisor); *Sooy v. Ross Incineration Services*, 1999 Ohio App. LEXIS 4889, at *32-37 (9th Dist. Oct. 20, 1999) (Ohio appellate court concluded that two co-workers could not be held liable for reporting an incident in which plaintiff was involved, despite the fact that plaintiff produced evidence that the supervisors misrepresented the incident to the person who fired the plaintiff by **knowingly providing false testimony during the investigation**.); *Barilla v. Patella*, 144 Ohio App. 3d 524, 532-33, 760 N.E.2d 898 (8th Dist. 2001) (summary judgment on tortious interference claim appropriate, even though an issue of fact existed as to malice and even if the defendant was "irresponsible in making his initial communications to the employer which ultimately resulted in [plaintiff's] termination," because no cause of action could be maintained against the defendant while reporting the plaintiff's misconduct to the employer); *Smiddy v. Kinko's, Inc.*, 2003 Ohio 446 (1st Dist. 2003) (affirming judgment as a matter of law on a tortious interference claim where a manager bypassed the normal corporate hierarchy and obtained the termination of the plaintiffs.  The appellate court held even though the trial court characterized the manager's conduct as malicious, the facts underlying this conclusion were insufficient to sustain a tortious interference claim.).

Plaintiff simply chooses to ignore the overwhelming body of law that holds that because Balzano was Plaintiff's supervisor at the time he reported her conduct to Huller, Ohio law does not permit him to be held liable for tortious interference with an employment relationship. Therefore, judgment as a matter of law is appropriate.

**II.    EVEN ASSUMING THAT A SUPERVISOR CAN BE LIABLE FOR REPORTING A SUBORDINATE'S QUESTIONABLE USE OF COMPANY CORRESPONDENCE, PLAINTIFF HAS FAILED TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT BALZANO ACTED WITH ACTUAL MALICE WHEN HE REPORTED PLAINTIFF'S LETTERS TO HULLER.**

Plaintiff continues to ignore the very basic finding in this case, and that is that the jury concluded that she was liable for conversion and that she was fired because she unlawfully took money that belonged to her employer and used it for her personal expenses. Now, in common parlance, conversion is simple theft. So, the question for the Court in addressing this motion becomes whether a reasonable jury could have concluded based on the evidence before it that Balzano intentionally interfered with Plaintiff's employment relationship, causing her an injury, *i.e.* her termination, or whether her conversion or theft of funds caused her termination.

Both Plaintiff and Ms. Ruppert testified that Balzano lied about his knowledge of copy money and lunches. (Tr. at 541.) However, the evidence presented at trial showed that Plaintiff's employment relationship with CIC was not terminated because of lunches or the existence of a "lunch money" fund. (Tr. at 1183.) Plaintiff was terminated because she took money belonging to her employer, placed it in her personal bank account, and then spent it on her personal expenses. *Id.* For Balzano to have been the cause of this alleged injury, he would have had to have lied about his knowledge of these actions of Plaintiff. Yet, absolutely no evidence was offered at trial to show that Balzano knew that Plaintiff was requesting reimbursement checks be made to her personally or that Plaintiff was placing copy

reimbursement money in her personal bank account and spending it on things like day care expenses. (Tr. at 697-98.).

Plaintiff testified that she never told Balzano or anyone else at CIC that she was placing the money in her personal account. (Tr. at 703.) She further testified that she was the only one who did this and that no other attorney knew about this. (Tr. at 697-99.) Al Matheny, the CIC investigator of this incident, also testified that, during his investigation, he discovered no one who knew that Plaintiff was placing money belonging to her employer in her bank account. (Tr. at 1136.) The uncontested evidence proves that Balzano first discovered Plaintiff was placing CIC funds in her personal bank account when Matheny interviewed Plaintiff on December 28, 1999. (Tr. at 188.) Thus, when Balzano reported Plaintiff's letters to Huller in early December 1999, he could not have been reporting false information about those letters because he did not know at that time that Plaintiff was converting CIC's money for her personal use.

