UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Mary E. Lentz,

    Plaintiff,

v.                                                            Case No. 1:01cv599

Cincinnati Ins. Co., *et al.*,                 Judge Michael H. Watson

    Defendants.

**OPINION AND ORDER**

This matter is before the Court upon Defendant Balzano's Renewed Motion for Judgment as a Matter of Law as to Claim for Intentional Interference with Employment Relationship. (Doc. 165) Plaintiff has filed a Response opposing the Motion. (Doc. 176)

The trial of this matter began on June 6, 2005 and concluded on June 23, 2005. The jury returned a verdict for Plaintiff on her claim of intentional interference against Balzano, but awarded $0 in damages.

**A.    ANALYSIS**

Federal Rule of Civil Procedure 50(b) provides:

> If, for any reason, the court does not grant a motion for judgment as a matter of law made at the close of all the evidence, the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. The movant may renew its request for judgment as a matter of law by filing a motion not later than 10 days after entry of judgment and may alternatively request a new trial or join a motion for a new trial under Rule 59. In ruling on a renewed motion, the court may:

>    (1) if a verdict was returned:
>
>    (A) allow the judgment to stand,
>    (B) order a new trial, or
>    (C) direct entry of judgment as a matter of law;
>
>    . . .

Fed. R. Civ. P. 50(b). In a Rule 50(b) motion based on the sufficiency of the evidence supporting a jury's findings, a court, when sitting in diversity, must use the standards of review applicable under the law of the forum state. *K & T Enterprises., Inc. v. Zurich Ins. Co.*, 97 F.3d 171, 175-76 (6th Cir. 1996). Under Ohio law, which is applicable here, a court is required to "construe the evidence adduced at trial and all reasonable inferences arising therefrom, most strongly in favor of the non-moving party, in addition to assuming the truth of all evidence in support of that party's claims." *Fischer v. Dairy Mart Convenience Stores, Inc.*, 602 N.E.2d 1204, 1208-209 (1991). A court must deny the motion "[w]here there is some evidence of substantial probative value in support of the plaintiffs' claim sufficient for reasonable minds to reach different conclusions." *Id.* at 1209.

Defendant Balzano argues that the Court should direct entry of judgment as a matter of law on Plaintiff's intentional interference claim. Balzano sets forth three alternative bases for its argument: (1) under Ohio law, as Plaintiff's supervisor, Balzano cannot be liable for tortious interference with Plaintiff's employment relationship; (2) Plaintiff has failed to prove by clear and convincing evidence that Balzano acted with actual malice; and (3) Plaintiff has failed to produce sufficient evidence that Balzano actually caused or induced Plaintiff's termination.

1. **<u>Intentional interference claims under Ohio law</u>**

As stated in her Complaint, Plaintiff's claim is one of intentional interference with a business relationship. (Doc. 1) As part of her claim, Plaintiff alleges that the employment relationship between CIC and Plaintiff created a business relationship. (Id. ¶ 81)

"Ohio law recognizes both a claim of tortious interference with contractual (or business) relations and a claim of wrongful interference with an employment relationship." *Dryden v. Cincinnati Bell Tel. Co.*, 734 N.E.2d 409, 413 (Ohio Ct. App. 1999). Tortious interference with contractual or business relations does not require a showing of malice, and is largely an adaptation of the Restatement of the Law 2d, Torts (1979), Sections 766-767. *Id.*, citing *Norwell v. Cincinnati*, 729 N.E.2d 1223, 1237 (Ohio Ct. App. 1999). In contrast, the tort of wrongful interference with an employment relationship requires a showing of either wanton or malicious behavior. *Id.*, citing *Contadino v. Tilow*, 589 N.E.2d 48, 50 (Ohio Ct. App. 1990). However, when the plaintiff is a terminated employee, courts do not always distinguish between the two torts. *Mitchell v. Mid-Ohio Emergency Svcs., LLC*, No. 3AP-981, 2004 WL 2803419, *9, n.6 (Ohio Ct. App. Sept. 30, 2004) (unpublished).

