UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Mary E. Lentz,

    Plaintiff,

v.

Cincinnati Ins. Co., *et al.*,

    Defendants.

Case No. 1:01cv599

Judge Michael H. Watson

## OPINION & ORDER

This matter is before the Court upon Plaintiff's Motion for a New Trial. (Doc. 168) Also before the Court is the Memorandum in Opposition filed by Defendants Cincinnati Insurance Company ("CIC") and David Balzano. (Doc. 174)

The trial of this matter began on June 6, 2005 and concluded on June 23, 2005. The jury returned a verdict finding against Plaintiff on her claim of gender discrimination against CIC and her claim of intentional infliction of emotional distress against Balzano. The jury returned a verdict for Plaintiff on her claim of intentional interference against Balzano but awarded $0 in damages. The jury found in favor of CIC on its counterclaim for conversion, and awarded $1,600.00 in damages.

### A.    ANALYSIS

Federal Rule of Civil Procedure 59(a) provides that "[a] new trial may be granted to all or any of the parties and on all or part of the issues . . . in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States."

Plaintiff makes several arguments as to why this Court should order a new trial in this matter. The Court will address each argument in turn.

1. **Time limitations**

Plaintiff argues that the time limitations the Court placed upon the parties in their presentation of evidence was unreasonable. Plaintiff argues further that she should have been allotted more time than Defendants because she had three affirmative claims to prove and "bore the burden of proof for the vast majority of trial." Plaintiff states that the jury was prevented from "really reading" the documents which were admitted into evidence; and her counsel was cut off in the middle of the presentation of her closing argument. Plaintiff also criticizes the Court for "frequent recesses and delays, sometimes announced in advance, sometimes not." Plaintiff contends that this prevented her from presenting her case in a continuous manner.

This Court has the power to impose reasonable time limits on the trial of both civil and criminal cases. *See U.S. v. Reaves*, 636 F.Supp. 1575 (E.D.Ky. 1986) (discussing reasonable time limits on trials and the inherent power of the court to control its docket based on Federal Rules of Evidence 403 and 611(a)). The Court finds that the twelve hours allotted to each side was a reasonable time limit. This case is a relatively simple employment case brought by one plaintiff against two defendants. Plaintiff had three claims, and CIC had one counterclaim. The Court also finds that it was reasonable to give the Parties equal time for their presentation. As Defendants correctly note, a total of twelve hours was allotted to Plaintiff, a single party, and to Defendants, who were two separate defendants with separate claims brought against them. Moreover, the Court made numerous exceptions, in response to Plaintiff's

counsel's complaints, to its original Order setting time limits. The Court excluded the time used for *voir dire*, discussions at side bar, arguments on Motions for Judgment as a Matter of Law, and the charge conference. Plaintiff's argument that the jury was prevented from "really reading" the documents which were admitted into evidence has no merit–any exhibits which were admitted were sent back with the jury during their deliberations. Finally, as to the interruptions to the presentation of Plaintiff's case, the Court finds that these interruptions are not grounds for granting a new trial. The Parties estimated the length of trial to be five days. (Doc. 122) Despite the time limitations imposed upon the parties, the presentation of evidence lasted nine days. During this time, it was necessary for the Court to recess to handle other previously scheduled matters. The presiding judge also became ill, which made it necessary to be in recess for one day. However, these interruptions were no more detrimental to Plaintiff's presentation than to that of the Defendants'. Moreover, the Court explained to the jury that it was the Court which needed to take a recess, not the Parties. Therefore, the time limitations are not grounds for a new trial.

### 2. Time calculation

Plaintiff states that prior to closing arguments, the Court granted Plaintiff an additional thirteen minutes for closing. Plaintiff argues that the Court erroneously interrupted Plaintiff's counsel during rebuttal to notify him that his time was about to expire. Plaintiff states that this cut short her presentation and made it look unorganized. Plaintiff maintains that this prejudiced the jury against her.

During Plaintiff's closing rebuttal argument, the Court gave counsel a warning that he was near the end of his allotted time. (Doc. 161-3 at 31) The Court and the

Courtroom Deputy informed counsel that he had twelve or thirteen minutes remaining. (Id.) The Court then advised counsel to take "a couple minutes" and summarize. (Id.) The trial transcript shows that counsel then proceeded to bring his argument to a close, and did not use the remaining time. (Id.) While Plaintiff's counsel may have misunderstood the Court's instruction to take "a couple of minutes," the Court finds that this misunderstanding did not prejudice Plaintiff. The Court specifically instructed the jury:

> The evidence in this case consists of the sworn testimony of the witnesses and all the exhibits which have been received in evidence.
>
> The evidence does not include any statements of counsel made during the trial, unless such statement was an admission or agreement admitting certain facts. The opening statements and the closing arguments of counsel are designed to assist you. They are not evidence.
>
> You are to consider only the evidence in the case.