Even more absurd is Plaintiff's argument that she was acting at the direction of Balzano in the manner in which she treated and used CIC funds. (Pl. Memo. At 12) She claims that when she went to Balzano in March of 1998 with a $61 check for copy reimbursements that "Balzano told her to cash it and use it for office purposes." While this self-serving assertion by Plaintiff is contradicted by nearly every other piece of evidence introduced at trial on this point, even assuming it were true, it provides no relief for Plaintiff. Plaintiff was not terminated for taking a $61 check, cashing it, and then using it for office purposes. (Tr. at 1183.) As the jury properly found, she had unlawfully taken hundreds of dollars belonging to CIC, had placed it in her bank account, and had spent it on her personal expenses. For this conduct, Plaintiff was terminated.

Plaintiff struggles mightily to create an inference of malice by alleging that Balzano knew about certain office lunches but did not tell Huller – a fact that is simply irrelevant, since the jury determined that Plaintiff unlawfully took CIC's funds and was terminated for that. (Tr. 438, 468, 501.) Even so, Plaintiff's allegations are nothing but base speculation that lacks record support. In fact, Balzano admitted he told Huller he participated in two lunches bought by copy money and that he told Huller everything he knew about copy money and lunches when he first met with Huller about the letters Plaintiff had written requesting copy reimbursement checks be made out to her personally. (Tr. at 872, 1054).

Construing the record in this case most strongly in favor of Plaintiff reveals no support for a finding of actual malice. Malice may not be proven with mere conjecture and inference because such "evidence" cannot as a matter of law leave a firm conviction in the mind of a reasonable jury that actual malice occurred. Plaintiff has produced insufficient evidence to transcend the significant hurdle of the "clear and convincing evidence" standard required for this claim. The only evidence offered at trial on this point is Plaintiff's own subjective belief that Balzano acted maliciously, something that Plaintiff apparently claims can be inferred from Plaintiff's unsupported assumptions regarding Balzano's knowledge of copy money, his reaction to a mere office spat, and his fear that he "was looking at his job being pulled from underneath him" (Tr. at 1274.).

Contrary to Plaintiff's assertion that every first year law student knows that malice can be inferred from a Plaintiff's subjective belief or unsupported assumptions about the conduct of a third party, Ohio courts have repeatedly concluded that "**innuendo or an 'inference of motive' is insufficient to show actual malice**." *Contadino v. Tilow*, 68 Ohio App. 3d 463, 470, 589 N.E.2d 48 (1st Dist. 1990); *See Smith v. Ameriflora*, 96 Ohio App. 3d 179, 185, 644 N.E.2d

1038 (**10th Dist.** 1994) ("**Actual malice could not be inferred from evidence of ill-will, personal spite, or ulterior motive**.") (citing *Jacobs*, 60 Ohio St. 3d at 1118-19). Ohio courts have also consistently held that liability for tortious interference cannot be "predicated simply upon the characterization of such conduct as malicious." *Anderson*, 32 Ohio St. 2d at 213; *Hill*, 63 Ohio App. 2d at 175. Finally, **Ohio courts have stated that the mere "belief" that a supervisor acted with malice is not clear and convincing evidence of malice.** *See, e.g., Ameriflora*, 96 Ohio App. 3d at 185. Here, there is simply no evidence that would allow a reasonable jury to find by clear and convincing evidence that Balzano acted with actual malice.

III.  ASSUMING THAT PLAINTIFF PROVED MALICE BY CLEAR AND CONVINCING EVIDENCE, SHE STILL HAS FAILED TO PRODUCE SUFFICIENT EVIDENCE UPON WHICH A REASONABLE JURY COULD CONCLUDE THAT BALZANO ACTUALLY CAUSED OR INDUCED PLAINTIFF'S TERMINATION UNDER OHIO LAW.[3]

Plaintiff quite simply failed to show that Balzano's actions proximately or directly caused her employment with CIC to be terminated, thereby making the jury's finding unsupportable as a matter of law. Before the Court and in his Closing Argument, Plaintiff's counsel made the somewhat silly analogy that when Balzano reported to his supervisor the fact that he found letters in which Plaintiff was requesting CIC reimbursement checks be made out to her personally that it was as if he "pushed her down a hill on a sled into traffic" without regard to the consequences – and that the consequence was her termination. The problem with this analogy is that it simply ignores the fact that it was Plaintiff who made the decision to get on the sled and then started herself down that hill into traffic when she made the decision to improperly take money that did not belong to her, place it in her personal bank account, and use it for her personal expenses. It was Plaintiff's own conduct that caused her termination, not Balzano's

---

[3] Defendants specifically objected to the jury instruction given by the Court on the issue of proximate causation and hereby reserve that objection for purposes of preserving the record for appeal.

conduct. Plaintiff cannot now be heard to object to this characterization of her conduct because it is exactly the conclusion reached by the jury in this case.