The Court sets forth the above principles because there appears to be some confusion in the record as to which claim Plaintiff is bringing, and what Plaintiff is required to prove.

### 2. **Liability of a supervisor**

As Balzano points out, the Supreme Court of Ohio has explained that:

> Causes of action have been recognized against 'outsiders' for malicious interference with employment. Where, however, the act complained of is within the scope of a defendant's duties, a cause of action in tort for monetary damages does not lie. Nor can liability be predicated simply upon the characterization of such conduct as malicious.

*Anderson v. Minter*, 291 N.E.2d 457, 461 (Ohio 1972) (citations omitted); *see also Lennon v. Cuyahoga Cty. Juvenile Court*, 2006 WL 1428920, *5 (Ohio Ct. App. May 25, 2006) (slip op.) ("Thus, there are three players in a tortious interference claim: the plaintiff, the defendant, and a third-party employer.") Therefore, as this Court explained in ruling on Defendants' Motion for Summary Judgment: A supervisor may be liable for this tort only if he or she acted outside the scope of his or her duties, in his or her personal, rather than professional, capacity. (Doc. 83, at 2-3) Accordingly, the jury was instructed that one of the elements Plaintiff must prove in her intentional interference claim is that "Defendant Balzano acted outside the scope of his employment when he engaged in his interfering acts." (Doc. 159, at 10)

Plaintiff does not dispute that this is the applicable law, but argues that she has shown that Balzano was not operating within the scope of his employment. Specifically, Plaintiff argues that CIC did not authorize employees to lie or provide inaccurate information to their supervisors, and Balzano provided inaccurate and untruthful information to his supervisor, Mark Huller.

At trial, Huller testified that CIC does not authorize its employees to lie to superiors. (Tr. at 908) Plaintiff testified that before coming to work for CIC, she worked for a law firm which requested opposing counsel or counsel for co-defendants to

reimburse the firm for copies made during the course of litigation. (Tr. at 288) Plaintiff stated that she asked Balzano if she could institute the same practice at CIC, and he said she could. (Id. at 288-89) Plaintiff testified that when she first received a check made out to CIC, she asked Balzano what she should do with it. (Tr. at 296) Plaintiff testified that Balzano told her that when he had received a check made out to CIC, the home office told him to cash it and use it for office purposes. (Id.) Plaintiff testified that Balzano explained that he bought pizza for the office with the money. (Id.) Shelly Bascom testified that on several occasions she told Balzano that Plaintiff was using copy money to buy lunch, and asked him to place an order. (Tr. at 801-802)

Balzano testified that his secretary brought letters to him showing that Plaintiff was requesting reimbursement for copies. (Tr. at 1101) Balzano explained that he delivered copies of these letters to Huller. (Tr. at 1093) There was also evidence of an investigative report by Huller in which he states that Balzano denied any knowledge of the copy money and denied receiving lunch paid for with copy money. (Plaintiff's Ex. 29) Balzano also made a statement during the investigation that he did not know Plaintiff was collecting copy money. (Tr. at 505-506) Construing this evidence and all reasonable inferences arising therefrom most strongly in favor of Plaintiff, the Court finds that reasonable minds could differ as to whether Balzano was operating within the scope of his employment. While Balzano may have been acting within the scope of his employment when he reported Plaintiff to Holler, he was required to provide truthful and complete information when doing so. Therefore, the Court finds that Balzano is not entitled to judgment as a matter of law on this basis.

### 3. Actual malice

Under Ohio law, the doctrine of qualified privilege is applicable to tortious interference cases. *Chandler and Associates v. America's Healthcare Alliance, Inc.*, 709 N.E.2d 190, 197 (Ohio Ct. App. 1997); *see also A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 651 N.E.2d 1283, 1294 (Ohio 1995) (holding that interference with a contract is not actionable when the defendant is vested with a privilege). In overcoming a defendant's assertion that a qualified privilege exists, the plaintiff must demonstrate the existence of malice on the part of the defendant through clear and convincing evidence. *Doyle v. Fairfield Machine. Co., Inc.*, 697 N.E.2d 667, 683-84 (Ohio Ct. App. 1997), citing *A & B-Abell Elevator*, 651 N.E.2d at 1292-93. Malice, in the context of a qualified privilege, does not require the showing of ill-will or hatred for the plaintiff; rather, "malice" is defined as acting with knowledge that the statements that were made were false or acting with disregard as to the truthfulness or falseness of the statements. *Andrews v. Carmody*, 761 N.E.2d 1076, 1080-81 (Ohio Ct. App. 2001).