(Doc. 159) Therefore, any interruption to counsel's closing rebuttal argument is not grounds for a new trial.

### 3.   Statements by CIC's employees or agents

Plaintiff argues that the Court failed to adhere to Federal Rule of Evidence 801(d)(2)(D) and permit certain statements made by CIC employees to be entered into evidence. Plaintiff states that she would have entered the statements of Joe Currin, an attorney in the Berlon & Timmel office,[1] and Julia Gibson, a secretary in the same office.

---

[1] There was testimony at trial that at one time, this was the name used by CIC's legal department.

Rule 801(d)(2)(D) provides that a statement is not hearsay if it is offered against a party and is a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship.

Plaintiff sought to introduce the statements of Currin, which appeared in Plaintiff's exhibit PX-16. (Doc. 151, at 145) Specifically, Plaintiff sought to introduce Curran's statements, made as part of his exit interview, regarding Balzano's management style. Plaintiff argued that these statements go to credibility. The Court finds that Rule 801(d)(2)(D) provides little support because it is not clear that Currin was still an employee when he made the statements. Moreover, even if the Court were to find that these statements were minimally relevant, these statements are excludable under Federal Rule of Evidence 403 because their probative value is substantially outweighed by the danger of confusion of the issues and misleading the jury.

Plaintiff also sought to introduce statements Gibson made to Plaintiff about what Gibson was told about checks being made out to CIC. The Court finds that these statements were not within the scope of Gibson's employment. "There is a critical difference between making a statement while one is an employee and having the actual or implied authority to make such a statement on behalf of your employer." *Jacklyn v. Schering-Plough Healthcare Products Sales Corp.*, 176 F.3d 921, 928 (6th Cir. 1999). Paula Ruppert testified that Gibson was a secretary and the office's "computer person." (Doc. 140, at 37) There is no indication that Gibson had the authority to make a statement regarding CIC's ability to accept and deposit checks.

Therefore, the exclusion of these statements is not a basis for granting a new trial.

### 4. Testimony regarding similarly-situated employees

Plaintiff argues that the Court improperly excluded her testimony regarding other similarly-situated male employees who were either accused or guilty of malfeasance, but were not terminated. Plaintiff maintains that the Court should have permitted the introduction of evidence regarding Mike Berlon's "breach of trust" and "credibility issues;" Fred Young's habit of "playing with himself"; John Fiocca's malfeasance; and Fred Breueggeman's malfeasance. As the Court noted during the trial, Plaintiff testified in her proffer that her knowledge of the incidents involving these male employees was based upon what she was told by Brian McNair, another CIC attorney. (Doc. 143, 37-41)[2] As the Court also noted during the trial, these statements are hearsay, and do not fall under Federal Rule of Evidence 801(d)(2)(D). (Id. at 47) Therefore, any discussion as to whether these men were similarly-situated is unnecessary.

### 5. The "Dayton Incident" Memo

Plaintiff argues that the Court improperly excluded Plaintiff's exhibit PX-11, which was a memo written by Hank Berlon, an attorney for CIC. Plaintiff states that this memo documents complaints of inappropriateness with Fred Young and proposes resolving the problem with the departure of those secretaries complaining, either on their own accord, or by not granting pay increases to them. During the trial, the Court reviewed this memo, found that it was undated, and was informed by counsel from both sides that the witness through whom Plaintiff's counsel was attempting to introduce the

---

[2]The one exception was that Plaintiff had observed Young's behavior, and accordingly was permitted to testify about what she observed.

exhibit had never seen the document before it was shown to him in his deposition. (Doc. 147 at 17-21)

Federal Rule of Evidence 901(a) instructs: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Plaintiff failed to provide any authentication or identification, and therefore Plaintiff's exhibit PX-11 was properly excluded.

### 6. Damages for Intentional Interference

Plaintiff argues that the jury's finding of no damages on her claim of intentional interference against Balzano cannot be sustained. Plaintiff argues that based on the special interrogatories to the jury, the jury necessarily found that she suffered damages. Plaintiff argues further that there was evidence in the record that she suffered damages with an actual monetary value. Plaintiff maintains that since the jury awarded no money damages, the Court must allow the parties to jointly discuss and agree to a stated amount of damages. Plaintiff states that if the parties are unable to agree on an amount, the Court must grant a new trial to determine damages on this claim.[3]

As the Sixth Circuit has explained:

> The scope of review of a damage award is extremely narrow. A trial court may not grant a new trial on the ground of insufficient damages unless the jury verdict is one that could not reasonably have been reached. The remedy of a new trial for inadequate damages is appropriate only where the evidence indicates that the jury awarded damages in an amount substantially less than unquestionably proved by the plaintiff's uncontradicted and

---

[3] As another alternative, Plaintiff argues that the Court should calculate the amount of front and back pay. This argument is addressed in a separate motion made by Plaintiff (Doc. 167) and will be addressed in a separate order.