Plaintiff incorrectly asserts that because the jury has spoken on the issue of proximate cause, it is inappropriate to ask the Court to set that judgment aside and enter judgment on behalf of Defendant. Such a nonsensical approach to post-trial motions for judgment as a matter of law would render Rule 50 a nullity. *See, e.g., Bryan v. Farrell*, 1998 Ohio App. LEXIS 6121, *10 (9th Dist. Dec. 16, 1998) (**reversing jury verdict and directing verdict** in favor of defendant on tortious interference with a contract claim because, regardless of allegations of fraud, plaintiff failed to prove the **"essential element" of causation**). As one Ohio court stated:

> It is well-established that if the plaintiff's evidence relating to proximate cause is so meager and inconclusive as to amount to speculation and conjecture, the defendant is entitled to summary judgment as a matter of law. *Schutt v. Rudolph-Libbe, Inc.* (Mar. 31, 1995), 6th Dist. No. WD-94-064, 1995 Ohio App. LEXIS 1211, 1995 WL 136777, *6, citing *Renfroe v. Ashley* (1958), 167 Ohio St. 472, 150 N.E.2d 50, syllabus. *See, also, Williams v. Sun Co., Inc. (R) & M)* (1993), 63 Ohio Misc.2d 429, 433, 631 N.E.2d 195.

*Mahmoud, et al., v. Dennis*, 2005 Ohio 3610; 2005 Ohio App. LEXIS 3337 (Lucas Cty. June 30, 2005). *See also, Stuller v. Price*, 2004 Ohio 4416; 2004 Ohio App. LEXIS 4005 (Franklin Cty. August 24, 2004); *Engle v. Salisbury Twp.*, 2004 Ohio 2029, at P27 (observing that "ordinarily, proximate cause is a question of fact for the jury. * * * However, 'where no facts are alleged justifying any reasonable inference that the acts or failure of the defendant constitute the proximate cause of the injury, there is nothing for the jury (to decide), and, as a matter of law, judgment must be given for the defendant.' "). Therefore, judgment at law under Rule 50 is appropriate where a plaintiff fails to introduce any evidence of causation in a tortious interference claim.

Plaintiff offered absolutely no evidence that Huller relied upon recommendations or other information from Balzano in making his decision to terminate her. Without such evidence, her claim lacks any evidentiary support. *See Sawyer v. Devore*, 1994 Ohio App. LEXIS 4954, at *34-36 (8th Dist. Nov. 3, 1994). Plaintiff introduced no evidence that Balzano's representations to Huller caused her termination. In fact, all of the evidence in the record demonstrates exactly the opposite – that nothing Balzano did in any way influenced CIC's decision. The undisputed testimony shows that Balzano never offered an opinion to Huller or Matheny about any course of action that should be taken regarding Plaintiff. (Tr. at 1067, 1077, 1112.)

Furthermore, Plaintiff admitted she told Matheny and later Huller that she placed funds belonging to her employer in her personal bank account. As demonstrated by the undisputed testimony from Huller, Plaintiff was terminated for this reason and solely for this reason. (Tr. at 1183.) Plaintiff states, with no citation to the record, that: "Not only did he [Balzano] report Mary Lentz for her actions requesting copy reimbursement monies, not sending such checks into the central office, personally cashing such checks, and depositing those checks into a personal bank account, but *evidence at trial showed that Plaintiff did these things based on her reliance of what Balzano told her to do in the first place.*" (Pl. Memo. 16) Consistent with the pattern established by Plaintiff in this litigation, this statement is simply and outrageously false. Absolutely no evidence was presented in this case that Balzano's reporting consisted of anything other than going to his supervisor, Mark Huller, with letters showing that Plaintiff was requesting that checks for CIC funds be paid to her personally. There is not a shred of evidence in the record before the Court that Balzano knew when he went to Huller that Plaintiff had been repeatedly "requesting copy reimbursement monies, not sending such checks into the central office, personally cashing such checks, and depositing those checks into a personal bank

account." Even more outrageous is Plaintiff's claim that Plaintiff was engaging in this conduct because Balzano specifically told her to do so. Again, there is not a shred of evidence in this record to support the assertion that Balzano told Plaintiff to convert funds belonging to CIC to her personal use – the offense that caused her termination. Plaintiff is simply making these assertions up.