At the outset, it should be clarified that the Court's ruling that there was insufficient evidence of malice to submit the issue of punitive damages is separate and apart from the issue of whether there was sufficient evidence of actual malice to submit Plaintiff's claim of intentional interference to the jury. Under Ohio law, the "actual malice" necessary for purposes of an award of punitive damages has been defined as " '(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm.' " *Berge v. Columbus*

*Community Cable Access*, 736 N.E.2d 517, 542 (Ohio Ct. App. 1999), *quoting Preston v. Murty*, 512 N.E.2d 1174 (Ohio 1987).

That having been said, the Court finds that there was sufficient evidence of actual malice, in the context of a qualified privilege, for reasonable minds to reach different conclusions. As stated above, Plaintiff testified that it was Balzano who initially told her how to handle the money she received as reimbursement for copies. (Tr. at 500) Paula Ruppert, Plaintiff's secretary at CIC, testified that on two occasions she showed Balzano the bills for the copies and how she computed the costs. (Tr. at 393) Ruppert also testified that Balzano once asked her for copy money for an office lunch. (Id.)

Balzano points out that Plaintiff testified that she never told Balzano that she placed the money in her own account (Tr. at 703), and Plaintiff was terminated for placing CIC's money in her account, not for the practice of collecting copy money. The Court finds that this is of no moment for purposes of Plaintiff's intentional interference claim. Plaintiff's claim is based upon Balzano's reporting Plaintiff's letters to Huller and telling Huller that he had no knowledge of the copy money and lunches paid for with copy money.

Therefore, the Court finds that Balzano is not entitled to judgment as a matter of law on this basis.

### 4. Causation

Ohio courts have defined proximate cause as: "[A]n act or failure to act which in the natural and continuous sequence directly produces the [injury] claimed, and without

which it would not have occurred. Cause occurs when the [injury] is the natural and foreseeable result of the act or failure to act." *Doyle v. Fairfield Machine Co., Inc.*, 697 N.E.2d 667, 679 (Ohio Ct. App. 1997), *citing* 11 Ohio Jury Instructions (1995) 171, Section 11.10(2).  " '[T]he term "proximate cause," is often difficult of exact definition as applied to the facts of a particular case.  However, it is generally true that, where an original act is wrongful * * * and in a natural and continuous sequence produces a result which would not have taken place without the act, proximate cause is established, and the fact that some other act unites with the original act to cause injury does not relieve the initial offender from liability.' " *Id.* (citations omitted).  Therefore, "[e]ven where an act is not the sole cause of the injury, that act can still be sufficient to satisfy the element of proximate cause so long as it put in motion the sequence of events leading to the injury. *Id.*, *citing Garbe v. Halloran*, 83 N.E.2d 217 (Ohio 1948).

      Balzano argues that absent evidence that Huller relied upon a recommendation or other information from Balzano in terminating Plaintiff, her claim must fail.  The Court disagrees.  As proximate cause is defined under Ohio law, there was room for the jury to conclude that Balzano's wrongful acts put in motion the sequence of events leading to Plaintiff's termination.  Therefore, the Court finds that Balzano is not entitled to judgment as a matter of law on this basis.

**B.  CONCLUSION**

Based on the foregoing, Defendant Balzano's Renewed Motion for Judgment as a Matter of Law as to Claim for Intentional Interference with Employment Relationship (Doc. 165) is hereby **DENIED**.

**IT IS SO ORDERED.**

_____
Michael H. Watson, Judge
United States District Court