> undisputed evidence. Thus, if the verdict is supported by some competent, credible evidence, a trial court will be deemed not to have abused its discretion in denying the motion.

*Walker v. Bain*, 257 F.3d 660, 674 (6th Cir. 2001) (citations omitted), *cert. denied*, 535 U.S. 1095 (2002); *see also Bell v. Johnson*, 404 F.3d 997, 1003 (6th Cir. 2005).

First, the Court notes that under Ohio law, a jury properly may find in favor of the plaintiff and assess zero damages due from the defendant. *Gillentine v. Vanzant*, 1994 WL 693264, *10 (6th Cir. 1994) (unpublished), *citing Muckus v. Ruggles*, 138 N.E.2d 389, 390 (Ohio 1956) (finding that a jury's decision that defendant committed assault and battery, but that plaintiff suffered neither compensatory nor punitive damages, did not nullify the jury's verdict); *Reder v. Antenucci*, 574 N.E.2d 1137, 1140 (Ohio Ct. App. 1989) (holding jury's award of zero dollars was reasonable because "the jury either found that there was no injury or that no injury was caused by the accident." ); *cf. AIG Aviation, Inc. v. Boorom Aircraft, Inc.*, 1998 WL 69013, *6 (6th Cir. 1998) (per curiam) (unpublished) (remanding for a new trial on RICO damages where jury found liability under RICO and parallel state-law claims, but awarded damages for state-law claims only).

Next, the Court finds that the jury's verdict could have reasonably been reached. The jury could have concluded that Balzano's actions either caused her no injury, or that her injury was not compensable. Therefore, the Court finds that Plaintiff is not entitled to a new trial on this basis.

### 7. Jury Instruction regarding Title VII

Plaintiff argues that the Court improperly instructed the jury on Title VII because the Court's instruction incorporated the *McDonnell Douglas* burden-shifting framework.

In *Brown v. Packaging Corp. of America*, the Sixth Circuit reviewed decisions from several circuits and concluded: "while most courts of appeals would agree that it is normally inappropriate to instruct the jury on the *McDonnell Douglas* analysis, seldom is it held to be reversible error for a trial court to do so as long as the instruction summarizes the law accurately." 338 F.3d 586, 593 (6th Cir. 2003). Plaintiff does not argue that the Court's instruction summarizes the law incorrectly. Moreover, Plaintiff does not explain how this instruction resulted in prejudice to her. Therefore, the Court finds that Plaintiff is not entitled to a new trial on this basis.

### 8. Punitive Damages Instruction

Plaintiff argues that the Court improperly refused to instruct the jury on punitive damages. Plaintiff points out that the jury found for Plaintiff on her claim for intentional interference, which includes a finding of actual malice. Plaintiff argues that this indicates a strong likelihood that the jury would have awarded punitive damages on that claim.

While the jury did make a finding of actual malice on the part of Balzano, this finding was in relation to Balzano's defense of qualified privilege. The instruction to the jury explained the elements of the claim of intentional interference with a business relationship, but then explained:

> However, a qualified or conditional privilege applies to communications made in good faith between employers and their managers about matters of common business interest. To show that Defendant Balzano exceeded this privilege, Plaintiff must show by clear and convincing evidence that the communications were made with "actual malice," that is, with knowledge that the statements were false or with reckless disregard of whether they were false or not.

(Doc. 159) This instruction is based on Ohio's law regarding qualified or conditional privileges. See *A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 651 N.E.2d 1283, 1295 (Ohio 1995) ("Qualified privileges adhere to certain occasions because public policy embraces an interest worthy of protection. The privilege cannot be lost without a showing of actual malice, *i.e.*, knowledge of falsity or reckless disregard for the truth.").

In the context of punitive damages, Ohio law provides a different definition of "actual malice." The "actual malice" necessary for purposes of an award of punitive damages has been defined as " '(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm.' " *Berge v. Columbus Community Cable Access*, 736 N.E.2d 517, 542 (Ohio Ct. App. 1999), *quoting Preston v. Murty*, 512 N.E.2d 1174 (Ohio 1987).

Moreover, under Ohio law, in order for a plaintiff to be entitled to punitive damages, there must be proof of an underlying independent compensatory damage claim. *Moskovitz v. Mt. Sinai Medical Ctr.*, 635 N.E.2d 331, 342 (Ohio 1994). Therefore, because the jury awarded $0 in compensatory damages for Plaintiff's intentional interference claim, Plaintiff is not entitled to punitive damages. Accordingly, the Court finds that its refusal to instruct on punitive damages is not grounds for a new trial.

**B.** **CONCLUSION**

Based on the foregoing, Plaintiff's Motion for a New Trial (Doc. 168) is hereby **DENIED**.

**IT IS SO ORDERED.**

_____
Michael H. Watson, Judge
United States District Court