Plaintiff's speculation or opinion as to what caused her termination is insufficient to uphold a jury verdict in a tortious interference claim. *See Costaras v. Dunnerstick*, 2004 Ohio 6266 (Oh. App. 9th Dist.). In *Costaras*, the plaintiff teacher claimed that a phone call from her school superintendent to the decisionmaker at another school was a proximate cause for her not to be hired. At trial, the plaintiff introduced no testimony from any witnesses that the phone call caused her not to be hired. The only evidence she introduced was that the phone call was made and that **in her opinion** this was the cause. *See Id.* at P10. The jury returned a verdict in favor of the teacher on the tortious interference with employment claim. On appeal, the court held judgment as a matter of law should have been granted for the superintendent. According to the appellate court, "**self-serving opinion testimony** as to what [the hiring superintendent] or other potential employers may or may not have thought is insufficient to support the element of proximate cause." *Id.* at P11.

The record in this case clearly demonstrates that Plaintiff's admission to conversion in her interview with Matheny and her subsequent admission to Huller caused her termination.

- Huller was the undisputed decision-maker regarding the hiring and firing of attorneys in CIC. (Tr. at 239-40.)

- Plaintiff testified that Huller told her she was being fired for putting CIC money in her account and for diverting funds and further testified that Huller genuinely believed the reason he gave for her termination. (Tr. at 513, 734.)

- Plaintiff testified she was terminated because of what she admitted to during the investigation – placing CIC's money in her bank account and spending it. (*Id.*)

- Plaintiff testified that she was the only attorney who knew that she was putting CIC's money in her personal bank account and spending it. (*Id.*)

- Huller confirmed that this was the reason for Plaintiff's termination. (Tr. at 1183.)

- Plaintiff also admitted to Huller that what she did was wrong and stupid. (Tr. at 1181.)

Plaintiff was not terminated as a result of any opinion or recommendation or statement offered by Balzano. (Tr. at 1130.) Nor was she or any other employee in Dayton – male or female – terminated for eating office lunches bought by "copy money." (Tr. at 855, 1183.)

Accordingly, based on this record, a reasonable jury could only conclude that Huller terminated Plaintiff as a result of her admissions during the investigation and not because of anything Balzano said or did. (Tr. at 1181-83, 1185.) No reasonable jury could conclude Balzano proximately caused Plaintiff's termination and judgment as a matter of law is appropriate.

15

## CONCLUSION

For the foregoing reasons, Defendant David Balzano respectfully renews his request that the Court award him judgment as a matter of law on Plaintiff's tortious interference claim.

Respectfully submitted,

*/s/ Jack B. Harrison*
Deborah S. Adams (0005607)
Jack B. Harrison (0061993)
FROST BROWN TODD LLC
2200 PNC Center
201 E. Fifth Street
Cincinnati, Ohio 45202-4182
Telephone: (513) 651-6800
Telecopier: (513) 651-6981
dadams@fbtlaw.com
jharrison@fbtlaw.com

Trial Attorneys for Defendant
David Balzano

## CERTIFICATE OF SERVICE

      I hereby certify that on August 10, 2005, a copy of Defendant David Balzano's Reply Memo in Support of his Renewed Motion for Judgment as a Matter of Law was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system and copies will be mailed via U.S. Mail to those parties who are not served via the Court's electronic filing system, if any. Parties may access this filing through the Court's system.

                                                                                       */s/ Jack B. Harrison*
Deborah S. Adams (0005607)
Jack B. Harrison (0061993)
Frost Brown Todd LLC
2200 PNC Center
201 East Fifth Street
Cincinnati, OH 45202-4182
(513) 651-6800 (telephone)
dadams@fbtlaw.com
jharrison@fbtlaw.com

Trial Attorneys for Defendant
David Balzano